## Docket No. 12-17506

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

BETSY FEIST, PETER ECKERSLEY
and ELECTRONIC FRONTIER FOUNDATION,

*Appellees,*

v.

RCN CORPORATION and PAXFIRE, INC.,

*Appellants.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*Case No. 3:12-mc-80135-SI with Related Case Nos. 3:12-mc-89119, 3:12-mc-80121*
*and 3:12-mc-80140 · Honorable Susan Y. Illston*

## BRIEF OF APPELLANT

ANDREW GROSSO, ESQ.
ANDREW GROSSO & ASSOCIATES
Georgetown Place
1101 Thirtieth Street, N.W., Suite 300
Washington, D.C. 20007
(202) 298-6500 Telephone
(202) 298-5599 Facsimile

*Attorney for Appellant,*
*Paxfire, Inc.*

 

**CORPORATE DISCLOSURE STATEMENT**

Paxfire has no parent company, and it is currently in bankruptcy. The following companies have satisfied the filing requirements for asserting claims in an amount exceeding ten percent of the total claims filed against Paxfire's assets: the Verizon Corporation; Charter Communications, Inc.; and RRP, LLC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION .................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ....................... 1

STATEMENT OF THE CASE ............................................................ 1

STATEMENT OF FACTS ................................................................. 4

    A.    Paxfire ................................................................ 4

    B.    The New York Case .......................................... 5

    C.    The Pre-Complaint Defamation .......................... 8

    D.    The Subpoenas for Documents ......................... 11

STANDARD OF REVIEW ............................................................... 13

SUMMARY OF THE ARGUMENT ................................................... 14

ARGUMENT ................................................................................ 15

    I.    THE DISTRICT COURT ERRED AS TO BOTH LAW
        AND FACT IN RULING THAT EFF'S DOCUMENTS WERE
        PROTECTED UNDER RULE 26(b)(4)(D) ....................... 15

        A.    The District Court Made a Factual Error ................ 16

        B.    The District Court Made an Error of Law Applying
            Rule 26(b)(4)(D) to Documents Created For
            Non-Litigation Purposes ................................... 17

        C.    EFF Has No Standing to Assert Rule 26(b)(4)(D) .... 23

        D.    Betsy Feist, EFF, and ICSI Waived Any Confidentiality ........ 23

i

II.    CONTRARY TO THE DISTRICT COURT'S CONCLUSIONS, THE DOCUMENTS SOUGHT ARE CRITICAL TO PAXFIRE'S DEFENSE AND TO ITS COUNTERCLAIMS ............25

CONCLUSION ...................................................................................31

CERTIFICATE OF COMPLIANCE ....................................................31

STATEMENT OF RELATED CASES ..................................................32

CERTIFICATE OF SERVICE .............................................................33

# TABLE OF AUTHORITIES

## CASES

*800 Front Street Corp. v. Travelers Property Casualty Co. of America*,
No., CV 06-500 (LDW) (ARL), 2006 U.S. Dist. LEXIS 84160
(E.D.N.Y. Nov. 20, 2006)..............................................................21

*Barkwell v. Sturm Ruger Co., Inc.*,
79 F.R.D. 444 (D. Alaska 1978)....................................................22

*Dung Ngo v. Standard Tools & Equipment, Co., Inc.*,
197 F.R.D. 263 (D. Md. 2000) .......................................................22

*Goodman v. United States*,
369 F.2d 116 (9th Cir. 1966) .........................................................13

*Hall v. Earthlink, Inc.*,
396 F.3d 500 (2d Cir. 2005) .............................................................8

*Harasimowicz v. McAllister*,
78 F.R.D. 319 (E.D. Pa. 1978) ..................................................22, 23

*Hickman v Taylor*,
329 U.S. 495 (1947)........................................................................20

*Hobley v. Burge*,
433 F.3d 946 (7th Cir. 2006) .........................................................23

*Keith v. Van Dorn Plastic Machinery Co.*,
86 F.R.D. 458 (E.D. Pa. 1980) ......................................................22

*Lamar Advertising of South Dakota, Inc. v. Kay*,
267 F.R.D. 568 (D.S.D. 2010)........................................................21

*Leviathan, Inc. v. M/S Alaska Maru*,
86 F.R.D. 8 (W.D. Wash. 1979)....................................................22

*Norfin, Inc. v. Intern. Business Machs. Corp.*,
74 F.R.D. 529 (D. Colo. 1977) ......................................................23

iii

*Osband v. Woodford*,
    290 F.3d1036 (9th Cir. 2002) ........................................................14

*Premium Service Corp. v. Sperry & Hutchinson Co.*,
    511 F.2d 225 (9th Cir. 1975) ...................................................1, 13

*Quarantillo v. Consol. Rail Corp.*,
    106 F.R.D. 435 (W.D. N.Y. 1985) ...............................................22

*Securities Exchange Commission v. Collins & Aikman Corp.*,
    256 F.R.D. 403 (S.D.N.Y. 2009) .................................................29

*Security Farms v. International Bhd. of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ......................................................14

*Stoffels v. SBC Communications, Inc.*,
    263 F.R.D. 406 (W.D. Tex. 2009) ...............................................23

*Sullivan v. Dickson*,
    283 F.2d 725 (9th Cir. 1960), *cert. denied*
    366 U.S. 951 (1961) ...................................................................13

*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*,
    852 F. Supp. 156 (E.D.N.Y. 1994) ..............................................21

*United States Inspection Servs. v. NL Engineered Solutions LLC*,
    268 F.R.D. 614 (N.D. Cal. 2010) ................................................18

*United States v. Global Fishing, Inc.*,
    634 F.3d 557 (9th Cir. 2011) ........................................................1

*William A. Gross Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*,
    262 F.R.D. 354 (S.D.N.Y. 2009) .................................................21

*Williams v. Rene*,
    886 F. Supp. 1214 (D.V.I. 1995), *rev'd on other grounds*,
    72 F.3d 1096 (3d Cir. 1995) ........................................................22

