CASE NO. 12-17506

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

————————

BETSY FEIST

*Plaintiff,*

v.

RCN CORPORATION AND PAXFIRE, INC.

*Defendants.*

————————

ELECTRONIC FRONTIER FOUNDATION and PETER ECKERSLEY

*Third-Party Appellees,*

and

PAXFIRE, INC.

*Appellant.*

————————

**ANSWERING BRIEF OF THIRD PARTY APPELLEES ELECTRONIC FRONTIER FOUNDATION and PETER ECKERSLEY**

————————

On Appeal From The United States District Court
For The Northern District of California
District Court Case 3:12-mc-80135-SI
The Honorable Susan Illston, Presiding

————————

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
James M. Chadwick, Cal. Bar No. 157114
Tenaya Rodewald, Cal. Bar No. 248563
379 Lytton Avenue
Palo Alto, California 94301-1479
TEL: 650.815.2600

*Attorneys for Third-Party Appellees*
*ELECTRONIC FRONTIER FOUNDATION and PETER ECKERSLEY*

## CORPORATE DISCLOSURE STATEMENT

Third-Party Appellee ELECTRONIC FRONTIER FOUNDATION has no

parent company, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................1

II.   ISSUES PRESENTED ............................................................................5

III.  STATEMENT OF JURISDICTION ......................................................6

IV.   REVIEWABILITY AND STANDARD OF REVIEW ..................................6

V.    FACTUAL BACKGROUND..................................................................7

     A.    EFF's Activities in Relation to Paxfire Were an Integral Part of EFF's First Amendment Protected Consumer Advocacy, Organizing and Litigation ....................................................................7

     B.    Plaintiff Betsy Feist became Involved on July 24, 2011, and the Feist Litigation—to which EFF Acted as Non-testifying Expert Consultants—Was Filed on August 4, 2011 ......................................10

     C.    Paxfire's Conspiracy Counterclaims Allege a Conspiracy between Feist, EFF and ICSI, that Could Only Have Begun on July 24, 2011 or Later ......................................................................11

     D.    Paxfire Admits the Key Allegations of the EFF Blog Post and the Wiretapping Claim ......................................................................12

     E.    Paxfire Served Broad, Intrusive and Burdensome Subpoenas on EFF, ICSI, the ICSI Researchers and Reporter Jim Giles .................13

VI.   STATEMENT OF THE CASE ...............................................................14

     A.    EFF, ICSI, Jim Giles and Feist Moved to Quash Paxfire's Subpoenas.............................................................................................14

     B.    The Magistrate Judge Largely Quashed the Subpoenas ....................15

     C.    Paxfire Made a Limited Motion for Relief from the Magistrate Judge's Order, which Was Denied and Not Appealed........................16

     D.    EFF's Motion Challenging the Magistrate Judge's Order Was Granted ................................................................................................17

# TABLE OF CONTENTS
### (continued)

Page

VII.   SUMMARY OF ARGUMENT .......................................................19

**ARGUMENT** ........................................................................................22

I.   PAXFIRE'S APPEAL FAILS BECAUSE IT CHALLENGES ONLY
     TWO OF THE THREE INDEPENDENT BASES FOR THE
     DISTRICT COURT'S ORDER .......................................................22

     A.   The District Court Quashed the Subpoenas in Their Entirety on
          Three Independent Grounds ...............................................22

          1.   The Documents Are Protected Under Rule 26(b)(4)(D) .........22

          2.   The District Court Held that the Documents Are
               Protected under Rule 45[(d)](3)(B)(ii) ....................................23

          3.   The Documents Are Not Relevant to the Feist Action,
               and the Burden of Producing them Outweighs Any
               Possible Relevance ...................................................................23

     B.   Paxfire Challenges the First and Third Bases for the District
          Court's Ruling but Not the Second, so Its Appeal Fails ....................25

     C.   Paxfire Does Not Challenge the District Court's Determination
          that Many Documents Are Protected by Attorney-Client
          Privilege and by the Reporter's Privilege ...........................................26

II.  THE DISTRICT COURT PROPERLY HELD THAT
     RULE 26(B)(4)(D) PROTECTS ECKERSLEY AND EFF FROM
     PAXFIRE'S SUBPOENAS .........................................................................27

     A.   The Protections Afforded by Rule 26(b)(4)(D) Are Not the
          Same as the Work-Product Doctrine ...................................................27

     B.   Rule 26(b)(4)(D) Prohibits Discovery Against Non-testifying
          Experts Consulted in Anticipation of Litigation, Regardless of
          Whether the Experts Are "Retained" or "Informally Consulted" .......28

# TABLE OF CONTENTS
## (continued)

Page

C.  Paxfire's Attempt to Create a "Factual" Issue Is Unavailing Because Paxfire Does Not Dispute that Eckersley and EFF Were Non-testifying Experts Consulted in Anticipation of Litigation ............................................................................................30

D.  Rule 26(b)(4)(D) Applies to Experts Consulted *in Anticipation of Litigation* and Therefore Applies Prior to the Identification of Feist as Class Plaintiff .......................................................................32

    1.  The Documents Were Prepared in Anticipation of the Feist Litigation by Experts Consulted in Anticipation of that Litigation ........................................................................32

    2.  Paxfire's Argument Is Not Supported by the Language of the Rule or by Relevant Authority ...........................................33

E.  Paxfire's Assertion that EFF and Eckersley Are "Fact Witnesses" Makes No Sense and Is Irrelevant....................................37

F.  Paxfire's Arguments Regarding Documents EFF and Eckersley Allegedly Prepared "Independently" Are Unavailing .......................38

G.  EFF and Eckersley Have Standing to Claim the Protection of Rule 26(b)(4)(D)...................................................................................39

H.  The Protections of Rule 26(b)(4)(D) Have Not Been Waived ..........40

III.  THE DISTRICT COURT PROPERLY HELD THAT THE DOCUMENTS IN QUESTION HAVE LITTLE OR NO RELEVANCE TO THE FEIST LITIGATION AND THE BURDEN OF THEIR PRODUCTION OUTWEIGHS ANY RELEVANCE ...............41

A.  Paxfire Attempts to Mislead the Court by Arguing that Documents Created After July 24, 2011 Are Relevant to the Feist Litigation, Even though Such Documents Are Not at Issue in this Appeal........................................................................................41

# TABLE OF CONTENTS
(continued)

Page

B.    The Documents Paxfire Actually Seeks Have Little or No Relevance to the "Conspiracy" Alleged in Paxfire's Counterclaims ....................................................................................42

C.    Paxfire Claims that EFF Acted "Independently," Confirming that the Documents at Issue Have Little or No Relevance to Its "Conspiracy" Claims ..........................................................44

D.    The Documents Are Unnecessary and Irrelevant to Paxfire's "Defense" ....................................................................................45

E.    The Documents Are Irrelevant to the "Defamation" Allegations .......47

F.    It Would be Extremely Burdensome for EFF to Produce Documents in Response to Paxfire's Subpoenas .................................48

IV.    THE DISCOVERY SOUGHT BY PAXFIRE IS BARRED BY THE FIRST AMENDMENT ....................................................................50

A.    This Court Should Reach and Decide the First Amendment Questions Raised by Paxfire's Subpoenas ..........................................50

B.    The First Amendment Requires Paxfire's Subpoenas Be Quashed ....................................................................................54

1.    There Is a Two-Part Balancing Test for Application of the First Amendment Privilege .................................................55

2.    EFF Made a *Prima Facie* Showing that Paxfire's Subpoenas Will Infringe Its First Amendment Rights .............56

3.    Paxfire Failed to Justify Its Subpoenas under the Heightened Relevance Standard ................................................59

4.    The Subpoenas Should Be Quashed Because Enforcement Would Violate EFF's Constitutional Rights .......60

V.    CONCLUSION ..........................................................................60

# TABLE OF AUTHORITIES

CASES                                                                      Page(s)

*Adolph Coors Co. v. Wallace*
    570 F.Supp. 202 (N.D. Cal. 1983) ...................................................51

*AFL-CIO v. FEC*
    333 F.3d 168 (D.C. Cir. 2003) ..............................................54, 57

*Ager v. Jane C. Stormont Hospital and Training School for Nurses*
    622 F.2d 496 (10th Cir. 1980) ...........................................30

*Ariz. Right to Life PAC v. Bayless*
    320 F.3d 1002 (9th Cir. 2003) ..........................................52

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*
    175 F.R.D. 34 (S.D.N.Y. 1997) .........................................39

*Barkwell v. Sturm Ruger Co., Inc.*
    79 F.R.D. 444 (D. Alaska 1978) .................................34, 35

*Chiquita Int'l v. M/V Bolero Reefer*
    No. 93Cv01671994, U.S. Dist. LEXIS 5820 (S.D.N.Y. May 6, 1994) ............30

*Classic Concepts, Inc. v. Linen Source, Inc.*
    716 F.3d 1282 ....................................................20, 25, 26

*Cox v. Piper, Jaffray & Hopwood, Inc.*
    848 F.2d 842 (8th Cir. 1988) ...........................................29

*Cruz v. International Collection Corp.*
    673 F3d 991 (9th Cir. 2012) .....................................26, 42

*Dole v. Serv. Employees Union, AFL-CIO, Local 280*
    950 F.2d 1456 (9th Cir. 1991) ..........................................60

*Dombrowski v. Pfister*
    380 U.S. 479 (1965) ......................................................21, 52

*Dow Chem. Co. v. Allen*
    672 F.2d 1262 (7th Cir. 1982) ..........................................50

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Durflinger v. Artiles*
   727 F.2d 888 (10th Cir. 1984) ....................................................................22, 29

*Eclectic Properties East, LLC v. Marcus & Millichap Co*.
   --- F.3d ---, No. 12–16526, 2014 WL 1797676 (9th Cir. 2014) ........................25

*Fed. Election Comm. v. Machinists Non–Partisan Polit. League*
   655 F.2d 380 (D.C. Cir. 1981)....................................................................57, 58

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc*.
   654 F3d 958 (9th Cir. 2011) ..................................................................................7

*In re Grand Jury Subpoena*
   357 F3d 900 (9th Cir. 2004) ...............................................................................31

*Grandbouche v. Clancy*
   825 F.2d 146 (10th Cir. 1987) ............................................................................51

*Greenwood v. FAA*
   28 F3d 971 (9th Cir. 1994) .................................................................42, 44, 45

*Harasimowicz v. McAllister*
   78 F.R.D. 319 (E.D. Pa. 1978)............................................................................35

*Hickman v. Taylor*
   329 U.S. 495 (1974)............................................................................................36

*Hobley v. Burge*
   433 F.3d 946 (7th Cir. 2006) ..............................................................................39

*Human Life of Washington Inc., v. Brumsickle*
   624 F.3d 990 (9th Cir. 2010) ..............................................................................52

*In re GlaxoSmithKline plc*,
   732 N.W.2d 257, 268-9 (Minn. 2007).................................................................58

*Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc*.
   590 F.2d 1139 (D.C. Cir. 1978)..........................................................................58

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Keith v. Van Dorn Plastic Machinery Co*.
  86 F.R.D. 458 (E.D. Pa. 1980)............................................................35

*Leviathan, Inc. v. M/S Alaska Maru*
  86 F.R.D. 8 (W.D. Wash. 1979) .........................................................35

*Ludwig v. Pilkington North America, Inc*.
  No. 03 C 1086, 2003 WL 22242224 (N.D. Ill. Sept. 29, 2003) .........40

*Mattenson v. Baxter Healthcare Corp*.
  438 F.3d 763 (7th Cir. 2006) .............................................................36

*Mercatus Group, LLC v. Lake Forest Hosp*.
  641 F.3d 834 (7th Cir. 2011) .............................................................52

*Mueller v. Auker*
  700 F.3d 1180 (9th Cir. 2012) .............................................................7

*Murray v. Southern Route Maritime, S.A*.
  No. 12cv1854, 2014 WL 1671581 (W.D. Wash. Apr. 28, 2014).......40