## STATUTES AND RULES

18 U.S.C. § 1623(c) ...................................................................................17

18 U.S.C. § 2510 (4)-(5) ..............................................................................8

18 U.S.C. § 2511(1)(c) ................................................................................8

28 U.S.C. § 636(b)(1)(A) ...........................................................................13

28 U.S.C. § 1291 ...........................................................................................1

Fed. R. Civ. P. 8 .........................................................................................28

Fed. R. Civ. P. 11 .......................................................................................29

Fed. R. Civ. P. 26(a) ..................................................................................25

Fed. R. Civ. P. 26(b) ..................................................................................20

Fed. R. Civ. P. 26(b)(4)(D) ...................................................15, 17, 18, 20, 23

Fed. R. Civ. P. 45(b) ..................................................................................13

Fed. R. Civ. P. 52(a) ..................................................................................13

## STATEMENT OF JURISDICTION

This appeal is from a final order of a District Court quashing a third party subpoena issued by that court, where the underlying case is pending in a foreign court. This court has jurisdiction pursuant to 28 U.S.C. § 1291. See *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 227-228 (9th Cir. 1975) (holding that denial of motion for protective order from discovery subpoena issued by Minnesota court is immediately appealable); *cf., United States v. Global Fishing, Inc.*, 634 F.3d 557, 566 (9th Cir. 2011) (holding that denial of motion for protective order from discovery subpoena issued by court in foreign country is immediately appealable).

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether the District Judge erred by reversing the Order of the Magistrate Judge, to the extent that such order compelled the Appellees to produce documents pursuant to a third party discovery subpoena.

## STATEMENT OF THE CASE

This appeal is from a final order entered in the United States District Court for the Northern District of California. The dispute in the District Court arises from two third-party subpoenas *duces tecum* served by the Appellant, Paxfire, Inc.

("Paxfire"), upon the Appellees, the Electronic Frontier Foundation ("EFF")

and its Projects Director Peter Eckersley ("Mr. Eckersley"). The underlying case

from which the subpoenas issued is a class action lawsuit—not certified to date—

filed in the Southern District of New York (hereinafter the "New York case").[1]

The complaint in the New York case names two Defendants: Paxfire, a

Delaware corporation with its headquarters in Virginia; and the RCN Corporation

("RCN"), which is an Internet Service Provider ("ISP") doing business primarily in

the northeast. The plaintiff is Betsy Feist ("Ms. Feist"). RCN reached a settlement

with Ms. Feist, and is no longer a party to the New York case. RCN was never a

party to the dispute in the Northern District of California.

Paxfire filed counterclaims against Ms. Feist, alleging defamation, tortious

interference with business relationships, and conspiracy.[2] The District Court in

New York substantially denied Ms. Feist's motion to dismiss these counterclaims[3]

and they remain pending.

Paxfire served two subpoenas each on EFF and Mr. Eckersley, separately

seeking deposition testimony and documents. (The subpoenas seeking deposition

testimony are not at issue in this appeal.) Paxfire also served subpoenas on the

International Computer Science Institute ("ICSI"), three of its researchers, and a

---

[1] Feist v. RCN Corp., Case No. 1:11-CV-05436 (S.D.N.Y.)
[2] RE 288.
[3] RE 148, 178-89.

reporter for the New Scientist. Motions to quash were filed by all recipients, as well as by Ms. Feist. EFF filed a Notice of related cases,[4] and the District Court issued an order that the cases were to be treated as related and assigned to the same magistrate and district judges.[5]

On August 13, 2012, the magistrate judge issued a consolidated order quashing all deposition subpoenas and granting in part and denying in part the motions of the various parties to quash the subpoenas seeking documents.[6] Paxfire, EFF, and Mr. Eckersley appealed the magistrate's order to the district judge. On November 8, 2012, the district judge issued an order quashing in their entirety the two subpoenas *duces tecum* served on EFF and Mr. Eckersley.[7]

This appeal followed.

---

[4] RE 330. The related cases in the District Court are Nos. 3:12-mc-80119; 3:12-mc-80121; 3:12-mc-80135; and 3:12-mc-80140. The initial case from which this appeal arises is 3:12-mc-80135.
[5] RE 209.
[6] RE 194.
[7] RE 1.

## STATEMENT OF FACTS

### A.  Paxfire

Paxfire is Delaware corporation with its business headquarters in northern Virginia.[8]  At the time of the events at issue in this dispute, the company was negotiating the sale of itself to a competitor—Xerocole, Inc. ("Xerocole")— for approximately $10 million.[9]  As a direct result of these events, the sale did not go through, Paxfire entered bankruptcy, and the company is now liquidating.[10]

Paxfire pioneered the "error redirection" business that is now common on the Internet.  Put simply, when a person types a web address into the address bar of his or her computer, the person may make a typing mistake, or the address sought may be invalid.  Paxfire's technology made it possible for an ISP to provide its users, *i.e.*, its customers, with something other than an error notice.  Paxfire constructed a web page containing suggested web sites the users might care to view.  By including advertising on these pages, as well as links to businesses marketing products related to users' initial, unsuccessful search attempts, Paxfire

---

[8] Unless otherwise indicated, the facts set forth in this section are taken from Paxfire's First Amended Answer, Affirmative Defenses, and Counterclaims, filed in the New York case and included in the record of the instant dispute.  RE 288.
[9] Doc. 47-1, Decl. of F. Bergen.
[10] On December 14, 2012, Paxfire filed for bankruptcy under Chapter 11 in the Eastern District of Virginia.  That matter remains pending. *In re Paxfire, Inc.*, No. 12-17341.

4

generated revenue for itself and the ISP, as well as providing a useful service to the ISP's users.

Paxfire eventually expanded its lines of business to include "direct navigation." Here, a person typing a trademark (such as "apple," or a misspelling of "apple") into an address bar or "search bar" appearing at the top of most web browsers would be directed to the web page of the trademark owner (such as Apple, Inc.). We note that Paxfire did not do this for the "search box" found on web pages of search engines, *i.e.*, if a user went to Google's web page, and typed a trademark into Google's search box found on that page, Paxfire had no involvement in Google's processing of that search request.