*N.Y. State National Organization for Women v. Terry*
  886 F.2d 1339 (2d Cir. 1989) .............................................................55

*NAACP v. Alabama*
  357 U.S. 449 (1958).............................................................................54

*NAACP v. Button*
  371 U.S. 415 (1963).......................................................................4, 58

*Ngo v. Standard Tools & Equipment, Co., Inc.*
  197 F.R.D. 263 (D. Md. 2000) ...........................................................35

*Northwestern Memorial Hosp. v. Ashcroft*
  362 F.3d 923 (7th Cir. 2004) .............................................................49

*Perry v. Schwarzenegger*
  591 F.3d 1147 (9th Cir. 2010) ....................................................*passim*

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*
511 F.2d 225 (9th Cir. 1975) ....................................................................6, 7

*Quarantillo v. Consolidated Rail Corp.*
106 F.R.D. 435 (W.D.N.Y. 1985) .....................................................35

*Republic of Ecuador v. MacKay*
742 F.3d 860 (9th Cir. 2014) ............................................................28

*Stoffels v. SBC Commc'ns, Inc.*
263 F.R.D. 406 (W.D. Tex. 2009) .....................................................39

*In re Subpoena Served on California Public Utilities Com'n*
813 F.2d 1473 (9th Cir. 1987) .............................................................6

*U.S. v. Kama*
394 F.3d 1236 (9th Cir. 2005) ...........................................20, 25, 26

*United States Inspection Servs. v. NL Engineered Solutions LLC*
268 F.R.D. 614 (N.D. Cal. 2010).....................................22, 28, 29, 40

*USM Corp. v. American Aerosols, Inc.*
631 F.2d 420 (6th Cir. 1980) ............................................................29

*Williams v. Rene*
886 F. Supp. 1214 (D.V.I. 1995),
*rev'd on other grounds*, 72 F.3d 1096 (3d Cir. 1995) .......................35

*Wood v. City of San Diego*
678 F3d 1075 (9th Cir. 2012) .............................................................7

*Wyoming v. U.S. Dept. Of Ag.*
208 F.R.D. 449 (D.D.C. 2002) ...................................................57, 58

# TABLE OF AUTHORITIES
### (continued)

**STATUTES AND RULES**                                            Page(s)

18 U.S.C. § 2510 *et seq*........................................................................11

28 U.S.C. § 636(b)(1)(A) ....................................................................16

Federal Rules of Civil Procedure,
    Rule 11 ...........................................................................................46
    Rule 26(b)(1).................................................................................55
    Rule 26(b)(3).................................................................27, 28, 36
    Rule 26(b)(4).................................................................27, 28, 29
    Rule 26(b)(4)(D) ...................................................................*passim*
    Rule 26(b)(4)(E)(i)........................................................................39
    Rule 26(b)(4)(E)(ii).......................................................................39
    Rule 35(b) ......................................................................................22
    Rule 45 .............................................................................6, 35, 51
    Rule 45(d)(3)...............................................................................7, 6
    Rule 45(d)(3)(A)............................................................................49
    Rule 45(d)(3)(A)(iii)......................................................................51
    Rule 45(d)(3)(A)(iv)......................................................................49
    Rule 45(d)(3)(B)(ii) ..............................................................*passim*
    Rule 72(a)......................................................................................16

Northern District of California Civil Local Rule 72-2 ....................17, 16

**OTHER AUTHORITIES**

6-26 Moore's Federal Practice - Civil § 26.80 ..............................34, 39

8 Wright & Miller, Federal Practice and Procedure § 2024 (3d ed.) ....................36

3-503 Weinstein's Federal Evidence § 503.20 ....................................40

Advisory Committee's Note to 1970 Amendment, Fed.R.Civ.P. 26(b)(4).......27, 29

Wright and Miller, Federal Practice and Procedure, § 2033 ...................29

## I.    INTRODUCTION

This case stems from the fact that every-day internet users believe it is a violation of their privacy and their consumer rights—and likely illegal—for a company like Paxfire to make money by surreptitiously intercepting and diverting the users' searches away from their intended search engines, examining the contents of the users' searches, and sometimes manipulating the search results the users are supposed to receive—all without the users' knowledge or consent.  This is the "service" that Paxfire was providing to internet service providers ("ISPs").  Paxfire's activities were discovered by academic researchers at the U.C. Berkeley-affiliated International Computer Science Institute ("ICSI"), who took their findings to the Electronic Frontier Foundation, a public interest nonprofit consumer advocacy organization ("EFF").  Together, ICSI and EFF further investigated Paxfire's activities, informed the public about what Paxfire was doing, and presented their findings to consumer attorneys who brought a class action lawsuit on behalf of internet users whose searches were being diverted, examined and manipulated by Paxfire.

When the facts became public, the ISPs who were using Paxfire's "service" and mishandling their customers' searches stopped doing their surreptitious business with Paxfire, and Paxfire went into bankruptcy.  Rather than admit that its business simply could not survive in the light of public awareness about its actual

practices, Paxfire has instead spent the past few years trumping up "conspiracy" claims in an attempt to blame everyone but itself for the fact that the public reacted strongly and negatively when it learned what Paxfire was doing.

Currently before this Court is the question of whether Paxfire's broad and intrusive subpoenas issued to retaliate against EFF were properly quashed by the District Court, because the documents are protected from discovery by the Federal Rules of Civil Procedure, and because Paxfire utterly failed to demonstrate the relevance of the documents it seeks. Also before the Court is the question of whether Paxfire's subpoenas should be quashed because they impermissibly infringe EFF's First Amendment rights of association, speech and petition.

EFF is a non-profit, member-supported digital civil liberties, consumer advocate and legal aid organization. It engages in First Amendment protected litigation, speech, organizing, advocacy and publishing, especially around the increasingly sophisticated technologies underlying everyday life. As noted above, as part of EFF's consumer-advocacy work, EFF, and EFF researcher Peter Eckersley (collectively "EFF"), helped discover that Paxfire was intercepting, diverting and examining users' internet searches, and sometimes replacing the search results users were supposed to receive with the webpages of Paxfire's paying customers. EFF considered acting as counsel in consumer litigation against Paxfire, but ultimately decided not to. Instead, as part of its consumer-advocacy

SMRH:423646923.3

and litigation work, EFF contacted counsel in New York and informed them of the facts of Paxfire's business. Those attorneys, believing that Paxfire's behavior violated the law, initiated a consumer class action lawsuit on behalf of Plaintiff Betsy Feist, alleging that by intercepting, examining and manipulating their internet searches without plaintiffs' knowledge or consent, Paxfire violated federal "wiretapping" laws, invaded plaintiffs' privacy and committed other state torts (the "Feist litigation"). EFF acted as a non-testifying expert in the Feist litigation and also published an article (the "blog post") describing Paxfire's practices.

Importantly, Paxfire **admits** the key allegations in EFF's blog post and Feist's wiretapping claim against it, including that it "intercepted" and "examined" internet users' searches, and sometimes replaced search engine results with the webpages of Paxfire's paying clients. However, Paxfire claims that when this information about its practices became more widely known (as a result of EFF's blog post, an article in *New Scientist* magazine, and the Feist litigation) Paxfire's "business partners," the ISPs, were no longer willing to do business with it and it suffered economic harm. Paxfire brought counterclaims against Feist, alleging that she "conspired" with EFF and ICSI to "instigate" the Feist litigation and expose Paxfire's behavior. Notably, Paxfire did **not** sue EFF, ICSI or *New Scientist*. Nonetheless, in pursuit of its trumped up conspiracy allegations, Paxfire issued broad and intrusive document and deposition subpoenas to non-parties EFF and

Peter Eckersley. The primary purpose of Paxfire's subpoenas is not to obtain relevant information, but to harass and retaliate against Eckersley and EFF for exercising their First Amendment rights to inform the public and consumer class action counsel about Paxfire's business.

The District Court ruled that Paxfire's subpoenas must be quashed in their entirety, on three independent grounds. It held that the information Paxfire seeks is irrelevant to the Feist litigation. It found that the subpoenas are barred by Rule 26(b)(4)(D)'s protection for non-testifying experts and Rule 45[(d)](3)(B)(ii)'s protection for unretained experts. It also held that numerous documents are protected by EFF's attorney-client and work-product privileges, and New York's qualified immunity for journalists.

Moreover, as EFF demonstrated in the District Court proceedings, the discovery Paxfire seeks is barred by the First Amendment, which protects EFF's rights to associate, speak, advocate and publish, and therefore protects EFF from discovery that would impair EFF's exercise of these rights. *See, e.g., NAACP v. Button*, 371 U.S. 415, 429, 431 (1963) (prohibition against sponsoring and assisting litigation violated the NAACP's First Amendment rights because "[a]ssociation for litigation may be the most effective form of political association."); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) ("'[T]he First Amendment protects political association as well as political

expression,' and the 'freedom to associate with others for the common advancement of political beliefs and ideas is ... protected by the First and Fourteenth Amendments.'") (citations omitted).

Paxfire has no right to the information it demands. The Court should affirm the District Court's Order quashing Paxfire's subpoenas in their entirety, for the reasons given by the District Court, and because the First Amendment privilege requires that Paxfire's subpoenas be quashed.

## II.    ISSUES PRESENTED

The issues presented by this appeal are:

1.    Whether the District Court's Order quashing Paxfire's subpoenas because the documents in question are protected by Federal Rule of Civil Procedure 26(b)(4)(D) should be affirmed.

2.    Whether the District Court's Order quashing Paxfire's subpoenas because the documents sought are irrelevant to the Feist litigation and the burden of their production would outweigh any potential relevance should be affirmed.

3.    Whether the District Court's Order quashing Paxfire's subpoenas should be affirmed on additional, independent grounds that Paxfire failed to challenge on appeal.

4.      Whether Paxfire's subpoenas should be quashed in their entirety because their enforcement would violate EFF's First Amendment rights of association, speech and petition.

## III.  STATEMENT OF JURISDICTION

This is an appeal from an order of the United States District Court for the Northern District of California (the "District Court") granting EFF's motion to quash Paxfire's subpoenas issued pursuant to Federal Rule of Civil Procedure 45 ("Rule 45") in connection with litigation pending in the United States District Court for the Southern District of New York.  The District Court had jurisdiction over EFF's motion to quash pursuant to Rule 45(d)(3), and quashed Paxfire's subpoenas in their entirety.  This Court has jurisdiction over Paxfire's appeal because a district court order granting a motion to quash a subpoena relating to litigation pending in another jurisdiction is a final judgment and is immediately appealable.  *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 228 (9th Cir. 1975); *In re Subpoena Served on California Public Utilities Com'n,* 813 F.2d 1473, 1476 (9th Cir. 1987).

## IV.  REVIEWABILITY AND STANDARD OF REVIEW

As Paxfire concedes, the District Court's Order should be reviewed for abuse of discretion and all findings of facts must be accepted unless clearly erroneous.  (Opening Brief of Appellant ("AB"), 13-14.)  "Such abuses must be

unusual and exceptional" and this Court "will not merely substitute our judgment for that of the trial judge." *Premium Serv. Corp.*, 511 F.2d at 229; *Mueller v. Auker*, 700 F.3d 1180, 1194-95 (9th Cir. 2012).

This Court may affirm the District Court decision on any ground that has support in the record, whether or not the District Court relied on those grounds in reaching its decision. *Wood v. City of San Diego*, 678 F3d 1075, 1086 (9th Cir. 2012); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., 654 F3d 958, 964, n. 3 (9th Cir. 2011).

Finally, the District Court and this Court have an obligation to quash a subpoena that places an undue burden on a non-party or that demands privileged or protected material. "On timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3) (emphasis added).