## B.  The New York Case

The complaint of Betsy Feist[11] in the New York case addresses Paxfire's error redirection and direct navigation lines of business. It names two Defendants: Paxfire and RCN, an Internet Service Provider doing business primarily in the northeast. The complaint alleges that Paxfire engaged in: wiretapping of the search engine searches of Internet users; impersonating the search engines of other companies; collecting and profiling of the search histories of Internet users; and the

---

[11] RE 210.

sale and disclosure of such search histories to third parties. Paxfire did none of these things.[12]

The complaint alleges that Paxfire engaged in the alleged conduct in concert with RCN and approximately ten additional ISPs; however, these additional ISPs were not named as defendants.

The nominal plaintiff in the class action case, Betsy Feist, is a woman in her late sixties who lives in New York City. The law firms representing her are Milberg LLP and Reese Richman LLP, both based in New York City. Reese Richman solicited Betsy Feist to bring a class action lawsuit in her name.[13] Prior to this solicitation, Ms. Feist had not heard of Paxfire and had no reason to believe that Paxfire or her ISP—RCN—had done anything that is alleged in her complaint as being unlawful or tortious.[14]

The New York case has its genesis in California, in that it was instigated by three researchers from the International Computer Science Institute ("ICSI"), and by EFF and Mr. Eckersley.[15] The ICSI researchers are Christian Kreibich, Nicholas Weaver, and Vernon Paxson.[16] The ICSI researchers first contacted EFF

---

[12] RE 288.

[13] Doc. 21-1, Ex. G, Depo. of B. Feist.

[14] *Id.*

[15] RE 339; Second Declaration of Peter Eckersley ¶ 19.

[16] Two of these researchers, Christian Kreibich and Nicholas Weaver, later signed consulting agreements with Milberg on the eve of the filing of the class action lawsuit, whereby they were each to receive $300 per hour. Significantly, in later

and Peter Eckersley in April 2011, and Mr. Eckersley then solicited the New York law firms to bring the lawsuit.[17]

At this point in our discussion we must address some technological issues. EFF, ICSI, Mr. Eckersley, and the three ICSI researchers (collectively the "instigators") assert that they relied upon a software-monitoring device, known as the "Netalyzr," to determine that Paxfire collected and profiled the search histories of Internet users; and sold and otherwise disclosed such search histories to third parties. In fact, the Netalyzr cannot do this.[18] Although the Netalyzer can monitor where Internet signals may travel, it cannot determine whether a company collects or profiles these signals, and it cannot determine if a company discloses or sells these signals. Put simply, EFF and ICSI made up these fictitious allegations. They did so for the purpose of destroying Paxfire's business model, a model with which they disagreed as it changed the way in which the Internet traditionally functioned: as reported by the New Scientist, and referring to Paxfire's role in acquiring[19] and

---

scholarly articles, an EFF blog posting, and interviews given by them, wherein they made defamatory statements about Paxfire and its business operations, they failed to disclose their monetary arrangements with Milberg and, through the law firm, with the plaintiff Betsy Feist.

[17] RE 339; Second Declaration of Peter Eckersley ¶¶ 8, 15, 19.

.
[18] RE 243, Decl. of Eugene Spafford.

[19] Although beyond the scope of the issues presented in this appeal, we note that all electronic signals, whether addresses or search requests, acquired or "intercepted" by Paxfire were sent to Paxfire by its client ISPs in the ordinary course of the ISPs business. Such being the case, neither the acquisition nor subsequent use of such

processing addresses and trademarks entered by users to their web browsers, EFF's

Peter Eckersley said the following,[20] "This is a deep violation of users' trust and

expectations on how the Internet is supposed to function."

An additional motive asserted by Paxfire (in its motion practice in the

Northern District of California) as to why EFF made these phony allegations and

instigated Betsy Feist's class action lawsuit was EFF's expectation that it would

receive a significant *cy pres* award from any settlement of that action.[21]

## C.  The Pre-Complaint Defamation

In additional to instigating and filing a lawsuit, Ms. Feist, EFF and ICSI

coordinated a pre-complaint publicity campaign defaming Paxfire.

The lawsuit was filed on the afternoon on August 4, 2011, East Coast time.

On August 1, 2011, three days earlier, Christian Kreibich, an ICSI researcher

and a developer of the Netalyzr paper, sent an email to Jim Giles of the New

Scientist[22] and to Ms. Feist's lawyers: Peter Seidman and Melissa Clark

of Milberg; and Michael Reese and Kim Richman of Reese Richman.

---

signals violate the Electronic Communications Privacy Act. *See Hall v. Earthlink, Inc.*, 396 F.3d 500 (2d Cir. 2005); *see also* 18 U.S.C. §§ 2510 (4)-(5) and 2511(1)(c).
[20] Dkt. 21-4.
[21] Dkt. No. 47 at 7.
[22] As a note of explanation, the New Scientist is a popular science magazine that is also presented on the Web as an Internet publication/blog, and Jim Giles is a reporter for the publication.

The topic was "Introduction." The email reads[23]:

> Allow me to introduce you to Jim Giles, the reporter at New Scientist who's currently working on a story on the Paxfire affair. Jim, meet the legal front! Jim has been investigating Paxfire's search redirections for quite some time now and is fully up to date on our findings, so it seems helpful for all of you to have each other's contact information.

The use of the phrase "legal front" is important, as it demonstrates the concerted effort that was then being conducted against Paxfire: EFF and the ICSI researchers were to engage in a publicity campaign against Paxfire; and Ms. Feist and her law firms were to file the lawsuit.

EFF and Mr. Eckersley were integral to the effort. As Mr. Eckersley explains in his Second Declaration[24]:

> [E]FF developed and acquired information about the issues raised by the conduct of Paxfire and the ISPs involve[d] in the underlying lawsuit; discussed the matter with the ICSI researchers as part of our further investigations and in developing and drafting the blog post; edited the blog post; engaged in internal discussions about what to do with the information; how to develop the information further; and whether to undertake litigation directly or refer the matter out; and discussed the underlying issues and potential approaches to litigation with Plaintiff's counsel . . . .

Noteworthy is that the participants in this effort spoke with the press and with lawyers in New York, and they solicited Ms. Feist to bring the lawsuit, *but no one contacted Paxfire to determine if any of the allegations were, in fact, accurate*.