## V. FACTUAL BACKGROUND

### A. EFF's Activities in Relation to Paxfire Were an Integral Part of EFF's First Amendment Protected Consumer Advocacy, Organizing and Litigation

As noted, EFF is a non-profit, member-supported digital civil liberties, consumer protection and legal aid organization. It engages in First Amendment protected litigation, speech, organizing, petitioning, advocacy and publishing. As

part of its mission, EFF litigates itself or supports lawsuits addressing user rights to privacy, free speech, and innovation as applied to the Internet and other new technologies. (Supplemental Excerpts of Record ("SER-")[1] 2, ¶ 2.) EFF researches and publishes articles on technology and civil liberties and publishes a comprehensive archive of digital civil liberties and innovation information at www.eff.org. (*Id.*) In addition, EFF advises policymakers, educates the press and public on issues related to law and technology, and develops technological tools that enhance digital freedom. (*Id.*)

Specifically, for the last several years EFF has been a leading organization concerned with issues of internet privacy and "network neutrality," that is, ensuring that online service providers and others do not interfere with their customers' access to any parts of the internet. (SER-2, ¶ 3.) For example, EFF has litigated issues related to internet user privacy in numerous cases. (*See, e.g., Chevron Corporation v. John Doe, et al*, No. 13-16920, Dkt. 12 (9th Cir. Nov. 22, 2013); *First Unitarian Church of Los Angeles, et al. v. National Security Agency et al*, 13cv03287, Dkts. 1, 9 (N.D. Cal.).) Similarly, EFF has played a key role in several parts of the debate regarding network neutrality, including through publicizing the results of EFF's technology research and through more traditional government petitioning. (SER-2, ¶ 3.) For instance, EFF uncovered that a leading

---

[1] All references are to page numbers in the SER.

cable provider, Comcast, was interfering with its customers' use of a certain technology to access material online, which led to litigation by the FCC against Comcast. (*Id.*; Appellant's Excerpts of Record ("ER") 342, ¶ 6.) EFF also provided comments to the FCC as part of its administrative network neutrality rulemaking. (SER-2, ¶ 3.)

As part of EFF's work on internet privacy, consumer protection and internet neutrality issues, EFF researcher Peter Eckersley, in close association with researchers at ICSI and other sources, discovered that Paxfire was diverting some consumers' internet search engine traffic. (ER-346, ¶ 16.) Using a tool called "Netalyzr"—a publicly available and widely used network diagnosis and debugging tool—the ICSI researchers obtained results indicating that customer searches on many ISPs were being redirected from the intended search engines, to other servers. Mr. Eckersley determined through his own work, and in parallel with work by the ICSI researchers, that the search redirection systems were being operated by Paxfire. (ER-346, ¶ 16; ER-349-356.) In essence, it appeared that Paxfire was diverting certain of customers' internet searches away from Google, Yahoo! and Bing to Paxfire's own computers. In addition, in some cases, instead of transmitting the search results the customers were supposed to receive from the search engines, Paxfire was replacing the search results with the webpages of Paxfire's paying customers.

From the outset of these investigations, EFF was concerned that Paxfire's actions violated the principles of network neutrality, and could violate internet users' privacy. (SER-3, ¶¶ 4, 5; ER-345, ¶¶ 12-14.) EFF initially considered acting as counsel in litigation against Paxfire regarding the redirection practices, but decided not to undertake the litigation itself. (SER-3, ¶ 6; ER-346, ¶ 15, 19.) Still concerned about Paxfire's behavior, however, and as part of EFF's consumer and civil rights advocacy, EFF and Mr. Eckersley communicated with Plaintiff's counsel about the results of the research and agreed to consult regarding issues in any lawsuit. (ER-346, ¶ 19; SER-3, ¶ 8.) Mr. Eckersley and EFF also described Paxfire's activities in an article published on EFF's website and in EFF's e-mail newsletter, EFFector. (ER-346, ¶ 16, ER-349-356; SER-3, ¶ 7.)

**B.     Plaintiff Betsy Feist became Involved on July 24, 2011, and the Feist Litigation—to which EFF Acted as Non-testifying Expert Consultants—Was Filed on August 4, 2011**

On July 24, 2011, Plaintiff's counsel first made contact with Betsy Feist as a potential plaintiff for the Feist litigation, and she agreed to act as class plaintiff shortly thereafter. (ER-200, n. 20) On August 4, 2011, Plaintiff's counsel brought a class-action lawsuit on behalf of Plaintiff Betsy Feist and other similarly situated consumers in federal court in the Southern District of New York. (ER-211.) The lawsuit alleges that in conjunction with various internet service providers ("ISPs"), including co-defendant RCN, Paxfire violated consumers' rights and privacy by

diverting customers' internet searches away from their intended search engines and "examining" and manipulating the searches without customer knowledge or consent. (ER-212, 218-221, 223-224, 234-236, ¶¶ 1, 15-21, 24, Counts IV, V.) The lawsuit contains one claim for violation of the federal Wiretap Act, 18 U.S.C. § 2510 *et seq*., and several state law claims. (*Id.*, ER-230-231, Count I.)

EFF and Mr. Eckersley were not retained as paid consultants by Plaintiff's counsel. (ER-347, ¶ 20; SER-4, ¶ 10.) However, it was in the capacity of unpaid, non-testimonial consultants that Eckersley and EFF consulted with Plaintiff's counsel, including regarding technological issues in the litigation. (ER-347, ¶ 20; SER-4, ¶ 9.)

### C. Paxfire's Conspiracy Counterclaims Allege a Conspiracy between Feist, EFF and ICSI, that Could Only Have Begun on July 24, 2011 or Later

Paxfire brought state law counterclaims alleging that Plaintiff Betsy Feist "conspired" with EFF and the ICSI researchers who exposed Paxfire's behavior, but did not name EFF or ICSI as defendants. (ER-289.) Feist moved to dismiss the counterclaims. As a result:

> On September 18, 2012, the Judge presiding over the underlying action granted in part and denied in part Feist's motion to dismiss the counterclaims. The following counterclaims remain: (1) Paxfire's defamation claim for statements Feist [allegedly] made to reporter Jim Giles [for an article in the New Scientist magazine] prior to the filing of her lawsuit; (2) tortious interference with Paxfire's contract with RCN, with the assistance of EFF as an unnamed coconspirator, based on EFF's August 4, 2011 blog post regarding Paxfire; and (3) tortious

> interference with Paxfire's relationships with various internet service
> providers identified in Feist's complaint, with the assistance of
> unnamed coconspirator EFF's August blog post regarding Paxfire.

(ER-2, n. 1.) Moreover, Paxfire recently represented to the New York District

Court that it would dismiss the tortious interference claim as well. (SER-9.)

Paxfire's counterclaims allege a "conspiracy" between Feist, EFF and ICSI

that began at the earliest on July 24, 2011, the day Feist first contacted counsel.

Before that date, Feist—the only named defendant to Paxfire's counterclaims (ER-

303, ¶¶ 2-3)—could not possibly have entered into any "agreement" or

"conspiracy" with EFF. All of the alleged overt acts in furtherance of the

"conspiracy" occurred after July 24, 2011. (ER-312-314, ¶ 49.) Paxfire's

counterclaims *do not allege a conspiracy between EFF and Feist's counsel*.

(*E.g.*, ER-303, 307, ¶¶ 2-5, 32.)

### D. Paxfire Admits the Key Allegations of the EFF Blog Post and the Wiretapping Claim

Paxfire *admits* the key facts alleged in EFF's blog post and the

ECPA/Wiretapping claim against it. (ER-349-352, ER-230-231, Count 1, ¶¶ 40-

48.) Paxfire admits that it "received text and search requests from Internet users,"

that these were "interceptions utilized by Paxfire's devices" and that it "did log

search histories." (*Compare* ER-349-352 [EFF blog post] *with* ER-313-314

[Paxfire's Counterclaims], ¶ 49(d) and SER-21.) Paxfire admits that it "examined

queries and responses" (ER-313-314, ¶ 49(d)), and that it sometimes replaced

search engine results with the webpages of paying clients. (SER-21.)  Indeed,

Paxfire's Counterclaims make clear that EFF's statements about it were

substantially true and non-defamatory.  (ER-313-314, ¶ 49(d).)  Moreover,

Paxfire's asserted defense to the ECPA claim is not that it didn't engage in the

conduct described by EFF, but rather that its practices were conducted "in the

ordinary course" of co-defendant RCN's provision of Internet services.  (*See, e.g.*,

SER-19, 21; SER-43-44.)  Finally, although Paxfire asserts that Feist's claims are a

"sham" it has not moved to dismiss those claims.

### E.    Paxfire Served Broad, Intrusive and Burdensome Subpoenas on EFF, ICSI, the ICSI Researchers and Reporter Jim Giles

Paxfire served extremely broad and intrusive document and deposition

subpoenas on EFF, purporting to seek documents and testimony relevant to its

conspiracy allegations.  (SER-56-80.)  As explained further below, the document

subpoenas sought all documents and communications—internal and external—

relating to EFF's association with Plaintiff's counsel in any litigation, or relating to

EFF's investigation of Paxfire or related topics.  (SER-56-73.)  The deposition

subpoena to EFF sought information about:  EFF's internal policies and practices

relating to any litigation consulting work; any consulting work for Plaintiff or

Plaintiff's attorneys; and internal practices, and other information regarding EFF's

referral of work to outside attorneys.  (SER-74-80.)  Around the same time, Paxfire

served subpoenas to Jim Giles ("Giles"), a journalist with *New Scientist* magazine, ICSI and researchers working at ICSI. (SER-330-332.)

## VI. STATEMENT OF THE CASE

### A. EFF, ICSI, Jim Giles and Feist Moved to Quash Paxfire's Subpoenas

On June 6, 2012, EFF moved the District Court for an order quashing the document and deposition subpoenas to EFF and Eckersley in their entirety. (SER-81-112.) EFF contended the subpoenas would violate EFF's First Amendment rights of freedom of association, speech, and petition; California Constitutional and statutory protections for the press; the protections for retained and informally consulted experts; EFF's and Plaintiff's attorney-client and work-product privileges; and the subpoenas sought information not relevant to the Feist litigation and were unduly burdensome. (*Id*.)

Jim Giles and ICSI separately moved the Northern District of California to quash Paxfire's subpoenas to them. (*See* SER-113-122; SER-123-151.) Feist moved to quash all of the document and deposition subpoenas issued to EFF, Eckersley, ICSI, the ICSI researchers and Giles. (SER-152-161; SER-162-164.)

On July 2, 2012, the Honorable Susan Illston found that all of the above-listed motions to quash were related (collectively the "Motions to Quash Subpoenas"), ordered that they be related and reassigned to her, and referred them to Magistrate Judge Cousins for resolution. (ER-209.)

### B.     The Magistrate Judge Largely Quashed the Subpoenas

On August 13, 2012, the Magistrate Judge issued an order largely granting

the motions to quash. (ER-194-208.)  First, the Magistrate Judge quashed the

deposition subpoenas to EFF, Eckersley, ICSI, and the ICSI researchers, based on

the factual finding that they were non-testifying expert consultants and therefore

Rule 26(b)(4)(D) barred the depositions.  (ER-203-204.)  The deposition

subpoenas are not at issue in this appeal.  (AB, 2.)

Second, the Magistrate Judge explained that the document subpoenas to

ICSI, the ICSI researchers, EFF, and Eckersley demanded six categories of

documents:  Categories (1)-(3) all documents relating to EFF's or ICSI's

association with Plaintiff's counsel as experts in the Feist litigation or any other

litigation from January 1, 2008 – present; Category (4) all communications

regarding Feist, Feist's counsel, Paxfire, any of the nine named ISPs, the *New

Scientist* or Jim Giles, Poly NYU, the Netalyzr or DNS Echo Experiment from

January 1, 2011 – present; Category (5) all articles and drafts of articles concerning

Feist or her counsel, Paxfire, or the Netalyzr from April 1, 2011- present; and

Category (6) all research results concerning Paxfire or RCN or any of the ISPs

mentioned in the Feist complaint with no temporal limitation.  (ER-198-99.)