---

[23] RE 325-327.
[24] RE 339 ¶ 21.

Not a single phone call was made by EFF, ICSI, or the law firms to Paxfire in advance of the soon to be released avalanche of defamatory publicity, despite the fact the Netalyzr was patently incapable of determining the accuracy of the allegations that were supposedly based upon its findings.

At about 12:40 pm ET on August 4, 2011, the New Scientist published on the Internet its article about Paxfire. This article was purportedly based upon Ms. Feist's complaint in the New York case. *However, that complaint was not yet filed*—it was not filed until some three hours later, at about 3:30 pm ET.

Based in part upon this fact, and the demonstrated pre-complaint communications between and among the New Scientist, EFF, the ICSI researchers, and Ms. Feist's attorneys, the District Court in the New York case found that litigation privilege (sometimes referenced as the judicial privilege) did not apply to defamatory statements published by the New Scientist, and that Paxfire had properly alleged a conspiracy among these parties for which Ms. Feist could be held liable.[25]

The precise defamatory statements at issue in the New York case include the following false and otherwise misleading assertions:

---

[25] RE 178-89.

(a) In the New Scientist article: that Paxfire (i) "hijacked" searches of millions of Internet users; (ii) violated numerous statutes, including wiretapping laws; and (ii) violated "privacy safeguards enshrined" in the 1968 Wiretap Act.

(b) In the blog post published by EFF and co-authored by Peter Eckersley and the ICSI researchers, that (i) Paxfire's proxy servers collected a user's web searches and the corresponding web search results; and (ii) Paxfire's practices allowed Paxfire and/or its ISP customers to directly monitor all searches made by the ISPs' End Users and to build up corresponding profiles.

As a result of the negative publicity arising from these defamatory statements, Xerocole chose to not follow through on its offer to purchase Paxfire for approximately $10 million; Paxfire lost numerous advertisers for its error redirection and direct navigation services; Paxfire lost numerous ISPs as customers[26]; and Paxfire went into bankruptcy.

## D. The Subpoenas for Documents

The subpoenas issued to EFF and Mr. Eckersley sought information and evidence (a) of the knowledge possessed by Ms. Feist, her attorneys, EFF and ICSI of the falsity of the defamatory statements regarding Paxfire (or their lack of knowledge as to the truthfulness of such statements, necessary to prove actual malice for the defamation counterclaim); (b) supporting the existence of the

---

[26] Doc.47-1, Decl. of F. Bergen.

conspiracy alleged in Paxfire's counterclaims, so as to establish liability on the part of Ms. Feist not only for the defamatory statements appearing in the New Scientist article but also those in the EFF blog; (c) proving who among the alleged conspirators made which statements to the press; (d) proving the intent of the conspirators; and (e) pertaining to the credibility of the conspirators. The subpoenas sought detailed scientific evidence, supposedly in the possession of ICSI and EFF, and exchanged among them and Ms. Feist, confirming that Ms. Feist and all concerned had to have known that the technology used to justify their defamatory publications—specifically the Netalyzr—did not and could not determine what they claimed it determined.

The initial subpoenas sought seven categories of documents. For the purposes of this appeal, Paxfire seeks to enforce the subpoenas as to only two of these categories, and has narrowed the documents sought within these categories. As originally phrased, these two categories were[27]:

> *1. Documents referencing Feist, defendants, or Feist's counsel from 2008 to present; and*

> *4. All correspondence and communications from January 2011 to date transmitted by EFF/ICSI and pertaining to Feist, Feist's counsel, defendants and other identified internet service providers, the New Scientist or Jim Giles, Poly NYU, the Netalyzr or DNS Echo Experiment.*

---

[27] RE 357, 367.

12

As now narrowed, Paxfire requests:

      1. Documents referencing Feist, defendants, or Feist's counsel from April 1, 2011 to July 24, 2011; and

      4. All correspondence and communications from April 1, 2011 to July 24, 2011 transmitted by EFF/ICSI and pertaining to Feist, Feist's counsel, defendants and other identified internet service providers, the New Scientist or Jim Giles, or the Netalyzr.

## STANDARD OF REVIEW

An appellate court reviews an order quashing a subpoena *duces tecum* for an abuse of discretion. A judge abuses his or her discretion when a decision is based on an erroneous conclusion of law or where the record contains no evidence on which the judge rationally could have based that decision. *Premium Service Corp.,* 511 F.2d at 229 (citations omitted). *Goodman v. United States*, 369 F.2d 116, 169 (9th Cir. 1966) ("The appellate court's inquiry is limited to determining whether the ruling was clearly erroneous," citing Fed. R. Civ. P. 52(a).).

A district court may quash a subpoena *duces tecum* the results of which it finds "unreasonable and oppressive." Fed. R. Civ. P. 45(b). The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed. *Sullivan v. Dickson*, 283 F.2d 725 (9th Cir. 1960), *cert. denied* 366 U.S. 951 (1961).

A district court may reconsider a magistrate's order in a pretrial matter if that order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A);

*Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). A magistrate judge's factual findings are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).

## SUMMARY OF THE ARGUMENT

The District Judge reversed the Magistrate Judge, erroneously concluding that the Appellees, Peter Eckersley and, through him, EFF, were experts and consultants for the Plaintiff in the underlying New York case. In doing so, the District Judge ignored the initial, directly contradictory representations made by Mr. Eckersley, who submitted a declaration under oath—in the Southern District of New York—stating that he was *not* an expert or consultant for the Plaintiff.

The District Court made an error of law by conflating documents created and received by EFF and Mr. Eckersley for their own purposes with those documents created and received by them for the (asserted) purpose of consulting and advising Ms. Feist's attorneys for her lawsuit, and then concluding that the confidentiality protections afforded non-testifying experts and consultants and their documents under the Federal Rules of Civil Procedure applied to both. Ms. Feist did not know about "her" lawsuit until July 24, 2011—when she was first contacted and solicited by her law firms, at the instigation of EFF and Mr.