With respect to the document subpoenas, the Magistrate Judge:

- Quashed the document subpoena to Jim Giles, holding that the documents sought were protected by the qualified reporter's privilege under New York law that was not overcome by Paxfire (ER-203-208);

- Quashed the document subpoenas to EFF and ICSI with respect to Categories (1) - (4) for documents generated *after July 24, 2011*, the date on which Feist retained her counsel, because those documents are protected by the attorney work product doctrine (ER-199-202);

- Entirely quashed the document subpoenas to EFF and ICSI with respect to Categories (5) and (6) because the documents contain confidential research protected under Rule 45[(d)](3)(B). (ER-203.)

The Magistrate Judge ordered EFF and ICSI to produce all documents in Categories 1-3 from 2008 *to July 24, 2012* regarding EFF and ICSI's interactions with Feist and Feist's counsel, as well as all correspondence in Category 4 from January 1, 2011 *through July 24, 2012* regarding Feist, Feist's counsel, Paxfire, the nine identified ISPs and the other topics. (ER-208.)

The Magistrate Judge's Order did not address the First Amendment and state Constitutional and statutory privileges asserted by EFF, and failed to address EFF's assertion of EFF's attorney-client and work product privileges. (*Compare* SER-81-112 *with* ER-194-208; *see also* SER-178-181.)

## C. Paxfire Made a Limited Motion for Relief from the Magistrate Judge's Order, which Was Denied and Not Appealed

On August 27, 2012, Paxfire filed a motion for relief from Magistrate Judge Cousins' Order pursuant to Northern District of California Civil Local Rule 72-2, Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A). (SER-165-168.) The District

Court did not set a briefing schedule on Paxfire's motion for relief within fourteen days. (ER-4.) Therefore, that motion was deemed denied. N.D. Cal. Civ. L. R. 72-2. Paxfire did not appeal the District Court's denial of its Objections to the Magistrate Judge's Order. (ER-4, ER-389-391; AB, 1.)

Thus, Paxfire's motion is pertinent only for two reasons. First, Paxfire did not challenge and hence cannot now contest the Magistrate Judge's finding of fact that Eckersley was a non-testifying expert consulted in anticipation of litigation. (SER-167-168; *see infra*, Argument, Section II. C.) Second, Paxfire did not challenge and cannot now contest the Magistrate Judge's Order quashing Paxfire's subpoenas as to documents after July 24, 2011. (SER-167-169; *see infra*, Argument, Section III. A.)

### D. EFF's Motion Challenging the Magistrate Judge's Order Was Granted

On August 27, 2012, EFF filed a motion for *de novo* determination of Magistrate Judge's Order challenging the aspects of the Order that failed to grant EFF's Motion to Quash, including the Magistrate Judge's failure to address EFF's assertion of First Amendment privileges and state Constitutional and statutory privileges. (SER-169-189.) The District Court set a briefing schedule on EFF's motion, and on November 6, 2012, the Honorable Susan Illston issued an Order granting EFF's Motion and quashing Paxfire's subpoenas in their entirety. (ER-1-10.) As explained further below, the District Court quashed the subpoenas on three

separate grounds: the documents sought are protected by Rule 26(b)(4)(D)'s protection for non-testifying experts (ER-5-6); the documents sought are protected by Rule 45[(d)](3)(B)(ii)'s protection for unretained experts (ER-6-7); and the documents sought are irrelevant to the Feist litigation, and the burden of producing the documents would outweigh any marginal relevance. (ER-7-10.) The District Court also held that numerous documents are protected by EFF's attorney-client and work-product privileges (ER-8), and by New York's qualified immunity for journalists. (ER-9)

On November 8, 2012 Paxfire filed a Notice of Appeal challenging the District Court's Order. (ER-11.) Shortly thereafter, Paxfire filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. This appeal was stayed during Paxfire's bankruptcy proceedings. (Dkt. Nos. 9, 15, 34, 39.) Paxfire entered into a bankruptcy Plan pursuant to which it ceased business operations, liquidated its remaining assets, and established a special litigation fund to, among other things, pursue its counterclaims against Betsy Feist and litigation against Feist's counsel, Milberg LLP, on the same grounds as the counterclaims against Feist. (SER-190-207.)

Subsequent to entry of Paxfire's bankruptcy Plan, Paxfire filed its Brief of Appellant with this Court. (Dkt. 26.) Paxfire's appeal is very limited. (AB, 13.)

It challenges the District Court's Order quashing the subpoenas only with regard to the following:

- Category 1-3 documents *from April 1, 2011 to July 24, 2011,* relating to Feist and Feist's counsel;

- Category 4 communications *from April 1, 2011 to July 24, 2011*, relating to, Feist and Feist's counsel*,* Paxfire, RCN, the nine ISPs, the *New Scientist* or Jim Giles, or the Netalyzr.

(AB, 13.)  Moreover, as explained below, Paxfire challenges only the first and third bases for District Court Order, namely that the documents are protected under Rule 26(b)(4)(D) and that the documents are not relevant to the Feist litigation. Paxfire does not challenge the second basis for the District Court's Order—that the documents are protected under Rule 45[(d)](3)(B)(ii)—or the District Court's holding that numerous documents are protected under EFF's attorney-client privilege and work product protection and the New York qualified reporters privilege.  It does not even mention EFF's First Amendment protections.

## VII.  SUMMARY OF ARGUMENT

The District Court properly quashed Paxfire's subpoenas as to all of the documents sought on three independent grounds.  First, the documents are protected by Rule 26(b)(4)(D)'s protection for non-testifying experts.  Second, they are protected by Rule 45[(d)](3)(B)(ii)'s protection for unretained experts.

Third, they are irrelevant to the Feist litigation and the burden of their production would outweigh any limited utility they may have.

Paxfire challenges only two of the three bases for the District Court's decision, which should be affirmed on that basis alone. Moreover, the District Court also properly held that many documents are non-discoverable on additional grounds that Paxfire does not dispute, including that the documents are protected under EFF's attorney-client and work-product privileges and New York's qualified immunity for journalists. The District Court's Order was correct and should be affirmed, and by failing to challenge several bases for the Order, Paxfire concedes that the Order must be affirmed.[2]

Furthermore, enforcing Paxfire's subpoenas would infringe EFF's First Amendment rights of association, speech and petition and the subpoenas should be quashed in their entirety on that basis. The District Court did not reach EFF's First Amendment privilege arguments because it quashed the subpoenas entirely on other grounds. If the District Court's order is not affirmed in its entirety, the Court must, of course, consider the First Amendment protections asserted by EFF. However, the Court should address and resolve EFF's First Amendment protections even if it affirms. In the absence of confirmation of its First

---

[2] "'[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.'" *Classic Concepts, Inc. v. Linen Source, Inc*., 716 F.3d 1282, 1285 (9th Cir. 2013; *U.S. v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005).

Amendment privileges, EFF faces continuing uncertainty regarding the extent and scope of the Constitutional protections available to it. In particular, it faces the prospect of compelled disclosure of its private associational and petitioning activities by Paxfire and others. Their ability to exploit the subpoena power provided by the Federal Rules of Civil Procedure, while avoiding the First Amendment's heightened relevance standard and balancing test, is likely to have a chilling effect on EFF's exercise of its First Amendment rights. *See, e.g., Dombrowski v. Pfister,* 380 U.S. 479, 486-87 (1965) ("Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to over-broad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser. . . . Moreover, we have not thought that the improbability of successful prosecution makes the case different.") Accordingly, even if the Court affirms the District Court Order for the reasons stated therein, EFF's assertion of First Amendment privileges is ripe for a determination by this Court. EFF asks that the Court determine that EFF has established a *prima facie* case Paxfire's subpoenas implicate EFF's First Amendment rights, that EFF is entitled to the heightened relevance standard and balancing test mandated by the First Amendment, and that Paxfire has failed to

make a showing sufficient to justify infringing EFF's First Amendment rights, so
that Paxfire's subpoenas must be quashed on this additional basis.

## ARGUMENT

**I.    PAXFIRE'S APPEAL FAILS BECAUSE IT CHALLENGES ONLY
TWO OF THE THREE INDEPENDENT BASES FOR THE
DISTRICT COURT'S ORDER**

### A.    The District Court Quashed the Subpoenas in Their Entirety on Three Independent Grounds

#### 1.    The Documents Are Protected Under Rule 26(b)(4)(D)

First, the District Court held that all of the documents at issue "are protected

from disclosure by Rule 26(b)(4)(D)" because EFF and Eckersley were non-

testifying experts consulted in anticipation of the Feist litigation.[3] (ER-5-6.) The

Court held that although the Rule does not specifically protect documents, "courts

have extended the protection to document subpoenas as well." (*Id*., citing *United

States Inspection Servs. v. NL Engineered Solutions LLC*, 268 F.R.D. 614, 617

(N.D. Cal. 2010) (collecting cases)); *see also Durflinger v. Artles*, 727 F.2d 888,

891 (10th Cir. 1984).

---

[3]  This Rule reads "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(D).

### 2. The District Court Held that the Documents Are Protected under Rule 45[(d)](3)(B)(ii)

Second, the District Court held that the documents in question are protected

under Rule 45(c)(3)(B)(ii) (since renumbered as 45(d)(3)(B)(ii)).[4] (ER-6.) The

Court held:

> "An attempt to avoid Rule 26(b)(4)(D)'s protection, by focusing on a consultant's facts and opinions developed before any contact with the eventual client, would also implicate Rule 45(c)(3)(B)(ii). . . . [T]he discovery sought by Paxfire – which covers a time before Feist was a "party" – seeks non-party EFF's intellectual property regarding its investigation into defendants, the Netalyzr, the DNS Echo Experiment, as well as EFF's communications with Poly NYU. Paxfire should not be allowed to short-cut its own experts' work by securing from EFF information about how ISPs may be redirecting web traffic and whether those practices can be identified by using the Netalyzr or other tools.

(ER-6-7.) This was an independent basis on which the District Court ruled that all

of the documents at issue are protected.

### 3. The Documents Are Not Relevant to the Feist Action, and the Burden of Producing them Outweighs Any Possible Relevance

Third, the District Court analyzed the potential relevance of each of the four

categories of documents at issue, and held that the documents had little or no

---

[4] Federal Rule of Civil Procedure 45(d)(3)(B)(ii) provides as follows: "To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: . . . (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."

relevance to the New York litigation, and that the burden of producing any such documents would be large.  (ER-7-10.)  For example, the District Court held that the first three categories were of little or no relevance because "[t]he interactions between EFF and Feist's counsel prior to the July 23, 2011 date Feist contacted counsel do not provide direct support for the development of a conspiracy by Feist, the only named defendant, with EFF and ICSI to interfere with Paxfire's business contracts and relations."  (ER-8.)  Similarly, with regard to Category 4 documents, the District Court explained "Paxfire does not explain what relevance any documents regarding EFF's investigations into [the nine] ISPs have to the interference claim, since Feist named the ISPs in her complaint and they were also identified directly in EFF's blog post.  The identity of the ISPs, and Feist and EFF's knowledge of them, therefore, is not in dispute."[5]  *Id*.  "In sum, given the marginal relevance of the documents sought, the fact that many if not most are covered by [other] protections, and the burden of requiring EFF to undertake a detailed privilege review" the Court quashed the subpoenas with respect to all of the documents at issue in this appeal.  (ER-9.)

---

[5]  Moreover, Paxfire recently represented that it would dismiss the tortious interference claim.  (SER-9.)

**B.  Paxfire Challenges the First and Third Bases for the District Court's Ruling but Not the Second, so Its Appeal Fails**

Paxfire challenges the District Court's ruling that the documents at issue are protected under Rule 26(b)(4)(D).  (AB, 15-25.)  Paxfire also challenges the District Court's determination that the documents are of little or no relevance to the New York litigation.  (*Id.* at 25-30.)  Paxfire does not mention, let alone challenge, the District Court's determination that the documents at issue are protected under Rule 45(d)(3)(B)(ii).  However, the District Court held that this protection was distinct from Rule 26(b)(4)(D) and covered all of the documents at issue: "the discovery sought by Paxfire – which covers a time before Feist was a 'party' constitutes EFF's intellectual property."  (ER-6.)  Therefore, this ground was a complete and independent basis for the District Court's decision, which Paxfire has not challenged.