Eckersley, to bring such lawsuit. Prior to that time, beginning in April 2011, EFF and Mr. Eckersley engaged in an investigation of Paxfire for their own business purposes and goals.

 The District court erred by marginalizing the value of the documents sought by Paxfire's subpoenas, and the necessity for Paxfire to obtain them for the purpose of pursuing its counterclaims against Ms. Feist—which counterclaims had been sustained by the District Court in New York on a motion to dismiss brought by Ms. Feist.  Those claims included conspiracy, and resultant damages against Ms. Feist under co-conspirator vicarious liability, by conspirators that included, by name, EFF and Peter Eckersley.  The documents sought are needed to prove that conspiracy and establish those damages.

## ARGUMENT

## I. THE DISTRICT COURT ERRED AS TO BOTH LAW AND FACT IN RULING THAT EFF'S DOCUMENTS WERE PROTECTED UNDER RULE 26(b)(4)(D)

 The District Court erroneously ruled that the documents at issue were protected pursuant to Fed. R. Civ. P. 26(b)(4)(D), as it improperly found that EFF and Peter Eckersley acted as expert consultants to Betsy Feist and her attorneys.[28] The pertinent portion of the Order of the District Court reads:

---

[28] RE 5-6.

Rule 26(b)(4)(D) provides that a party may not "discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" unless exceptional circumstances can be shown. Judge Cousins concluded that Eckersley was a nontestifying expert who was consulted in anticipation of litigation and found that Paxfire had not shown that any "exceptional circumstances" existed. Docket No. 30 at 11; see also Declaration of Peter Eckersley, ¶ 20 [Docket No. 6].

## A. The District Court Made a Factual Error

In relying upon the above cited [Second] Declaration of Peter Eckersley to find that Mr. Eckersley was a "nontestifying expert," both the Magistrate Judge [Judge Cousins] and the District Court erroneously ignored the **First Declaration** of Peter Eckersley, filed in the New York Case and submitted by Paxfire to both the Magistrate Judge and the District Judge in the dispute below.[29] In that Declaration, Mr. Eckersley acknowledged that he was **not** a consultant or expert for Betsy Feist or her attorneys. Paragraph one of Mr. Eckersley's first declaration reads (emphasis added):

> I am the Technology Projects Director for the Electronic Frontier Foundation. I submit this declaration in regard to Paxfire's counterclaims in the matter of Feist vs. RCN Corporation and Paxfire, Inc. *I am not a consultant or expert for plaintiff in this case*, and I have not received and will not receive compensation for providing this declaration.

---

[29] Before the Magistrate Judge, RE 335; Before the District Judge, RE 191.

16

Based upon Mr. Eckersley's own words, under oath, he was not a consultant for Ms. Feist or her attorneys. Thus, it was factually erroneous for the Magistrate Judge or the District Judge to conclude that he or EFF were Ms. Feist's experts or consultants. Thus, no consultant protection, work product protection, or attorney-client privilege applied to Mr. Eckersley's or EFF's documents.[30]

## B. The District Court Made an Error of Law Applying Rule 26(b)(4)(D) to Documents Created For Non-Litigation Purposes

By holding that the documents created and possessed by EFF and Mr. Eckersley prior to the time that Betsy Feist was solicited were protected by Rule 26(b)(4)(D), the District Judge erroneously conflated documents produced by an expert on behalf of a party in anticipation of litigation that may be brought by such

---

[30] We note that Mr. Eckersley's First Declaration, submitted in the Southern District of New York, contradicts his Second Declaration, submitted by him and EFF in the court below: in his Second Declaration (RE 339), Mr. Eckersley claimed that he served as an unpaid consultant to Ms. Feist:

> At some point during these conversations, it was decided that I would not act as a paid expert consultant in this particular matter. As a result, neither EFF nor I were retained as paid consultants by Plaintiff's counsel. However, Plaintiff's counsel consulted me and EFF in our capacity as experts in the technology at issue, industry practices, and related law and policy.

(*Id*. at ¶20.) Put simply, Mr. Eckersley contradicted himself, under oath, in the New York proceeding and subsequently before this Court. *See* 18 U.S.C. § 1623 (c) (submitting contradictory material declarations under oath comprises perjury). By failing to resolve or even to address this contradiction, the District Court—at both the magistrate judge and district judge levels—abused the its discretion in holding that Mr. Eckersley and EFF were consultants or experts for Betsy Feist.

party with those produced independently, for an expert's own purposes and business goals.[31]

The sole case cited in the Order of the District Judge in support of this holding, and relied upon to reverse the Magistrate Judge, does not, in fact, support the holding. This case is *United States Inspection Servs. v. NL Engineered Solutions LLC*, 268 F.R.D. 614 (N.D. Cal. 2010). It concerned the situation where an attorney, *already retained by a client*, hired an outside technical expert, and that expert *then* provided consultation services—including the authorship of documents—used in anticipation of litigation. It did not address the situation here, where the documents sought by subpoena were prepared before the ultimate party was solicited or agreed to bring the case, that is, before a party existed and therefore before a party could have anticipated litigation. Put simply, without a party, the protections afforded by Rule 26(b)(4)(D) never attached to the documents at issue in this appeal.

The Second Declaration of Mr. Eckersley[32] makes clear that EFF, Mr. Eckersley, and the ICSI researchers acted independently of Betsy Feist and her attorneys in their investigation and disclosures of Paxfire's business activities. As examples—and keeping in mind that it was Peter Eckersley who referred the

---

[31] *See* Order on Motion for Review, RE 6.

[32] RE 339.

Case: 12-17506, 12/26/2013, ID: 8917170, DktEntry: 26-1, Page 26 of 40

matter for litigation to the attorneys who ultimately solicited Ms. Feist to bring the

lawsuit—relevant paragraphs of this declaration read:

> 7. I first became aware of the issues [eventually] presented by [Betsy Feist's] claims in the lawsuit against Paxfire when I was contacted by Nicholas Weaver, Vern Paxson, and Christian Kreibich, researchers at the International Computer Science Institute (ICSI) affiliated with the University of California at Berkeley, in April 2011.