By failing to address this issue, Paxfire has waived its right to challenge this basis for the District Court's Order.  *Classic Concepts*, 716 F.3d at 1285 (refusing to consider argument not raised in opening brief because "'[o]n appeal, arguments not raised by a party in its opening brief are deemed waived'"); *U.S. v. Kama*, 394 F.3d at 1238; *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, --- F.3d ---, No. 12–16526, 2014 WL 1797676, at *6 n. 9 (9th Cir. 2014).

**C. Paxfire Does Not Challenge the District Court's Determination that Many Documents Are Protected by Attorney-Client Privilege and by the Reporter's Privilege**

The District Court held that even if some documents might be relevant to the litigation, they are protected by EFF's attorney-client privilege and the work-product protection. (ER-8.) "Documents regarding EFF's initial investigation into Paxfire and RCN, EFF's discussions with counsel regarding whether to initiate a lawsuit, as well as EFF's own discussions about referring the matter to Feist's counsel would be protected by the attorney-client privilege and/or by the attorney work product doctrine for those documents created in anticipation of litigation." (ER-8.) Similarly, the District Court held that certain documents were protected from disclosure pursuant to the Magistrate Judge's ruling—not challenged by Paxfire—that the documents were protected by the qualified reporter's privilege under New York law. (ER-9.)

Paxfire does not challenge EFF's attorney-client privilege nor application of the reporter's privilege. (AB, 15-23.) As a result, Paxfire has waived any challenge to these rulings in this appeal, and these determinations should be upheld. *Classic Concepts*, 716 F.3d at 1285; *U.S. v. Kama*, 394 F.3d at 1238; *Cruz v. International Collection Corp*., 673 F3d 991, 998 (9th Cir. 2012) (issues

must be argued distinctly and specifically in the party's opening brief or are waived). [6]

## II. THE DISTRICT COURT PROPERLY HELD THAT RULE 26(B)(4)(D) PROTECTS ECKERSLEY AND EFF FROM PAXFIRE'S SUBPOENAS

### A. The Protections Afforded by Rule 26(b)(4)(D) Are Not the Same as the Work-Product Doctrine

As a preliminary matter, Paxfire's argument consistently confuses the protections afforded to experts under Rule 26(b)(4)(D) with the work-product protection codified in Rule 26(b)(3), an entirely different subsection. Indeed, as explained further below, with the exception of one footnote, Paxfire does not rely on *any* cases in which the protections of Rule 26(b)(4)(D) were at issue. Instead, the cases on which Paxfire relies, and most of Paxfire's argument, concern work product protection or attorney-client privilege.

However, the drafters of Rule 26(b)(4)(D) "*reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine*." Fed.R.Civ.P. 26, Advisory Committee's Note to Subdivision (b)(4), 1970 Amendments (emphasis added). As this Court recently held, the scope of protection afforded by Rules 26(b)(3) and (b)(4) are not congruent

---

[6] Should the Court permit Paxfire to contest the application of Rule 45(d)(3)(B)(ii), EFF's attorney-client privilege or work product protection, or the application of the New York qualified reporter's privilege, EFF requests the Court permit it to file a supplemental brief to address these issues.

because, among other things, "Rule 26(b)(3) extends protection to 'Materials'" while "Rule 26(b)(4) then separately provides some protection for 'Experts.'" *Republic of Ecuador v. MacKay,* 742 F.3d 860, 866-67 (9th Cir. 2014); *see also U.S. Inspection Services*, 268 F.R.D. at 625 n. 18 (collecting cases). Specifically, "[f]acts known to, or opinions held by, an expert retained 'in anticipation of litigation or to prepare for trial and who is not expected' to testify at trial . . . are ordinarily exempt from discovery absent a showing of 'exceptional circumstances.'" *MacKay,* 742 F.3d at 866 (citing Fed.R.Civ.P. 26(b)(4)(D)).

Consequently, Paxfire's reliance on cases addressing the work product doctrine, and repeated arguments based on the work-product protection, are misplaced and misleading.

### B. Rule 26(b)(4)(D) Prohibits Discovery Against Non-testifying Experts Consulted in Anticipation of Litigation, Regardless of Whether the Experts Are "Retained" or "Informally Consulted"

"Facts known to, or opinions held by, an expert retained 'in anticipation of litigation or to prepare for trial and who is not expected' to testify at trial (sometimes known as a 'consulting' expert) are ordinarily exempt from discovery absent a showing of 'exceptional circumstances.'" *MacKay*, 742 F.3d at 866 (citing Fed.R.Civ.P. 26(b)(4)(D)). Moreover, the protection of Rule 26(b)(4)(D) extends to the documents and communications of a non-testifying expert, otherwise a party could eviscerate the protections of the rule simply by demanding all documents

likely to contain the expert's opinions, facts and communications.  *See, e.g., Durflinger*, 727 F.2d at 891 (holding that Rule 26(b)(4)[(D)] prohibited the defendants from obtaining the report that the plaintiffs' consulting expert prepared); *U.S. Inspection Services*, 268 F.R.D. at 617 n. 3 ("Rule 26(b)(4)([D]) applies with equal force to protect documents sought from non-testifying experts" (collecting cases)).

In addition, Rule 26(b)(4)(D) "***precludes discovery*** against experts who were ***informally consulted*** in preparation for trial, but not retained or specially employed."  Fed.R.Civ.P. 26, Committee Note to 1970 Amend., Sec. (b)(4)(B) (emphasis added); *USM Corp. v. American Aerosols, Inc*., 631 F.2d 420, 424-25 (6th Cir. 1980) (explaining that "[s]ince discovery of expert information acquired in anticipation of litigation can only be had in accordance with Rule 26(b)(4), if no provision is made for experts consulted informally in anticipation of litigation, no discovery concerning them is permissible" and holding that where president of defendant company sought expert's "unbiased and analytical evaluation," correspondence, including expert's subsequent response, constituted informal consultation not subject to discovery); *Cox v. Piper, Jaffray & Hopwood, Inc*., 848 F.2d 842, 845 (8th Cir. 1988); Wright and Miller, Federal Practice and Procedure, § 2033.  The preclusion "not only encompasses information and opinions developed in anticipation of litigation, but also insulates discovery of the identity

and other collateral information concerning experts consulted informally." *Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980) (citing cases); *Chiquita Int'l v. M/V Bolero Reefer*, No. 93cv01671994, U.S. Dist. LEXIS 5820, *2 (S.D.N.Y. May 6, 1994) ("Thus, a non-testifying expert is generally immune from discovery."). "If the expert is considered to have been only informally consulted in anticipation of litigation, discovery is barred." *Ager*, 622 F.2d at 502.

### C. Paxfire's Attempt to Create a "Factual" Issue Is Unavailing Because Paxfire Does Not Dispute that Eckersley and EFF Were Non-testifying Experts Consulted in Anticipation of Litigation

Paxfire does not dispute that EFF and Eckersley are experts with regard to the issues in the Feist litigation. Moreover, EFF has explained (SER-3-4, ¶¶ 8-10; ER-346-347, ¶¶ 19-20), and Paxfire itself alleges (*e.g.*, SER-19:5-6; AB, 6-7), that EFF and Eckersley's contact with Plaintiff's counsel was for the specific purpose of providing expert advice and consulting in anticipation of the Feist litigation. Indeed, this was only reason EFF and Mr. Eckersley had any contact with Plaintiff's counsel relevant to this action. It is undisputed that neither EFF nor Eckersley have been designated as a testifying experts. Therefore, the Magistrate Judge and District Court correctly held EFF and Eckersley were non-testifying experts consulted in anticipation of litigation and protected under Rule 26(b)(4)(D). (ER-5-6; ER-204.)

Paxfire attempts to create a "factual" issue by quibbling about whether EFF and Eckersley were "real" consultants or were simply informally consulted experts. (AB, 17.) The distinction is immaterial since Rule 26(b)(4)(D) protects EFF and Eckersley either way. (*See supra*, Argument, Section II. B.) Moreover, Eckersley's "first" declaration does not assert that he was not a consultant at all, only that he was not a ***paid*** consultant or expert. To the extent it was ambiguous, it was clarified by later, undisputed testimony. (ER-347, ¶ 20; SER-4, ¶¶ 9, 10; SER-210-11, ¶¶ 10-15.) Hence, there was and is no factual issue for the District Court or this Court to resolve.

In any case, Paxfire failed to preserve this alleged "factual" issue for appeal. Paxfire did not challenge the Magistrate Judge's factual finding that EFF and Eckersley were non-testifying experts consulted in anticipation of litigation, and therefore waived this issue. (SER-167-168 (conceding the Magistrate Judge's factual determination that Eckersley was a non-testifying expert and arguing only that the expert protection had been waived); SER-212-241, at 229 (conceding factual issue and arguing waiver only).) "The failure to object in the district court to a magistrate judge's finding of fact waives a challenge to that finding." *In re Grand Jury Subpoena*, 357 F3d 900, 910 (9th Cir. 2004).

### D. Rule 26(b)(4)(D) Applies to Experts Consulted *in Anticipation of Litigation* and Therefore Applies Prior to the Identification of Feist as Class Plaintiff

Next, Paxfire claims that the District Court erred by holding that Rule 26(b)(4)(D)'s protections apply to documents prepared prior to the date Feist became class plaintiff. (AB, 17-21). Paxfire's argument is not supported by the language of the Rule, is not supported by any controlling authority, and is plainly incorrect.

### 1. The Documents Were Prepared in Anticipation of the Feist Litigation by Experts Consulted in Anticipation of that Litigation

Rule 26(b)(4)(D) clearly states that it prohibits discovery of facts known and opinions held by an expert "retained or specially employed by another party in anticipation of litigation or to prepare for trial." Fed.R.Civ.P. 26(b)(4)(D). Paxfire does not dispute that EFF and Eckersley are experts, or that they consulted with Feist's counsel in anticipation of the Feist litigation both before and after Feist became a party to that litigation. Consequently, Rule 26(b)(4)(D) applies. Moreover, the documents Paxfire seeks were clearly prepared *in anticipation of the Feist litigation*. Specifically, Paxfire seeks documents and communications pertaining to EFF's investigation of Paxfire, the nine ISPs and related topics, EFF's decision whether to bring litigation itself, and association with Feist's counsel to consult regarding the Feist litigation from April 1, 2011 to July 24,

2011. (AB, 13.) These documents and communications contain and reflect ***the facts gathered and opinions formed in anticipation of the Feist litigation***, and were themselves prepared in anticipation of what became the Feist litigation. (ER-345-347, ¶¶ 12-15, 19, 20 (explaining that EFF anticipated bringing litigation from the outset, seriously considered bringing such litigation itself, contacted Plaintiff's counsel to inform them about the results of EFF's research in anticipation of litigation by Plaintiff's counsel, and then further consulted with Plaintiff's counsel in anticipation of litigation); SER-3-4, ¶¶ 4-10 (same).) Therefore, Rule 26(b)(4)(D) applies because EFF and Eckersley were experts consulted "by another party in anticipation of litigation or for trial," and the documents at issue contain facts and opinions formed in anticipation of that litigation.

### 2. Paxfire's Argument Is Not Supported by the Language of the Rule or by Relevant Authority

Nevertheless, Paxfire demands that the Court read into Rule 26(b)(4)(D) the an additional requirement—not found in the text of the Rule—that in order to be protected, facts must have become known, and opinions must have been formed, only after there was "a party." There is no justification for imposing this added requirement. Facts learned and opinions formed ***in anticipation of the litigation in which the discovery is sought***, by a person who is a consultant with regard to that litigation, clearly fall within the plain language of the Rule even if the facts and opinions were learned or formed before a client formally engaged counsel.

In addition, Paxfire's interpretation contradicts the Rule's use of the words "in anticipation of litigation," which are clearly meant to include the period ***before*** litigation has commenced, when—by definition—there are no "parties." *See e.g.,* 6-26 Moore's Federal Practice - Civil § 26.80 ("For an expert to be hired 'in anticipation of litigation,' a lawsuit need not have been filed, but there must have existed more than a remote possibility of litigation.") (citing cases). Indeed, Paxfire's interpretation makes the distinction in Rule 26(b)(4)(D) between a consultation "in anticipation of litigation" and a consultation "to prepare for trial" almost meaningless.