> 8. In April 2011, Dr. Weaver and his colleagues told me that the Netalyzer network testing project had discovered on a number of U.S. ISP networks, customers were receiving false Domain Name System (DNS) responses for the domains: www.bing.com., search.yahoo.com, and sometimes google.com . . . .

> * * * * *

> 11. The ICSI researchers had published one preliminary paper about this phenomenon . . . .

> 12. The widespread occurrence of this phenomena on residential ISP's networks raised a number of serious policy issues for me and EFF . . . .

> * * * * *

> 16. We decided, in conjunction with the ICSI researchers, to expose the redirection in an article (a "blog post") published on EFF's website . . . .

> 17. As part of preparing the blog post, I talked to both the ICSI researchers and other sources . . . . I also conducted my own research.

> 18. We developed the blog post through a drafting process that included a number of drafts exchanged between EFF and the ICSI researchers.

> 19. As the blog post was being developed, EFF decided not to bring the litigation itself . . . . [I] contacted Plaintiff's counsel to tell them about the results of the research *and offered, if counsel decided to*

*bring suit on the information, to provide advice and consult regarding issues in a lawsuit . . . .*

In fact, Ms. Feist was not solicited until July 24, 2011 (at the earliest) to bring her lawsuit[33], which was filed on August 4, 2011.

Rule 26(b)(4)(D) reads in relevant part:

**(D) Expert Employed Only for Trial Preparation**. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert *who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial* and who is not expected to be called as a witness at trial. . . .

Here, as demonstrated by Mr. Eckersley's Second Declaration, EFF, Mr. Eckersley, and the ICSI researchers were engaged in their own activities, for their own purposes. Betsy Feist, the nominal plaintiff and client in the class action, never learned about their investigations until July 24th. Thus, prior to this date EFF, as found by the Magistrate Judge, Mr. Eckersley and the ICSI researchers could not have been retained by or specially employed by a party—Ms. Feist—in anticipation of litigation or in preparation of trial, and the pre-July 24th documents in possess of EFF and Mr. Eckersley cannot be covered by Rule 26(b).

The case law concerning the work product doctrine is also clear on this point: The work product doctrine protects the work product of an attorney created during or in anticipation of litigation. *Hickman v Taylor*, 329 U.S. 495 (1947). It

---

[33] RE 200, Order of Magistrate Judge Granting in Part and Denying in Part Motions to Quash; *see also* RE 200 n.20.

does not apply before an attorney has a client. *See Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568 (D.S.D. 2010) (holding that a factual investigation conducted prior to the decision by a person to bring a lawsuit does not invoke the work product doctrine) (citations omitted); *800 Front Street Corp. v. Travelers Property Casualty Co. of America*, No., CV 06-500(LDW)(ARL), 2006 U.S. Dist. LEXIS 84160, at *11 (E.D.N.Y. Nov. 20, 2006) (holding that work product doctrine applied where consulting expert was retained by counsel "shortly after they were given authorization by the bankruptcy court to pursue the insurance claim as well as litigation"). Material prepared in the ordinary course of a business function, such as EFF's investigation and policy analysis of Paxfire's business activities, and thereafter used in litigation does not, by such use, acquire the protection of the work product doctrine. *Lamar Advertising of South Dakota, Inc*., 267 F.R.D. at 577-78; *cf.*, *U.S. Postal Serv. v. Phelps Dodge Ref. Corp*., 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (holding that work by engineering firm not covered by the attorney-client privilege where consultant's opinion was based on factual and scientific evidence rather than client confidence). As explained in *William A. Gross Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co*., 262 F.R.D. 354, 360 (S.D.N.Y. 2009)(citation omitted):

> However, there is no work product protection for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. . . . Even if such documents might also help in preparation for litigation,

21

they do not qualify for protection because it could not fairly be said that they were created "because of" actual or impending litigation.

In the New York case, EFF and Mr. Eckersley are no more than fact witnesses. Ms. Feist had no knowledge of the existence of Paxfire, or what it did or didn't do that supposedly "injured" her, until EFF solicited New York attorneys, who thereafter then solicited her to bring a class action lawsuit. It was EFF, Mr. Eckersley, and the ICSI researchers who developed —for their purposes and pursuant to their own direction—the "facts" set forth in Feist's complaint. Thus, they are fact witnesses and not expert consultants—more akin to a patient's treating physician and not to a "distant" academic expert; and they are subject to routine discovery.[34]

---

[34]See, *e.g.*, *Dung Ngo v. Standard Tools & Equipment, Co., Inc.*, 197 F.R.D. 263 (D. Md. 2000); *Williams v. Rene*, 886 F. Supp. 1214 (D.V.I. 1995), *rev'd on other grounds*, 72 F.3d 1096 (3d Cir. 1995); *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435 (W.D. N.Y. 1985) (Neurologist who had been treating plaintiff for back injuries over prior 14 years, and whom plaintiff had designated an expert witness for trial, would not be considered an "expert" but rather an "actor" or "viewer."); *Keith v. Van Dorn Plastic Machinery Co*., 86 F.R.D. 458 (E.D. Pa. 1980) (an "actor or viewer" expert witness refers, for example, to a doctor who performed an operation that gave rise to a malpractice claim, or to an actuary who witnessed an automobile accident, and such witnesses should be viewed as fact witnesses); *Leviathan, Inc. v. M/S Alaska Maru*, 86 F.R.D. 8 (W.D. Wash. 1979); *Barkwell v. Sturm Ruger Co., Inc*., 79 F.R.D. 444, 446 (D. Alaska 1978) (information acquired and opinions formed by defendant's expert prior to his retention by defendant was discoverable by plaintiffs without regard to the expert's status as an expert, since the rule does not apply to facts known or opinions held that were not acquired or developed in anticipation of litigation); *Harasimowicz v. McAllister*, 78 F.R.D. 319

### C. EFF Has No Standing to Assert Rule 26(b)(4)(D)

EFF has no right to assert Rule 26(b)(4)(D), and the District Judge erred applying it to quash Paxfire's subpoenas.