Paxfire cites ***no case*** holding that Rule 26(b)(4)(D) does not protect facts learned and opinions formed in anticipation of the litigation in which discovery is sought, nor any case that denies protection merely because an attorney-client relationship had not commenced. Indeed, outside of Paxfire's footnote 34, Paxfire does not cite a single case in which the protections of Rule 26(b)(4)(D) were at issue. Of the cases in footnote 34, the only potentially relevant case is *Barkwell v. Sturm Ruger Co., Inc*., 79 F.R.D. 444, 446-47 (D. Alaska 1978), in which plaintiffs were permitted to depose defendant's expert "as to such information acquired and opinions held prior to" his employment as defendant's expert ***because they were not formed in anticipation of litigation***. The case is inapposite. As explained, the documents Paxfire seeks were prepared in anticipation of the Feist litigation

against Paxfire and reflect facts and opinions formed in anticipation of that litigation.[7]

Paxfire's purported reliance on the Magistrate Judge's ruling is misplaced. The Magistrate Judge quashed the deposition subpoenas to EFF and Eckersley *in their entirety* because EFF and Eckersley were "consulted by Feist in preparation for the *Feist* litigation" and therefore could not be deposed "under Rule 26(b)(4)(D)." (ER-204.) The Magistrate Judge applied the protections of Rule 26(b)(4)(D) to all facts and opinions of EFF and Eckersley relating to the Feist litigation, regardless of when Feist formally associated with counsel. (*Id*.) The Magistrate Judge simply failed to extend that holding to documents containing the same facts and opinions.

---

[7] In addition, *Barkwell* was decided before 1991, when Rule 45 was amended to add explicit protection for the exact type of information sought by plaintiffs. *See* Fed.R.Civ.P. Rule 45(d)(3)(B)(ii). To the extent *Barkwell* could be read as permitting free discovery from an unretained expert such as EFF, *Barkwell* is superseded by Rule 45. The remaining cases cited by Paxfire in footnote 34 are inapposite because: (1) the witness in question was never consulted or retained "in anticipation of litigation" and so the protections of Rule 26(b)(4)(D) were never triggered—*Ngo v. Standard Tools & Equipment, Co., Inc.,* 197 F.R.D. 263, 265-6 (D. Md. 2000); *Leviathan, Inc. v. M/S Alaska Maru,* 86 F.R.D. 8, 9 (W.D. Wash. 1979)—and/or (2) the witness in question was designated to testify at trial and so the protections of Rule 26(b)(4)(D) were not at issue—*Quarantillo v. Consolidated Rail Corp.,* 106 F.R.D. 435, 436-37 (W.D.N.Y. 1985); *Keith v. Van Dorn Plastic Machinery Co*., 86 F.R.D. 458, 460 (E.D. Pa. 1980); *Harasimowicz v. McAllister*, 78 F.R.D. 319, 320 (E.D. Pa. 1978)—and/or (3) the witness was the plaintiff's treating physician and therefore a true "actor or viewer" in relation to the specific facts at issue in the litigation—*Williams v. Rene*, 886 F. Supp. 1214, 1226 (D.V.I. 1995), *rev'd on other grounds*, 72 F.3d 1096 (3d Cir. 1995).

Finally, although the protection of Rule 26(b)(4)(D) is not precisely congruent with the protection of the work-product doctrine codified in Rule 26(b)(3), both Rules are triggered by activities undertaken ***in anticipation of litigation***, which can precede the identification of a specific client. *See, e.g., Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) ("provided the prospect of litigation was not remote (and it was not), the fact that the case hadn't begun and might never be brought did not disqualify [an attorney's] jottings from the shelter of the work-product doctrine"); 8 Wright & Miller, Federal Practice and Procedure § 2024 (3d ed.) ("Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced" and thus the proper test is whether "in light of the nature of the document[s] and the factual situation in the particular case, the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation.")[8]

---

[8] Indeed, the work product doctrine is based in large part on the rationale that to be effective, an attorney must be "free from unnecessary intrusion by opposing parties and their counsel" so that he or she may "assemble information, sift what he [or she] considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1974). This rationale applies equally to all documents prepared in anticipation of litigation whether or not a specific client has yet been identified, and to the documents Paxfire seeks here.

### E. Paxfire's Assertion that EFF and Eckersley Are "Fact Witnesses" Makes No Sense and Is Irrelevant

Paxfire's asserts that EFF and Eckersley are "fact witnesses," akin to Feist's treating physician. (AB, 22.) This argument is unavailing. Paxfire concedes that that the only documents at issue in the appeal are documents created before July 24, 2011—the date Feist first contacted counsel and the first possible date of any connection between EFF and Feist. (AB, 13.) However, documents created before July 24, 2011—the only documents at issue—cannot apply *specifically to Feist*. Prior to July 24, 2011, EFF could not have met, let alone "diagnosed" or "treated" the alleged "patient" Feist.[9] Adopting Paxfire's analogy, prior to July 24, 2011, EFF and Eckersley can only have conducted research and consulted with Feist's counsel regarding Paxfire's general interception and redirection activities, and the other general issues in the litigation.

---

[9] Moreover, Paxfire's evidence and Feist's testimony show there was no specific connection between Feist and EFF/Eckersley. Feist's deposition mentions EFF *only once* (*see* SER-242 at 116:12), and Mr. Eckersley only a handful of times. (SER-242 at 77:16; 85:13; 116:11,17,19,25; 117:8,17; 118:21; 119:3,11,16; 120:15; 121:2; 155:16; 162:20.) Ms. Feist states that she has never even spoken to Mr. Eckersley. (SER-242 at 116:16-18.) Paxfire may be dissatisfied with Plaintiff's deposition testimony, but that does not support seeking discovery from EFF.

### F. Paxfire's Arguments Regarding Documents EFF and Eckersley Allegedly Prepared "Independently" Are Unavailing

Paxfire argues that none of the documents at issue are protected under Rule 26(b)(4)(D) because they were allegedly prepared by EFF and Eckersley "for their [own] purposes," "independently" of Feist or her counsel, and allegedly "in the ordinary course of a business function." (AB, 18-22; *e.g., id.* at 18 ("EFF, Mr. Eckersley, and the ICSI researchers acted independently of Betsy Feist and her attorneys in their investigation and disclosures of Paxfire's business activities."))

This argument is also unavailing. First, as explained above, the documents sought by the subpoenas were clearly prepared *in anticipation of the Feist litigation*. It is irrelevant whether that litigation was ultimately brought by EFF's own staff attorneys or by other counsel consulting with EFF, and Paxfire provides no authority to the contrary.

Second, the District Court properly held that even if some of the documents sought are not protected by Rule 26(b)(4)(D), they are protected under Rule 45[(d)](3)(B)(ii), which specifically protects the "independent" work of experts. Paxfire does not challenge the application of Rule 45(d)(3)(B)(ii).

Finally, as explained more fully below, Paxfire's claim that EFF and Eckersley acted independently from Feist undermines Paxfire's claims that the documents sought have any relevance to the Feist litigation. Either the documents in question were prepared in relation to the Feist litigation—and are therefore

protected by Rule 26(b)(4)(D)—or they were prepared independently of Feist and her attorneys—in which case they have no relevance to the Feist litigation and are therefore not discoverable.

### G.     EFF and Eckersley Have Standing to Claim the Protection of Rule 26(b)(4)(D)

The cases Paxfire cites do not support its assertion that an expert lacks standing to assert the protection of Rule 26(b)(4)(D), nor even that an expert lacks standing to assert work product protection.  Rather these cases hold that work product protections are held by the attorney as well as the client, and that the attorney may invoke the protection, "even when the client has waived its own claim."  *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006); *Stoffels v. SBC Commc'ns, Inc*., 263 F.R.D. 406, 412 (W.D. Tex. 2009).  These cases support the conclusion that the non-testifying expert may assert the protection of the Rule.  Moreover, the non-testifying expert can claim the protection of Rule 26(b)(4)(D) because the Rule is intended to protect the experts themselves as well as the parties.  *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 175 F.R.D. 34, 45 (S.D.N.Y. 1997) (a purpose of the rule is to protect experts from compelled testimony and address the concern that "experts might become unwilling to serve as consultants" if subjected to compelled discovery); 6-26 Moore's Federal Practice - Civil § 26.80 (court must consider policy of protecting expert before ordering discovery); *see also* Fed.R.Civ.P. 26(b)(4)(E)(i) and (ii) (separately

providing compensation to the expert if "exceptional circumstances" are held to require discovery).[10]

### H.    The Protections of Rule 26(b)(4)(D) Have Not Been Waived

First, Paxfire's claim that Feist waived the protections provided by Rule 26(b)(4)(D) is simply incorrect.  Feist has consistently refused to produce documents or communications in question that are in her possession, and continues to assert that they are protected in discovery proceedings in the New York District Court.  (SER-456-461; SER-462-467.)

Second, Paxfire's argument that EFF has waived the protections of Rule 26(b)(4)(D) is unavailing because those protections are not subject to waiver in the same manner as the attorney-client privilege or the work product doctrine. "Where information enjoys protection under [Rule 26(b)(4)(D)], that protection is not subject to waiver."  *Ludwig v. Pilkington North America, Inc*., No. 03 C 1086, 2003 WL 22242224, *3 (N.D. Ill. Sept. 29, 2003).[11]

---

[10]   Similarly, "'it is universally accepted that the lawyer-client privilege may be raised by the attorney'. . . until evidence is presented showing that the attorney is not authorized to act on the client's behalf."  3-503 Weinstein's Federal Evidence § 503.20.  By analogy, an expert may independently assert the protection of Rule 26(b)(4)(D).

[11] Even if such information were subject to waiver, any waiver would be limited to the specific documents and information already disclosed.  *U.S. Inspection Services*, 268 F.R.D. at 624-25; *Murray v. Southern Route Maritime, S.A*., No. 12cv1854, 2014 WL 1671581, *3 (W.D. Wash. Apr. 28, 2014) ("[W]here the

Moreover, there is no evidence of disclosure by EFF of any confidential information sought by Paxfire's subpoenas. The only EFF disclosures asserted are an EFF blog article and information provided by Eckersley for an article published by *New Scientist*, neither of which is or ever was confidential. (AB, 23-25.) The remaining disclosures are not by EFF, and there is no evidence that they "disclose" any documents or information at issue here. These other purported "waivers" are irrelevant. The District Court's Order holding the documents are protected by Rule 26(b)(4)(D) should be upheld.

III. **THE DISTRICT COURT PROPERLY HELD THAT THE DOCUMENTS IN QUESTION HAVE LITTLE OR NO RELEVANCE TO THE FEIST LITIGATION AND THE BURDEN OF THEIR PRODUCTION OUTWEIGHS ANY RELEVANCE**

A. **Paxfire Attempts to Mislead the Court by Arguing that Documents Created After July 24, 2011 Are Relevant to the Feist Litigation, Even though Such Documents Are Not at Issue in this Appeal**

Paxfire claims it seeks "documents referencing Ms. Feist, defendants, or Ms. Feist's counsel from April 1, 2011, ***to August 4, 2011***" and that such documents are relevant to establish "the agreement (i.e., the conspiracy) between Ms. Feist and her attorneys, on the one hand, and EFF and Peter Eckersley, on the other." (AB, 27.) Paxfire blatantly misrepresents the documents it seeks.

---

disclosure is limited, the waiver [of Rule 26(b)(4)(D)] applies only to the matters disclosed or relied upon.")

Paxfire's opening brief expressly states that its appeal is limited to documents dated *on or before July 24, 2011*—the date of Feist's first contact with her attorneys. (AB, 13.) Paxfire attempts this sleight of hand because, as explained below, documents created before July 24, 2011 are not relevant to Paxfire's "conspiracy" allegations.