The work product doctrine, including that portion codified in Rule 26(b)(4)(D), is a protection afforded to a party and its attorneys. While Betsy Feist and her attorneys had standing to invoke the work product protection doctrine, EFF did not. *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006); *Stoffels v. SBC Communications, Inc*., 263 F.R.D. 406, 412 (W.D. Tex. 2009). Ms. Feist and her attorneys did not object to the Magistrate Judge's Order, and their decision to not object constituted a waiver of this doctrine as to the documents ordered by the Magistrate Judge to be disclosed.

### D. Betsy Feist, EFF, and ICSI Waived Any Confidentiality

The District Court further erred by concluding that confidentiality existed the documents sought by Paxfire. It did not:

• EFF published its findings regarding Paxfire on its blog on the Internet, on August 4, 2011, the day that Ms. Feist's class action complaint was filed.[35] This article was co-authored by Peter Eckersley and the ICSI researchers.

---

(E.D. Pa. 1978); *Norfin, Inc. v. Intern. Business Machs. Corp*., 74 F.R.D. 529 (D. Colo. 1977).

[35] Doc. 21-2, Ex. 1C, "Widespread Hijacking of Search Traffic In the United States," EFF, August 4, 2011.

• Peter Eckersley and the ICSI researchers shared their findings with the New Scientist, for an article on Paxfire that was published hours before Ms. Feist's complaint was filed, and Mr. Eckersley was quoted in that article.[36]

• The ICSI researchers kept the Jim Giles, reporter for The New Scientist, up to date on their findings regarding Paxfire throughout their investigation of Paxfire: "Jim has been investigating Paxfire's search redirections for quite some time now and is fully up to date on our findings…."[37]

• Betsy Feist's lawyers spoke with Jim Giles (giving him a draft copy of their complaint before it was filed).[38]

• The ICSI researchers published numerous articles about the NetAlyzr, including results pertaining to Paxfire, in academic fora.[39]

---

[36] Doc. 21-2, Ex. 1B "US Internet Providers Hijacking Users' Queries," New Scientist, August 4, 2011. The fact that at this time at least two of the three ICSI researchers were being paid by Ms. Feist's attorneys at the rate of $300 per hour was not disclosed in this article.

[37] RE 325, Email from C. Kreibich to J. Giles *et al*., August 1, 2011.

[38] RE 327.

[39] In Case No. 3:12-mc-80121: (a) "Netalyzr: Illuminating Edge Network Neutrality, Security and Performance," published in May 2010 as ICSI Technical Report TR-10-006 (Doc. 13-8); (b) "Measuring Access Connectivity Characteristics with Netalyzr," published June 2010 at the North American Network Operators' Group (NANOG49), San Francisco, California (Doc. 13-9); (c) "Netalyzr: Illuminating the Edge Network," published November 2010 in the Proceedings of the Internet Measurement Conference (IMC 2010), Melbourne, Australia (Doc. 13-10); (d) "Implications of Netalyzr's DNS Measurements," published April 2011 in the Proceedings of the First Workshop on

24

• Feist identified Peter Eckersley as a witness who had discoverable

information, doing so in her Revised Rule 26(a) Disclosures.[40]

There is no confidentiality in the documents sought by Paxfire.

## II.     CONTRARY TO THE DISTRICT COURT'S CONCLUSIONS, THE DOCUMENTS SOUGHT ARE CRITICAL TO PAXFIRE'S DEFENSE AND TO ITS COUNTERCLAIMS

The District Court below improperly marginalized Paxfire's need for the

documents sought, and inflated the burden placed upon EFF and Peter Eckersley

in making them available.

As a preliminary matter, we turn to the New York case.  There, the District

Court adjudicating Betsy Feist's motion to dismiss Paxfire's counterclaims ruled in

Paxfire's favor, as it substantially denied that motion.[41]  In making its ruling, that

Court found that:

(1) Paxfire properly pleaded the defamation count, alleging that Betsy Feist

directly and through her attorneys and agents, defamed Paxfire and caused it harm;

---

securing and Trusting Internet Names (SATIN), in Teddington, United Kingdom
(Doc. 11); (e) "Experiences from Netalyzr with Engaging Users in End-System
Measurement," published in August 2011 in the Proceedings of ACM SIGCOMM
Workshop on Measurements Up the Stack, in Toronto, Canada (Doc. 12); (f)
"Redirecting DNS for Ads and Profit," published August 8-12, 2011, in the
Proceedings of the 20th USAENIX Security Symposium's Workshop on Free and
Open Communications on the Internet," San Francisco, California (Doc. 13).
[40] Doc. 21-12 at 15.
[41] RE 148, 170-89.

(2) Paxfire properly pleaded tortious interference with contract with regard to Paxfire's contract with the RCN Corporation, and tortious interference with business relationships with regard to several other ISPs; and

(3) Paxfire properly pleaded a conspiracy among Betsy Feist, EFF, and ICSI to commit the torts alleged above.[42]

With regard to the civil conspiracy claims, the District Court ruled:

In the present case, Paxfire alleges that Feist entered into an agreement with EFF and ICSI to disrupt Paxfire's business. See Amended Counterclaim Paragraph 44. Paxfire alleges that this agreement was furthered, in part, by an e-mail circulated between the alleged conspirators. In addition, Paxfire asserts that Feist intentionally participated in this plan by making statements to Jim Giles, and that these statements damaged Paxfire. Paxfire has also alleged that there are underlying intentional torts which were the object of the civil conspiracy. Thus, Paxfire has alleged enough facts to adequately plead a civil conspiracy claim. Accordingly, because the civil conspiracy claim hinges on the aforementioned tort claims, the same issues which preclude dismissal of those claims prevent dismissal of the civil conspiracy claim. [Citation omitted.]

The conspiracy claim is crucial to Paxfire's counterclaims. Under New York law, a civil conspiracy is not a separate tort, but where such a conspiracy is established, liability then attaches to each named defendant for the tortious conduct of all conspirators. Thus, proof of the conspiracy alleged by Paxfire, that is, proof of the participation and tortious conduct of EFF, its Projects Director Mr. Eckersley, and the ICSI researchers, is necessary to maximize the damages that

---

[42] RE 188-89.

Paxfire may obtain in the New York case. The court below improperly discounted this fact.