However, Paxfire has waived the right to pursue discovery of any documents created after July 24, 2011. Paxfire did not contest the Magistrate Judge's finding that Paxfire was not entitled to documents after that date. (ER-3, 4.) The District Court relied on Paxfire's position in making its rulings. (*Id*.) Paxfire provides no basis and no argument challenging the July 24, 2011 cutoff—indeed, it expressly claims that it only seeks documents from before that date. (AB, 13.) Paxfire is bound by those representations, and has waived its right to documents after July 24, 2011. *Cruz*, 673 F3d at 998 (issues must be argued distinctly and specifically in the party's opening brief or are waived); *Greenwood v. FAA*, 28 F3d 971, 977 (9th Cir. 1994) ("[A] bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.")

### B. The Documents Paxfire Actually Seeks Have Little or No Relevance to the "Conspiracy" Alleged in Paxfire's Counterclaims

Paxfire's primary argument is that the documents it seeks are relevant to establishing its conspiracy claims. (AB, 27.) However, the "conspiracy" Paxfire

describes in its Brief to this Court is *not* the "conspiracy" alleged in its counterclaims.

To the extent it was allowed by the court in the underlying litigation, the "conspiracy" alleged in Paxfire's counterclaims is expressly premised on the allegation that "*Feist* entered into an agreement with EFF and ICSI to disrupt Paxfire's business." (AB, 26, quoting District Court decision in *Feist v. Paxfire*; *see also* Section V.C. *supra* summarizing Paxfire's remaining counterclaims.) Contrary to the suggestion in its brief to this Court (AB, 27), *Paxfire's counterclaims do not assert a "conspiracy" between EFF and Feist's counsel*. Since Feist had nothing to do with the underlying litigation until contacted by counsel on July 24, 2011, Feist could not possibly have entered in to any agreement or "conspiracy" with EFF before that date. Thus, documents prior to July 24, 2011—the only documents at issue in this appeal—are not directly relevant to the conspiracy Paxfire *actually pleads*.

Paxfire now claims that the conspiracy "predated the July 24th date, the date on which Ms. Feist was first solicited by her eventual attorneys" and began "sometime in April 2011." (AB, 28.) These allegations do not appear in Paxfire's counterclaims. Indeed, these allegations contradict Paxfire's pleading in which Paxfire alleges a conspiracy with Feist, *not Feist's counsel*. Any "agreement" between Feist and EFF cannot have occurred before July 24, 2011, the date Feist

first associated with the litigation.  Therefore, the "conspiracy" cannot possibly predate July 24, 2011.

Rather, as the District Court properly held, documents created "prior to the July 23, 2011 date Feist contacted counsel do not provide direct support for the development of a conspiracy *by Feist*, the only named defendant, with EFF and ICSI."  (ER-8 (emphasis added).)

### C. Paxfire Claims that EFF Acted "Independently," Confirming that the Documents at Issue Have Little or No Relevance to Its "Conspiracy" Claims

The only documents at issue in this appeal are documents predating Feist's involvement in the litigation and predating all of the alleged overt acts.  At the same time, Paxfire repeatedly alleges to this Court that EFF and Eckersley acted "independently" of Feist and her counsel in:  conducting the investigation during which these documents were created, in preparing the documents themselves, and in publishing the EFF blog post—the only overt act EFF allegedly committed.[12] (AB, 18-22.)

---

[12]  Paxfire claims "EFF, Mr. Eckersley, and the ICSI researchers acted independently of Betsy Feist and her attorneys in their investigation and disclosures of Paxfire's business activities."  (AB, 18-19 (listing the activities EFF allegedly conducted "independently," including investigating Paxfire and publishing the blog post); *see also id.* at 20 ("EFF, Mr. Eckersley, and the ICSI researchers were engaged in their own activities, for their own purposes"); *id.* at 21 (alleging "EFF's investigation and policy analysis of Paxfire's business activities" was prepared in the ordinary course of EFF's business); *id.* at 22 (EFF's and

In other words, Paxfire itself claims that the documents it seeks relate primarily or exclusively to EFF's independent conduct. Therefore, as the District Court held, the documents cannot evidence EFF's, Eckersley's or Feist's participation in any "conspiracy." (ER-8.)

## D. The Documents Are Unnecessary and Irrelevant to Paxfire's "Defense"

EFF's documents are not relevant to Paxfire's "defenses." Paxfire admits the key facts of both EFF's blog post and the ECPA/Wiretapping claim against it. (*See* Section V.D. *supra*.) Paxfire admits that it "received text and search requests from Internet users," that these were "interceptions utilized by Paxfire's devices," that it "examined queries and responses" and "did log search histories," and sometimes replaced search engine results with the webpages of paying clients. (*Id.*) Paxfire's asserted defense to the ECPA claim is not that it didn't engage in the alleged conduct, but rather that its undisclosed interception, redirection and manipulation of Internet users' searches was conducted "in the ordinary course" of co-defendant RCN's business. (*Id.*) Information on this issue is uniquely within the knowledge of Paxfire and RCN. Paxfire makes no attempt to explain how EFF could possibly cast any light on this issue, and the information sought is not relevant to this defense.

---

Eckersley's work was allegedly "for their purposes and pursuant to their own direction.").)

Moreover, the "Netalyzr" is a red herring. Simply because Eckersley and Feist happened to use the same publicly available and widely-used tool for part of their investigations does not establish the relevance of any of EFF's documents to Paxfire's defense. Paxfire's experts can determine the Netalyzr's ability to provide information (and claim that they already have). (AB, 29 ("As explained and supported by the declaration of Dr. Eugene Spafford [Paxfire's expert], the Netalyzr *cannot* provide the information that Ms. Feist claims that it did.") As the District Court explained, "[w]ith respect to Feist's claims against Paxfire, Paxfire's own experts can demonstrate whether or not the Netalyzr (or other tools) can be used to show that Paxfire's (or RCN's) conduct violates the ECPA." (ER-8.)

Finally, Paxfire claims it needs documents from EFF to "explore in discovery the basis of Ms. Feist's allegations" and asserts that "Rule 11 of the Federal Rules of Civil Procedure [requires] all parties to have 'evidentiary support' for the factual contentions in their pleadings." (AB, 28-19) Whether Feist has adequate support for the allegations in her complaint can only be determined by discovery **on Feist**. EFF's knowledge—or lack of knowledge—is irrelevant to determine whether Feist satisfied her obligations under Rule 11. Feist does not allege—in her complaint or anywhere else—that she "learned" the basis for her

claims from EFF. Indeed, in her deposition Feist alleged the exact opposite.[13] Furthermore, Paxfire's non-specific desire to "explore the basis of" the Feist complaint and "any defenses" does not establish the relevance of any of the documents Paxfire demands from EFF. Paxfire simply fails to explain how any particular documents or category of documents might be relevant to the Feist litigation.

### E. The Documents Are Irrelevant to the "Defamation" Allegations

Paxfire claims the documents are relevant to Feist's "knowledge—or, more importantly, the lack thereof" regarding "the factual basis and truth of the allegations made by Ms. Feist in her communications with Jim Giles and the New Scientist." (AB, 27.) However, documents sought *from EFF* are not relevant to this issue since "Paxfire makes no allegations that EFF had any role in the potentially actionable conversations [with Giles]" (ER-7) and "there are no allegations in Paxfire's counterclaims that EFF participated in any way in the discussions between Feist's counsel and Jim Giles that led to the article in the New Scientist."[14] (ER-9.)

---

[13] *See* footnote 9, *supra*.

[14] The District Court also held that "[r]egarding communications between January and July 2011, pertaining to the New Scientist or Jim Giles, the documents at issue would be covered by Judge Cousins' ruling quashing the document subpoena to Jim Giles, which found that the documents sought from Giles were protected by

Similarly, Paxfire's claim that the documents might be relevant to Feist's liability for the EFF blog post is wholly without merit. (AB, 27.) First, "Paxfire makes no allegations that Feist – the only defendant – participated in any way in the EFF blog post." (ER-7.) Indeed, Paxfire insists that EFF acted independently of Feist in publishing the blog post. (AB, 18-19.) Moreover, it is difficult to imagine how documents created *prior to* the July 23, 2011 date Feist contacted counsel, would be relevant to establishing *Feist's* liability for statements in the EFF blog post. (*See* ER-8.)

## F.    It Would be Extremely Burdensome for EFF to Produce Documents in Response to Paxfire's Subpoenas

Paxfire appears to claim that this Court can order EFF to produce documents without subjecting EFF to undue burden because, Paxfire alleges, "the necessary privilege review was already done." (AB, 30.) First, however, EFF asserts that First Amendment privileges protect the majority of documents at issue. As explained below, EFF cannot be ordered to produce documents—over EFF's properly plead claims that such an order would violate its Constitutional rights—until EFF's Constitutional arguments have been adjudicated by the court.

In addition, EFF's privilege review did not take into account Magistrate Judge's and District Court's privilege and relevance rulings—various parts of

the qualified reporter's privilege under New York law." (ER-9.) Paxfire has not appealed that aspect of the District Court's ruling.

which Paxfire did not appeal—that altered the available privileges and the

categories of documents at issue.  For example, the District Court held that

numerous documents are protected by EFF's own attorney-client privilege, and

that other documents are protected by New York's qualified reporter's privilege.

Paxfire did not challenge those rulings.  Similarly, the Magistrate Judge held that

EFF did not have to produce "articles and drafts of articles authored by the

subpoenaed nonparties concerning Feist or her counsel, Paxfire, or the Netalyzr;"

or "research results concerning Paxfire or RCN or any of the ISPs mentioned in the

Feist complaint."  (ER-198, 203.)  Paxfire has never challenged this ruling.

Thus, even if EFF could be ordered to produce documents over its First

Amendment objections, EFF would have to re-do the privilege review it has

already undertaken, and conduct a separate, complicated, relevance review to

assess which documents fall into which purported "categories."  EFF would also

have to redact protected or privileged information from any documents required to

be produced.  This would subject EFF to "undue burden" in violation of

Rule 45(d)(3)(A)(iv).  Under such circumstances, the Court is required to quash or

modify the subpoena.  Fed.R.Civ.P. 45(d)(3)(A).

Moreover, courts recognize that the invasion of a third-party's privacy and

other interests constitutes a burden in itself.  *Northwestern Memorial Hosp. v.*

*Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (court may consider whether requests

will infringe the privacy or confidences of third parties); *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982) (court may take into account whether enforcing the subpoenas will chill investigative activities of researchers). Thus, the burden of Paxfire's subpoenas includes the burden on EFF's and Eckersley's First Amendment rights, and their rights under California constitutional and statutory law to contribute to free and open public debate as members of the press. (SER-95-108, 110-112.) These burdens clearly outweigh any negligible relevance of the documents.

For the foregoing reasons, the Court should uphold the District Court's Order quashing Paxfire's subpoenas because the documents sought are not relevant to the Feist litigation and the burden of their production outweighs any possible relevance.

## IV. THE DISCOVERY SOUGHT BY PAXFIRE IS BARRED BY THE FIRST AMENDMENT

### A. This Court Should Reach and Decide the First Amendment Questions Raised by Paxfire's Subpoenas

The First Amendment privilege for information related to protected association, speech and petitioning by EFF applies to all of the documents and information sought by Paxfire's subpoenas. (SER-95-102.) Therefore, the discovery Paxfire seeks is barred by the First Amendment as a matter of law.

"A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment *privilege*." *Perry*, 591 F.3d at 1160 (emphasis original). Rule 45 mandates that a Court "*must* quash or modify a subpoena that… requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(d)(3)(A)(iii) (emphasis added). Once the subject of a subpoena makes a *prima facie* showing of infringement of the First Amendment, the courts "*must* apply the First Amendment's more demanding heightened relevance standard." *Perry*, 591 F.3d at 1164 (emphasis added); *see also Grandbouche v. Clancy*, 825 F.2d 146, 163 (10th Cir. 1987) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must [apply the appropriate] test before ordering disclosure."); *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D. Cal. 1983) ("A good-faith interjection of First Amendment privilege to a discovery request [] mandates a comprehensive balancing of the [party's] need for the information sought against the [non-party's] constitutional interests in claiming the privilege.").