The first category of documents sought by Paxfire in the subpoenas at issue is the following: documents referencing Ms. Feist,[43] defendants, or Ms. Feist's counsel from April 1, 2011, to August 4, 2011. Clearly, these documents are relevant. They are sought to establish the agreement (*i.e.*, the conspiracy) between Ms. Feist and her attorneys, on the one hand, and EFF and Peter Eckersley, on the other. They are sought to demonstrate the knowledge—or, more importantly, the lack thereof—on the part of Ms. Feist as to the factual basis and truth of the allegations made by Ms. Feist in her communications with Jim Giles and the New Scientist. Finally, they are sought to establish the liability of Ms. Feist for the defamatory statements made by EFF, Mr. Eckersley, and the ICSI researchers on the EFF blog—a separate but significant defamatory publication, published in parallel with the article by the New Scientist.

The District Judge erroneously overruled the Magistrate Judge on this point, saying:

> The documents sought in the first three categories have little relevance to the claims at issue in the underlying case. The interactions between EFF and Feist's counsel prior to the July 23, 2011 date Feist contacted counsel do not provide direct support for the development of a conspiracy by Feist, the only named defendant, with EFF and ICSI to

---

[43] The term "Feist" is defined by the subpoena to include her attorneys.

interfere with Paxfire's business contracts and relations. Indeed, the overt acts relied on to support Paxfire's conspiracy-to-interfere claims focus on three events that all occurred after July 24, 2011: the August 1, 2011 email between ICSI, Feist's counsel and Jim Giles at the New Scientist; EFF's August 4, 2011 blog post; and the August 4, 2011 filing of Feist's complaint.

The conspiracy as alleged by Paxfire predated the July 24th date, the day on which Ms. Feist was first solicited by her eventual attorneys. Paxfire's counterclaims alleged that the conspiracy began at "an unknown date prior to August 1, 2011."[44] Pursuant to Fed. R. Civ. P. 8, Paxfire needed only to present a "short and plain statement of the claim." Peter Eckersley's Second Declaration—unavailable to Paxfire at the time that it filed its Counterclaims—establishes the start date for the conspiracy as sometime in April 2011. Such being the case, it was erroneous for the District Judge to reverse the Magistrate Judge and conclude that the documents sought in category one had little relevance to Paxfire's counterclaims.

Also significant, these documents, and those in category four[45], were important to Paxfire to defeat Ms. Feist's claims. Paxfire is entitled to explore in discovery the basis of Ms. Feist's allegations. In her class action complaint, she expressly alleged that she "learned" (*i.e.,* was told) that her Internet searches were

---

[44] RE 311.

[45] Category four seeks: All correspondence and communications from April 1, 2011, to August 4, 2011, transmitted by EFF/ICSI and pertaining to Feist, Feist's counsel, defendants and other identified internet service providers, the New Scientist or Jim Giles, or the Netalyzer.

being wiretapped, profiled, and disclosed and sold to third parties from information provided by the ICSI researchers, by name, and by the Netalyzr used by these researchers and EFF.[46] Mr. Eckersley's Second Declaration demonstrates that his and EFF's role in this was part and parcel with ICSI's. As explained by the District Court in *Securities Exchange Commission v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009): Rule 11 of the Federal Rules of Civil Procedure [requires] all parties to have "evidentiary support" for the factual contentions in their pleadings. Given that requirement, producing the compilations of documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint. *Id*.

The information held by EFF is needed by Paxfire to prepare its defense as well as its counterclaims; it is unable to get this information from any other source. As explained and supported by the declaration of Dr. Eugene Spafford,[47] the Netalyzr *cannot* provide the information that Ms. Feist claims that it did. Thus, Paxfire must obtain the documents from persons or entities that provided Ms. Feist the information on which she based her complaint to explore the basis of her claim and any defenses to Paxfire's counterclaims. One of these is Peter Eckersley; another is EFF.[48]

---

[46] RE 214-15.

[47] RE 243.

[48] We note that, to have protection under the doctrine, the information must be

The District Judge also concluded that the "burden of requiring EFF to undertake a detailed privilege review" was a factor in her decision to quash the subpoenas.[49] However, as elsewhere noted in her own Order, the necessary privilege review was already done, and the resulting privilege log was part of the record before the District Judge.[50] An examination of the log demonstrates that significant communications occurred in the time period beginning April 2011 and ending July 24, 2011—the day Ms. Feist was first solicited to bring "her" case. These documents are needed to prove the existence and extent of the alleged conspiracy, and additionally to determine the damage caused by named coconspirators who acted in concert with Ms. Feist and for which Ms. Feist is liable. There is no other way for Paxfire to obtain the necessary evidence for these purposes than through EFF and Peter Eckersley.[51]

---

confidential. EFF has discussed the information sought on its own blog on its own public website, and in communications with the New Scientist made for the purpose of publishing this information. Paxfire now seeks specifics. No confidentiality exists.

[49] RE 8; see also RE 8 (referencing "burdensome privilege review").

[50] RE 13-147.

[51] The deposition of Betsy Feist established that she essentially knew nothing about her case, and relied entirely on what her lawyers told her the "experts" said the NetAlyzr showed. Doc. 21-1, Ex. G, Depo. of B. Feist.

## CONCLUSION

Paxfire asks this Court to reverse the Order of the District Judge with regard to the first and fourth categories of documents sought by its subpoenas *duces tecum*, and to compel the production of these documents by EFF and Peter Eckersley as ordered by the Magistrate Judge and as here narrowed by Paxfire.


Dated:  December 26, 2013          Respectfully submitted,

                                   /s/ Andrew Grosso
                                   Andrew Grosso, Esq.
                                   (D.C. Bar No. 358326)
                                   ANDREW GROSSO & ASSOCIATES
                                   1101 Thirtieth Street, NW, Suite 300
                                   Washington, D.C. 20007
                                   (202) 298-6500 Telephone
                                   (202) 298-5599 Facsimile
                                   Agrosso@acm.org Email

                                   *Counsel for Appellant Paxfire, Inc.*


## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses a proportional typeface and 14-point font, and contains 7,363 words.

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/       Stephen Moore