Clearly, then, if the Court does not affirm the decision of the District Court in its entirety, it must reach the First Amendment privilege. If the District Court's decision is affirmed, the prudential principle of constitutional avoidance may militate in favor of not addressing EFF's constitutional protections. However,

there are at least two reasons the Court should resolve the First Amendment questions. First, in the absence of recognition of its First Amendment protections, EFF will be deterred from engaging in constitutionally protected activities for fear that those activities will become the subject of discovery and compelled disclosure. "[T]he greater the uncertainty, the more likely that laypeople will hesitate to seek redress, out of fear that their petitioning activity will subject them to legal liability," or, as in this case, intrusive and burdensome discovery. *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 847 (7th Cir. 2011) ("a law's chilling effect is particularly great when it is unclear whether that law actually" applies). Because, as EFF has demonstrated, the First Amendment provides it with heightened protection from discovery into its associational, petitioning, and speech activities, and such a chilling effect is a cognizable constitutional invasion of its rights ripe for determination. *See Dombrowski*, 380 U.S. at 486-87; *Human Life of Washington Inc., v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010) ("self-censorship is a 'constitutionally sufficient injury' as long as it is based on 'an actual and well-founded fear' that the challenged statute will be enforced"); *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (entity that had to modify its behavior to comply with the law had suffered injury even though it had "neither violated the statute nor been subject to penalties for doing so"). In order to prevent the chilling effect of intrusive subpoenas arising from EFF's constitutionally

protected advocacy in this and other cases, the Court should recognize and hold that the First Amendment precludes such discovery if the heightened burden it imposes is not met.

Second, even if the District Court's decision is affirmed, the prospect of further invasive discovery in this case is real, exacerbating this chilling effect and supporting a determination of EFF's constitutional rights. In December, 2012, after filing the instant appeal, Paxfire declared bankruptcy and subsequently entered into a bankruptcy plan ("Plan") pursuant to which Paxfire liquidated all of its remaining assets, and ceased business operations. (SER-190, 198-200.) Paxfire used the cash reserves it obtained in its liquidation to establish a litigation fund that it says it will use to bring claims against Feist's counsel based on the same allegations as in the counterclaims against Feist herself. (SER-198-200.) Furthermore, Paxfire retained as "special litigation counsel" to bring these claims the same counsel currently representing Paxfire in the Feist litigation and in this appeal. (SER-199.) If Paxfire pursues such litigation, it is highly likely that Paxfire will serve additional subpoenas on EFF seeking the same information it seeks now, asserting that its claims against Feist's counsel give it a new basis to demand the documents and testimony. If recognized by the Court, the First Amendment protection demonstrated by EFF would prevent the enforcement of such additional subpoenas.

Therefore, even if the Court affirms the District Court's Order, the Court should also hold that EFF is entitled to the protection of the First Amendment balancing test, and that the test has not been met.

**B.     The First Amendment Requires Paxfire's Subpoenas Be Quashed**

There is a "vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958); *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003). Accordingly, "[d]isclosures of political affiliations and activities that have a 'deterrent effect on the exercise of First Amendment rights' are therefore subject to [] 'exacting scrutiny.'" *Perry*, 591 F.3d at 1160 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976)).

In *Perry*, this Court recognized a "First Amendment privilege" against compelled disclosure of information that would infringe on the First Amendment right of association, and established a heightened relevance standard and balancing test for applying that privilege. Applying the test in that case, the Court held that compelling disclosure of internal communications of a political and social advocacy group "would likely have a chilling effect on political association," and ordered entry of a protective order to protect the group from discovery of such documents. *Id.* at 1165. The subpoenas Paxfire seeks to enforce would have just such an impermissible a chilling effect on EFF's exercise of its First Amendment

rights, and consequently, EFF should be afforded the protection of the First Amendment heightened relevance standard and balancing test. *Id.* at 1160-61.

### 1. There Is a Two-Part Balancing Test for Application of the First Amendment Privilege

As demonstrated in EFF's motion to quash, a First Amendment privilege claim entails a two-part analysis. First, "[t]he party asserting the privilege 'must demonstrate ... a '*prima facie* showing of arguable first amendment infringement'" by demonstrating that discovery would "'result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" *Perry*, 591 F.3d at 1160 (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988)); SER-95-102. The burden to make this showing is "light" due to the "crucial place speech and associational rights occupy under our constitution." *N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989). Declarations are sufficient to make this showing. *Perry*, 591 F.3d at 1143. Once this showing has been made, the burden shifts to the party seeking discovery to show that the discovery is **highly relevant** to the claims or defenses in the litigation (a more demanding standard of relevance than that under Rule 26(b)(1)), **carefully tailored** to avoid unnecessary interference with protected activities, and seeks information that is **otherwise unavailable**. *Id.* at 1161.

### 2. EFF Made a *Prima Facie* Showing that Paxfire's Subpoenas Will Infringe Its First Amendment Rights

Paxfire's subpoenas demand disclosure of extremely broad categories of information reflecting EFF's internal strategy and analysis, as well as EFF's communications and associations with third parties, regarding EFF's protected research, litigation, publication and advocacy. (*See, e.g.,* SER-97-101.) The documents and communications at issue are not EFF's public communications—which Paxfire already has—but EFF's private, internal communications and analysis, the results of its investigations, and private communications with Feist's counsel, closely associated researchers and like-minded third parties who communicated with EFF in confidence.

As demonstrated in EFF's Motion, this type of forced disclosure of EFF's internal communications, analysis and strategy would make EFF's staff and researchers more hesitant to frankly express their ideas and severely chill the free expression of ideas within EFF. (SER-97-98, SER-4-5, ¶¶ 13-16.); *Perry*, 591 F.3d at 1162-63, 1161 ("Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights.") Thus, the fear of compelled disclosure would hamstring EFF's ability to engage in research, litigation, publication, advocacy and participation in public debate, and thereby

constitute a severe infringement of EFF's First Amendment rights. *Perry*, 591 F.3d at 1162, n. 8 ("the threat that internal campaign communications will be disclosed in civil litigation can discourage organizations from joining the public debate over an initiative."); *AFL-CIO*, 333 F.3d at 176-77 (recognizing First Amendment protection for union's "detailed descriptions of training programs, member mobilization campaigns, polling data, and state-by-state strategies"); *Fed. Election Comm. v. Machinists Non–Partisan Polit. League*, 655 F.2d 380, 388 (D.C. Cir. 1981); *Wyoming v. U.S. Dept. Of Ag.*, 208 F.R.D. 449, 454–55 (D.D.C. 2002).

Moreover, both in their original form, and in their current "narrowed" form, Paxfire's demands seek disclosure of EFF's confidential communications with numerous like-minded third parties regarding EFF's investigation of Paxfire, the nine ISPs and other topics, and regarding EFF's association with Feist's counsel to consult regarding litigation. (AB, 13.) EFF provided substantial evidence demonstrating that EFF associates closely with other individuals and entities for First Amendment protected activities such as policy analysis, research, technology development, petitioning and advocacy projects of great importance to public debate and welfare. (SER-98-101; SER-5-6, ¶ 17-19; ER-347-48, ¶ 21-25; SER-443-47; SER-448-452; SER-453-55.) These third parties' work with EFF depends critically on their ability to communicate in confidence. (SER-98-100.) The third

parties would reduce or end their associations with EFF if their communications were freely discoverable through third-party subpoenas, infringing EFF's and their First Amendment rights. (*Id.*; SER-448-452, ¶¶ 9-14; ; SER-443-47, ¶¶ 6, 9-15; SER-453-55, ¶¶ 5, 6, 9.) Similarly, forcing disclosure of EFF's communications with counsel outside EFF would greatly impair EFF's ability to undertake its First Amendment protected legal advocacy work. (SER-100, SER-5-6, ¶ 17-19.) EFF would be effectively isolated and unable to collaborate with others if its communications were discoverable by any civil litigant. *NAACP v. Button*, 371 U.S. at 431 ("[a]ssociation for litigation may be the most effective form of political association.") Thus, compelled disclosure in response to Paxfire's subpoenas would violate EFF's First Amendment rights. (SER-98-101.)

　　EFF's communications and close associations with like-minded third parties are protected by the First Amendment to the same extent as internal communications. The First Amendment's protection "extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it." *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 452, 454-55 (protecting, among other things, environmental groups' communications with each other); *Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc*., 590 F.2d 1139, 1147 (D.C. Cir. 1978); *In re GlaxoSmithKline plc*, 732 N.W.2d 257, 268-9 (Minn. 2007).

Accordingly, the Court should hold that EFF has made a more than adequate *prima facie* showing that EFF's First Amendment protected associations, speech and petitioning would be chilled and infringed by Paxfire's discovery. The Court should hold that as a result, EFF is entitled to the protection of the First Amendment heightened relevance standard. *Perry*, 591 F.3d at 1164.

### 3. Paxfire Failed to Justify Its Subpoenas under the Heightened Relevance Standard

In order to justify discovery, Paxfire must show that the information sought is ***highly relevant***, ***unavailable*** from other sources, and that its requests are "***narrowly tailored*** to avoid unnecessary interference with protected activities." *Perry*, 591 F.3d at 1161. The question is "whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of [the] constitutionally protected right of association.'" *Id.* (quoting *NAACP v. Alabama*, 357 U.S. at 463).

Paxfire cannot demonstrate any such interest. As detailed in the Argument, Sections III.B-III.E above, and as determined by the District Court, the information Paxfire demands has little or no relevance to the underlying litigation. Moreover, much of the information Paxfire purports to seek either can be obtained from other sources, such as Paxfire's own experts, or is uniquely available from other sources, such as co-defendant RCN or Feist herself. Paxfire has no need for the discovery

at issue and therefore cannot justify infringing EFF's First Amendment rights through its subpoenas.

### 4. The Subpoenas Should Be Quashed Because Enforcement Would Violate EFF's Constitutional Rights

EFF has demonstrated that its protected associations, both internal and with like-minded third parties, would be chilled and infringed by Paxfire's discovery. *See Perry*, 591 F.3d at 1163; *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991). Thus, the burden shifted to Paxfire to justify its subpoenas. Paxfire has utterly failed to meet this burden, as demonstrated above, in EFF's Motion and in the District Court's Order. Consequently the subpoenas must be quashed.

## V. CONCLUSION

EFF respectfully requests the Court uphold the District Court Order entirely. In addition, EFF requests the Court hold that application of the First Amendment privilege precludes enforcement of Paxfire's subpoenas.

Dated: May 15, 2014          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Tenaya Rodewald* _____
JAMES M. CHADWICK
TENAYA RODEWALD
Attorneys for Third-Party Appellees
ELECTRONIC FRONTIER FOUNDATION
and PETER ECKERSLEY

## <u>STATEMENT OF RELATED CASES</u>

To the best of Appellee's knowledge there are no related cases pending in this Court.

Dated: May 15, 2014  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Tenaya Rodewald* _____
JAMES M. CHADWICK
TENAYA RODEWALD
Attorneys for Third-Party Appellees
ELECTRONIC FRONTIER FOUNDATION
and PETER ECKERSLEY

## CERTIFICATE OF WORD COUNT

The text of this answering brief consists of 13,639 words, including all footnotes but excluding the table of contents, table of authorities, and signatures, as counted by the computer program used to generate this petition.

Dated: May 15, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Tenaya Rodewald* _____

JAMES M. CHADWICK
TENAYA RODEWALD
Attorneys for Third-Party Appellees
ELECTRONIC FRONTIER FOUNDATION
and PETER ECKERSLEY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the

Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system on May 15, 2014.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Dated: May 15, 2014          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/  Tenaya Rodewald_____

TENAYA RODEWALD
Attorneys for Third-Party Appellees
ELECTRONIC FRONTIER FOUNDATION
and PETER ECKERSLEY