# CASE NO. 12-17506

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

BETSY FEIST

*Plaintiff,*

v.

RCN CORPORATION AND PAXFIRE, INC.

*Defendants.*

---

ELECTRONIC FRONTIER FOUNDATION and PETER ECKERSLEY

*Third-Party Appellees,*

and

PAXFIRE, INC.

*Appellant.*

---

## THIRD PARTY APPELLEES ELECTRONIC FRONTIER FOUNDATION'S and PETER ECKERSLEY'S SUPPLEMENTAL EXCERPTS OF RECORD IN SUPPORT OF ANSWERING BRIEF VOLUME I

---

On Appeal From The United States District Court
For The Northern District of California
District Court Case 3:12-mc-80135-SI
The Honorable Susan Illston, Presiding

---

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
James M. Chadwick, Cal. Bar No. 157114
Tenaya Rodewald, Cal. Bar No. 248563
379 Lytton Avenue
Palo Alto, California 94301-1479
TEL: 650.815.2600

*Attorneys for Third-Party Appellees*
*ELECTRONIC FRONTIER FOUNDATION and PETER ECKERSLEY*

SMRH:423742141.1

# TABLE OF CONTENTS

| Tab | Date | Description | Pages |
|-----|------|-------------|-------|
| 1. | 06/06/12 | Declaration Of Cindy Cohn In Support Of EFF's Motion To Quash Subpoenas Issued By Defendant Paxfire, Inc. And Request For Protective Order [Document 3, N.D. Cal. Case No. 3:12-mc-80135] | SER-1 through SER-7 |
| 2. | 3/28/14 | Consent Motion Of Defendant And Counterclaim Plaintiff Paxfire, Inc. For A Status Conference And For An Amended Scheduling order [Document 93, SDNY Case No. 1:11-cv-05436] | SER-8 through SER-12 |
| 3. | 06/22/12 | Paxfire, Inc.'s Opposition To Non-Parties Electronic Frontier Foundation And Peter Eckersley's Motion To Quash Subpoenas Issued By Paxfire, Inc. And Request For Protective Order [Document 21, N.D. Cal. Case No. 3:12-mc-80135] | SER-13 through SER-41 |
| 4. | 5/30/12 | Opposition Of Defendant Paxfire To Motion Of Witness Jim Giles To Quash Subpoena Duces Tecum [Document 9, N.D. Cal. Case No. 3:12-mc-80119] | SER-42 through SER-51 |
| 5. | 06/06/12 | Declaration Of Tenaya M. Rodewald In Support Of Motion To Quash Subpoenas Issued By Defendant Paxfire, Inc. And Request For Protective Order <br><br> Exhibits A – D (Paxfire Subpoenas) [Documents 7 and 47, N.D. Cal. Case No. 3:12-mc-80135] | SER-52 through SER-80 |
| 6. | 06/06/12 | Motion Of Non-Parties Electronic Frontier Foundation And Peter Eckersley To Quash Subpoenas Issued By Defendant Paxfire, Inc. And Request For Protective Order [Document 1, N.D. Cal. Case No. 3:12-mc-80135] | SER-81 through SER-112 |
| 7. | 05/15/12 | Notice Of Motion And Motion To Quash Subpoena And Request For Protective Order By Jim Giles [Document 1, N.D. Cal. Case No. 3:12-mc-80119] | SER-113 through SER-122 |

| Tab | Date | Description | Pages |
|-----|------|-------------|-------|
| 8. | 06/13/12 | Notice Of Motion And Motion Of Non-Parties International Computer Science Institute And Christian Kreibich To Quash Subpoenas And Request For Protective Order; Memorandum Of Points And Authorities [Document 1, N.D. Cal. Case No. 3:12-mc-80140] | SER-123 through SER-151 |
| 9. | 05/23/12 | Notice Of Motion And Motion Of Betsy Feist To Quash Subpoenas To Consultants And Request For Protective Order; Memorandum Of Points And Authorities [Document 1, N.D. Cal. Case No. 3:12-mc-80121] | SER-152 through SER-161 |
| 10. | 06/04/12 | Notice Of Motion And Motion Of Betsy Feist To Quash Deposition Subpoenas To Consultants And Request For Protective Order [Document 7, N.D. Cal. Case No. 3:12-mc-80121] | SER-162 through SER-164 |
| 11. | 08/27/12 | Defendant-Counterclaim Plaintiff Paxfire, Inc.'s Motion For Relief From Nondispositive Pretrial Order Of Magistrate Judge [Document 31, N.D. Cal. Case No. 3:12-mc-80135] | SER-165 through SER-168 |
| 12. | 08/27/12 | Motion For *De Novo* Determination of Dispositive Matter Referred To Magistrate Judge [Document 32, N.D. Cal. Case No. 3:12-mc-80135] | SER-169 through SER-189 |
| 13. | 09/06/13 | 1st Amended Plan Of Reorganization of Paxfire, Inc. [Document 128, E.D. Va. Bankruptcy Case No. 12-17341] | SER-190 through SER-207 |
| 14. | 05/23/12 | Declaration Of Kim E. Richman In Support Of Betsy To Quash Subpoenas To Consultants [Document 2, N.D. Cal. Case No. 3:12-mc-80121] | SER-208 through SER-211 |
| 15. | 09/12/12 | Opposition Of Defendant Paxfire To Motion For *De Novo* Determination Of Dispositive Matter Referred To Magistrate Judge [Document 35, N.D. Cal. Case No. 3:12-mc-80135] | SER-212 through SER-241 |

# Tab 1

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   JAMES M. CHADWICK, Cal. Bar No. 157114
3  TENAYA RODEWALD, Cal. Bar No. 248563
   379 Lytton Avenue
4  Palo Alto, California 94301-1479
   Telephone:    650.815.2600
5  Facsimile:    650.815.2601
   Email:        jchadwick@sheppardmullin.com
6                trodewald@sheppardmullin.com

7  Attorneys for Non-Parties, ELECTRONIC
   FRONTIER FOUNDATION and PETER
8  ECKERSLEY

9
                    UNITED STATES DISTRICT COURT
10
        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
11

12                              CV 1.2No. 80 135MISC
   BETSY FEIST,
13
            Plaintiff,              DECLARATION OF CINDY COHN IN
14                                  SUPPORT OF MOTION TO QUASH
        v.                          SUBPOENAS ISSUED BY DEFENDANT
15                                  PAXFIRE, INC. AND REQUEST FOR
   RCN CORP. and PAXFIRE, INC.,     PROTECTIVE ORDER
16
            Defendants.             Date:
17                                  Time:
                                    Crtrm.:
18
                                    The Hon.
19

20

21

22

23

24

25

26

27

28

1    I, Cindy Cohn, declare as follows:

2    1.    I am the Legal Director and General Counsel for Non-Party Electronic Frontier
3  Foundation ("EFF"). I have personal knowledge of the following matters, except as to those
4  matters state on information and belief. As to those matters, I make this declaration on behalf of
5  Electronic Frontier Foundation as its Legal Director and General Counsel, because I have greater
6  knowledge of the matters set forth herein generally than does any other representative of the
7  organization. If called as a witness, I could and would competently testify to the facts stated
8  herein.

9    2.    EFF is a non-profit digital civil liberties and legal aid organization. It litigates itself
10  or supports lawsuits addressing user rights to privacy, free speech, and innovation as applied to the
11  Internet and other new technologies. It also engages in policy discussions and comments on
12  proposed legislation and agency rules, educates the press and public on issues related to law and
13  technology, and develops technological tools that enhance digital freedom. With more than
14  19,000 dues-paying members, EFF strives to represent the interests of technology users in key
15  public debates surrounding the application of law in the digital age. EFF also researches and
16  publishes articles on technology, civil liberties and user rights on a "blog" on its website at
17  www.eff.org and also publishes a "near weekly" digital newsletter called the EFFector that has
18  over 185,000 recipients, including members and nonmembers, with at least 20,000 of those in
19  California. Since most newsletter recipients give only an email address, we usually do not know
20  where they physically reside. *See* https://www.eff.org/effector/. EFF also publishes an archive of
21  digital civil liberties information on its website.

22    3.    Specifically, for the last several years EFF has been a leading organization
23  concerned with issues of network neutrality, that is, in the words of a leading law professor Tim
24  Wu, that "a maximally useful public information network aspires to treat all content, sites, and
25  platforms equally."[1]  This issue has been the subject of action by the Federal Communications
26  Commission, several court cases and litigation, as well as much public debate and discussion. EFF

27  ────────────

28  [1] http://timwu.org/network_neutrality.html.

W02-WEST:1TER1\405533137.2                         -1-                COHN DECLARATION ISO MOTION TO
                                                                          QUASH SUBPOENAS

1 | has played a role in several parts of the public and policy debate. For instance, EFF staff
2 | technologists uncovered that a leading cable provider, Comcast, was interfering with its
3 | customers' use of a certain technology, a discovery that led to litigation by the FCC against
4 | Comcast. EFF also developed a tool called Switzerland or Test your ISP that allowed users to
5 | check to see if their ISP was interfering with their access to the Internet in some specific ways.[2]
6 | EFF also provided comments to the FCC as part of its network neutrality rulemaking process.

7 |      4.      After the ICSI researchers approached EFF's Technology Projects Director Peter
8 | Eckersley, he informed me and other EFF attorneys about the results of their research.

9 |      5.      As with the earlier revelation of Comcast's interference with its customers internet
10 | activities, EFF was concerned that Paxfire's actions also violated the principles of network
11 | neutrality, might violate customers' privacy, and, based on the information available, might be
12 | illegal.

13 |      6.      In fact, EFF initially considered acting as counsel in consumer litigation against
14 | Paxfire and potentially others regarding the redirection practices, but ultimately decided not to
15 | undertake the litigation.

16 |      7.      Mr. Eckersley, EFF and researchers from ICSI drafted an article, or "blog post" to
17 | publish on EFF's website explaining what they had discovered about how Paxfire was redirecting
18 | users' search engine traffic. The article was also published on Wednesday, August 10, 2011, in
19 | Volume 24, Issue 27 of EFF's e-mail newsletter, EFFector, available at
20 | https://www.eff.org/effector/24/27

21 |      8.      Because we were still concerned about Paxfire's behavior and the impact on all of
22 | the people whose web searches were being diverted despite deciding not to undertake litigation
23 | ourselves, and as part of EFF's consumer and civil rights advocacy, EFF and Mr. Eckersley
24 | contacted Plaintiff's counsel to tell them about the results of the research and, if counsel decided
25 | to bring suit based on the information, to provide advice and to consult regarding various
26 | technology issues. Because EFF and Eckersley had assisted Plaintiff's counsel with previous

27 |

28 | [2] https://www.eff.org/pages/switzerland-network-testing-tool

W02-WEST:1TER1\405533137.2                    -2-                    COHN DECLARATION ISO MOTION TO
                                                                    QUASH SUBPOENAS

1 litigation arising from other violations of network neutrality as a paid consultant, EFF knew that
2 they would be able to understand the complex technical issues and also believed that they would
3 seek a resolution that protected Internet users.

4     9.    Mr. Eckersley contacted Plaintiff's counsel to inform them of what EFF knew and
5 to express EFF's concerns. Ultimately, Mr. Eckersley and EFF consulted informally with
6 Plaintiff's counsel, including regarding the technological details as Plaintiff's lawsuit was
7 developed.

8     10.    As noted above, Mr. Eckersley and EFF had been retained, paid consultants for
9 Plaintiff's counsel previously, in the network neutrality cases and some privacy cases. However,
10 EFF and Mr. Eckersley were not retained as paid consultants by Plaintiff's counsel in this
11 litigation. Rather Plaintiff's counsel consulted with EFF and Mr. Eckersley on an informal basis.

12     11.    After EFF published its blog post, I heard from counsel for Paxfire, Mr. Grosso,
13 who complained about our blog post. In the course of those discussions Mr. Grosso indicated that
14 he believed EFF, through our employee Peter Eckersley, had harmed his client with the blog post
15 and had committed actionable offenses. I became immediately concerned that Paxfire intended to
16 sue EFF. Shortly thereafter, Mr. Grosso sent EFF a letter demanding that we preserve documents,
17 which supported my view that there was a reasonable likelihood that Mr. Grosso intended to sue
18 EFF and/or Peter Eckersley.

19     12.    I have reviewed the Paxfire document subpoenas and documents that were
20 retrieved by EFF as responsive to the subpoena requests. The requests encompass documents and
21 communications protected by EFF's attorney-client privilege and work product protection,
22 including documents and communications in which EFF attorneys provide legal advice and
23 documents and communications prepared in anticipation of litigation. For example, as EFF's
24 Legal Director and General Counsel, I provided legal advice to EFF and Mr. Eckersley as EFF's
25 employee, in relation to the topics named in the Requests.

26     13.    EFF operates as a team, with significant group deliberation and collaborative
27 meetings. Through this we sort out strategy, analysis, research to be done and evaluated,
28 advocacy positions and messaging among our 38 staff members and, sometimes, with our Board

W02-WEST:1TER1\405533137.2    -3-    COHN DECLARATION ISO MOTION TO QUASH SUBPOENAS

1 of Directors. Those discussions require a robust and wide open format, so that we can test out
2 new (and old) ideas, sort through and rank and rate various strategies and debate each other
3 internally before we send our messages out to the public or to policymakers. This includes
4 playing "devil's advocate" to test our messages, articulating the opposing viewpoints and
5 determining how to use our scarce resources to make the maximum impact.

6      14.     For instance, EFF has in the past month been internally discussing various
7 cybersecurity bills that are pending before Congress which would authorize significantly more
8 sharing of data with the federal government by Internet service providers and other online service
9 providers. As part of developing our strategy, we have had several internal discussions that
10 involved analyzing, interpreting, tracking and placing various provisions of the bills in context –
11 how are they different from the law currently, how they relate to other parts of the law and
12 whether to single them out for opposition. We've discussed how the bills will likely affect various
13 technology companies that users rely upon and how each will likely respond. If one of these laws
14 passes, it is likely that litigation will ensue and EFF's internal views, as one of the leading
15 organization opposing the bills, could be useful to litigants trying to attack or defend the law.

16      15.     The forced revelation of these internal discussions to EFF's adversaries and even
17 our friends would harm EFF, as our internal debates could be used as fodder to attack us, to
18 undermine our credibility, portray us as inconsistent or disingenuous in our positions. It can also
19 reveal the limits of our resources and areas of internal disagreement that could be played upon by
20 those seeking to limit our public advocacy and participation in public debate.

21      16.     Because of this threat, the specter that EFF's internal discussions would be made
22 available in litigation or otherwise made public would make EFF staff less likely to express
23 dissenting opinions and criticism, or test bold or controversial ideas through debate, for fear that
24 any such statements could be used by opponents to attack or undermine EFF in the future. This
25 would result in a weakening of the analysis and power of our public advocacy.

26      17.     Additionally, forcing disclosure of EFF's communications with counsel outside
27 EFF would greatly impair EFF's ability to undertake its legal advocacy work. EFF often
28 collaborates with or aids outside attorneys with litigation or potential litigation that advances

W02-WEST:1TER1\405533137.2      -4-      COHN DECLARATION ISO MOTION **TO**
**QUASH SUBPOENAS**

1 | EFF's positions on privacy, consumer protection and civil liberties. We also receive calls from
2 | counsel handling cases where digital rights issues come up, asking for guidance, factual
3 | information and referral to resources. Such collaborations and assistance necessarily require frank
4 | and confidential discussions that can involve of legal strategy, facts and positions and the broader
5 | implications of potential or past arguments or rulings. Even where no privileged material is
6 | revealed, the communications can reveal sensitive information, including the mere fact that
7 | counsel sought our assistance.

8 |      18.     Those same communications are also often key to the development of EFF's own
9 | strategies, positions and arguments for both our public advocacy and our work as amicus. For
10 | example, EFF has long been concerned about the mass copyright cases being brought across the
11 | country, where a single rightsholder sues thousands of unnamed individuals in a single location
12 | and then seeks leave to issue subpoenas to the individuals' ISPs to identify them. EFF's attorneys
13 | maintain regular communications with some of the lawyers handling these cases to help track how
14 | those cases are going – are they being litigated or settled, what arguments being marshaled by the
15 | plaintiffs and defendants, are those arguments successful, how are judge reacting to them. This
16 | informal communication is important since there are over 250 cases across the country affecting
17 | over 250,000 people. These discussions with counsel inform our activities in amicus briefs and
18 | public advocacy in various cases across the country, helping me to be sure that our statements
19 | about these cases are useful to the courts considering these cases as well as to member of Congress
20 | who are concerned and in the broader public debate.

21 |      19.     Finally, as was the case here, EFF often refers potential matters or clients to outside
22 | attorneys when EFF does not have the resources or is otherwise unable or unwilling to litigate an
23 | action itself. In such situations, EFF may share some of the information, attorney-client
24 | communications, potential expert witness information and work product it developed on the matter
25 | to aid the litigation. EFF would be effectively isolated and unable to collaborate with other
26 | attorneys in these ways if its communications were discoverable by any civil litigant.

27 |      20.     EFF is a non-profit organization. It relies on member contributions and grants for
28 | the majority of its operating budget. I have reviewed Paxfire's document subpoenas. They

W02-WEST:1TER1\405533137.2      -5-      COHN DECLARATION ISO MOTION TO QUASH SUBPOENAS

1      20.    EFF is a non-profit organization. It relies on member contributions and grants for
2 the majority of its operating budget. I have reviewed Paxfire's document subpoenas. They
3 demand extensive internal and external communications and responding to them would be
4 extremely burdensome. Approximately one-quarter of EFF's staff are attorneys. Producing
5 internal communications that involve any of our eleven attorneys would require EFF to undertake
6 careful review of the emails to ensure that they don't have any attorney-client, and work product
7 protected information related to this action or related to other actions. We would then have to
8 redact the privileged material. All of this would be very expensive and time-consuming,
9 particularly given the breadth of Paxfire's requests.

10      21.    Similarly, as I have described, and as I understand Mr. Eckersley, Mr. Burns and
11 Mr. Narayanan described in their declarations, EFF often has communications with third parties
12 that contain sensitive, personal or confidential information. In order to produce any
13 communications with third parties, EFF would have to carefully review them and redact any
14 sensitive information that was not related to the document demands. Again, this process would be
15 extremely time-consuming and expensive for EFF.

16      22.    The requests also appear to demand that EFF search the computers and
17 communications of all of its employees, interns and volunteers, to or from anyone, related to the
18 listed topics and review them for relevance and privilege. Again, this would impose a great strain
19 on EFF's time and resources.

20      I declare under penalty of perjury under the laws of the United States of America that the
21 foregoing is true and correct. Executed on June 5, 2012.

22

23

24



25                    CINDY COHN

26

27

28

# Tab 2

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BETSY FEIST, individually and on behalf of all similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. |
| v. | ) ) | 11-CV-5436 (LGS) |
| PAXFIRE, INC, | ) ) ) | |
| Defendant | ) | |

## CONSENT MOTION OF DEFENDANT AND COUNTERCLAIM PLAINTIFF PAXFIRE, INC. FOR A STATUS CONFERENCE AND FOR AN AMENDED SCHEDULING ORDER

Defendant Paxfire, Inc. ("Paxfire"), through its undersigned attorneys, hereby moves this Honorable Court for a status conference and for an amended scheduling order concerning the remaining discovery, discovery disputes, motion practice, and other matters including a date for trial.  In support of this Motion, Paxfire submits the following:

### A. Background

Paxfire has filed three status reports in this case.  Paxfire's First Status Report was filed July 8, 2013 (Doc. 89); its Second Status Report was filed on September 30, 2013 (Doc. 91); and its Third Status Report was filed on December 26, 2013 (Doc. 92).  Ms. Feist has submitted a status report by letter to the Court, dated May 23, 2013.

In summary, Plaintiff Betsy Feist ("Ms. Feist") filed her class action complaint in this matter on August 4, 2011.  Two defendants were named: RCN Corporation ("RCN") and Paxfire, Inc. ("Paxfire").  The class action has not been certified and no motions are pending regarding such certification.  Defendant RCN settled its dispute with Ms. Feist and was

dismissed as a defendant. (Doc. 81.)

Paxfire filed bankruptcy on December 14, 2012.[1]  This case was stayed pursuant to a Suggestion of Bankruptcy filed by Paxfire.  The Bankruptcy Court subsequently entered an order authorizing, *inter alia*, Paxfire to continue its counterclaims against Ms. Feist.  The final order confirming Paxfire's reorganization plan was issued October 24, 2013.

The claims in Ms. Feist's Complaint allege violations of privacy rights and federal wiretap laws involving the business operations of Internet Service Providers ("ISPs") and of Paxfire which provided services to these ISPs.

Paxfire has four pending counterclaims remaining against Ms. Feist.  These are set out as Counts I, II, VI, and VII in its First Amended Answer, Affirmative Defenses, and Counterclaims (Doc. 46).[2]  They have survived Plaintiff's Motion to dismiss. These counts allege the following causes of action:

| Count | Cause of Action |
|-------|-----------------|
| I | Tortious Interference with Contracts |
| II | Tortious Interference with Business Relationships |
| VI | Defamation: Slander |
| VII | Defamation: Libel |

Paxfire will continue to pursue Counts VI and VII, but will move this Court to dismiss Counts I and II as to Ms. Feist.

### D. Fact Discovery

With the exception of third party subpoenas in the Northern District of California and the United States Court of Appeals for the Ninth Circuit which will be discussed below (Section D),

---

[1] In re Paxfire, No. 1:12-17341 (E.D. Va.)
[2] Counts III through V have been withdrawn.  See Paxfire's Third Status Report (Doc. 92).

2

Paxfire is of the view that fact discovery is substantially completed; however, significant discovery disputes remain outstanding. These disputes had been presented the Magistrate Judge, but several remained outstanding at the time of Paxfire's filing for bankruptcy and remain outstanding at the present time. The parties have agreed to confer and to present to the Court additional status reports as to discovery.

As indicated in its Third Status Report (Doc. 92), Paxfire's decision to withdraw all but the two defamation counts will narrow the discovery disputes that need to be resolved. From Paxfire's perspective, the primary dispute that will remain concerns the following: whether or not Paxfire is entitled to document production, and to answers to its interrogatories, regarding the information upon which Ms. Feist based the allegations in her complaint. Paxfire's position is that such information is directly relevant to the existence of malice on the part of Ms. Feist in making her defamatory statements, which is an essential element of defamation. Ms. Feist has withheld this information on the grounds of privilege and pursuant to the consultant doctrine found in Fed. R. Civ. P. 26(e). This dispute was raised during a hearing before Magistrate Judge Ellis[3], but has not yet been resolved.

Ms. Feist's position on the status of discovery has previously been provided to this Court in her counsel's letter dated May 23, 2013. There, her counsel explained:

> Discovery is ongoing with responses to Plaintiff's document requests outstanding. Shortly before Paxfire filed its Suggestion of Bankruptcy, the parties were attempting to resolve a discovery dispute concerning Paxfire's search for and preservation of documents. The parties were also discussing a date for the deposition of Paxfire's co-cofounder Alan Sullivan.

Paxfire disputes that Ms. Feist is entitled to further document production, but will confer with Ms. Feist's counsel on this question.

---

[3] Hearing held on July 3, 2012.

3

### C. Expert Discovery

Ms. Feist and Paxfire have each designated two expert witnesses.   Expert reports have been exchanged; however, expert discovery, including depositions, has **not** taken place; and no *Daubert* motions have yet been filed.

### D. Discovery Disputes in California Federal Courts

Prior to entering bankruptcy, Paxfire served subpoenas upon parties in California.  These subpoenas were issued by the United States District Court for the Northern District of California. The various parties served, as well as Ms. Feist, moved to quash these subpoenas.   An order issued by the Magistrate Judge granted in part and denied these motions to quash.  Two such parties, the Electronic Frontier Foundation and its Projects Director, Peter Eckersley, appealed the order to the District Judge.  The resulting subsequent order by the District Judge quashed the subpoenas directed to these persons in their entireties.  Paxfire thereafter filed a notice of appeal. On December 26, 2013, Paxfire filed its initial brief with the United States Court of Appeals for the Ninth Circuit.  In February 2014, Ninth Circuit stayed further briefing pending a status as to the proceedings in this Court.

In addition to the appeal in the Ninth Circuit, document production ordered by the Magistrate Judge as to four other parties – the International Computer Science Institute and three of its researchers – has yet to be completed.  Paxfire has made attempts to negotiate such production with counsel for these parties without having to resort to motion practice seeking an order to compel.  To date these attempts have been unsuccessful.  Paxfire is preparing to file motions to compel.

Dated: March 28, 2014                    Respectfully submitted,

                                         /s/ Andrew Grosso
                                         Andrew Grosso, Esq.
                                         ANDREW GROSSO & ASSOCIATES
                                         Georgetown Place
                                         1101 Thirtieth Street, NW, Suite 300
                                         Washington, DC 20007
                                         Tel.: 202-298-6500
                                         Fax: 202-298-5499
                                         Email: agrosso@acm.org

                                         *Counsel for Defendant−Counterclaim Plaintiff*
                                         *Paxfire, Inc.*

# CERTIFICATION OF SERVICE

I certify that on this day March 28, 2014 this paper is being served on all counsel of record by email through the ECF system pursuant to the Federal Rules of Civil Procedure and the Local Rules.

                                         /s/Andrew Grosso
                                         Andrew Grosso

# **Tab 3**

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  JAIDEEP VENKATESAN, Bar No. 211386
   jvenkatesan@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  ANDREW GROSSO, Esq., *pro hac vice*
   Agrosso@acm.org
8  ANDREW GROSSO & ASSOCIATES
   Georgetown Place
9  1101 Thirtieth St., NW, Suite 300
   Washington, D.C. 20007
10 Telephone: (202) 298-6500
   Facsimile: (202) 298-5599

11

12 Attorneys for Defendant
   PAXFIRE, INC.
13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17 BETSY FEIST,                        MISC. Case No. CV12-80135 RS (DMR)

18                                     **PAXFIRE, INC.'S OPPOSITION TO NON-**
                     Plaintiff,        **PARTIES ELECTRONIC FRONTIER**
19                                     **FOUNDATION AND PETER**
                                       **ECKERSLEY'S MOTION TO QUASH**
20      vs.                            **SUBPOENAS ISSUED BY PAXFIRE, INC.**
                                       **AND REQUEST FOR PROTECTIVE**
21 RCN CORP. AND PAXFIRE, INC.,        **ORDER**

22                    Defendants.      Date: July 26, 2012
                                       Time: 11:00 a.m.
23                                     Hon. Mag. Judge Donna M. Ryu
                                       Ctrm: 4, 3rd Floor (Oakland)
24

25

26

27

28
   _____
   PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
   MOTION TO QUASH SUBPOENAS                          Misc. CV12-80135 RS (DMR)

# TABLE OF CONTENTS

MEMORANDUM ................................................................................................ 2

I.    Background ............................................................................................... 2

      A.    The History of This Litigation: EFF ............................................ 3

      B.    The Netalyzr ................................................................................ 4

      C.    EFF's Plot Against Paxfire .......................................................... 6

II.   LEGAL ARGUMENT ............................................................................. 9

      A.    State Law Does Not Apply ........................................................ 10

      B.    No Privilege or Constitutional Right Shields EFF from This Routine Discovery ................................................................................... 11

      C.    No General Privilege Exists for Advocacy Organizations or Researchers .......... 14

      D.    No General Privilege Exists for Investigations ........................ 15

      E.    California Privilege Law Has No Application to this Case Because EFF is Not "Press" ............................................................................... 16

      F.    EFF and Eckersley Are Subject to Routine Discovery as Fact Witnesses ........... 19

      G.    Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield EFF ....... 20

      H.    The Need for Discovery Outweighs Any Speculative Need for Secrecy ............... 22

III.  CONCLUSION ....................................................................................... 23

- i -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

SER-14

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*800 Front Street Corp. v. Travelers Property Casualty Co. of America,*
4    2006 U.S.Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006) ...................................................... 20

5 *Agster v. Maricopa County,*
   422 F.3d 826 (9th Cir. 2005)................................................................................ 11
6

*Anker v. G.D. Searle & Co.,*
7    126 F.R.D. 515 (M.D.N.C.1989) .................................................................... 15

8 *Application of Consumers Union of U.S.,*
   495 F.Supp. 582 (S.D.N.Y. 1980)................................................................... 22
9

*Application of American Tobacco Co.,*
10    800 F.2d 1520 (2d Cir. 1989) ....................................................................... 15

11
*Barkwell v. Sturm Ruger Co., Inc.,*
12    79 F.R.D. 444 (D. Alaska 1978) ................................................................... 19

13 *Boyd v. City & County of San Francisco,*
   2006 U.S. Dist. LEXIS 27647 (N.D.Ca.2006) ............................................. 11
14

15 *Burka v. HHS,*
   67 F.3d 508 (D.C. Cir 1996) ......................................................................... 15
16

17 *Chevron v. Berlinger,*
   629 F.3d 297 (2d Cir. 2011)........................................................................... 15

18 *Deitchman v. Squibb,*
   740 F.2d 556 (10th Cir. 1984) ...................................................................... 15
19

20 *Eagle Precision Technologies, Inc. v. Robolix, Inc.,*
   2005 U.S. Dist. LEXIS 47173 (S.D.Ca. 2005)............................................. 11
21

22 *Hall v. EarthLink, Inc.,*
   396 F.3d 500 (2d Cir. 2005)...................................................................... 3, 7

23 *Harasimowicz v. McAllister,*
   78 F.R.D. 319 (E.D. Pa. 1978) ..................................................................... 19
24

25 *Herbert v. Lando,*
   441 U.S. 153 (1977) ........................................................................... 9, 11, 14
26

27 *Hickman v Taylor,*
   329 U.S. 495 (1947) ..................................................................................... 20

28

*In Re Falk,*
   332 F. Supp. 938 (D. Mass. 1971) ........................................................ 15

*In Re Popkin,*
   460 F.2d 328 (1st Cir. 1972) ............................................................... 15

*In re Snyder,*
   115 F.R.D. 211 (D.Ariz.1987) ............................................................ 15

*Keith v. Van Dorn Plastic Machinery Co.,*
   86 F.R.D. 458 (E.D. Pa. 1980) ........................................................... 19

*Kerr v. U.S. Dist. Ct. For N. D. Cal.,*
   426 U.S. 394 (1976) ......................................................................... 13

*Lamar Advertising of South Dakota, Inc. v. Kay,*
   267 F.R.D. 568 (D.S.D. 2010) ........................................................... 20

*Leviathan, Inc. v. M/S Alaska Maru,*
   86 F.R.D. 8 (W.D. Wash. 1979) ......................................................... 19

*NAACP v. Button,*
   371 U.S. 415 (1963) ......................................................................... 14

*Ngo v. Standard Tools & Equipment, Co., Inc.,*
   197 F.R.D. 263 (D. Md. 2000) ........................................................... 19

*Norfin, Inc. v. Intern. Business Machs. Corp.,*
   74 F.R.D. 529 (D. Colo. 1977) ........................................................... 19

*Perry v. Schwarzenegger,*
   591 F.3d 1147 (9th Cir. 2010) ........................................................... 15

*Postal Serv. v. Phelps Dodge Ref. Corp.,*
   852 F. Supp. 156 (E.D.N.Y. 1994) ..................................................... 20

*Quarantillo v. Consol. Rail Corp.,*
   106 F.R.D. 435 (W.D. N.Y. 1985) ..................................................... 19

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ......................................................................... 14

*Schoen v. Schoen,*
   48 F.3d 412 (9th Cir. 1995) ............................................................... 19

*Seattle Times Co. V. Reinhart,*
   467 U.S. 20 (1984) ........................................................................... 13

*Securities Exchange Commission v. Collins & Aikman Corp.,*
   256 F.R.D. 403 (S.D.N.Y. 2009) ....................................................... 21

- iii -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                Misc. CV12-80135 RS (DMR)

**SER-16**

*Shoen v. Shoen*,
  5 F.3d 1289 (1993) ............................................................................................ 22

*United States v. Graf*,
  610 F.3d 1148 (9th Cir. 2010) ......................................................................... 20

*United States v. IBM*,
  83 F.R.D. 92 (S.D.N.Y. 1979) ......................................................................... 15

*United States v. Nixon*,
  418 U.S. 683 (1974) ......................................................................................... 11

*Westmoreland v. CBS*,
  97 F.R.D. 703 (D.C.N.Y. 1983) ...................................................................... 14

*Wilkinsin v. FBI*,
  111 F.R.D. 432 (C.D. Cal. 1986) ..................................................................... 14

*Williams v. Rene*,
  886 F. Supp. 1214 (D.V.I. 1995), *rev'd on other grounds*, 72 F.3d 1096 (3d Cir. 1995) ....... 19

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.*,
  671 F.2d 100 (3d Cir.1982) .............................................................................. 11

*Wright v. Fred Hutchinson Cancer Research Center*,
  206 F.R.D. 679 (W.D. Wash. 2002) ................................................................ 18

**FEDERAL STATUTES**

18 U.S.C. § 2510 (5)(a) ............................................................................................. 7

Electronic Communications Privacy Act ....................................................... passim

FOIA ....................................................................................................................... 15

**OTHER STATUTES**

Cal. Evid. Code 1070(a) ......................................................................................... 16

**RULES**

Fed. R. Evid. 201 ...................................................................................................... 2

Fed. R. Evid. 501 .................................................................................................... 11

Fed. R. Civ. Pro. 26 ......................................................................................... passim

Rule 26(b)(4)(D) ..................................................................................................... 20

Rule 30(b)(6) .......................................................................................................... 10

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                Misc. CV12-80135 RS (DMR)

Rules 45, 26(b)(3), 26(b)(4)(A), 26(b)(4)(C) ................................................. 11

**CONSTITUTIONAL PROVISIONS**

Cal. Const., Article I, § 2(b) ..................................................... 16

California Constitution, Article I, § 2(a) ..................................... 10

U.S. Constitution, First Amendment ....................................... passim

SER-18

1    Defendant-Counterclaim Plaintiff Paxfire, Inc. ("Paxfire") hereby opposes the Motion of

2    the Electronic Frontier Foundation ("EFF") and Peter Eckersley ("Mr. Eckersley") to Quash

3    Subpoenas Issued by Paxfire, Inc., and their Request for Protective Order (the "Motion").

4    Paxfire has been sued in a putative class action, in the United States District Court for the

5    Southern District of New York, by Betsy Feist who is a resident of New York City.  That case was

6    instigated by EFF and by Mr. Eckersley who solicited law firms in New York for this purpose;

7    those firms thereafter solicited Ms. Feist to bring her class action suit.  The lawsuit was filed, and

8    publicized by EFF, when Paxfire was within days of receiving a buyout offer for its assets in an

9    amount of ten million dollars or more.  Instead of a buyout, the lawsuit and publicity effectively

10   destroyed the company.  All of this occurred despite Ms. Feist's suit being meritless: Paxfire

11   simply did not do most of the things alleged in the lawsuit, and what it did do are lawful under the

12   ordinary course of business exception to the Electronic Communications Privacy Act ("ECPA").

13   EFF instigated this lawsuit as an Internet vigilante to enforce its own misguided policies

14   concerning "net neutrality," and to destroy a lawful business model with which it disagreed.  This

15   is demonstrated by the following: (1) although instigating the lawsuit, EFF (and Mr. Eckersley)

16   published blogs to the public on its website portraying the lawsuit as having been brought

17   independently by Ms. Feist, and concealing its own participation and its conflict of interest in

18   having instigated the suit; (2) EFF consulted with Paxfire's commercial competitors about

19   Paxfire's business, although it never consulted with Paxfire; and (3) EFF asserted that it and Ms.

20   Feist used the Netalyzr, a software tool, to determine that Paxfire did the things alleged in Ms.

21   Feist's Complaint, when it knew that the Netalyzr was not capable of determining these things.

22   Paxfire filed counterclaims against Ms. Feist, alleging *inter alia* that EFF and Peter

23   Eckersley were Feist's (uncharged) coconspirators.  To obtain discovery for its defense of Ms.

24   Feist's claims, particularly her claim brought under the ECPA (a federal statute), and to establish

25   its counterclaims, it has issued subpoenas to both EFF and Mr. Eckersley for documents and

26   deposition testimony.

27   ///

28

- 1 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

1    In support of its opposition to EFF's Motion Paxfire submits the following.[1]

2                                    **MEMORANDUM**

3    **I.    Background**

4        On August 4, 2011, Betsy Feist filed her class action complaint[2], naming Paxfire and the

5    RCN Corporation as defendants, accusing these companies of: (1) profiling the search habits of

6    Internet users; (2) selling and otherwise distributing such information to third parties; and (3)

7    violating the ECPA.  Paxfire did none of these things.

8        Paxfire is a private, Delaware-registered corporation with offices in Northern Virginia.

9    During the pertinent time it had two lines of business.[3]  The first line of business is Error

10   Redirection.  Put simply, when a person (or Internet "user") types an Internet address or "url" into

11   a search engine of his or her web browser, there are occasions when the person makes a mistake

12   and types a non-existent (or no-longer-functioning) address.  For example, suppose a user wishes

13   to visit the website of Amazon.com.  To do so, he needs to type www.amazon.com, but suppose

14   instead he types www.amazon.con, with a ".con" instead of a ".com."  This address cannot

15   "resolve" to a real website, and, left to its own devices, the Internet will return an error page.

16       In 2004, Paxfire's two founders, Alan Sullivan and Mark Lewyn, established the company

17   based on the idea of providing a service to Internet Service Providers ("ISPs") whereby, instead of

18   an error page, the subscribers or users of ISPs could receive composite page consisting of

19   suggested alternatives to the erroneous web address they had typed, and advertising in which they

20   _____

21   [1] Paxfire hereby requests, pursuant to F.R.E. 201, that the Court take judicial notice of the
     following documents attached to the Declaration of Andrew Grosso ("Grosso Declaration"):
     Amended with Exhibits Counterclaim Plaintiff Paxfire, Inc.'s, Consolidated: (1) Reply to

22   Opposition of Counterclaim Defendant Betsy Feist to Counterclaim Plaintiff Paxfire's Motion For
     Leave To Amend Answer, Affirmative Defenses, and Counterclaims, and (2) Opposition to
     Motion of Counterclaim Defendant Betsy Feist for Sanctions Pursuant to Rule 11 (Ex. A); and the

23   Exhibits submitted in support (Ex. B-D, F).  This material is being provided to insure that the
     records in both this forum and that of the underlying lawsuit, the Southern District of New York,

24   are consistent.  For this Court's information, the referenced motion for leave to amend was
     granted; and the referenced motion for sanctions was denied.

25   [2] Exhibit E.

26   [3] Unless otherwise noted, the information presented in this subsection is taken from the
     Declaration and Second Declaration of Mark Lewyn, the president of Paxfire; the Declarations of

27   Alan Sullivan, Douglas Armentrout, and Matt Kirn, respectively the former CEO, the current
     COO, and the former Director of Product Development of Paxfire. (Exhibit B, Attachments 1-5).

28
     _____
                                    - 2 -
     PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
     MOTION TO QUASH SUBPOENAS                          Misc. CV12-80135 RS (DMR)

1  might have an interest.  The revenue came from the advertising sites, and the ISPs and Paxfire

2  split the profits.

3       The second line of business is more recent.  It is Direct Navigation, by which Paxfire

4  provided direct access to ISP users who entered keywords and trademarks into address bars and,

5  later, trademarks into search boxes.  Through this service, a user who typed, by way of example,

6  the term "apple" into an address bar would be directed to Apple, Inc.'s webpage.  This service was

7  provided to some, but not all, of the ISPs who were Paxfire's customers.

8       It is noteworthy that the Paxfire devices that received text and search requests from

9  Internet users ("end users") for the implementation of Paxfire's services received all such

10 information directly from the users' ISPs, such transmissions being forwarded to Paxfire's devices

11 in the ordinary course of the ISPs' business.  Such being the case, the interceptions utilized by

12 Paxfire's devices fell within the safe harbor provision of the Electronic Communications Privacy

13 Act, 18 U.S.C. § 2510(4)-(5).  *See Hall v. EarthLink, Inc.*, 396 F.3d 500 (2d Cir. 2005).  Contrary

14 to the allegations in Ms. Feist's lawsuit (instigated by EFF) Paxfire *never sold or distributed*

15 *search histories of the subscribers of ISPs* to advertisers or to anyone else.  Paxfire did not know

16 the identities of the individual users.  It did log search histories by Internet Protocol addresses[4],

17 but only for accounting and internal debugging purposes.  It never shared this information with

18 third parties.

19  **A.      The History of This Litigation: EFF**

20       The Electronic Frontier Foundation ("EFF") has acknowledged its role instigating this

21 lawsuit as well as its reason for doing so.

22       Mr. Peter Eckersley is the Projects Director for EFF, and has served as a paid advisor for

23 Ms. Feist's New York attorneys in prior cases.[5]  He has conceded that EFF decided that Paxfire

24 [4] Internet Protocol ("IP") addresses can be identified with individual users; however, they are
25 dynamic, which means they change, and depending on the time frame involved and the method
   whereby a user connects to the Internet, can change from search to search.  This means that one
26 cannot use IP addresses with any confidence for tracking the search habits of an individual user.
   In any event, this was a moot point for Paxfire, as it never knew the identity associated with a
27 specific IP address of any user, and had no need for or interest in such information.
   [5] Exhibit F, Second Decl. of P. Eckersley.

28

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                    Misc. CV12-80135 RS (DMR)

1  should be sued, and that he, acting on behalf of EFF, contacted Ms. Feist's eventual attorneys in

2  New York City for this purpose.[6]  This decision was made after three researchers associated with

3  the International Computer Science Institute ("ICSI"), based in Berkeley, California, came to EFF

4  with the results of their "Netalyzer" software package and its analysis of Paxfire's operations on

5  the Internet. According to Mr. Eckersley this occurred sometime in April 2011.  Also according to

6  Mr. Eckersley, EFF was offended by what it believed to be a violation by Paxfire of EFF's view of

7  "net neutrality" and EFF's opposition to the concept of the "man in the middle" Internet scenario

8  which it believed Paxfire implemented.  EFF decided that Paxfire must be sued.  However, it

9  decided not to bring this lawsuit itself, but instead solicited law firms in New York City to do its

10  work.[7]

11        On July 24th or 25th, 2011, attorney Kim Richman of the New York law firm

12  ReeseRichman, LLP solicited Ms. Betsy Feist to act as lead plaintiff in a class action lawsuit

13  against Paxfire and her ISP, this being the RCN Corporation.[8]  On July 25th, Kim Richman advised

14  Ms. Feist how to run the Netalyzer on her own Internet searches.  The name "Paxfire" popped up

15  on the Netalyzer's results, and Ms. Feist agreed to sue Paxfire.

16      **B.**    **The Netalyzr**

17        During 2010 and 2011, three researchers associated with ICSI published multiple papers

18  describing an Internet analysis tool called the "Netalyzr."[9] They are Nicholas Weaver, Christian

19  Kreibich and Vern Paxson.  One paper was titled "Implications of Netalyzr's DNS

20  Measurements."[10]  As part of this paper, the authors identified activity of what they referred to as

21  "Target dependent redirection." *Id*. at 5. They described this conduct as follows:

22          Other forms of result manipulation exist.  As we reported previously, Netalyzr
   identified multiple ISPs that use DNS to redirect web searches for popular sites,
23          such as www.google.com, search.yahoo.com, and www.bing.com [operated by
   Microsoft].  Instead of visiting the intended search engines' IP addresses, the user
24          winds up redirected to proxy servers.  Some ISPs only manipulate Yahoo and Bing,
   while others manipulate all three.

25

---

26  [6] *Id.* ¶ 19.
   [7] *Id.*
27  [8] Exhibit G, Depo. B. Feist at 9, 196-98.
   [9] These papers are identified, and included as exhibit, in Paxfire's Opposition to the
28  [10] Exhibit C, Attachment 6D.

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                Misc. CV12-80135 RS (DMR)

1         The proxy servers appear to operate as an outsourced service, with each ISP
      redirecting Yahoo and Bing to an ISP-unique address in one of two prefixes . . . .

2

3         We note that the term "DNS" means Domain Name System, which is a system of servers

4   on the Internet that translate domain names (such as www.xyz.com) into Internet Protocol ("IP")

5   addresses (such as 123.123.123.123), which are the addresses actually used by the Internet to

6   locate and identify web pages.  Also, a "proxy" is a server, inserted into a network and which

7   serves as a "shortstop" of sorts, that, among other things, can check for specific markers in a

8   transmission and react if those markers are present.  Paxfire used proxies for its Direct Navigation

9   Services in order to determine if specified trademarks or keywords were in a search or address

10  location request.  Thereafter, the IP address returned by the proxy to a user's web browser,

11  through the user's ISP network, was that of the proxy server, *although Paxfire's proxy merely*

12  *served as a pass-through*.  Never did it in any way alter a webpage returned by a search engine.

13  (Further, the proxies never "impersonated" a search engine's webpage, as alleged in Ms. Feist's

14  complaint.)  This paper did not identify Paxfire's involvement, although it was Paxfire's services

15  that were described and Paxfire's ISP customers who were named therein as "offending ISPs."

16        Significantly, none of the ISI researchers and no one from EFF contacted Paxfire to inquire

17  as to: what Paxfire actually did; what information it collected, if any; or what it did with any such

18  information, such as selling it.  Instead, Mr. Eckersley contacted Google and MicroSoft—

19  Paxfire's competitors—to get their take on Paxfire.  This is all in spite of the fact that at, and prior,

20  to this time Google was actively engaged in threatening Paxfire's customers, these being ISPs, to

21  stop using Paxfire's Direct Navigation services, going so far as to send cease and desist letters to

22  some of Paxfire's customers.[11]

23        Also significantly, an examination of the Netalyzr by Professor Eugene Spafford, as

24  Paxfire's expert, has shown that the Netalyzr cannot establish what Ms. Feist, the ICSI

25  researchers, and EFF and Mr. Eckersley say that it proved: it cannot show that Paxfire's devices

26  compiled a history of searches by Internet users; sold or otherwise distributed search histories; or

27  _____
[11] *See* Exhibit H, Letter from Google to RCN Corp.

28

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                      Misc. CV12-80135 RS (DMR)

1    identify individual users by way of who they are.[12]

2    **C.    EFF's Plot Against Paxfire**

3    On August 1, 2011, three days before the filing of Ms. Feist's lawsuit law suit, Christian

4    Kreibich an author of the Netalyzr paper, sent an email to Jim Giles of the New Scientist; to Peter

5    Seidman and Melissa Clark of Milberg; and to Michael Reese and Kim Richman of Reese

6    Richman.[13]   These later four individuals with their law firms are Betsy Feist's attorneys in this

7    lawsuit.  The topic was "Introduction."  The email reads:

8    
> Hello everyone,

9    
> Allow me to introduce you to Jim Giles, the reporter at New Scientist who's currently working on a story on the Paxfire affair.  Jim, meet the legal front!  Jim has been investigating Paxfire's search redirections for quite some time now and is fully up to date on our findings, so it seems helpful for all of you to have each other's contact information.

10

11

12   
> Best,
> Christian

13

14   What can be gleaned from this email is the following:

15   - Mr. Kreibich refers to this as the "Paxfire affair." Clearly, Paxfire was the target, despite its name not having previously been mentioned by the researchers in their papers;

16   - ICSI (as we will see, EFF) had provided its research about Paxfire's "search

17   redirections" to the New Scientist; and

18   - Milberg and Reese Richman were the "legal front."

19

20   It is clear that the ICSI researchers and EFF were coordinating an assault on Paxfire, to be

21   conducted in the press and in the courtroom.  No one made inquiry of Paxfire about its actual

22   business practices: why not? Mr. Eckersley answers that question in his declaration: it was

23   because of EFF's concern that Paxfire was acting as a "man in the middle" of Internet

24   communications[14], never mentioning any concern that such conduct was or was not done in a

25   lawful way.  Put simply, EFF, Peter Eckersley did not *want* to know precisely what Paxfire did,

---

26   [12] Exhibit I, Decl. E. Spafford
27   [13] Exhibit C, Attachment 6E.
     [14] Exhibit F, Decl. P. Eckersley ¶19.

28

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

1   for then they might not be able to instigate their lawsuit, claim they were acting in good faith, with

2   false publicity[15] and false allegations, and ultimately destroyed the company.

3        Paxfire has alleged in its Counterclaims that the motive of EFF, the ICSI researchers and

4   Betsy Feist was malicious: to destroy Paxfire's business model regardless of whether Paxfire had

5   engaged in tortious conduct or had actually harmed anyone from the purported classes Ms. Feist

6   seeks to represent.[16]

7        Turning to the New Scientist article (published here hours before the lawsuit was filed but

8   falsely purporting to be reporting on the lawsuit), we find Mr. Eckersley's quoted language[17]:

9

10       "This interception and alteration of search traffic is not just your average privacy
    problem," says Peter Eckersley at the Electronic Frontier Foundation, a San

11  Francisco-based internet advocacy group that helped the Berkeley team investigate
    the ISPs. "This is a deep violation of users' trust and expectations on how the

12  Internet is supposed to function."

13       The ECPA has express exclusions from its prohibitions concerning interception and

14  alteration. See 18 U.S.C. § 2510 (5)(a); *see also Hall*, 396 F.3d at 503. Nonetheless, EFF

15  ignored the applicability of these safe harbors, substituting and expressing its own opinion that

16  Paxfire's Error Redirection and Direct Navigation services were somehow a "deep violation of

17  users' trust and expectations on how the Internet is supposed to function." Who is to determine

18  how the Internet "is supposed to function"? Here, EFF, the Internet vigilante, made that

19  determination: it is, itself. It does not like evolution and development of commercial technologies

20  on the Internet that erode what it views as the original, classical, and pure version of the Internet

21  whereby a user could "connect" to a website directly without additional and intervening services.

22  (Indeed, such a version of the Internet never existed and, to the extent it ever did, is long gone.)

23  For these reasons, EFF set out to blindside and destroy Paxfire's business model, and discourage

24  innovation, and succeeded.

25  [15] EFF published its own defamatory blog about Paxfire (Ex. B, Att. 1C), which it then later
    substantially retracted after being educated by Paxfire about the falsity of its allegations. (Ex. C,

26  Att. 6G.)
    [16] Exhibit JI, First Amended Answer, Affirmative Defenses, and Counterclaims. The

27  counterclaims are defamation and tortious interference with contract
    [17] Exhibit B, Attachment 1B.

28
    - 7 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS               Misc. CV12-80135 RS (DMR)

SER-25

1    The EFF article on August 4th, co-authored by Peter Eckersley and the three ICSI

2    researchers, provides yet further support for this motive:

3

4         For most users of the World Wide Web, visiting a website equals clicking on a link
          to the site or entering the site's name into their browser, and receiving the
5         corresponding page from the site. Users generally assume that the site's name is
          identical to the site itself, and essentially trust the site's authenticity if it looks as
6         usual and the browser does not pop up phishing warnings or other signs of trouble.
          Paxfire's misdirection of search traffic undermines this trust.

7

8         Paxfire **never** impersonated the website of any entity on the Internet, but merely used the

9    IP addresses of its own proxy servers when "passing through" the authentic webpages of search

10   engine sites; yet the stated concern of EFF was that Paxfire's covert "misdirection" (which did not

11   occur) of search traffic "undermines this trust" in the authenticity of webpages.  If EFF was truly

12   concerned about this issue, it could, and should, have contacted Paxfire before publishing its

13   article, and before encouraging Ms. Feist to bring its lawsuit.  It should have learned the truth.

14   Again, we are left with the inescapable conclusion that EFF purposely engaged in willful

15   blindness so as to instigate meritless and defamatory press directed at Paxfire and a meritless

16   lawsuit—all to forcibly impose its view of the "pure" Internet on ISPs and other network service

17   providers.  The *in terrorem* nature of the EFF-ICSI-Feist attack could have, and should have been

18   avoided if these entities were seriously concerned about legitimate privacy invasions as opposed to

19   using such protestations as a cloak for their efforts to put Paxfire's lawful—albeit perhaps

20   inconvenient to Internet purists—business model out of existence.

21        Among Ms. Feist's false allegations in her case, instigated and supported by EFF, are the

22   following things that Paxfire did **not** do:

23        (1) Paxfire did **not** know, identify, or compiled records of persons who were users of ISPs

24   and who engaged in searches using the Internet;

25        (2) Paxfire did **not** collect and compile information about users of ISPs in a manner that

26   constituted profiling of such users or the searches of such users;

27        (3) Paxfire did **not** share information about users and their searches with third parties;

28

- 8 -

1    (4) Paxfire did **not** sell information about users and their searches;

2    (5) Paxfire did **not** allow third parties to access information about users;

3    (6) Paxfire did **not** allow third parties to access searches by users of ISPs;

4    (7) Paxfire did **not** allow third parties to monitor searches by users of ISPs;

5    (8) Paxfire did **not** allow third parties to intercept searches by users;

6    (9) Paxfire did not disclose confidential and private information relating to the use of the

7    Internet by users;

8    (10) Paxfire did not convert personal information of users, including search histories, by

9    providing such to third parties;

10   (11) Paxfire did not receive or retain money from third parties as a result of sharing and/or

11   allowing access to the personal information of users; and

12   (12) Paxfire did not impersonate the webpage or site of Internet search engines.

13

14   **II.    LEGAL ARGUMENT**

15   Paxfire is entitled to EFF's evidence.  EFF is the party ultimately behind the New York

16   class action: it instigated this lawsuit, providing the information to Ms. Feist's lawyers before Ms.

17   Feist was ever contacted by her lawyers for this suit and told about Paxfire.  Indeed, during her

18   deposition Ms. Feist conceded she did not know if she ever had a search or keyword "redirected"

19   by RCN through Paxfire.  Appropriately, Paxfire served document and deposition subpoenas on

20   Eckersley and his employer EFF to learn what evidence they have that support the lawsuit.

21   As for Paxfire's Counterclaims, while Paxfire understands that an argument exists, under

22   the First Amendment, that Paxfire may have a heightened burden of proving fault in a "sham"

23   lawsuit or in defamation, nothing in the First Amendment shields EFF and Eckersley from

24   Paxfire's discovery conducted in Paxfire's effort to satisfy this burden.

25   In *Herbert v. Lando*, 441 U.S. 153 (1977), the U.S. Supreme Court rejected precisely the

26   arguments advanced here by EFF, saying that investigations into the "editorial process" for

27   falsehood or libelous reporting would not lead to self-censorship of stories that are documented

28

- 9 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                      Misc. CV12-80135 RS (DMR)

1    and true, but it would be "only reckless error [that] will be discouraged," something which would

2    not threaten the constitutionally protected freedom of the press.  Moreover, EFF is reminded that,

3    even under the California Constitution, Art. I, Sec. 2(a), it can be held "responsible for the abuse

4    of" the right to speak and publish freely.  While speech and advocacy, including associating with

5    others in bringing a lawsuit, enjoy a degree of protection, defamation and the bringing of a "sham"

6    lawsuit are actionable wrongs subject to the ordinary rules of discovery.  Finally, no special

7    privileges bar discovery of matters for which EFF and Eckersley are *fact* witnesses in support of

8    claims or defenses in the Feist action.

9        The subpoenas to EFF and Eckersley are narrowly drawn, seeking information specifically

10   relevant to Paxfire's defenses (and counterclaims).  In her Rule 26(a)(1) Disclosures, Ms. Feist has

11   expressly identified EFF and Mr. Eckersley as sources of information for her case in chief and for

12   discovery.[18]  What Paxfire seeks includes evidence concerning the nature of the Netalyzer;

13   information that EFF obtained, directly and through its collaborations with the ISI researchers and

14   Paxfire's competitors (such as Google and Microsoft); and anything else that will assist Paxfire in

15   disproving the technical allegations in Ms. Feist's ECPA claim as well as her tort claims brought

16   under New York law.  The document and Rule 30(b)(6) subpoenas also seek information that

17   would demonstrate a common scheme or plan, motive, malice, and absence of mistake, evidenced

18   by Mr. Eckersley's and EFF's intentional failure to disclose their connections to Ms. Feist's

19   lawyers and her lawsuit in EFF's blog postings.

20       **A.    State Law Does Not Apply**

21       Contrary to EFF's protestations, Paxfire does *not* agree that state law applies to this

22   dispute.  To the contrary, federal law applies.

23       The major claim brought by Ms. Feist is under ECPA, a federal statute, pursuant to which

24   federal question jurisdiction applies.  Paxfire seeks discovery to defend against this claim[19].  For

---

[18] Ex. K at15, Plaintiff Feist's Revised Rule 26(a)(1) Disclosures
[19] EFF apparently has seen that, in its opposition to the Motion by Jim Giles to Quash Paxfire's
subpoena to Mr. Giles, Paxfire argues that state law applies.  What EFF overlooks is that the
evidence sought from Mr. Giles concerns only Paxfire's counterclaims—defamation and tortious
interference with contract—which are purely New York state law claims. With regard to the
subpoenas served upon EFF and Mr. Eckersley Paxfire is seeking to obtain evidence to defend

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                    Misc. CV12-80135 RS (DMR)

1   this reason the justification, if any exists, for resisting discovery must arise from federal common

2   or statutory law. *See Eagle Precision Technologies, Inc. v. Robolix, Inc.,* 2005 U.S. Dist. LEXIS

3   47173, at *7 (S.D.Ca. 2005); *Boyd v. City & County of San Francisco,* 2006 U.S. Dist. LEXIS

4   27647 at *10 (N.D.Ca. 2006) ("Assertions of privilege in federal question cases are governed by

5   federal law, while state privilege law applies to purely state claims brought in federal court

6   pursuant to diversity jurisdiction. . . .  State law claims that are pendent to federal question cases,

7   however, are governed not by state law but by federal privilege law."); *see, e.g. Agster v.*

8   *Maricopa County*, 422 F.3d 826, 839 (9th Cir. 2005) (rejecting federal privilege for hospital peer

9   review report in prisoner death case); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d

10  100, 104 (3d Cir.1982) (federal rule favoring admissibility trumped state privilege claim); Fed. R.

11  Evid. 501, advisory committee note ("If the rule proposed here results in two conflicting bodies of

12  privilege law applying to the same piece of evidence in the same case, it is contemplated that the

13  rule favoring reception of the evidence should be applied."); *United States v. Nixon*, 418 U.S. 683,

14  710 (1974) (not even the President enjoys an absolute privilege).

15       **B.      No Privilege or Constitutional Right Shields EFF from This Routine Discovery**

16       In commencing Paxfire's rebuttal to EFF's assertion of "its" various privileges, we note

17  the following: although the Federal Rules allow restrictions on the disclosure of arguably relevant

18  information, *i.e.* Rules 45, 26(b)(3), 26(b)(4)(A), 26(b)(4)(C), the burden is the person objecting to

19  discovery to demonstrate each element justifying secrecy.

20       The Supreme Court has expressly rejected EFF's First Amendment "defense" to discovery.

21  *Herbert*, 441 U.S. 153 (no "editorial process" privilege in defamation case; the heightened burden

22  of proving "actual malice," rather than limits or ban on discovery, provides protection for First

23  Amendment rights).  "Given the required proof [actual malice], however, damages liability for

24  defamation abridges neither freedom of speech nor freedom of the press." *Id*. at 160.  In *Herbert*

25  the Court went on to focus on whether discovery would impermissibly infringe the First

26  itself from Ms. Feist's main claim, that is, an allegation that Paxfire violated ECPA.  This claim s

27  founded in federal statutory law and thus federal law, not state law, applies to the questions of
    privilege and the scope of discovery.

28

- 11 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                           Misc. CV12-80135 RS (DMR)

1  Amendment.  It found that it would not: "[T]hese cases [imposing the higher burden of proof did

2  not] suggest any First Amendment restriction on the sources from which the plaintiff could obtain

3  the necessary evidence to prove the critical elements of his cause of action. . . .  Inevitably, unless

4  liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer

5  would be open to examination. . . . [A]ccording an absolute privilege to the editorial process of a

6  media defendant in a libel case is not required, authorized, or presaged by our prior cases, and

7  would substantially enhance the burden of proving actual malice, contrary to the expectations of

8  *New York Times*, *Butts*, and similar cases."  *Id*. at 160, 169.  Indeed, the Court recognized that the

9  higher burden would lead to *more* discovery: "The plaintiff's burden is now considerably

10  expanded.  In every or almost every case, the plaintiff must focus on the editorial process and

11  prove a false publication attended by some degree of culpability on the part of the publisher."  *Id*.

12  at 176.

13          In rejecting the requested absolute "process" privilege, the Court observed that "the

14  suggested privilege for the editorial process would constitute a substantial interference with the

15  ability of a defamation plaintiff to establish the ingredients of malice as required by *New York*

16  *Times*."  *Id*. at 170.  Rejecting the suggestion that discovery into the "process" of preparing the

17  publication would impermissibly chill protected First Amendment activity, such "effects are

18  precisely what New York Times and other cases have held to be consistent with the First

19  Amendment.  Spreading false information in and of itself carries no First Amendment credentials.

20  '[T]here is no constitutional value in false statements of fact.' . . . If such proof results in liability

21  for damages which in turn discourages the publication of erroneous information known to be false

22  or probably false, this is no more than what our cases contemplate and does not abridge either

23  freedom of speech or of the press."  *Id*. at 171 [citation omitted].

24          The Court correctly explained that permitting discovery, as opposed to the recognition of

25  an absolute privilege, promotes the First Amendment value of accuracy without self-censorship:

26

27          In resolving the issue whether the publication was known or suspected to be false,
           it is only common sense to believe that inquiry from the author, with an opportunity
           to explain, will contribute to accuracy.  If the publication is false but there is an

28

- 12 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

SER-30

exonerating explanation, the defendant will surely testify to this effect.  Why should not the plaintiff be permitted to inquire before trial? On the other hand, if the publisher in fact had serious doubts about accuracy, but published nevertheless, no undue self-censorship will result from permitting the relevant inquiry. Only knowing or reckless error will be discouraged; and unless there is to be an absolute First Amendment privilege to inflict injury by knowing or reckless conduct, which respondents do not suggest, constitutional values will not be threatened.

*Id*. at 173.

The Court also considered and rejected EFF and Eckersley's argument (Motion at 10) that discovery would impermissibly interfere with internal deliberations essential the EFF's advocacy function:

It is also urged that frank discussion among reporters and editors will be dampened and sound editorial judgment endangered if such exchanges, oral or written, are subject to inquiry by defamation plaintiffs.  We do not doubt the direct relationship between consultation and discussion on the one hand and sound decisions on the other; but whether or not there is liability for the injury, the press has an obvious interest in avoiding the infliction of harm by the publication of false information, and it is not unreasonable to expect the media to invoke whatever procedures may be practicable and useful to that end.  Moreover, given exposure to liability when there is knowing or reckless error, there is even more reason to resort to prepublication precautions, such as a frank interchange of fact and opinion.  Accordingly, we find it difficult to believe that error-avoiding procedures will be terminated or stifled simply because there is liability for culpable error and because the editorial process will itself be examined in the tiny percentage of instances in which error is claimed and litigation ensues.  Nor is there sound reason to believe that editorial exchanges and the editorial process are so subject to distortion and to such recurring misunderstanding that they should be immune from examination in order to avoid erroneous judgments in defamation suits.

*Id*. at 173-74.  Here again, discovery promotes, rather than infringes, First Amendment values.

In *Seattle Times Co. V. Reinhart*, 467 U.S. 20, 37 (1984), the Court did not bar discovery, but instead approved the use of protective order precluding the release outside current litigation of broad discovery of a religious organization, including identities of persons making donations over five-year period and amounts.  *See also, e.g. Kerr v. U.S. Dist. Ct. For N. D. Cal.*, 426 U.S. 394, 405-06 (1976) (approving use of protective order restricting access to discovered information and potential for in camera review by district court in response to state claim of privilege in confidential communications among prison decision makers).

- 13 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                     Misc. CV12-80135 RS (DMR)

SER-31

1      The court in *Westmoreland v. CBS*, 97 F.R.D. 703, 706 (D.C.N.Y. 1983) also rejected a

2 similar claim that the First Amendment protected a self-critical appraisal internal report. Relying

3 on *Herbert*, the court observed that "inquisition" via discovery into the "editorial process"

4 implicated a "substantial and important interest, not lightly to be overridden in litigation, . . . [t]he

5 question in this case has, however, already been substantially answered by the Supreme Court in

6 *Herbert v. Lando*, which went much further."

7     **C.**     **No General Privilege Exists for Advocacy Organizations or Researchers**

8      There is no general rule or privilege exempting "advocacy," organizations, even those who

9 exercise their constitutional rights, from responding to routine discovery requests. *See, e.g.,*

10 *Wilkinsin v. FBI*, 111 F.R.D. 432, 437 (C.D. Cal. 1986) (no showing that discovery would impair

11 associational interests of civil rights group). Here, Paxfire in no way seeks to *prevent* EFF from

12 investigating and advocating for civil liberties issues arising in the context of the internet.[20] EFF

13 has admitted that it instigated the lawsuit. Paxfire simply seeks to discover what it knows about

14 the factual allegations Feist made against Paxfire in her Complaint, so as to understand the factual

15 basis for her Complaint. Further, Ms. Feist has listed a number of organizations and persons,

16 including the three previously identified ICSI researchers and Google and Microsoft, as well as

17 EFF and Mr. Eckersley, as having information about her claims.[21] Mr. Eckersley acknowledged

18 in his declaration that he discussed Paxfire's technology with these entities, and we can inquiry as

19 to the specifics of this information that led him, EFF, and Ms. Feist to bring the underlying

20 lawsuit. Paxfire is *not* seeking discovery because EFF and Eckersley "exercised" *their*

21 constitutional rights, but simply as part of its right to investigate the merits of (and defenses

22 against) Feist's allegations. Moreover, civil liability, *e.g.* in tort, is routinely imposed on those

23 who have "exercised" a constitutional right.

---

[20] *NAACP v. Button*, 371 U.S. 415 (1963) (unconstitutional ban on certain legal referrals; nothing
to do with ordinary discovery) and similar cases are thus inapposite. *See, e.g., Roberts v. U.S.
Jaycees*, 468 U.S. 609 (1984) (statutory ban on gender discrimination by civil organization did not
infringe right of free association; same).
[21] Ex. J, Plaintiff Feist's Revised Rule 26(a)(1) Disclosures at 11, 13, 15.

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS               Misc. CV12-80135 RS (DMR)

1   EFF is nothing like the political groups given some qualified protection for internal

2   discussions and formulations of views.  Here, the requested discovery primarily concerns EFF's

3   communications with outsiders, and internal information concerning Feist and Paxfire, and not the

4   internal formulation of general policy and strategy re its internet advocacy.  Any protection should

5   be limited to purely internal communications not specifically related to Feist or Paxfire.  *Perry v.*

6   *Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010) (limited protection).

7   Similarly, although there is protection for scientific research under the First Amendment,

8   there is no privilege barring discovery.[22]

9   **D.    No General Privilege Exists for Investigations**

10   EFF also seeks to avoid discovery because it is supposedly investigating potential abuses

11   of civil liberties and privacy on the internet.  While the justification for limiting discovery may be

12   higher where the alleged investigation is infused with promises of confidentiality to unnamed

13   sources, neither EFF nor Eckersley has interposed any such risk of betraying confidences: indeed,

14   they disclosed their information to Ms. Feist, the New Scientist, and to the public in blogs.

15   Further EFF lacks the necessary indicia of a truly independent press to justify protection.  *See,*

16   *e.g., Chevron v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011) (denying press privilege and ordering

17   disclosure of documentary "outtakes").  In *Chevron* the court explained: "Those who gather and

18   publish information because they have been commissioned to publish in order to serve the

19   objectives of others who have a stake in the subject of the reporting are not acting as an

---

20   [22] *See, e.g., United States v. IBM*, 83 F.R.D. 92 (S.D.N.Y. 1979) (no professional fellowship
privilege; no showing that discovery sought disclosure of genuinely confidential sources); *In Re*
21   *Popkin*, 460 F.2d 328 (1st Cir. 1972); *In Re Falk*, 332 F. Supp. 938 (D. Mass. 1971); *Deitchman v.*
*Squibb*, 740 F.2d 556, 561 (10th Cir. 1984) (no absolute privilege blocked disclosure from cancer
22   registry in products liability case); *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519
(M.D.N.C.1989) ("experts or researchers do not have any federal statutory, case law or common
23   law privilege which protects against their having to involuntarily share their expertise with the
parties in the litigation.  Nor does [state] law provide privilege protection for academic or
24   scientific researchers."); *In re Snyder*, 115 F.R.D. 211, 213 (D.Ariz.1987) ("there is no general
academic privilege protecting [the researcher's information]"); *Burka v. HHS*, 67 F.3d 508, 520-21
25   (D.C. Cir 1996) (FOIA exemption 5 case applying civil discovery rules, "we cannot say that there
is an established or well-settled practice of protecting research data in the realm of civil discovery
26   on the grounds that disclosure would harm a researcher's publication prospects."); *Application of*
*American Tobacco Co.*, 880 F.2d 1520, 1528-29 (2d Cir. 1989).

27

28

- 15 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                              Misc. CV12-80135 RS (DMR)

SER-33

1  independent press.  Those who do not retain independence as to what they will publish but are

2  subservient to the objectives of others who have a stake in what will be published have either a

3  weaker privilege or none at all. . . . The privilege is designed to support the press in its valuable

4  public service of seeking out and revealing truthful information. An undertaking to publish matter

5  in order to promote the interests of another, regardless of justification, does not serve the same

6  public interest, regardless of whether the resultant work may prove to be one of high quality. It is

7  not the policy of the law to exempt such undertakings from the obligation to produce information

8  relevant to a dispute before a court of law."

9

10       **E.      California Privilege Law Has No Application to this Case Because EFF is Not
                  "Press"**

11

12       Paxfire notes above that federal law (which does not have the privileges EFF attempts to

13  assert) applies to this dispute because the requested discovery concerns both federal law (Paxfire's

14  alleged violation of the Wiretap Act) and state law (Paxfire's alleged unjust enrichment and Feist's

15  defamation and interference with contractual advantage claims).  Thus, California state law,

    including its Shield Law, are not applicable.

16
         Additionally, California's press privileges, Cal. Const., Art I, Sec. 2(b) (the Shield law)
17
    and Cal. Evid. Code 1070(a), do not apply even assuming that California law does: here, EFF and
18
    Eckersley are not press.  If courts were to regard EFF's blogs as "press," and Mr. Eckersley as a
19
    "reporter," then the privilege would literally swallow up, and immunize from routine discovery,
20
    every corporation, individual, or other entity that published a "news" blog, every researcher that
21
    published in academic journals, and every vigilante with a Facebook page.  The ease and
22
    efficiency of the internet as a communications tool cannot expand the press privilege to a leviathan
23
    that swallows the discovery rules.  If this is to be done, it must be done by the legislature and not
24
    by judicial fiat.
25
         EFF's website[23] describes itself as a militant warrior, with a staff of technologists and
26
    activists, not as the "press" or media with a staff of neutral reporters:
27

---

[23] *See* www.eff.org [visited 6/15/12].

28

- 16 -

**SER-34**

> When our freedoms in the networked world come under attack, [EFF] is the first line of defense. . . . From the beginning, EFF has championed the public interest in every crucial battle effecting digital rights. . . . EFF achieves significant victories on behalf of consumers and the general public. EFF fights for freedom primarily in the courts, bringing and defending lawsuits even when that means taking on the US government or large corporations. By mobilizing more than 140,000 concerned citizens through our Action Center, EFF beats back bad legislation. In addition to advising policymakers, educates the press and public.

By its own admission, EFF "educates" the press: it is not *the* press. As a public figure, EFF is frequently "in the news," but that is quite different than "reporting the news." The shield law is only available to a "newspaper, magazine, or other periodical publication"—not EFF's website.

Moreover, EFF lacks the essential ingredient of media entitled to claim the privilege, *e.g.*, independence. Eckersley admits that he has been a "paid consultant" to Feist's counsel, apparently on similar issues related to "network neutrality."[24] There was at least some consideration that Mr. Eckersley would act as a "paid expert consultant in this particular matter."[25] And EFF instigated the suit for its own purposes.

Mr. Eckersley's lack of "press" independence is truly startling. He claims to have had detailed discussions with several self-styled experts at Berkley and in New York about Paxfire and "confidential" conversations with Paxfire's competitors at Google, Yahoo, and Microsoft. But he didn't have a *single* communication with Paxfire concerning its supposedly troublesome activities. If his concerns for civil liberties were genuine, and not a sham or a shill for Paxfire's competitors, he would simply have picked up the phone and called Paxfire before launching a lawsuit filled with demonstrably false and defamatory allegations. His actions are those of a partisan, vigilante, or a shill for Paxfire's competitors, not those of the "press" nor of a *bona fide* advocate for "civil liberties."

---

[24] Ex. F, Decl. P. Eckersley at ¶ 19.
[25] *Id*. at ¶ 20.

- 17 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

1    The core concern of the "shield law" is the protection of confidential sources.  Mr.

2  Eckersley states that he "implicitly or explicitly" promised by sources confidentiality,[26] but there

3  is no listing of specific conversations or of "sources."  Moreover, these "sources" are apparently at

4  ICSI, Google, Yahoo, and Microsoft, competitors of Paxfire, and the topics of discussions related

5  to Paxfire, not any "whistleblower' wrongdoing at their respective companies.  The information

6  communicated appears to be purely of a commercial nature and not the sort of sensitive

7  information related to intimate personal details, politics, medical privacy, or "internal" misconduct

8  that is the type of "confidential" information the "shield" was designed to protect.

9    Similarly, the status of EFF (as a self-appointed internet activist) and Eckersley (as a paid

10  consultant, expert, and technologist) deny them any developing common law privilege for non-

11  party journalists.  EFF's function was to take down Paxfire and not to simply report on Paxfire's

12  activities as a neutral and independent reporter.  EFF absolutely has the right to be an activist but,

13  at least with respect to Paxfire, it cannot at the same time wrap itself in any of the press privileges.

14  In contrast, the non-party Seattle Times investigative reporter from whom discovery was sought in

15  *Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D. 679 (W.D. Wash. 2002), was

16  undisputedly an independent journalist.  There, the only question was whether he lost that status,

17  and forfeited the qualified privilege, because he was said to have a "bias" favoring plaintiffs who

18  were patients in a class action challenging a bone marrow research protocol.  The court held that

19  he did not lose the privilege because of this "bias."  *Id*. at 681.  The court observed that Wright

20  "was [not] being paid by plaintiffs, or shown that he was *otherwise motivated* to investigate

21  defendants for non-journalistic purposes."  (Italics added.)  Here, Eckersley had been paid by

22  Feist's counsel before, considered being paid in this case, now serves as an "informal consultant,"

23  and from the outset of his "investigation" had the non-journalistic purpose of protecting the purity

24  of the Internet from what he believed was abusive conduct by Paxfire, doing so by putting Paxfire

25  out of business—and doing so in league with Paxfire's competitors Google and Microsoft.  He is

26  not entitled to the privilege.

27  ───────────────
[26] *Id*. at  ¶ 17.

28

- 18 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

1    The privileges asserted by the "non-party" journalists in the cases cited by EFF at pages

2    19-20 of its Motion stand in stark contrast to the status of EFF and Eckersley in the present

3    controversy.  Everything Plaintiff Feist "knows" about the case she learned from EFF with its

4    associated researchers.  The discovery sought by Paxfire of EFF is unquestionably relevant.  Since

5    Feist only learned about Paxfire from EFF and its associates, the focus of the "actual malice"

6    inquiry will be on EFF and Eckersley as well as Ms. Feist as the true instigators of this litigation.

7    In contrast, the court in *Schoen v. Schoen*, 48 F.3d 412, 416-17 (9th Cir. 1995) held only that

8    disclosure could not be used to prove actual malice due to a timing issue and as would it be

9    cumulative of evidence already in the record.

10    **F.    EFF and Eckersley Are Subject to Routine Discovery as Fact Witnesses**

11    Feist cannot shield what EFF and Eckersley "know" as fact witnesses simply by

12    designating them as "informal consultants," a designation that suggests neutrality not present here.

13    Feist had no idea about Paxfire or what Paxfire allegedly "did" that "injured" Feist until EFF told

14    her counsel.  It was EFF and Eckersley that learned, through their own work and through their

15    colleagues, the "facts" ultimately set forth in Feist's complaint.  Thus, they are more akin to a

16    patient's treating physician and not to a "distant" academic expert, and subject to routine

17    discovery and no protection applies[27]

18

19

---

20    [27] *See, e.g., Ngo v. Standard Tools & Equipment, Co., Inc.*, 197 F.R.D. 263 (D. Md. 2000);
*Williams v. Rene*, 886 F. Supp. 1214 (D.V.I. 1995), *rev'd on other grounds*, 72 F.3d 1096 (3d Cir.

21    1995); *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435 (W.D. N.Y. 1985) (Neurologist who had
been treating plaintiff for back injuries over prior 14 years, and whom plaintiff had designated an

22    expert witness for trial, would not be considered an "expert" but rather an "actor" or "viewer.");
*Keith v. Van Dorn Plastic Machinery Co*., 86 F.R.D. 458 (E.D. Pa. 1980) (an "actor or viewer"

23    expert witness refers, for example, to a doctor who performed an operation that gave rise to a
malpractice claim, or to an actuary who witnessed an automobile accident, and such witnesses

24    should be viewed as fact witnesses); *Leviathan, Inc. v. M/S Alaska Maru*, 86 F.R.D. 8 (W.D.
Wash. 1979); *Barkwell v. Sturm Ruger Co., Inc.*, 79 F.R.D. 444, 446 (D. Alaska 1978)

25    (information acquired and opinions formed by defendant's expert prior to his retention by
defendant was discoverable by plaintiffs without regard to the expert's status as an expert, since

26    the rule does not apply to facts known or opinions held that were not acquired or developed in
anticipation of litigation); *Harasimowicz v. McAllister*, 78 F.R.D. 319 (E.D. Pa. 1978); *Norfin, Inc.*

27    *v. Intern. Business Machs. Corp.*, 74 F.R.D. 529 (D. Colo. 1977).

28

- 19 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                    Misc. CV12-80135 RS (DMR)

SER-37

### G.   Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield EFF

EFF claims (Motion at 21-22) that Rule 26(b)(4)(D) shields them from discovery because they were "informally consulted in preparation for trial."  At most, that protection began on July 25, 2012; prior to that date there was no client and no litigation.  Thereafter, any applicable privilege was waived by prior disclosure, *e.g.* on the EFF blogs and disclosure to the press.

The attorney client privilege protects the communication of confidential information between attorney and client where the client seeks legal advice.  *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).  The work product doctrine protects the work product of an attorney created during or in anticipation of litigation, *Hickman v Taylor*, 329 U.S. 495 (1947).  Neither applies *before an attorney has a client.  See Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568 (D.S.D. 2010) (holding that a factual investigation conducted prior to the decision by a person to bring a lawsuit does not invoke the work product doctrine) (citations omitted); *800 Front Street Corp. v. Travelers Property Casualty Co. of America*, 2006 U.S.Dist. LEXIS 84160 at *11 (E.D.N.Y. Nov. 20, 2006) (holding that work product doctrine applied where consulting expert was retained by counsel "shortly after they were given authorization by the bankruptcy court to pursue the insurance claim as well as litigation").  Thus, assuming that one or both of these protections applied, the earliest that either could apply is after July 25th, when Ms. Kim Richman walked Ms. Feist through the Netalyzr program and, as a result, convinced Ms. Feist to become his client to bring this lawsuit.  Prior to this time, there was no client, no lawsuit, and nothing to which the confidentiality protections of the attorney client privilege and the work product doctrine could attach.

Material prepared in the ordinary course of a business function and thereafter used in litigation does not, by such use, acquire the protection of the work product doctrine, *Lamar Advertising of South Dakota, Inc*., 267 F.R.D. at 577-78; nor of the attorney client privilege, *Postal Serv. v. Phelps Dodge Ref. Corp*., 852 F. Supp. 156, 161 (E.D.N.Y. 1994)(work by engineering firm not covered by the attorney-client privilege where consultant's opinion was based

- 20 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                              Misc. CV12-80135 RS (DMR)

SER-38

1  on factual and scientific evidence rather than client confidence).  As explained in *William A. Gross*

2  *Construction Associates, Inc.*, 262 F.R.D. at 360 (citation omitted):

3       However, there is no work product protection for documents that are prepared in
        the ordinary course of business or that would have been created in essentially
        similar form irrespective of the litigation. . . .Even if such documents might also
4       help in preparation for litigation, they do not qualify for protection because it could
        not fairly be said that they were created "because of" actual or impending litigation.

5

6       Here, Paxfire must prepare its defense.  It is entitled to explore in discovery the basis of

7  Ms. Feist's allegations.  Ms. Feist has expressly alleged in her Complaint that she "learned" that

8  her Internet searches were being wiretapped, profiled, and disclosed and sold to third parties from

9  information provided by these researchers, by name, and by the Netalyzr used by these researchers

10  and EFF.  As explained by the District Court in *Securities Exchange Commission v. Collins &*

11  *Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009):

12

13       Rule 11 of the Federal Rules of Civil Procedure requires all parties to have
         "evidentiary       support"      for      the      factual      contentions      in      their
         pleadings.Document1zzB036362017889416   Given that requirement, producing
14       the compilations of documents that support the factual allegations of a complaint
         reveals no more than that already revealed by the filing of the complaint.

15

16       The information held by EFF is needed by Paxfire to prepare its defense as well as its

17  counterclaims; it is unable to get this information from any other source.  As explained, the

18  Netalyzr cannot provide the information that Ms. Feist claims that it did.  Thus, Paxfire must

19  obtain the documents from persons who provided Ms. Feist the information on which she based

20  her complaint. This includes EFF.

21       Finally, to have protection under either doctrine, the information must be confidential.  The

22  information sought has been disclosed by the ICSI researchers to Jim Giles of the New Scientist,

23  and by EFF to the public through its Internet web site.  No confidentiality exists.

24       With regard to the attorney client privilege, and with the exception of internal

25  communications between, on the one hand, Ms. Cohn and other attorneys within EFF, and, on the

26  other hand, Mr. Eckersley and other EFF employees, EFF cannot claim the attorney-client

27  privilege.  There is no client agreement between EFF and either Ms. Feist, Milberg LLP or Reese

28

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                                    Misc. CV12-80135 RS (DMR)

1  Richman LLP.

2  **H.  The Need for Discovery Outweighs Any Speculative Need for Secrecy**

3  To the extent a balancing of competing interests is required to resolve this dispute,[28] that

4  balance favors discovery.  Relevant factors include nature of the suit, extent to which information

5  sought goes to the "heart of the claim" of the party seeking disclosure, whether the party seeking

6  discovery has exhausted other sources for the information in question and impact of requested

7  discovery on First Amendment interests.  *Shoen v. Shoen*, 5 F.3d 1289, 1293 (1993).  EFF and

8  Eckersley are not independent journalists entitled to claim the journalists' privilege for non-

9  parties: they instigated this suit.  Eckersley even considered, for a time, being a paid consultant,

10  but now claims to be an "informal" consultant to Feist's counsel.  Thus, there is an insufficient

11  "First Amendment" interest at stake to trigger any balancing inquiry, even under the qualified

12  privilege for non-party journalists.

13  Even if there were, Paxfire meets any test.  The requested discovery goes to the heart of

14  both the Feist suit against Paxfire, *e.g.*, what did Paxfire "do," if anything, that "hurt" Feist, *and* to

15  Paxfire's defamation/interference counterclaims against Feist, e.g., did "she" act with actual

16  malice in making false and defamatory allegations against Paxfire.  Paxfire already deposed her,

17  thus exhausting "her" knowledge.  Her depositions as well as her Rule 26(a)(1) disclosures

18  provide no basis for her allegations: she testified that she basically had *no* independent knowledge

19  concerning Paxfire and that everything she "knew" she learned from EFF and its associates.

20  ///

21  

22  [28] *See, e.g., Application of Consumers Union of U.S.*, 495 F. Supp. 582 (S.D.N.Y. 1980).

23  

24  

25  

26  

27  

28  

- 22 -

PAXFIRE, INC.'S OPPOSITION TO EFF'S AND ECKERSLEY'S
MOTION TO QUASH SUBPOENAS                    Misc. CV12-80135 RS (DMR)

SER-40

1

2                                    **CONCLUSION**

3

4          For the aforesaid reasons, the Motion of EFF and Mr. Peter Eckersley to Quash Paxfire's

5   subpoenas and their request for a protective order should be denied.  Discovery as sought by

6   Paxfire should go forward.

7

8

9   Dated:  June 22, 2012                    BERGESON, LLP

10

11                                    _____
                                              /s/
                                           Jaideep Venkatesan
12
                                     Attorneys for Defendant
13                                   PAXFIRE, INC.

14  Dated:  June 22, 2012                    ANDREW GROSSO & ASSOCIATES

15

16                                    _____
                                              /s/
                                           Andrew Grosso
17
                                     Attorneys for Defendant
18                                   PAXFIRE, INC.

19  OF COUNSEL:
    James Moody, Esq.
20

21

22

23

24

25

26

27

28
    _____
                                        - 23 -

# Tab 4

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  JAIDEEP VENKATESAN, Bar No. 211386
   jvenkatesan@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:  (408) 297-6000

7  ANDREW GROSSO, Esq., *pro hac vice* pending
   Agrosso@acm.org
8  ANDREW GROSSO & ASSOCIATES
   Georgetown Place
9  1101 Thirtieth St., NW, Suite 300
   Washington, D.C. 20007
10 Telephone:  (202) 298-6500
   Facsimile:  (202) 298-5599

11

12 Attorneys for Defendant
   PAXFIRE, INC.

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                SAN FRANCISCO DIVISION

17

18 BETSY FEIST, individually, and on behalf of      Misc. Case No. C-1280119 IS (NC)
   all others similarly situated,
19                                                  **OPPOSITION OF DEFENDANT PAXFIRE**
                                      Plaintiffs,   **TO MOTION OF WITNESS JIM GILES TO**
20                                                  **QUASH SUBPOENA DUCES TECUM**
           vs.
21
   RCN CORPORATION and                             Mag. Judge:  Hon. Nathanael Cousins
22 PAXFIRE, INC.,                                   Ctrm:   A, 15th Floor

23                                    Defendants.

24

25

26

27

28

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM        Misc. Case No. C-1280119 IS (NC)

SER-42

1    Defendant Paxfire, Inc. ("Paxfire") hereby Opposes the Motion of Witness Jim Giles to

2  Quash the *Subpoena Duces Tecum* served personally upon him on May 2, 2012.  In support of this

3  Opposition Paxfire submits the following:

4    Mr. Giles has been lawfully served with a subpoena issued by this Honorable Court in an

5  action originating in the United States District Court for the Southern District of New York.  Mr.

6  Giles is not being asked to submit to a deposition or to testify in court, and he is not a party to that

7  action.  The subpoena commands the production of a limited category of documents, which at the

8  time of its issuance no longer had any *indicia* of confidentiality.  Further, Mr. Giles filed his

9  motion to quash before making any attempt to meet and confer in an effort to narrow the scope of

10  the subpoena or to otherwise resolve this dispute.  Mr. Giles' motion must be denied and the

11  subpoena enforced.

12    **MEMORANDUM**

13  **I.    Background**

14    The underlying case in this matter originates in the Southern District of New York.  It is a

15  putative class action brought by one Ms. Betsy Feist, a New York City resident, against her

16  Internet Service Provider and a small Internet company located in Northern Virginia.  These

17  companies are, respectively, the RCN Corporation and Paxfire, Inc.  Paxfire has brought

18  counterclaims against Ms. Feist.

19    In brief, Ms. Feist complains that the defendants collected her personal and confidential

20  Internet search information from her own searches conducted on RCN's network; constructed a

21  profile of her search history; and then distributed and sold that search history to third parties.  Both

22  RCN and Paxfire deny that any such collection, profiling, distribution, or sales took place.  Ms.

23  Feist also alleges that RCN and Paxfire engaged in wiretapping, that is, that they "highjacked" Ms.

24  Feist's Internet searches and redirected them to websites operated by the holders of certain

25  trademarks whenever Ms. Feist entered those trademarks into the search bar located in the border

26  of her Internet browser.  Both RCN and Paxfire assert that all such redirection, or "direct

27  navigation," to trademark sites was through the use of electronic devices utilized in the ordinary

28  course of RCN's business, and thus falls under the "ordinary course of business" exception of the

- 1 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1   Electronic Communications Privacy Act ("ECPA"), 18 U.S.C.§ 2510 (4)-(5). *See Hall v.*

2   *EarthLink, Inc.*, 396 F.3d 500, 503 (2d Cir. 2005).

3          A detailed description of the relevant events, with supporting documents, is found in a

4   papers filed in the underlying case in the Southern District of New York.[1]  A copy of this filing

5   and its accompanying exhibits are attached to the Declaration of Andrew Grosso ("Grosso Decl.").

6   *See* Exhibits 1-6.

7          Ms. Feist's lawsuit was filed days before Paxfire was to receive an offer for sale of its

8   corporate assets in the amount of $10 million.  Not only did her lawsuit scuttle this sale, but it

9   effectively destroyed the company.  Paxfire has asserted counterclaims alleging tortious

10  interference with business relationships and defamation.

11         Paxfire's counterclaims allege that two organizations, the Electronic Frontier Foundation

12  ("EFF") and the International Computer Science Institute ("ICSI"), or individuals associated with

13  these organizations, conducted themselves as self-appointed "Internet vigilantes," and embarked

14  upon a scheme to destroy Paxfire's business model.  As part of that scheme, Ms. Feist was

15  solicited and agreed to lend her name to a sham class action lawsuit alleging meritless allegations

16  against Paxfire.  Also as part of this scheme, both Christopher Kreibich of ICSI and Ms. Feist's

17  attorneys communicated with the press before the filing of Ms. Feist lawsuit, ensuring widespread

18  publicity for the false allegations of EFF, ICSI, and Ms. Feist once the day for the filing of the

19  lawsuit came to pass. Among the news organizations to which Ms. Feist, through her attorneys,

20  leaked her defamatory statements before she filed her lawsuit was the New Scientist.  Specifically,

21  these communications were with Jim Giles, a freelance reporter for that publication.  Ms. Feist's

22  attorneys have freely disclosed this fact, providing emails establishing the existence of these

---

[1]  Paxfire hereby requests, pursuant to F.R.E. 201, that the Court take judicial notice of the
following documents attached to the Grosso Decl:  Amended with Exhibits Counterclaim Plaintiff
Paxfire, Inc.'s, Consolidated:(1) Reply to Opposition of Counterclaim Defendant Betsy Feist to
Counterclaim Plaintiff Paxfire's Motion For Leave To Amend Answer, Affirmative Defenses, and
Counterclaims; and (2) Opposition to Motion of Counterclaim Defendant Betsy Feist for
Sanctions Pursuant to Rule 11.  This material is being provided to insure that the records in both
this forum and that of the underlying lawsuit, the Southern District of New York, are consistent.
For this Court's information, the referenced motion for leave to amend was granted; and the
referenced motion for sanctions was denied.

- 2 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1  communications to Paxfire, thus evaporating any cloak of confidentiality they might otherwise

2  have enjoyed pursuant to the privileges and doctrines now asserted by Mr. Giles.

3         On August 4, 2011, the day that Ms. Feist filed her lawsuit, the New Scientist published an

4  article containing several false and defamatory statements about Paxfire that resulted in Paxfire

5  losing customers and the deal to purchase Paxfire's assets being quashed.  Although the article

6  asserted the information it contained was based upon Ms. Feist's lawsuit, in fact the article was

7  published **prior** to the lawsuit being filed.

8         Paxfire has served a *subpoena duces tecum* on Mr. Giles seeking the written

9  communications between, on the one hand, Mr. Giles and, and the other, Ms. Feist, her attorneys,

10  and personnel from EFF and ICSI.  As already explained, some of these communications have

11  already been provided by Ms. Feist through her attorneys.  Obtaining the remainder of these

12  communications is necessary to establish the exact wording of the defamatory statements made to

13  the New Scientist; the specific individuals who made them; and to confirm that Mr. Giles did not

14  obtain his information from another source.

15  **II.     Preliminary Matters**

16         Before commencing its argument as to why Mr. Giles' motion must be denied, and why its

17  *subpoena duces tecum* must be enforced, Paxfire addresses two preliminary but significant

18  misstatements in the papers submitted in support of Mr. Giles' motion.

19         The first appears in the affidavit of Mr. Jacobs, who is Mr. Giles' attorney.  Therein he

20  states that he discussed with counsel for Paxfire the scope of the subpoena and the need for this

21  subpoena to be narrowed. Decl. D. Jacob ¶ 2.  The implication of these presentations is that a meet

22  and confer was held with Paxfire's counsel about the scope of the subpoena, that it failed, and thus

23  these matters must be resolved by the Court.  This is incorrect.

24         Paxfire's consel Andrew Grosso sent a draft list to Mr. Giles of the documents for which

25  Paxfire initially intended to seek production.  A copy of that list is attached to the Declaration of

26  Andrew Grosso. (Ex. 5.)  Paxfire's counsel was then notified by the New Scientist that Mr. Jacobs

27  was representing Mr. Giles.  Paxfire's counsel contacted Mr. Jacobs on or about April 5, 2012, to

28  determine among other matters whether Mr. Jacobs would accept the *subpoenas duces tecum* for

- 3 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1    Mr. Giles and for the New Scientist.  Mr. Jacobs said he would not, and that he intended to file a

2    motion to quash Mr. Giles subpoena under the California Shield Law.  Eventually Paxfire served

3    the instant subpoena.  As can be seen by comparing page 5 of the subpoena eventually served on

4    Mr. Giles with the initial list sent to Mr. Giles, Paxfire significantly narrowed the scope of the

5    documents requested.  Notwithstanding this fact, Mr. Jacobs has to-date avoided any meet and

6    confer on any aspect of the final subpoena, despite Paxfire's counsel's written attempts to engage

7    in such discussions.  Decl. A. Grosso. (Ex. 5.)

8         The second misstatement is found in the Declaration of Mr. Jim Giles.  He states that the

9    article "disclosed that a class action lawsuit had been filed by an unnamed plaintiff by the law

10   firms Reese Richman and Milberg . . . . "  Decl. J. Giles ¶ 4.  In fact, his article was published

11   prior to this lawsuit having been filed.  This is significant, because Paxfire desires to obtain the

12   written communications between Mr. Giles and these law firms that occurred prior to the filing of

13   the lawsuit, and thus for a period when the judicial privilege (which protects communications

14   about a lawsuit once it is filed) does not apply.

15   **III.**     **The Applicable Law in this Dispute is that of New York**

16         Fed. R. Evid. states that:

17         Except as otherwise required by the Constitution of the United States or provided
           by Act of Congress or in rules prescribed by the Supreme Court ... the privilege of a
18         witness ... shall be governed by the principles of the common law as they may be
           interpreted by the courts of the United States in the light of reason and experience.
19         However, in civil actions and proceedings, with respect to an element of a claim or
           defense as to which State law supplies the rule of decision, the privilege of a
20         witness ... shall be determined in accordance with State law.

21         Although FRE 501 requires applying state privilege law in diversity cases that contain

22   purely state claims, it allows the use of federal law in diversity cases where there is a federal

23   claim. *Id. at Advisory Committee's Note; see Eagle Precision Technologies, Inc. v. Robolix, Inc.,*

24   2005 U.S. Dist. LEXIS 47173, at *7 (S.D.Ca. 2005); *see also Boyd v. City & County of San*

25   *Francisco*, 2006 U.S. Dist. LEXIS 27647 at *10 (N.D.Ca. 2006) ("Assertions of privilege in

26   federal question cases are governed by federal law, while state privilege law applies to purely state

27   claims brought in federal court pursuant to diversity jurisdiction. . . .  State law claims that are

28   pendent to federal question cases, however, are governed not by state law but by federal privilege

- 4 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1    law.").

2         Here the dispute in question is the enforcement of a judicial subpoena concerning claims

3    made under New York law.  The underlying complaint is based upon both diversity and federal

4    question jurisdiction.  The question presented is whether federal common law, California law, or

5    State law applies.  Based upon the analysis below, the correct answer appears to be the law of New

6    York.

7         Mr. Giles relies upon *Pepsico v. Baird, Kurz& Dobson, LLP*, 206 F.R.D. (D. Mo. 2002),

8    *affirmed in part and reversed in part on other grounds*, 305 F.3d 813 (8th 2002), for his argument

9    that California law applies.  However, a reading of this case demonstrates that it holds the exact

10   opposite.  The court looked to the supreme court of the state in which it sat – Missouri – to

11   determine the appropriate choice of law rule, and then, relying upon holdings from the Missouri

12   Supreme Court, determined that that Illinois law applied to the privilege question, not the law of

13   Missouri:

14        In the present case, documents are sought from a Missouri corporate entity for use
          in a federal court sitting in Illinois wherein jurisdiction is based on both federal
15        question jurisdiction (alleged unconstitutionality of an Illinois statute) and diversity
          of citizenship (state claims apparently based on both New York and Illinois law).
16        The defendant is a Missouri corporation with its principal place of business in
          Illinois (the bottling plant which is the subject of the underlying litigation). BKD is
17        licensed both in Missouri and Illinois. Although BKD's main office is in Missouri
          and the documents in question were primarily generated in Missouri, the
18        documents in question concern on-site audits and evaluations of the plant facility
          operations in Illinois. Upon application of the "most significant relationship" test
19        and consideration of Missouri caselaw, this Court finds that Illinois law governs the
          existence and scope of the accountant-client privilege.

20

21        305 F.3d at 650-51.

22         For choice of law questions, California courts apply a "government interest analysis."

23   *Wolpin v. Philip Morris Inc*., 189 F.R.D. 418, 423 (C.D.Ca. 1999), *citing Hurtado v. Superior*

24   *Court,* 11 Cal. 3d 574, 579-80, 114 Cal. Rptr. 106, 522 P.2d 666 (1974); *see also Reich v. Purcell*,

25   67 Cal. 2d 551 (1967) (applying Ohio law where harm occurred in Missouri, defendant was

26   domiciled in California, and forum of court proceeding was California).

27         In finding that Florida law applied to the subpoena served in California, the *Wolpin*

28   explained its analysis as follows:

- 5 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1    Under this approach, courts examine the underlying policies of the state laws
2    involved to determine the respective government interests at stake. Generally
     speaking the forum will apply its own rule of decision "unless a party litigant
3    timely invokes the law of a foreign state. In such event he must demonstrate that
     the latter rule of decision will further the interest of the foreign state and therefore
4    that it is an appropriate one for the forum to apply to the case before it." [citations
     omitted].

5    In *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1202-03 (2011), the California Supreme

6    Court explained the governmental interest analysis as a three step process:

7        (1)    The court first determines the relevant laws of the potentially affected jurisdictions;

8        (2)    If there is a difference, the court then examines each jurisdiction's interest in the

9               application of its own law under the circumstance of the case;

10       (3)    Finally, if the court finds that there is true conflict, the court examines and

11              compares the nature and strength of the interests of each jurisdiction in the

12              application of its own law to "determine which state's interest would be more

13              impaired if its policy were subordinated to the policy of the other state, and then

14              ultimately applies 'the law of the state whose interest would be the more impaired

15              if its law were not applied."

16       To apply this analysis to the instant dispute, we first compare the New York and California

17   Shield Laws.

18       New York's Shield Law, N.Y. Civ. Rights Law § 79-h(b)-(c) (McKinney 2011), provides

19   journalists with "an absolute privilege from testifying with regard to news obtained under a

20   promise of confidentiality, but only a qualified privilege with regard to news that is both

21   unpublished and not obtained under a promise of confidentiality." *Baker v. Goldman Sachs &*

22   *Co.*, 669 F.3d 105 (2012). In comparison, the California Shield Law provides reporters with an

23   absolute privilege for confidential sources and for unpublished information. *See infra.* Here, a real

24   difference exists, in that the information at issue was not obtained by Mr. Giles under a promise of

25   confidentiality; and, to whatever extent such promise of confidentiality might nonetheless be

26   deemed to exist, it was waived by Ms. Feist through her attorneys who voluntarily provided

27   Paxfire with emails documenting the existence of the subject communications and, further, in the

28   article published by Mr. Giles that named the law firms.

- 6 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

We next examine the interests of the two states. Here, the interest of New York is greater than that of California: (1) the subpoena seeks evidence for an underlying lawsuit pending in the Southern District of New York; (2) the Plaintiff resides in New York, and no defendant resides in California; (3) the torts naming Paxfire and Ms. Feist as parties in the Complaint and Counterclaims (Ms. Feist is the Plaintiff-Counterclaim Defendant, and Paxfire is the Defendant-Counterclaim Plaintiff) are based upon New York law[2]; and (4) the defamatory statements at issue were made by Plaintiff, through her attorneys and agents to Mr. Giles, while they sat in New York. Finally, although Mr. Giles received the communications while he sat in San Francisco, he received them for the purpose of publishing an article for the New Scientist, which has its United States business offices in Waltham, Massachusetts. Thus Mr. Giles' freelance reporting was done for an out-of-state magazine which published the article out-of-state, that is, on the Internet.[3]

Finally, we apply the third prong of the analysis. Here, if New York's law was not applied, then Paxfire would be unable to prove essential elements of its defamation counterclaim, specifically, the exact language that was published by Ms. Feist to the New Scientist for further publication; and the specific individuals, acting on behalf of Ms. Feist who made those statements. New York has an interest in seeing that its residents do not use or abuse the press, and its privileges, to engage in defamatory conduct without recourse to those damaged by such conduct.

Paxfire meets New York's test for overcoming the qualified privilege and the relevant documents should be produced, *see Baker*, 669 F.3d at 108: (1) the information sought is highly material and relevant; (2) it is necessary to Paxfire's counterclaims, particularly in light of the heightened burden of proof that Paxfire may be called upon to carry on its defamation count,[4] *see Herbert v. Lando*, 441 U.S. 153 (1979); and (3) it is not obtainable from any other sources,

---

[2] Although Codefendant RCN Corp. is named in several causes of action based upon Virginia law, Paxfire is not named in those counts.

[3] Given the ubiquitous publishing capabilities of the Internet, holding that California law, including the California Shield Law, applies in this dispute would encourage forum shopping for freelance reporters for reporting of any article that has arguably more than a local interest. *Cf., Reich v. Purcell*, 67 Cal. 2d 551 (1967)(warning against factors that might invite forum shopping for lawsuits).

[4] Ms. Feist has argued in the Southern District of New York that Paxfire must prove actual malice inasmuch as Paxfire's conduct concerned a matter of great public interest. Mr. Giles appears to

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1  inasmuch as Ms. Feist has refused to acknowledge that any such material exists and has

2  affirmatively stated that her own "hard drive" has crashed and thus she cannot produce emails.

3  (Ex. 6.)  Since Paxfire is not seeking Mr. Giles' testimony, and he will not be subjected to cross-

4  examination, there is no risk that the production of information may spill-over into information

5  that is absolutely protected.  *Cf.*, *Baker*, 669 F.3d at 109 (finding that such examination posed

6  unacceptable risk of infringing the absolute privilege).

7  **IV.     The California Shield Law is Not Applicable**

8       Further, neither the California Shield Law[5] nor the reporter privilege apply: the

9  communications at issue were not anonymous (a necessary condition for the reporter privilege and

10  for one of the protections of the Shield Law); and any protections have been waived by Ms. Feist's

11  attorneys who have voluntarily (*e.g.*, without a subpoena or other court order) provided them to

12  Paxfire, and by EFF and ICSI reseachers who published their own articles about the same

13  material.  *See* Exhibit 1.  Paxfire now seeks the remaining written communications.

14       The Shield law, article I, section 2(b), enacted in its constitutional form in 1980, provides

15  that a newsperson "shall not be adjudged in contempt . . . for refusing to disclose the source of any

16  information procured while so connected or employed [as a newsperson] . . . or for refusing to

17

18  adopt the same position in his papers, referring to this matter as the "search inquiry redirection
   scandal."  Giles' Memorandum of Points and Authorities at 4.
   [5]  (a) A publisher, editor, reporter, or other person connected with or employed upon a newspaper,
19  magazine, or other periodical publication, or by a press association or wire service, or any person
   who has been so connected or employed, cannot be adjudged in contempt by a judicial, legislative,
20  administrative body, or any other body having the power to issue subpoenas, for refusing to
   disclose, in any proceeding as defined in Section 901, the source of any information procured
21  while so connected or employed for publication in a newspaper, magazine or other periodical
   publication, or for refusing to disclose any unpublished information obtained or prepared in
22  gathering, receiving or processing of information for communication to the public.
    (b) Nor can a radio or television news reporter or other person connected with or employed by a
23  radio or television station, or any person who has been so connected or employed, be so adjudged
   in contempt for refusing to disclose the source of any information procured while so connected or
24  employed for news or news commentary purposes on radio or television, or for refusing to
   disclose any unpublished information obtained or prepared in gathering, receiving or processing of
25  information for communication to the public.
    (c) As used in this section, "unpublished information" includes information not disseminated to
26  the public by the person from whom disclosure is sought, whether or not related information has
   been disseminated and includes, but is not limited to, all notes, outtakes, photographs, tapes or
27  other data of whatever sort not itself disseminated to the public through a medium of
   communication, whether or not published information based upon or related to such material has
28  been disseminated.

- 8 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM          Misc. Case No. C-1280119 IS (NC)

1   disclose any unpublished information obtained or prepared in gathering, receiving or processing of

2   information for communication to the public." Stated more simply, article I, section 2(b) protects

3   a newsperson from being adjudged in contempt for refusing to disclose either: (1) unpublished

4   information, or (2) the source of information, whether published or unpublished." *Delaney v.*

5   *Superior Court*, 50 Cal. 3d 785, 796-97 (1990).

6          The Shield Law is inapplicable for the following reasons:

7          First, there is no confidentiality in any of the sources of the information sought or in the

8   information itself.  Paxfire already knows that Milberg, LLP, Reese Richman, LLP, and ICSI

9   researcher Christian Kreibich were Mr. Giles' sources, inasmuch as the law firms voluntarily

10  produced emails establishing this fact; the New Scientist article that was produced using the

11  information from these sources has been published; and ICSI published its own articles on the

12  subject.  (Ex. 1.)  Paxfire needs Mr. Giles' written communications in order to "connect the dots,"

13  so to speak, so as to carry its burden of proof before any trier of fact in New York that it was Ms.

14  Feist and her co-conspirators that defamed Paxfire as to particular statements.  Here, Paxfire

15  already knows the substance of what was said, and knows that Ms. Feist's law firms said it.

16  Paxfire need to determine the precise words, and the precise lawyers, who made the defamatory

17  statements.

18         Second, invocation of the Shield Law is premature: the Shield Law prohibits a court from

19  holding a reporter in contempt for failing to obey a court order to produce information.  Paxfire is

20  not asking that Mr. Giles be held in contempt, and it is speculation at this point whether Mr. Giles

21  will refuse to produce, all or some, of the information sought by the subpoena.  Given the

22  voluntary production of relevant emails by Ms. Feist's attorneys, it appears that Mr. Giles would

23  have little need to offer any of the protections for sources made available by the Shield law.

24  Dated:  May 30, 2012                         BERGESON, LLP

25

26                                       _____
                                            /s/
                                         Jaideep Venkatesan

27                                       Attorneys for Defendant
                                         PAXFIRE, INC.

28
- 9 -

OPPOSITION OF DEFENDANT PAXFIRE TO MOTION OF
WITNESS JIM GILES TO QUASH SUBPOENA DUCES TECUM            Misc. Case No. C-1280119 IS (NC)

# Tab 5

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   JAMES M. CHADWICK, Cal. Bar No. 157114
3  TENAYA M. RODEWALD, Cal. Bar No. 248563
   379 Lytton Avenue
4  Palo Alto, California 94301-1479
   Telephone:    650.815.2600
5  Facsimile:    650.815.2601
   Email:        jchadwick@sheppardmullin.com
6                trodewald@sheppardmullin.com

7  Attorneys for Non-Parties, ELECTRONIC
   FRONTIER FOUNDATION and PETER
8  ECKERSLEY

9                   UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12  BETSY FEIST,                          Case No.      CV 12 80 135 MISC

13                Plaintiff,              DECLARATION OF TENAYA M.
                                          RODEWALD IN SUPPORT OF MOTION
14        v.                              TO QUASH SUBPOENAS ISSUED BY
                                          DEFENDANT PAXFIRE, INC. AND
15  RCN CORP. and PAXFIRE, INC.,          REQUEST FOR PROTECTIVE ORDER

16                Defendants.
                                          Date:
17                                        Time:
                                          Crtrm.:
18
                                          The Hon.
19

20

21

22

23

24

25

26

27

28

**DECLARATION OF TENAYA M. RODEWALD**

1

2          I, Tenaya M. Rodewald, declare as follows:

3          1.          I am a attorney at the law firm of Sheppard Mullin Richter & Hampton LLP,

4    counsel for non-parties the Electronic Frontier Foundation ("EFF") and Peter Eckersley.  I make

5    this Declaration in support of the Motion of Non-parties EFF and Peter Eckersley to Quash

6    Subpoenas Issued by Defendant Paxfire, Inc., and Request for Protective Order.

7          2.          On April 23, 2012, Paxfire, Inc., defendant in a class-action lawsuit pending in the

8    United States District Court for the Southern District of New York, *Feist v. RCN Corporation and*

9    *Paxfire, Inc*., No. 11-cv-5436 (S.D.N.Y.) served document subpoenas on EFF and Mr. Eckersley

10   issued from this Court.  Attached here to as Exhibit A is a true and correct copy of the document

11   subpoena issued to EFF.  Attached here to as Exhibit B is a true and correct copy of the document

12   subpoena issued to Peter Eckersley.

13         3.          On June 1, 2012, Paxfire served deposition subpoenas issued by this Court on EFF

14   and Mr. Eckersley.  Attached here to as Exhibit C is a true and correct copy of the deposition

15   subpoena issued to EFF.  Attached here to as Exhibit D is a true and correct copy of the deposition

16   subpoena issued to Peter Eckersley.

17         4.          On May 7, 2012, EFF and Mr. Eckersley served objections to the Paxfire document

18   subpoenas.  Attached hereto as Exhibits H and I are true and correct copies of the Objections

19   served by EFF and Mr. Eckersley, respectively.

20         5.          On May 14, 2012, I and James Chadwick, another attorney at Sheppard Mullin,

21   conferred by telephone extensively with Andrew Grosso, counsel for Paxfire, in an attempt to

22   narrow the requests in Paxfire's document subpoenas.  During the conversation, we inquired into

23   the reasons for Paxfire's requests, including the alleged relevancy to the claims or counterclaims

24   in the action pending in New York.  Paxfire's counsel stated repeatedly that Paxfire believed EFF

25   had conspired with Plaintiff's counsel and "instigated" the lawsuit against Paxfire, and he wanted

26   to discover evidence of EFF instigating the lawsuit.  He also stated that Plaintiff Betsy Feist

27   alleged that Paxfire profiled customers and sold their personal information and he wanted to

28   investigate the sources of Ms. Feist's alleged knowledge of these matters.  Finally, Paxfire's

-1-
SMRH:405533331.1                                    RODEWALD DECLARATION ISO MOTION TO QUASH SUBPOENAS

1  counsel said that Paxfire had prior disagreements with Google, Inc. and there might be other

2  lawsuits, and he wanted discovery of communications with Google for that reason.

3        6.     Although Paxfire's counsel agreed to narrow some of the requests and clarified

4  others, Paxfire would not agree to significantly reduce the scope of the requests.  My letter also

5  confirms that 'We understand that a principle purpose of the Subpoenas is to obtain information

6  regarding any efforts by EFF or Mr. Eckersley to instigate the present litigation (*Feist v. RCN*

7  *Corporation and Paxfire, Inc*., No. 11-cv-5436), or other litigation in which Reese Richman LLP

8  or Milberg LLP acted as counsel for a party."  Attached hereto as Exhibit E is a letter I sent

9  Paxfire's counsel confirming the manner in which he agreed to limit Paxfire's Subpoenas to EFF

10  and Mr. Eckersley.

11        7.     During the telephone conference and after, Paxfire's counsel indicated that he

12  would serve a deposition subpoena on Mr. Eckersley and requested we supply possible dates for a

13  deposition.  I spoke to Paxfire's counsel on May 21, 2012 and provided possible deposition dates.

14  Paxfire's counsel mentioned that he might also serve a deposition subpoena on EFF.  I explained

15  that EFF and Mr. Eckersley would be moving to quash the document subpoenas and would move

16  against any deposition subpoenas issued to Mr. Eckersley or EFF.  I requested Mr. Grosso serve

17  the deposition subpoenas immediately so that EFF and Mr. Eckersley could bring one motion as to

18  all subpoenas.  By May 31, 2012, Paxfire had not served any deposition subpoenas.  I therefore

19  sent Paxfire's counsel a letter requesting that he serve any deposition subpoenas immediately so

20  that they could be addressed in the motion against the document subpoenas.  Attached hereto as

21  Exhibit F is a true and correct copy of my May 31, 2012 letter.  On June 1, 2012, Paxfire served

22  the deposition subpoenas contained in Exhibits C and D hereto.

23        8.     I and other counsel at Sheppard Mullin reviewed the documents EFF and Mr.

24  Eckersley collected in response to Paxfire's document subpoenas.  All but a very few documents

25  were privileged or protected by protected from discovery by one or more of several doctrines:  the

26  First Amendment right of association; California Constitutional and statutory and First

27  Amendment press protections; the Federal Rules of Civil Procedure Rule 26 protections for

28  retained and informally consulted experts; the attorney-client and work-product privileges of EFF

and Mr. Eckersley; and Plaintiff's work-product and attorney-client privileges.  Attached hereto as

Exhibit G is a privilege log privilege log stating the privileges EFF and Mr. Eckersley assert as to

documents withheld on the basis of these privileges and protections.  Only a very small number of

documents were responsive to the requests and not privileged or protected.  EFF and Mr.

Eckersley will produce these documents.

9.     The table below summarizes the categories of documents sought in Paxfire's

document subpoenas, the specific Requests applicable to each category, and the privileges and

protections EFF and Mr. Eckersley assert as to some or all of the documents in that category.

| Document Category | Applicable Requests | Protections asserted by EFF and Mr. Eckersley |
| --- | --- | --- |
| Internal EFF Communications and Documents | 4, 5, 6 | First Amendment right of association; Constitutional and statutory press protection; EFF's and Mr. Eckersley's attorney-client and work product privileges; Rule 26 retained and informally consulted expert protections; ; Work-product and attorney-client privileges asserted by Plaintiff |
| Communications with Plaintiff's Counsel about other litigation | 1, 2, 3 | Rule 26 retained and informally consulted expert protections; First Amendment right of association; Work-product and attorney-client privileges asserted by Plaintiff |
| Communications with Plaintiff's Counsel about this litigation | 1, 2, 3 | Absolute protection under Rule 26 for informal consultants; First Amendment right of association; Work-product and attorney-client privileges asserted by Plaintiff |
| Communications with third parties - ICSI | 4, 5, 6 | First Amendment right of association; Constitutional and statutory press protection; Absolute protection under Rule 26 for informal consultants; Work-product and attorney-client privileges asserted by Plaintiff |
| Communications with other third parties or sources | 4, 7 | First Amendment right of association; Constitutional and statutory press protection |
| Research and drafts of articles | 5, 6 | First Amendment right of association; Constitutional and statutory press protection; Absolute protection under Rule 26 for informal consultants; EFF's and Mr. Eckersley's attorney-client and work product privileges; Work-product and attorney-client privileges asserted by Plaintiff |

Dated:  June 6, 2012

_____
TENAYA M. RODEWALD

-3-

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| BETSY FEIST | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  11 CIV 5436 (JGK) |
| RCN CORP. and PAXFIRE, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York      ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Custodian of Records, Electronic Frontier Foundation, 454 Shotwell Street, San Francisco, California 94110

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place: Duane Morris, LLP, Attn: Joseph Burton, Esq. Suite 2200, One Market Plaza, Spear Tower San Francisco, CA 94105 | Date and Time: 05/23/2012 0:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   04/22/2012

*CLERK OF COURT*

_____        OR        _____
Signature of Clerk or Deputy Clerk                          Attorney's signature

**Andrew Grosso**
Digitally signed by Andrew Grosso
DN: cn=Andrew Grosso, o=Andrew Grosso & Associates, ou, email=Agrosso@acm.org, c=US
Date: 2012.04.22 16:07:20 -04'00'

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Paxfire, Inc., Defendant and Counterclaim Plaintiff                                      , who issues or requests this subpoena, are:

Andrew Grosso; Andrew Grosso & Associates, Georgetown Place, Suite 300, 1101 Thirtieth Street, NW, Washington, D.C. 20007; (202) 298-6446; Agrosso@acm.org

# Exhibit A

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   11 CIV 5436 (JGK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SUBPOENA TO EFF**

**DEFINITIONS AND INSTRUCTIONS**

A. The term "Ms. Feist" refers to the Plaintiff-Counterclaim Defendant Betsy Feist, and to her attorneys and agents, including her attorneys in this matter: Milberg, LLP, Reese Richman, LLP, and all attorneys in such firms.

B. The term "Paxfire" refers to the Defendant-Counterclaim Plaintiff Paxfire, Inc. and every employee, agent or other person acting or purporting to act on its behalf.

C. The term "RCN" means defendant RCN Telecom Services, LLC and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

D. The term "RCN Network" refers to the network through which RCN provides its end users or subscribers access to the Internet.

E. The term "RCN Subscriber" refers to any individual who purchased access to the RCN Network during any period from April 1, 2007 to the present.

F. The term "Paxfire Technology" refers to hardware or software created or disseminated by Paxfire.

G. The term "Device" refers to any computer, telephone, tablet, handheld computer or other hardware capable of, and used for the purpose of, accessing the Internet.

H. The term "EFF" refers to the Electronic Frontier Foundation and its employees,
agents or other persons acting or purporting to act on its behalf, including but not limited to Lee Tien, Attorney, and Peter Eckersley, Technology Projects Director, EFF.

I. The term "ICSI" refers to the International Computer Science Institute and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to ICSI researchers Nicholas Weaver, Christian Kreibich and Vern Paxson, or any other individual involved in the use or development of Netalyzr.

J. The term "Poly NYU" refers to the Polytechnic Institute of NYU and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Poly NYU researchers Chao Zhang, Keith W. Ross, or any other individual involved in the use or development of the DNS Echo Experiment or the Netalyzr.

1

K.  The term "Milberg" refers to the law firm Milberg LLP and its attorneys, employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Sanford Dumain, Peter Seidman, Charles Slidders, and Melissa Clark.

L.  The term "Reese Richman" refers to the law firm Reese Richman LLP and its attorneys, employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Kim Richman and Michael E. Reese.

M.  The term "Microsoft Research" refers to Microsoft Research and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Microsoft Research researchers Cheng Huang, David Maltz, Jin Li, or any other individual involved in the use or development of the DNS Echo Experiment or the Netalyzr.

N.  The term "Microsoft" refers to the Microsoft Corporation and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, including Microsoft Research and Bing, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

O. The term "Google" refers Google, Inc. and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

P. The term "Yahoo!" refers to Yahoo!, Inc. and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

Q. The term "document" shall be construed in its broadest possible sense under Federal Rule of Civil Procedure 34 and Rule 26.3 of the Local Rules of this Court, and includes, without limitation, any tangible thing in EFF's possession, custody or control, wherever located, whether sent or received or neither, whether an original or a copy, including, without limitation, any written, typed, punched, encoded, printed, recorded, magnetic, graphic or photographic materials, however produced or reproduced, any mechanical recording of any oral material or any sound or visual reproduction, or any drawing, sketch or schematic rendering or other descriptive materials or any retrievable data or information, however stored, recorded or coded, or any electronic mail. In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

R. The term "electronic mail" means all original and any non-identical copies of documents sent or received as electronic mail (including all electronic mail attachments), whether in printed or electronic form of any kind, including without limitation data stored

2

on hard disks, floppy disks, servers, magnetic tape, personal or handheld computers or devices (such as, but not limited to, Palm or BlackBerry devices), in random access memory or in read-only memory. For purposes of this definition, the electronic version of any electronic mail is deemed to be an original, irrespective of the existence or creation of a hard copy print out of that electronic mail, and you are required to produce all responsive documents stored in electronic format. "Electronic mail" includes all electronic mail in your possession, and is not limited to electronic mail stored in the senders' or recipients' files or computers, and includes any electronic mail that has been deleted from the senders' or recipients' computers.

S. The term "concerning" means relating, referring, describing, evidencing or constituting.

T. The term "communication" includes, without limitation, any conversation, meeting, visit, correspondence, cable, telex, facsimile, telephone call, electronic mail, computer message, signal or other transmission of information or data in any form or manner.

U. The term "including" means "including without limitation."

V. Each of the terms "each" and "any" and "all" shall be construed inclusively to mean "each and any and all."

W. Whenever the terms "and" or "or" are used, including but not limited to when used within any of the foregoing defined terms, they are to be construed both disjunctively and conjunctively as necessary to bring within the scope of these requests responses that might otherwise be construed to be outside their scope.

X. The use, including but not limited to in any of the foregoing defined terms, of the singular form of any word includes the plural and vice versa.

Y. References to one gender shall apply equally to the other gender.

Z. In answering these requests, even though the requests may be directed to the "New Scientist," you shall furnish all information available to the New Scientist, including information in the possession of EFF's attorneys or investigators, or which were prepared on their behalf.  If EFF cannot respond to any of the following requests in full after exercising due diligence to secure the requested information, please state an explanation to the extent possible, specifying EFF's inability to respond to the remainder and stating whatever information or knowledge you have concerning the portions that have been left unanswered in whole or in part.

AA. To the extent that any of the following requests call for information that allegedly is subject to a claim of privilege or attorney's work-product, answer so much of each request without disclosing privileged or confidential information. With respect to those portions of the discovery requests that do request privileged or confidential

3

information, set forth the basis for your claim of privilege or any other objection you may have.

BB. If any document covered by these requests is withheld or not produced on the basis of a claim of privilege or any other objection, EFF shall provide Paxfire with a log listing the following information for each of the documents:

(i) The reason(s) for withholding production of the document and any supporting facts;

(ii) The subject matter of the document;

(iii) The names of each individual to whom copies were distributed;

(iv) The date the document was prepared;

(v) The name, employment, position and address of the author(s) and/or preparer(s) of the document;

(vi) A brief description of the document; and

(vii) The number of the request under which each document would otherwise be produced.

CC. Unless otherwise set forth in any specific request, these requests apply to the time period beginning January 1, 2007 to the present.

DD. These requests are continuing in nature and EFF is required to supplement its production herein upon receipt or discovery of additional documents pertinent to any of these requests.

4

**Documents Commanded to Be Produced**

1.  For the period 2008 until the present: All documents identifying or referencing Betsy Feist, Milberg LLP, or Reese Richman LLP.

2.  For the period 2008 until the present: All remuneration, including donations, from Betsy Feist, Milberg LLP, or Reese Richman LLP

3.  For the period 2008 until the present: All documents pertaining to any lawsuit, investigation or other judicial or administrative proceeding in which EFF or any person associated with EFF participated, as a party, witness, expert witness, consultant, advisor or otherwise, where a law firm involved in any way in such proceeding was Milberg LLP or Reese Richman LLP.

4.  For the period January 1, 2011 until the present, all correspondence and communications, including but not limited to email, and all documentation and records pertaining to any such correspondence or communications, including those authored, received, forwarded or otherwise transmitted by EFF or Peter Eckersely, pertaining to (including but not limited to those to, from, or otherwise communicated with ICSI or Poly NYU):

    (a) Betsy Feist,

    (b) Milberg LLP, Richman Reese LLP, or any attorney or other employee of Milberg LLP or Richman Reese LLP:

    (c) Paxfire;

    (d) RCN Corporation, Cavalier, Charter, Cincinnati Bell, Cogent Communications, DirectPC (Hughes Network), Frontier, Insight Broadband, Iowa Telecom, or Wide Open West;

    (e) the New Scientist or Jim Giles;

    (f) Poly NYU; or

    (g) the Netalyzr or the DNS Echo Experiment.

5.  For the period April 1, 2011 until the present, all articles, including all drafts and all comments concerning drafts and final versions of articles, authored, received, forwarded, or otherwise transmitted by EFF, pertaining to:

    (a) Betsy Feist,

5

(b) Milberg LLP, Richman Reese LLP, or any attorney or other employee of Milberg LLP or Richman Reese LLP:

(c) Paxfire;

(d) RCN; or

(e) the Netalyzr or the DNS Echo Experiment.

6.  All research results and communications, including raw data, final conclusions, publications, peer review, and internal discussions, concerning Paxfire or RCN.

7.  All correspondence, including but not limited to email mentioning or otherwise pertaining to Paxfire, to, from, or otherwise communicated with Google, Microsoft, or Yahoo.

6

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| BETSY FEIST | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   11 CIV 5436 (JGK) |
| RCN CORP. and PAXFIRE, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York   ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Peter Eclersley

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place:  Duane Morris, LLP, Attn: Joseph Burton, Esq. Suite 2200, One Market Plaza, Spear Tower San Francisco, CA 94105 | Date and Time: 05/23/2012 0:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    04/22/2012

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk              Attorney's signature

Andrew Grosso

Digitally signed by Andrew Grosso
DN: cn=Andrew Grosso, o=Andrew Grosso & Associates, ou, email=Agrosso@acm.org, c=US
Date: 2012.04.22 16:02:03 -04'00'

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Paxfire, Inc., Defendant and Counterclaim Plaintiff                    , who issues or requests this subpoena, are:

Andrew Grosso; Andrew Grosso & Associates, Georgetown Place, Suite 300, 1101 Thirtieth Street, NW, Washington, D.C. 20007; (202) 298-6446; Agrosso@acm.org

# Exhibit B

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   11 CIV 5436 (JGK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                  _____
                                                                   *Server's signature*

                                                        _____
                                                                   *Printed name and title*

                                                        _____
                                                                   *Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SUBPOENA TO Peter Eckersley

## DEFINITIONS AND INSTRUCTIONS

A. The term "Ms. Feist" refers to the Plaintiff-Counterclaim Defendant Betsy Feist, and to her attorneys and agents, including her attorneys in this matter: Milberg, LLP, Reese Richman, LLP, and all attorneys in such firms.

B. The term "Paxfire" refers to the Defendant-Counterclaim Plaintiff Paxfire, Inc. and every employee, agent or other person acting or purporting to act on its behalf.

C. The term "RCN" means defendant RCN Telecom Services, LLC and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

D. The term "RCN Network" refers to the network through which RCN provides its end users or subscribers access to the Internet.

E. The term "RCN Subscriber" refers to any individual who purchased access to the RCN Network during any period from April 1, 2007 to the present.

F. The term "Paxfire Technology" refers to hardware or software created or disseminated by Paxfire.

G. The term "Device" refers to any computer, telephone, tablet, handheld computer or other hardware capable of, and used for the purpose of, accessing the Internet.

H. The term "EFF" refers to the Electronic Frontier Foundation and its employees,
agents or other persons acting or purporting to act on its behalf, including but not limited to Lee Tien, Attorney, and Peter Eckersley, Technology Projects Director, EFF.

I. The term "ICSI" refers to the International Computer Science Institute and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to ICSI researchers Nicholas Weaver, Christian Kreibich and Vern Paxson, or any other individual involved in the use or development of Netalyzr.

J. The term "Poly NYU" refers to the Polytechnic Institute of NYU and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Poly NYU researchers Chao Zhang, Keith W. Ross, or any other individual involved in the use or development of the DNS Echo Experiment or the Netalyzr.

1

K.  The term "Milberg" refers to the law firm Milberg LLP and its attorneys, employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Sanford Dumain, Peter Seidman, Charles Slidders, and Melissa Clark.

L.  The term "Reese Richman" refers to the law firm Reese Richman LLP and its attorneys, employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Kim Richman and Michael E. Reese.

M.  The term "Microsoft Research" refers to Microsoft Research and its employees, agents, affiliates or other persons acting or purporting to act on its behalf, including but not limited to Microsoft Research researchers Cheng Huang, David Maltz, Jin Li, or any other individual involved in the use or development of the DNS Echo Experiment or the Netalyzr.

N.  The term "Microsoft" refers to the Microsoft Corporation and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, including Microsoft Research and Bing, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

O. The term "Google" refers Google, Inc. and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

P. The term "Yahoo!" refers to Yahoo!, Inc. and any division, parent, subsidiary, affiliate, licensee, franchisee, successor, predecessor in interest, assignee or other related business entity, and the predecessors of any of them and every employee, agent or other person acting or purporting to act on its behalf.

Q. The term "document" shall be construed in its broadest possible sense under Federal Rule of Civil Procedure 34 and Rule 26.3 of the Local Rules of this Court, and includes, without limitation, any tangible thing in EFF's possession, custody or control, wherever located, whether sent or received or neither, whether an original or a copy, including, without limitation, any written, typed, punched, encoded, printed, recorded, magnetic, graphic or photographic materials, however produced or reproduced, any mechanical recording of any oral material or any sound or visual reproduction, or any drawing, sketch or schematic rendering or other descriptive materials or any retrievable data or information, however stored, recorded or coded, or any electronic mail. In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

R. The term "electronic mail" means all original and any non-identical copies of documents sent or received as electronic mail (including all electronic mail attachments), whether in printed or electronic form of any kind, including without limitation data stored

2

on hard disks, floppy disks, servers, magnetic tape, personal or handheld computers or devices (such as, but not limited to, Palm or BlackBerry devices), in random access memory or in read-only memory. For purposes of this definition, the electronic version of any electronic mail is deemed to be an original, irrespective of the existence or creation of a hard copy print out of that electronic mail, and you are required to produce all responsive documents stored in electronic format. "Electronic mail" includes all electronic mail in your possession, and is not limited to electronic mail stored in the senders' or recipients' files or computers, and includes any electronic mail that has been deleted from the senders' or recipients' computers.

S. The term "concerning" means relating, referring, describing, evidencing or constituting.

T. The term "communication" includes, without limitation, any conversation, meeting, visit, correspondence, cable, telex, facsimile, telephone call, electronic mail, computer message, signal or other transmission of information or data in any form or manner.

U. The term "including" means "including without limitation."

V. Each of the terms "each" and "any" and "all" shall be construed inclusively to mean "each and any and all."

W. Whenever the terms "and" or "or" are used, including but not limited to when used within any of the foregoing defined terms, they are to be construed both disjunctively and conjunctively as necessary to bring within the scope of these requests responses that might otherwise be construed to be outside their scope.

X. The use, including but not limited to in any of the foregoing defined terms, of the singular form of any word includes the plural and vice versa.

Y. References to one gender shall apply equally to the other gender.

Z. In answering these requests, even though the requests may be directed to the "New Scientist," you shall furnish all information available to the New Scientist, including information in the possession of EFF's attorneys or investigators, or which were prepared on their behalf.  If EFF cannot respond to any of the following requests in full after exercising due diligence to secure the requested information, please state an explanation to the extent possible, specifying EFF's inability to respond to the remainder and stating whatever information or knowledge you have concerning the portions that have been left unanswered in whole or in part.

AA. To the extent that any of the following requests call for information that allegedly is subject to a claim of privilege or attorney's work-product, answer so much of each request without disclosing privileged or confidential information. With respect to those portions of the discovery requests that do request privileged or confidential

information, set forth the basis for your claim of privilege or any other objection you may have.

BB. If any document covered by these requests is withheld or not produced on the basis of a claim of privilege or any other objection, EFF shall provide Paxfire with a log listing the following information for each of the documents:

(i) The reason(s) for withholding production of the document and any supporting facts;

(ii) The subject matter of the document;

(iii) The names of each individual to whom copies were distributed;

(iv) The date the document was prepared;

(v) The name, employment, position and address of the author(s) and/or preparer(s) of the document;

(vi) A brief description of the document; and

(vii) The number of the request under which each document would otherwise be produced.

CC. Unless otherwise set forth in any specific request, these requests apply to the time period beginning January 1, 2007 to the present.

DD. These requests are continuing in nature and EFF is required to supplement its production herein upon receipt or discovery of additional documents pertinent to any of these requests.

4

## Documents Commanded to Be Produced

1.  For the period 2008 until the present: All documents identifying or referencing Betsy Feist, Paxfire, RCN, Milberg LLP, or Reese Richman LLP, including but not limited to consulting agreement and expert witness agreements.

2.  For the period 2008 until the present: All remuneration, including consulting fees and expert witness fees, from Betsy Feist, Milberg LLP, or Reese Richman LLP

3.  For the period 2008 until the present: All documents pertaining to any lawsuit, investigation or other judicial or administrative proceeding in which you or any person associated with EFF participated, as a party, witness, expert witness, consultant, advisor or otherwise, where a law firm involved in any way in such proceeding was Milberg LLP or Reese Richman LLP.

4.  For the period January 1, 2011 until the present, all correspondence and communications, including but not limited to email, and all documentation and records pertaining to any such correspondence or communications, including those authored, received, forwarded or otherwise transmitted by EFF or Peter Eckersley, pertaining to (including but not limited to those to, from, or otherwise communicated with ICSI or Poly NYU):

     (a) Betsy Feist,

     (b) Milberg LLP, Richman Reese LLP, or any attorney or other employee of Milberg LLP or Richman Reese LLP:

     (c) Paxfire;

     (d) RCN Corporation, Cavalier, Charter, Cincinnati Bell, Cogent Communications, DirectPC (Hughes Network), Frontier, Insight Broadband, Iowa Telecom, or Wide Open West;

     (e) the New Scientist or Jim Giles;

     (f) Poly NYU; or

     (g) the Netalyzr or the DNS Echo Experiment.

5.  For the period April 1, 2011 until the present, all articles, including all drafts and all comments concerning drafts and final versions of articles, authored, received, forwarded, or otherwise transmitted by Peter Eckersley, pertaining to:

     (a) Betsy Feist,

5

(b) Milberg LLP, Richman Reese LLP, or any attorney or other employee of Milberg LLP or Richman Reese LLP:

(c) Paxfire;

(d) RCN; or

(e) the Netalyzr or the DNS Echo Experiment.

6.  All research results and communications, including raw data, final conclusions, publications, peer review, and internal discussions, concerning Paxfire or RCN.

7.  All correspondence, including but not limited to email mentioning or otherwise pertaining to Paxfire, to, from, or otherwise communicated with Google, Microsoft, or Yahoo.

6

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| BETSY FEIST | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.   11 CIV 5436 (JGK) |
| RCN CORP. and PAXFIRE, INC. | ) |
| | )  (If the action is pending in another district, state where: |
| *Defendant* | )  Southern District of New York        ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Electronic Frontier Foundation

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Duane Morris, LLP, Attn: Joseph Burton, Esq.<br>Suite 2200, One Market Plaza, Spear Tower<br>San Francisco, CA 94105 | Date and Time:<br><br>06/28/2012 2:00 pm |
|---|---|

The deposition will be recorded by this method:   Videotape and Court reporter

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    06/01/2012

*CLERK OF COURT*

OR

Andrew Grosso

Digitally signed by Andrew Grosso
DN: cn=Andrew Grosso, o=Andrew Grosso & Associates, ou, email=Agrosso@acm.org, c=US
Date: 2012.06.01 21:45:16 -04'00'

_____                    _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Paxfire, Inc. Defendant and Counterclaim Plaintiff                                              , who issues or requests this subpoena, are:
Andrew Grosso; Andrew Grosso & Associates, Georgetown Place, Suite 300, 1101 Thirtieth Street, NW, Washington, D.C. 20007; (202) 298-6446; Agrosso@acm.org

# Exhibit C

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   11 CIV 5436 (JGK)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

   **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

   **(i)** fails to allow a reasonable time to comply;

   **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

   **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

   **(i)** expressly make the claim; and

   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**TOPICS FOR RULE 30(B)(6) DEPOSITION OF THE
ELECTRONIC FRONTIER FOUNDATION**

**Unless otherwise specified, all of the following is for the period January 1, 2010-August 30, 2011:**

1. For persons associated in any way with the Electronic Frontier Foundation ("EFF"): any and all policies, requirements, guidelines and ethic provisions for the establishment of, compensation for, and disclosure (including in articles published and communications with or in the press) of consulting agreements or other arrangements, whether on behalf of EFF or otherwise.

2. For EFF and any person associated in any way with EFF, the specific provisions of, work rendered for, topics involved in, personnel involved with, and compensation received, offered, agreed upon or promised for, any and all consulting agreements or other arrangements (whether written or otherwise) with or on behalf of each of the following: Betsy Feist, Milberg LLP, and Reese Richman, LLP.

3. For EFF: any and all policies, practices, requirements, and guidelines for the referral of cases, information, and concerns of any nature involving third party practices on the Internet, observed or researched (in whole or in part) by EFF, to outside law firms, including but not limited to Milberg LLP and Reese Richman, LLP; including any compensation received, offered, agreed upon or promised pertaining to such referrals.  However, this topic does not call for any testimony concerning referrals to attorneys on EFF's Cooperating Attorneys List, where such referrals concern third parties who have contacted EFF for legal assistance.

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| BETSY FEIST | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   11 CIV 5436 (JGK) |
| RCN CORP. and PAXFIRE, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York     ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Peter Eckersley

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Duane Morris, LLP, Attn: Joseph Burton, Esq.<br>Suite 2200, One Market Plaza, Spear Tower<br>San Francisco, CA 94105 | Date and Time:<br><br>06/28/2012 9:00 am |
|---|---|

The deposition will be recorded by this method:  __Videotape and Court reporter__

❑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   __06/01/2012__

*CLERK OF COURT*

OR     Andrew Grosso

Digitally signed by Andrew Grosso
DN: cn=Andrew Grosso, o=Andrew Grosso & Associates, ou, email=Agrosso@acm.org, c=US
Date: 2012.06.01 21:37:56 -04'00'

_____                      _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Paxfire, Inc., Defendant an
Counterclaim Plaintiff                                        , who issues or requests this subpoena, are:
Andrew Grosso; Andrew Grosso & Associates, Georgetown Place, Suite 300, 1101 Thirtieth Street, NW, Washington, D.C. 20007; (202) 298-6446; Agrosso@acm.org

# Exhibit D

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   11 CIV 5436 (JGK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____  .

❐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____  ; or

❐  I returned the subpoena unexecuted because: _____

_____  .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___  .

I declare under penalty of perjury that this information is true.

Date:  _____          _____
                                                    *Server's signature*

                                           _____
                                                    *Printed name and title*

                                           _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Tab 6

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   JAMES M. CHADWICK, Cal. Bar No. 157114
3  TENAYA RODEWALD, Cal. Bar No. 248563
   379 Lytton Avenue
4  Palo Alto, California 94301-1479
   Telephone:    650.815.2600
5  Facsimile:    650.815.2601
   Email:        jchadwick@sheppardmullin.com
6                trodewald@sheppardmullin.com

7  Attorneys for Non-Parties, ELECTRONIC
   FRONTIER FOUNDATION and PETER
8  ECKERSLEY

9                        UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12
   BETSY FEIST,                          CV  Case No.   12   80  135MISC
13
           Plaintiff,                         MOTION OF NON-PARTIES ELECTRONIC
14                                            FRONTIER FOUNDATION AND PETER
        v.                                    ECKERSLEY TO QUASH SUBPOENAS
15                                            ISSUED BY DEFENDANT PAXFIRE, INC.
   RCN CORP. and PAXFIRE, INC.,              AND REQUEST FOR PROTECTIVE
16                                            ORDER
           Defendants.
17                                            Date:
                                              Time:
18                                            Crtrm.:

19                                            The Hon.

20

21

22

23

24

25

26

27

28

   SMRH:405527719.5          MOTION OF NON-PARTIES EFF AND ECKERSLEY TO QUASH SUBPOENAS

1

**TABLE OF CONTENTS**

2

Page

3 NOTICE OF MOTION AND MOTION ........................................................................................ 1

4 INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

5 FACTUAL AND PROCEDURAL HISTORY .............................................................................. 2

6 ARGUMENT ............................................................................................................................... 5

7  I.   STATE LAW, THE UNITED STATE CONSTITUTION AND FEDERAL
       RULES 26 AND 45 GOVERN EFF'S AND MR. ECKERSLEY'S
8      PRIVILEGE CLAIMS ............................................................................................. 5

9  II.  PAXFIRE'S CLAIMS DO NOT JUSTIFY THE INVASION OF EFF'S
       AND MR. ECKERSLEY'S FIRST AMENDMENT RIGHTS ................................ 6
10

11 III.  ENFORCING THE SUBPOENAS WOULD INFRINGE EFF'S AND MR.
       ECKERSLEY'S FIRST AMENDMENT RIGHTS OF ASSOCIATION ............... 8

12      A.   The First Amendment Right of Association Protects EFF's and Mr.
13           Eckersley's Communications from Discovery ............................................. 8

14      B.   First Amendment Protection Applies to The Discovery Paxfire
             Seeks ......................................................................................................... 10

15      C.   Because Movant's First Amendment Rights Are Implicated, Paxfire
16           Has the Burden to Justify Its Subpoenas, Which it Cannot Do ................. 14

17 IV.  PAXFIRE CANNOT OBTAIN DISCOVERY OF MATERIAL
       PROTECTED BY CALIFORNIA'S CONSTITUTIONAL AND
18      STATUTORY REPORTER'S PRIVILEGE AND THE FIRST
       AMENDMENT ..................................................................................................... 15

19      A.   California State Privilege Law Applies ...................................................... 15

20      B.   California's Constitutional and Statutory Reporter's Privileges
             Provide Absolute Protection from Discovery for All Unpublished
21           Information ................................................................................................. 17

22      C.   Under the First Amendment, Discovery May Only be Compelled in
             the Most Exceptional Cases ....................................................................... 19
23

24 V.   EFF AND MR. ECKERSLEY WERE INFORMALLY CONSULTED
       EXPERTS TO PLAINTIFF SO DISCOVERY OF THEIR
25      COMMUNICATIONS AND WORK PRODUCT IS PRECLUDED BY
       RULE 26 .............................................................................................................. 21

26 VI.  MR. ECKERSLEY AND EFF WERE RETAINED EXPERTS TO
       PLAINTIFF ON PRIOR LITIGATION SO DISCOVERY OF THEIR
27      COMMUNICATIONS AND WORK PRODUCT IS BARRED BY RULE
28      26 ........................................................................................................................ 22

-i-

**TABLE OF CONTENTS**

Page

VII.   REQUESTED COMMUNICATIONS AND DOCUMENTS ARE
       PROTECTED BY EFF'S AND MR. ECKERSLEY'S ATTORNEY-
       CLIENT PRIVILEGES AND WORK PRODUCT PROTECTIONS ..................... 22

VIII.  RULE 45(C)(1) AND (C)(3)(A)(IV) REQUIRE THE COURT QUASH OR
       MODIFY THE SUBPOENAS BECAUSE THEY IMPOSE UNDUE
       BURDENS ON EFF AND MR. ECKERSLEY....................................................... 23

CONCLUSION ............................................................................................................. 25

SMRH:405527719.5                    MOTION OF NON-PARTIES EFF AND ECKERSLEY TO QUASH SUBPOENAS

1 **TABLE OF AUTHORITIES**

Page(s)

2 **CASES**

3 *AFL-CIO v. FEC*
4    333 F.3d 168 (D.C.Cir. 2003) ................................................................................................ 9

5 *Ager v. Jane C. Stormont Hospital and Training School for Nurses*
   622 F.2d 496 (10th Cir. 1980).............................................................................................. 22

6 *Arista Records LLC v. Lime Group LLC*
7    No. 06-CV-5936, 2011 WL 781198 (S.D.N.Y. March 4, 2011)...................................... 23, 24

8 *Baker v. General Motors Corp.*
9    209 F.3d 1051 (8th Cir. 2000)............................................................................................... 6

10 *Beinin v. Center for Study of Popular Culture*
   No. 06-cv-02298, 2007 WL 1795693 (N.D.Cal. June 20, 2007) .................................... 7, 9, 11

11 *Black Panther Party v. Smith*
12    661 F.2d 1243 (D.C.Cir. 1981) ........................................................................................... 14

13 *Branzburg v. Hayes*
14    408 U.S. 665 (1972) ........................................................................................................... 20

15 *Britt v. Sup. Ct. of San Diego Co.*
   20 Cal.3d 844 (Cal. 1978) .................................................................................................. 11

16 *Brock v. Local 375, Plumbers Int'l Union of Am.*
17    860 F.2d 346 (9th Cir. 1988)............................................................................................... 10

18 *Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar*
19    377 U.S. 1 (1964) ................................................................................................................. 7

20 *Buckley v. Valeo*
   424 U.S. 1 (1976) ................................................................................................................. 9

21 *Chiquita Int'l Ltd. v. M/V Bolero Reefer*
22    93 Civ. 0167, 1994 WL 177785 (S.D.N.Y. May 6, 1994) ....................................................... 22

23 *Delaney v. Superior Court*
24    50 Cal. 3d 785 (1990)..................................................................................................... 18, 21

25 *Dole v. Serv. Employees Union, AFL-CIO, Local 280*
   950 F.2d 1456 (9th Cir. 1991).............................................................................................. 14

26 *Dow Chem. Co. v. Allen*
27    672 F.2d 1262 (7th Cir. 1982).............................................................................................. 23

28

-iii-

**SER-84**

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | (continued) |

Page(s)

*Eilers v. Palmer*
575 F.Supp. 1259 (D.Minn. 1984) ...................................................................................... 7, 9

*Fed. Election Comm. v. Machinists Non–Partisan Polit. League*
655 F.2d 380 (D.C.Cir. 1981) ................................................................................................ 14

*Feist v. RCN Corporation and Paxfire, Inc.*
No. 11-cv-5436, Dkt. 1 (S.D.N.Y. Aug. 4, 2011) ...................................................................... 3

*Garza v. Scott and White Memorial Hosp.*
234 F.R.D. 617 (W.D.Tex. 2005)............................................................................................ 5

*Glass Equip. Dev., Inc. v. Besten, Inc.*
174 F.3d 1337 (Fed.Cir. 1999)............................................................................................... 7

*Hammarley v. Superior Court*
89 Cal.App.3d 388 (1979).................................................................................................... 19

*Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc.*
590 F.2d 1139 (D.C.Cir. 1978) .............................................................................................. 13

*Los Angeles Memorial Coliseum Commission v. National Football League*
89 F.R.D. 489 (C.D.Cal. 1981) ............................................................................................. 16

*McGuire Oil Co. v. Mapco, Inc.*
958 F.2d 1552 (11th Cir.1992).............................................................................................. 7

*NAACP v. Alabama*
357 U.S. 449 (1958) ...................................................................................................... 2, 8, 9

*NAACP v. Button*
371 U.S. 415 (1963) .................................................................................................... 7, 9, 15

*New York Times Co. v. Superior Court*
51 Cal.3d 453 (1990)........................................................................................................... 18

*Northwestern Memorial Hosp. v. Ashcroft*
362 F.3d 923 (7th Cir. 2004)............................................................................................ 23, 25

*O'Grady v. Superior Court*
139 Cal. App.4th 1423 (2006)............................................................................................... 18

*Perry v. Schwarzenegger*
591 F.3d 1147 (9th Cir. 2010)................................................................. 8, 9, 10, 11, 14, 15

*Playboy Enterprises, Inc. v. Superior Court*
154 Cal. App. 3d 14 (1984).............................................................................................. 17, 19

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Roberts v. Carrier Corp.*
107 F.R.D. 678 (N.D.Ind. 1985) ............................................................................................. 6

*Roberts v. U.S. Jaycees*
468 U.S. 609 (1984) ................................................................................................................ 8

*In re Sealed Case (Medical Records)*
381 F.3d 1205 (D.C.Cir. 2004) .............................................................................................. 5

*Shaklee Corp. v. Gunnell*
110 F.R.D. 190 (N.D.Cal. 1986) .......................................................................................... 19

*Shoen v. Shoen ("Shoen I")*
5 F.3d 1289 (9th Cir. 1993) ............................................................................................ 17, 20

*Shoen v. Shoen ("Shoen II")*
48 F.3d 412 (9th Cir. 1995) ...................................................................................... 19, 20, 21

*Sommer v. Gabor*
40 Cal.App.4th 1455 (1995) ................................................................................................. 16

*Sosa v. DIRECTV, Inc.*
437 F.3d 923 (9th Cir. 2006) .................................................................................................. 7

*Sprague v. Thorn Americas, Inc.*
129 F.3d 1355 (10th Cir. 1997) .............................................................................................. 5

*Sullivan v. Oracle Corp.*
51 Cal.4th 1191 (2011) ......................................................................................................... 16

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*
389 U.S. 217 (1967) ................................................................................................................ 7

*USM Corp. v. American Aerosols, Inc.*
631 F.2d 420 (6th Cir. 1980) ................................................................................................ 21

*Whitlow v. Martin*
263 F.R.D. 507 (C.D.Ill. 2009) ............................................................................................ 23

*Wolpin v. Philip Morris Inc.*
189 F.R.D. 418 (C.D.Cal. 1999) .......................................................................................... 15

*Wright v. Fred Hutchinson Cancer Research Ctr*
206 F.R.D. 679 (W.D.Wash. 2002) ...................................................................................... 20

*Wyoming v. U.S. Dept. Of Ag.*
208 F.R.D. 449 (D.D.C. 2002) .................................................................................. 10, 11, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Zerilli v. Smith*
656 F.2d 705 (D.C.Cir. 1981) ................................................................................................. 21

**STATUTES**

California Evidence Code, § 1070(a) ................................................................................. 16, 17

New York Civil Rights Law, § 79-h ......................................................................................... 16

Wiretap Act, 18 U.S.C. § 2510 *et seq.* ...................................................................................... 3

**OTHER AUTHORITIES**

California Constitution, Article I, § 2, subd. (b) ........................................................... 16, 17, 18, 19

Federal Rules of Evidence, Rule 501 ......................................................................................... 5

Federal Rules of Civil Procedure
Rule 26 ........................................................................................................... 5, 6, 21, 22
Rule 26(b)(1) ........................................................................................................... 10
Rule 26(b)(3)(A), (b)(4)(B) and (C) .................................................................................. 6
Rule 26(b)(4)(B) ........................................................................................................... 21
Rule 26(b)(4)(D) ................................................................................................. 6, 21, 22
Rule 45 ........................................................................................................................... 6
Rule 45(c)(1) ............................................................................................................. 6, 23

SMRH:405527719.5            MOTION OF NON-PARTIES EFF AND ECKERSLEY TO QUASH SUBPOENAS

**SER-87**

1

## NOTICE OF MOTION AND MOTION

2     Non-parties The Electronic Frontier Foundation ("EFF") and Peter Eckersley ("Movants")

3 move for and order quashing Paxfire's document and deposition subpoenas to them or, in the

4 alternative, protective orders limiting the discovery sought by the subpoenas. If enforced, the

5 subpoenas would violate EFF's and Mr. Eckersley's First Amendment right of freedom of

6 association, speech, and the press, the California Constitution and California statutory protections

7 for the press, the Federal Rules of Civil Procedure, and the attorney-client privilege and work

8 product protections of EFF, Mr. Eckersley and others.

9

## INTRODUCTION AND SUMMARY OF ARGUMENT

10     EFF is a non-profit, member-supported digital civil liberties and legal aid organization. It

11 engages in First Amendment protected litigation, speech, organizing, advocacy and publishing.

12 Paxfire, Inc., is a defendant in a federal customer class-action lawsuit in New York that alleges

13 Paxfire wrongfully and without consent diverted certain of customers' internet searches away from

14 Google, Yahoo! and Bing to Paxfire's own computers, and sometimes replaced the search results

15 customers were supposed to receive with the webpages of Paxfire's paying customers. Paxfire

16 issued document and deposition subpoenas to the EFF and EFF researcher Peter Eckersley.

17     Paxfire's subpoenas strike at the core of EFF's First Amendment protected advocacy and

18 publishing activities. Defendant Paxfire claims that EFF and Mr. Eckersley "instigated" the

19 underlying class-action lawsuit by associating and communicating with Plaintiff's counsel.

20 Paxfire asserts that inducing or aiding others to bring a lawsuit is an actionable wrong, one that

21 Paxfire seeks to investigate through its subpoenas. In truth, however, the alleged activities are not

22 improper or actionable. They are Constitutionally protected, and Paxfire has no right to

23 investigate them through intrusive discovery.

24     Even if Paxfire's subpoenas sought information that was the proper subject of discovery

25 (and they do not), the information they seek is protected from discovery by the First Amendment

26 right of association and by constitutional and statutory protections of the press. "It is beyond

27 debate that freedom to engage in association for the advancement of beliefs and ideas is an

28 inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth

-1-

## SER-88

1  Amendment, which embraces freedom of speech." *NAACP v. Alabama*, 357 U.S. 449, 460

2  (1958). The First Amendment protects EFF's and Mr. Eckersley's rights to associate, speak,

3  advocate and publish, and therefore protects EFF and Mr. Eckersley from discovery that would

4  impair their exercise of these rights. Enforcement of the subpoenas would violate EFF's and Mr.

5  Eckersley's First Amendment rights by chilling communication within EFF and deterring others

6  from associating and communicating with EFF in the future. Therefore the subpoenas must be

7  quashed.

8       In the alternative, EFF and Mr. Eckersley request the Court issue a protective order

9  limiting the documents and information Paxfire may discover and specifically limiting any topics

10  regarding which Mr. Eckersley and EFF may be deposed.

11                    **FACTUAL AND PROCEDURAL HISTORY**

12       As part of its mission as a digital civil liberties and legal aid organization, EFF litigates

13  itself or supports lawsuits addressing user rights to privacy, free speech, and innovation as applied

14  to the Internet and other new technologies. (Declaration of Cindy Cohn ("Cohn Decl."), filed

15  herewith, ¶ 2.) With more than 19,000 dues-paying members, EFF represents the interests of

16  technology users in both court cases and in broader policy debates surrounding the application of

17  law in the digital age. (*Id.*) EFF researches and publishes articles on technology and civil liberties

18  and publishes a comprehensive archive of digital civil liberties and innovation information at

19  www.eff.org. (*Id.*) In addition, EFF advises policymakers, educates the press and public on issues

20  related to law and technology, and develops technological tools that enhance digital freedom. (*Id.*)

21       Specifically, for the last several years EFF has been a leading organization concerned with

22  issues of "network neutrality," that is, ensuring that online service providers and others do not

23  interfere with their customers' access to any parts of the internet. (Cohn Dec., ¶ 3.) This topic has

24  been the subject of legal and regulatory action by the Federal Communications Commission,

25  multiple court cases, and much public debate, and EFF has played a key role in several parts

26  debate. (*Id.*) For instance, EFF uncovered that a leading cable provider, Comcast, was interfering

27  with its customers' use of a certain technology to access material online, which led to litigation by

28  the FCC against Comcast. (*Id.;* Declaration of Peter Eckersley ("Eckersley Decl."), filed

-2

1 herewith, ¶ 6.) EFF also provided comments to the FCC as part of its administrative network

2 neutrality rulemaking. (Cohn. Decl. 3.)

3       Paxfire, Inc. is a defendant in a class-action lawsuit brought by Plaintiff Betsy Feist in

4 federal court in the Southern District of New York. (*See* Request for Judicial Notice ("RFJN"),

5 filed herewith, Ex. A (Complaint, *Feist v. RCN Corporation and Paxfire, Inc*., No. 11-cv-5436,

6 Dkt. 1 (S.D.N.Y. Aug. 4, 2011)).) The lawsuit alleges that in conjunction with various internet

7 service providers ("ISPs"), Paxfire violated consumers' rights by diverting certain of customers'

8 internet searches away from their intended search engines run by Google, Yahoo! and Microsoft to

9 its own servers, and sometimes replacing the search results the customers should have received

10 with the webpages of Paxfire's paying clients. (*Id.*, ¶¶ 1, 15-21.) It alleges Paxfire diverted those

11 ISP's customers' internet traffic without customer knowledge or consent and violated customers'

12 privacy rights. (*Id.*, ¶ 24, Counts IV, V.) The lawsuit contains one federal claim for violation of

13 the Wiretap Act, 18 U.S.C. § 2510 *et seq*., and several state law claims. (*Id*.)

14       Prior to the commencement of the class-action suit, EFF researcher Peter Eckersley, in

15 association with researchers at the International Computer Science Institute ("ICSI"), affiliated

16 with the University of California at Berkeley, and other sources, discovered that Paxfire was

17 diverting internet search engine traffic. (Eckersley Decl., ¶ 16.) The ICSI researchers contacted

18 Mr. Eckersley regarding results of experiments they conducted with their "Netalyzr," a widely

19 used network diagnosis and debugging tool. (*Id.*, ¶¶ 8-9.) The ICSI results indicated that

20 customer searches on many ISPs were being redirected from search engines such as Google,

21 Yahoo! and Bing to other servers. Mr. Eckersley determined through his own work, and in

22 parallel with work by the ICSI researchers, that the search redirection systems were being operated

23 by Paxfire. (*Id.*, ¶ 16, Exs. A, B.) Mr. Eckersley and EFF discussed Paxfire's activities in an

24 article published on EFF's website and in EFF's e-mail newsletter EFFector. (*Id.*, Exs. A, B;

25 Cohn Decl., ¶ 7.)

26       EFF was concerned that Paxfire's actions violated the principles of network neutrality, and

27 about customer privacy. (Cohn Decl., ¶ 5.) EFF initially considered acting as counsel in

28 consumer litigation against Paxfire and potentially others regarding the redirection practices, but

1 decided not to undertake the litigation itself. (*Id.*, ¶ 6.) Still concerned about Paxfire's behavior,
2 however, and as part of EFF's consumer and civil rights advocacy, EFF and Mr. Eckersley
3 communicated with Plaintiff's counsel about the results of the research and agreed, if counsel
4 decided to bring suit based on the information, to consult regarding issues in a lawsuit. (Eckersley
5 Decl., ¶ 19; Cohn Decl., ¶ 8.) EFF and Mr. Eckersley were not retained as paid consultants by
6 Plaintiff's counsel. (Eckersley Decl., ¶ 20, Ex. C; Cohn Decl., ¶ 10.) However, Plaintiff's counsel
7 did informally consult EFF and Mr. Eckersley, including regarding technological issues.
8 (Eckersley Decl., ¶ 20; Cohn Decl., ¶ 9.)

9 　　Paxfire brought state law counterclaims alleging that Plaintiff "conspired" with EFF and
10 the other researchers who exposed Paxfire's behavior. (*See* Request for Judicial Notice ("RFJN"),
11 filed herewith, Ex. B (Paxfire's First Amended Answer and Counterclaims).) Paxfire's
12 counterclaims have been dismissed once and are subject to a pending motion to dismiss. *See*
13 (RFJN, Exs. C and D.) EFF and Mr. Eckersley are not parties to the class-action lawsuit and are
14 not defendants to Paxfire's counterclaims. (*See* RFJN, Ex. B.) Even so, Paxfire now seeks
15 discovery against EFF and Mr. Eckersley on the basis of its state law counterclaims. Paxfire's
16 counsel has taken the position that EFF committed an actionable wrong by communicating with
17 Plaintiff's counsel and by allegedly "instigating" the class-action lawsuit against Paxfire.
18 (Declaration of Tenaya Rodewald, filed herewith ("Rodewald Decl."), ¶¶ 5, 6, Ex. E.) Paxfire
19 apparently contends that EFF and Mr. Eckersley conspired with Plaintiff in instigating the
20 underlying lawsuit. (RFJN, Ex. B (Paxfire's Counterclaims), at 28-33.)

21 　　In pursuit of this theory, Paxfire served document subpoenas on EFF and Mr. Eckersley on
22 April 23, 2012, and deposition subpoenas on June 1, 2012. (Rodewald Decl., ¶¶ 2, 3; Exs. A-D.)

23 　　Essentially, the document subpoenas seek all of EFF's and Eckersley's communications,
24 internal and external, about its investigation into Paxfire and its related publications and advocacy,
25 as well as all of their involvement in other litigation involving network neutrality or Plaintiff's
26 counsel. The deposition subpoena to EFF requests information about: EFF's internal policies and
27 practices relating to consulting work; any consulting work for Plaintiff and Plaintiff's attorneys;
28 and internal practices, information and internal concerns regarding referral of work to outside

-4

**SER-91**

1 │ attorneys. The documents and information sought in these subpoenas are protected from

2 │ discovery by several doctrines: the First Amendment rights of freedom of association, speech, and

3 │ the press; California Constitutional and statutory protections; the protections for retained and

4 │ informally consulted experts under Rule 26 of the Federal Rules of Civil Procedure ("Rule 26");

5 │ the attorney-client and work-product privileges of EFF and Mr. Eckersley; and Plaintiff's work-

6 │ product and attorney-client privileges. (Rodewald Decl., ¶ 9.) Movants have provided Paxfire

7 │ with a privilege log stating the privileges they were asserting as to documents withheld and will

8 │ produce what few responsive documents are not privileged. (Rodewald Decl., ¶ 8, Ex. G.)

9 │ Moreover, the subpoenas seek information not relevant to any claims or defenses in the suit, are

10 │ over broad, and are unduly burdensome.

11 │     Counsel for Movants conferred with Paxfire regarding the subpoena requests in an effort to

12 │ narrow the requests so that they did not infringe EFF's or Mr. Eckersley's rights or privileges.

13 │ (Rodewald Decl., ¶¶ 5, 6.) While Paxfire agreed to narrow several requests, Paxfire still

14 │ demanded broad, privileged and protected classes of documents and information described above,

15 │ including the documents noted in the privilege log and information listed in the deposition

16 │ subpoena to EFF. (Rodewald Decl., ¶ 6, Exs. E, G.)

17 │ **ARGUMENT**

18 │ **I.    STATE LAW, THE UNITED STATE CONSTITUTION AND FEDERAL RULES 26**

19 │     **AND 45 GOVERN EFF'S AND MR. ECKERSLEY'S PRIVILEGE CLAIMS**

20 │     Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege

21 │ regarding a claim or defense for which state law supplies the rule of decision." F.R.E. 501.[1]

22 │ Otherwise, claims of privilege are governed by the federal common law, the United States

23 │ Constitution, and Federal Rules. *Id.* The parties appear to agree that state law governs EFF's and

24 │

25 │

26 │ [1] *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997) (state privilege
governs as to evidence relevant to state claims, but explaining that most courts hold that if

27 │ evidence is relevant to both state and federal claims, then federal law applies); *In re Sealed Case
(Medical Records)*, 381 F.3d 1205, 1212-13 (D.C.Cir. 2004) (same); *Garza v. Scott and White*

28 │ *Memorial Hosp.*, 234 F.R.D. 617, 625 (W.D.Tex. 2005).

SMRH:405527719.5      MOTION OF NON-PARTIES EFF AND ECKERSLEY TO QUASH SUBPOENAS

1 Mr. Eckersley's claims of privilege.[2] (*See* RFJN, Ex. F (Paxfire Opposition to Jim Giles Motion
2 to Quash Subpoena).) Paxfire claims that its subpoenas seek documents and information relating
3 to Paxfire's allegations that EFF, ICSI and Plaintiff Betsy Feist "conspired" to commit the state
4 law torts alleged in Paxfire's counterclaims. (RFJN, Ex. B (Paxfire Counterclaims, at 28-33).)
5 Paxfire's counsel also represented that Paxfire seeks documents relating to Plaintiff's allegations
6 that Paxfire "profiled" customers and sold customer personal information. (Rodewald Decl., ¶¶ 5,
7 6.) These allegations are part of Plaintiff's state law conversion and unjust enrichment claims.
8 (RFJN, Ex. A, Counts IV and V.) Thus, state law governs Movants' claims of privilege.

9 Of course, Movants may claim the protections of the United States Constitution. In
10 addition, Rule 26 provides applicable protections for both retained and informally consulted
11 experts, and for documents subject to a claim of work product protection. Fed.R.Civ.P. Rule
12 26(b)(4)(D); *see also id.*, Rule 26(b)(3)(A), (b)(4)(B) and (C); *Baker v. General Motors Corp.*,
13 209 F.3d 1051, 1053 (8th Cir. 2000); *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 685 (N.D.Ind.
14 1985). Likewise, Rule 45 mandates that subpoenas must not impose undue burden or expense.
15 Fed.R.Civ.P. Rule 45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena
16 must take reasonable steps to avoid imposing undue burden or expense on a person subject to the
17 subpoena. The issuing court must enforce this duty.").

18 **II. PAXFIRE'S CLAIMS DO NOT JUSTIFY THE INVASION OF EFF'S AND MR.**
19 **ECKERSLEY'S FIRST AMENDMENT RIGHTS**

20 Paxfire's subpoenas are premised on the untenable notion that an advocacy organization
21 can be subjected to investigation and/or civil liability for exercising its constitutional rights.
22 Paxfire claims that EFF did not have the right to prompt Plaintiff to file a lawsuit or communicate
23 and consult with Plaintiff's counsel. Paxfire claims it was wrong and a "conspiracy" for EFF to
24 "[i]nduce a third party individual to bring a class action lawsuit against Paxfire." (RFJN, Ex. B
25 (Paxfire Counterclaims, ¶ 41(d)).) Paxfire's subpoenas purport to investigate these activities.
26 This alleged "inducement," however, was neither improper nor actionable. It is protected by the

27
2 The parties only disagree as to which state's law should apply. EFF and Mr. Eckersley
28 demonstrate in Section IV.A, below, that California's law applies.

-6

## SER-93

1  First Amendment. *NAACP v. Button*, 371 U.S. 415, 429 (1963) (holding that it violated the

2  NAACP's First Amendment rights to prohibit it from sponsoring and assisting litigation).[3]

3  "[A]ssociation for litigation may be the most effective form of political association" *Id.* at 431.

4  Such activities "are modes of expression and association protected by the First and Fourteenth

5  Amendments." *Id.* at 428; *Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377

6  U.S. 1, 8 (1964) (First Amendment protects union's right to advise workers to obtain legal advice

7  and recommend specific lawyers); *United Mine Workers of America, Dist. 12 v. Illinois State Bar

8  Ass'n*, 389 U.S. 217, 221-22 (1967) (the First Amendment protects union's right to hire attorneys

9  to assist its members in asserting their legal rights). "Support of litigation is a form of expression

10  and association protected by the First Amendment," and that protection extends to information

11  about participation in such efforts. *Beinin v. Center for Study of Popular Culture*, No. 06-cv-

12  02298, 2007 WL 1795693, *3 (N.D.Cal. June 20, 2007) (the names of those supporting a lawsuit

13  are not discoverable); *Eilers v. Palmer*, 575 F.Supp. 1259, 1261 (D.Minn. 1984) (same).

14   In addition, the First Amendment right of petition, as expounded in the *Noerr-Pennington*

15  doctrine, immunizes groups from suit based on the groups' use of "the channels and procedures of

16  state and federal ... courts to advocate [groups'] causes and points of view." *Sosa v. DIRECTV,

17  Inc.*, 437 F.3d 923, 929-30, 935 (9th Cir. 2006) (citation omitted) (settlement demand letters sent

18  before a lawsuit had been filed were not actionable because "communications between private

19  parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington*

20  doctrine").[4]

21   Thus, the alleged wrong Paxfire seeks to investigate is not a wrong, and Paxfire's

22  subpoenas are an unjustifiable attempt to pry into Movants' exercise of their constitutional rights.

23

24  [3]  The Supreme Court further explained that in the context of civil liberties, "litigation is not a

25  technique of resolving private differences; it is a means for achieving the lawful objectives of
equality of treatment by all government, federal, state and local… It is thus a form of political

26  expression." *Id.* at 429.

[4]  *See also Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed.Cir. 1999) (threat

27  of patent enforcement litigation could not subject patent holder to anti-trust liability); *McGuire Oil
Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir.1992) (concerted threats of litigation are

28  protected under *Noerr-Pennington* ).

1  As explained below, Paxfire's discovery seeks documents, testimony and information protected

2  by First Amendment rights of association, free speech, and the press and the California

3  Constitutional and statutory for the press. Because Paxfire's primary intent is to investigate

4  Movants' Constitutionally protected, non-actionable activities, it does not have any legitimate

5  reason to obtain the discovery that could justify the infringement of Movants' rights.

6  **III.    ENFORCING THE SUBPOENAS WOULD INFRINGE EFF'S AND MR.**

7  **ECKERSLEY'S FIRST AMENDMENT RIGHTS OF ASSOCIATION**

8  Even if Paxfire's subpoenas were directed at permissible discovery topics, which they are

9  not, the subpoenas seek documents, information and communications that are protected by

10  Movant's First Amendment rights of association. Paxfire's subpoenas would force disclosure of

11  confidential communications necessary to Movants' First Amendment protected research and

12  advocacy, and their First Amendment protected right to associate with others to advance their

13  political and social goals. Permitting the discovery would chill communication within EFF and

14  deter others from associating and communicating with EFF and Mr. Eckersley in the future. It

15  would therefore impermissibly infringe EFF's and Mr. Eckersley's First Amendment rights, and

16  the subpoenas must be quashed.

17  **A.    The First Amendment Right of Association Protects EFF's and Mr.**

18  **Eckersley's Communications from Discovery**

19  "Effective advocacy of both public and private points of view, particularly controversial

20  ones, is undeniably enhanced by group association." *NAACP*, 357 U.S. at 460. "[I]mplicit in the

21  right to engage in activities protected by the First Amendment [is] a corresponding right to

22  associate with others in pursuit of a wide variety of political, social, economic, educational,

23  religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "Thus, '[t]he

24  First Amendment protects political association as well as political expression,' and the 'freedom to

25  associate with others for the common advancement of political beliefs and ideas is ... protected by

26  the First and Fourteenth Amendments.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir.

27  2010) (citations omitted); *id.* at 1165 (holding that compelling disclosure of internal campaign

28  communications would "would likely have a chilling effect on political association," and ordering

-8

## SER-95

1  entry of a protective order). "[I]t is immaterial whether the beliefs sought to be advanced by

2  association pertain to political, economic, religious or cultural matters." *NAACP*, 357 U.S. at 460.

3  As noted, "[s]upport of litigation is a form of expression and association protected by the First

4  Amendment." *Beinin*, No. 06-cv-02298, 2007 WL 1795693, \*4, n. 4; *Eilers*, 575 F.Supp. at 1261

5  (same).

6      Furthermore, there is a "vital relationship between freedom to associate and privacy in

7  one's associations ." *NAACP*, 357 U.S. at 462. "The Supreme Court has long recognized that

8  compelled disclosure of political affiliations and activities can impose just as substantial a burden

9  on First Amendment rights as can direct regulation." *AFL-CIO v. FEC*, 333 F.3d 168, 175

10 (D.C.Cir. 2003). "Disclosures of political affiliations and activities that have a 'deterrent effect on

11 the exercise of First Amendment rights' are therefore subject to [] 'exacting scrutiny.'" *Perry*, 591

12 F.3d at 1160 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976)).

13     The subpoenas seek discovery of internal communications and communications with

14 others to advance Movants' First Amendment protected activities, including bringing and

15 supporting litigation, research, and publication and dissemination of information.[5] Thus, they

16 implicate Movant's constitutionally protected rights of association, petition, and speech. *NAACP*,

17 357 U.S. at 461; *Button*, 371 U.S. at 430. Compelled disclosure of these communications would

18 chill Movants' exercise of their constitutional rights, and would deter others from associating and

19 communicating with Movants, thereby further violating Movants' First Amendment rights.

20     "A party who objects to a discovery request as an infringement of the party's First

21 Amendment rights is in essence asserting a First Amendment *privilege*." *Id.* (emphasis original).

22 In the Ninth Circuit, a First Amendment privilege claim is subject to a two-part analysis. First,

23 "[t]he party asserting the privilege 'must demonstrate ... a 'prima facie showing of arguable first

24 amendment infringement'" by demonstrating that discovery would "'result in (1) harassment,

25 membership withdrawal, or discouragement of new members, or (2) other consequences which

26

27 ⁵ The subpoenas discussed include the deposition subpoena to EFF seeking information about
    EFF's internal practices, "concerns" and communications, and EFF's associations with Plaintiff's
28 counsel, and the deposition subpoena to Mr. Eckersley.

1 | objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" *Id.*

2 | (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988)).

3 | Once this showing has been made, the burden shifts to the party seeking discovery to show that it

4 | is highly relevant to the claims or defenses in the litigation (a more demanding standard of

5 | relevance than that under Rule 26(b)(1)), carefully tailored to avoid unnecessary interference with

6 | protected activities, and otherwise unavailable. *Id.* at 1161.

7 | **B.      First Amendment Protection Applies to The Discovery Paxfire Seeks**

8 | Paxfire's subpoenas demand disclosure of documents, information and communications

9 | reflecting EFF's internal strategy and analysis regarding research, litigation, publication and

10 | advocacy. (*See, e.g.,* Rodewald Decl., Exs. A, B, Request 4 (seeking all communications

11 | regarding the listed topics); Request 5 (seeking all drafts of articles and comments on draft

12 | articles); Ex. C, EFF Deposition Subpoena, Topic 3.) Frank exchange of ideas within EFF is

13 | essential to EFF's functioning. (Cohn Decl., *Id.*, ¶¶ 13, 14.) Permitting Paxfire's discovery would

14 | make EFF's staff and researchers more hesitant to frankly express their ideas and severely chill

15 | EFF's internal communications. (*Id.*, ¶ 16.) In particular, EFF's members would be less likely to

16 | express dissenting opinions and criticism, or test bold or controversial ideas through debate, for

17 | fear that any such statements could be used by opponents to attack or undermine EFF in the future.

18 | (*Id.*) As the Ninth Circuit explained:

19 | [D]isclosure of internal campaign information can have a deterrent effect on the
    | free flow of information within campaigns. Implicit in the right to associate with
20 | others to advance one's shared political beliefs is the right to exchange ideas and
    | formulate strategy and messages, and to do so in private. Compelling disclosure of
21 | internal campaign communications can chill the exercise of these rights.

22 | *Perry*, 591 F.3d at 1162-63, 1161. *See also Wyoming v. U.S. Dept. Of Ag.*, 208 F.R.D. 449, 454–

23 | 55 (D.D.C. 2002) (disclosure of internal communications, "would have a potential 'for chilling the

24 | free exercise of political speech and association guarded by the First Amendment'"), quoting *Fed.*

25 | *Election Comm. v. Machinists Non–Partisan Polit. League*, 655 F.2d 380, 388 (D.C.Cir. 1981).

26 | Moreover, public revelation of EFF's frank internal communications could provide fodder

27 | to EFF's opponents to attack EFF, confuse the issues, or portray EFF as inconsistent or

28 | disingenuous. (Cohn Decl., ¶ 15.) The information in EFF's internal discussions could also reveal

-10-

**SER-97**

1 the limits of EFF's resources and areas of internal disagreement that could be played upon by
2 those seeking to limit EFF's public advocacy. (*Id.*) Imposing these penalties on EFF also
3 constitutes infringement of its First Amendment rights. *Perry*, 591 F.3d at 1163 and n. 10
4 (explaining that First Amendment activities may be chilled in numerous ways, including by
5 revealing a group's "activities, strategies and tactics" to its opponents, or because "[d]isclosure of
6 the associations' evaluations of possible lobbying and legislative strategy certainly could be used
7 … to gain an unfair advantage."). *See also Wyoming*, 208 F.R.D. at 454 ("courts have held that
8 the threat to First Amendment rights may be more severe in discovery than in other areas because
9 a party may try to gain advantage by probing into areas an individual or a group wants to keep
10 confidential.") (citing *Britt v. Sup. Ct. of San Diego Co.*, 20 Cal.3d 844, 857 (Cal. 1978)).

11 Paxfire also seeks disclosure of Movants' confidential communications with numerous
12 third parties, including ICSI researchers, employees at Google, Yahoo!, Microsoft and elsewhere,
13 and Plaintiff's counsel. (*See* Rodewald Decl, Exs. A, B, Subpoena Requests 1-7.) These
14 communications are integral to Movants' associations with other like-minded individuals and
15 groups, and to the sources of information and support for Movants' advocacy work. "One of the
16 purposes inherent in the right of association is to encourage like-minded individuals to discuss
17 issues of common importance." *Beinin*, No. 06-cv-02298, 2007 WL 1795693, *4 (holding that
18 revealing names of those who sent private messages of support to a litigant violated the First
19 Amendment because "[h]ad Plaintiff's email correspondents realized that privately supporting his
20 litigation would potentially subject them to intrusive depositions or other discovery, they may
21 have chosen to refrain from speaking.").

22 Movants associate closely with other individuals, organizations and companies for specific
23 technology development, policy analysis, research and advocacy projects of great importance to
24 public debate and welfare. For example, Arvind Narayanan is a computer science researcher at
25 Stanford University who works on technology and policy effecting the privacy of user
26 information, and who collaborated closely with EFF on technology, policy and legislative projects
27 effecting online privacy. (Declaration of Arvind Narayanan ("Narayanan Decl."), filed herewith,
28 ¶¶ 2-7.) As one example of the First Amendment protected work he undertook with EFF, he

-11

SER-98

1 received extremely helpful input from EFF in his analysis of Do Not Track ("DNT"), a proposed
2 internet standard that lets users opt-out of having websites track their online behavior. (*Id.*, ¶ 5.)
3 He collaborated with EFF in submitting public input regarding Do Not Track to the Federal Trade
4 Commission, and worked with EFF to help develop and amend a Do Not Track bill introduced in
5 Congress last year. (*Id.*, ¶ 6.) These projects would have been impossible without the assurance
6 of privacy. (*Id.*, ¶¶ 10-13.) For example, it would be impossible to honestly and critically discuss
7 the technology or suggested changes to legislation if opponents might be able to obtain the
8 comments and use them to undermine the work. (*Id.*, ¶ 11.)

9    Similarly, Jesse Burns, a computer security expert, has worked intensively with EFF on
10 numerous security analysis projects and tools. (Declaration of Jesse Burns, filed herewith ("Burns
11 Decl."), ¶ 9.) For example, he helped EFF develop the SSL Observatory project, which tracks
12 security problems in the "certificates" that browsers use to decide if websites should be trusted or
13 not, and which is published on EFF's website. (*Id.*) He associated with EFF to share his analysis
14 of security flaws in SonyBMG music CDs that could jeopardize the security of computers on
15 which they were played. (*Id.*, ¶ 4.) He also helps EFF formulate technical positions and policy
16 analysis, and has discussions with EFF to help him understand the potential policy or legal
17 implications of his work. (*Id.*, ¶¶ 5-8.) EFF is a trusted partner for him and others in the computer
18 security field who discover dangerous vulnerabilities, helping them decide when to use public
19 advocacy or other policy or technology methods to protect consumers, and taking public action
20 when the researchers cannot. (*Id.*, 13.)

21    Mr. Narayanan's and Mr. Burns' work with EFF depends critically on their ability to
22 communicate in confidence, and they would reduce or end their associations with EFF if their
23 communications were discoverable. (Narayanan Decl., ¶¶ 9-14; Burns Decl., ¶¶ 6, 9-15.) EFF
24 and Mr. Eckersley associated with the ICSI researchers in exactly the same manner as they do
25 with Mr. Burns and Mr. Narayanan, and they associate and communicate with companies like
26 Google, Yahoo! and Microsoft in a similar manner. Mr. Eckersley collaborated with the ICSI
27 researchers to investigate and publish an issue of public importance. (*See* Declaration of Nicholas
28 Weaver, filed herewith ("Weaver Decl."), ¶¶ 4,9.) The collaboration with ICSI would not have

-12

**SER-99**

1 | taken place, or would have been drastically curtailed, had the participants thought their discussions
2 | would become public through Paxfire subpoenas. (Weaver Decl., ¶¶ 5, 6, 9; Eckersley Decl.,
3 | ¶¶ 21-24.) Movants' Constitutionally protected associations would be infringed by Paxfire's
4 | discovery. (Eckersley Decl., ¶ 21-25.)

5 |     Similarly, forcing disclosure of Movants' communications with counsel outside EFF
6 | would greatly impair EFF's ability to undertake its First Amendment protected legal advocacy
7 | work. (Cohn Decl., ¶ 17-19; Rodewald Decl., Exs. A, B, Subpoena Requests 1-3 (seeking
8 | communications with outside counsel), Ex. C.) EFF often collaborates with or aids outside
9 | attorneys with litigation or potential litigation that advance EFF's positions on privacy, consumer
10 | protection and civil liberties. (*Id.*, ¶ 17.) EFF also receives calls from counsel handling cases
11 | where digital rights issues come up, asking for guidance and referral to resources. (*Id.*) Such
12 | collaborations and assistance necessarily require frank and confidential discussions of legal
13 | strategy, facts and positions and implications of arguments or rulings. (*Id.*) Such communications
14 | are often key to EFF's development of strategies, positions and arguments for both EFF's public
15 | advocacy and EFF's work as amicus. (*Id.*, ¶ 18.) Finally, as was the case here, EFF sometimes
16 | refers potential matters or clients to outside attorneys when EFF does not have the resources to
17 | litigate an action itself. (*Id.*, ¶ 19.) In such situations, EFF may share some of the information and
18 | work product it developed on the matter to aid the litigation. (*Id.*) EFF would be effectively
19 | isolated and unable to collaborate with other attorneys in these ways if its communications were
20 | discoverable by any civil litigant. (*Id.*)

21 |     Movants' communications and associations with all of these third parties are protected by
22 | the First Amendment to the same extent as internal communications. The First Amendment's
23 | protection "extends not only to the organization itself, but also to its staff, members, contributors,
24 | *and others who affiliate with it.*" *Int'l Union v. Nat'l Right to Work Legal Defense and Ed.*
25 | *Found., Inc.*, 590 F.2d 1139, 1147 (D.C.Cir. 1978) (emphasis added); *Wyoming v. U.S. Dept. of*
26 | *Agriculture*, 208 F.R.D. 449, 454-55 (D.D.C. 2002) (quashing subpoenas seeking documents
27 | exchanged between groups advocating protection of the environment because the requests would
28 | violate the groups' First Amendment rights of association). "Courts have recognized that the

-13

**SER-100**

1 freedom of association protects organizational interaction, not only with other organizations, but
2 also with respect to an organization's internal interactions and communications." *In re*
3 *GlaxoSmithKline plc*, 732 N.W.2d 257, 268-9 (Minn. 2007) (holding that trade association and
4 pharmaceutical company were "clearly entitled to the First Amendment protection of their
5 association rights, both within their respective organizations and with respect to communications
6 with other organizations" and might be entitled to a protective order to protect those rights upon
7 appropriate showing); *Machinists Non–Partisan Political League*, 655 F.2d at 388 (releasing
8 communications among separate groups would have a potential "for chilling the free exercise of
9 political speech and association guarded by the First Amendment.").

10 **C. Because Movant's First Amendment Rights Are Implicated, Paxfire Has the**
11 **Burden to Justify Its Subpoenas, Which it Cannot Do**

12 Movants have shown that their protected associations, both internal and with like-minded
13 third parties, would be chilled and infringed by Paxfire's discovery. *See Perry*, 591 F.3d at 1163
14 (declarations of several members established prima facie case of infringement); *Dole v. Serv.*
15 *Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991) (same).
16 Therefore, in order to justify discovery, Paxfire must show that the information sought is *highly*
17 relevant and unavailable from other sources, and that its requests are "narrowly tailored to avoid
18 unnecessary interference with protected activities." *Perry*, 591 F.3d at 1161.[6] In sum, the
19 question is "whether the party seeking the discovery 'has demonstrated an interest in obtaining the
20 disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of
21 [the] constitutionally protected right of association.'" *Id.* (quoting *NAACP*, 357 U.S. at 463).

22 Paxfire cannot demonstrate any such interest. As explained, Paxfire's discovery is
23 premised on the insupportable theory that EFF and Mr. Eckersley may be subjected to liability for

24

25 [6] In addition, the court may consider "the substantiality of the First Amendment interests at
stake." *Id.* "The argument in favor of upholding the claim of privilege will ordinarily grow
26 stronger as the danger to rights of expression and association increases." *Black Panther Party v.*
*Smith*, 661 F.2d 1243, 1267 (D.C.Cir. 1981). Here, Movants have demonstrated that permitting
27 discovery of their confidential communications would pose a grave threat to fundamental
constitutional rights, including their associational, speech and petitioning rights. Therefore,
28 Paxfire must meet the most exacting standard to justify discovery from EFF and Mr. Eckersley.

-14

1  having prompted or aided others to bring a lawsuit or that Plaintiff may be subjected to liability for
2  having conspired with the to pursue the underlying action. These activities are not a legitimate
3  basis for a claim nor for discovery. Indeed, they are protected by the First Amendment. *NAACP*
4  *v. Button*, 371 U.S. 415, 429 (1963); *see also* Section II, above. Paxfire's improper desire to
5  investigate Movants' legal, Constitutionally protected activities cannot possibly justify discovery
6  that would violate Movants' First Amendment rights.

7  Moreover, Paxfire cannot demonstrate that its discovery is narrowly tailored to seek highly
8  relevant information that is otherwise unavailable. *Perry*, 591 F.3d at 1161. Paxfire's discovery is
9  an overly-broad fishing expedition requesting, in some cases, *four or five years* worth of
10  documents and communications. (*See* Rodewald Decl., Exs. A, B, Subpoena Requests 1-3, 6 and
11  7.) Further, the requests seek Movants' communications *with Plaintiff* or *Plaintiff's counsel*.
12  (*See* Rodewald Decl., Exs. A, B, Subpoena Requests 1-3.) Similarly, Paxfire claimed it wishes to
13  investigate *Plaintiff's knowledge* and sources of knowledge for her privacy-based state law
14  claims. (Rodewald Decl., ¶¶ 5, 6, Ex. E; Ex. Exs. A, B, Requests 1-7.) Even if this discovery
15  were proper, such documents should be available *from Plaintiff*. Finally, Paxfire has not
16  explained and cannot explain how much of its discovery is relevant, let alone "highly relevant" to
17  any claims in the litigation.

18  **IV.  PAXFIRE CANNOT OBTAIN DISCOVERY OF MATERIAL PROTECTED BY**
19  **CALIFORNIA'S CONSTITUTIONAL AND STATUTORY REPORTER'S**
20  **PRIVILEGE AND THE FIRST AMENDMENT**

21  **A.  California State Privilege Law Applies**

22  The parties agree that state law governs privilege claims regarding Paxfire's subpoenas,
23  but disagree as to which state's law should apply. (*See* RFJN, Ex. F (Paxfire's Opposition to Jim
24  Giles Motion to Quash Subpoena, arguing that New York state law should apply).) Paxfire
25  correctly notes that the Court applies the choice of law rules of the forum in which it sits to
26  determine which state's privilege law to apply. *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 423
27  (C.D.Cal. 1999).

28  California applies a "government interest analysis" to determine which state law to apply.

-15

**SER-102**

1  "Analysis of a choice of law question proceeds in three steps: (1) determination of whether the
2  potentially concerned states have different laws, (2) consideration of whether each of the states has
3  an interest in having its law applied to the case, and (3) ... determining which state's interests
4  would be more impaired if its policy were subordinated to the policy of the other state." *Sommer*
5  *v. Gabor*, 40 Cal.App.4th 1455, 1467 (1995) (citation omitted); *Sullivan v. Oracle Corp.*, 51
6  Cal.4th 1191, 1202 (2011).

7  　　　　Paxfire argues that New York law differs from California law, in that it provides only a
8  qualified privilege for unpublished information not obtained through a promise of confidentiality.
9  (RFJN, Ex. F (Opposition to Giles Motion) at 6; New York Civil Rights Law, § 79-h.) On the
10  other hand, as discussed below, California's press shield law establishes an *absolute protection*
11  from compelled disclosure of all unpublished information and sources in civil actions. Cal.
12  Const., art. I, § 2, subd. (b); Cal. Evid. Code, § 1070(a) (same).

13  　　　　By elevating the press shield law to constitutional status, California has expressed that it
14  has a paramount interest in having its reporter's privilege apply. "[T]he broad scope of
15  California's shield law and the fact that it has now been embodied in one of the first articles of the
16  state's constitution 'reflect a paramount public interest in the maintenance of a vigorous,
17  aggressive and independent press capable of participating in robust, unfettered debate over
18  controversial matters, an interest which has always been a principal concern of the First
19  Amendment ....'" *Los Angeles Memorial Coliseum Commission v. National Football League*, 89
20  F.R.D. 489, 495 (C.D.Cal. 1981) (quotation omitted).

21  　　　　Further supporting the application of California law is the fact that the newsgathering at
22  issue took place in California. EFF and Mr. Eckersley are located in California. (Eckersley Decl.,
23  ¶¶ 16-18.) Movants investigated search engine traffic redirection while in California, and
24  undertook their investigation in conjunction with researchers at ICSI, also located in California.
25  (*Id.*, 17.) Movants' sources were located in California. (*Id.*) Movants reported their findings
26  from California on the EFF blog and newsletter to an audience that included many Californians.
27  (*Id.*, ¶ 16, Cohn Decl., ¶ 2.) California's press protections have the primary purpose of protecting
28  its reporters from unwanted interference in order that California residents may benefit from a

-16

1 robust, unfettered debate. "[T]he privilege is a recognition that society's interest in protecting the
2 integrity of the newsgathering process, and in ensuring the free flow of information to the public,
3 is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts
4 needed in the administration of justice.'" *Shoen v, Shoen* ("*Shoen I*"), 5 F.3d 1289, 1292 (9th Cir.
5 1993) (quoting *Herbert v. Lando*, 441 U.S. 153, 183 (1979) (Brennan, J., dissenting)).

6 No doubt Paxfire will argue that Betsy Feist, plaintiff in the class-action lawsuit, is a New
7 York resident, the lawsuit is venued in New York, and some of the claims and counter-claims are
8 based on New York law. (RFJN, Ex. F, at 7.) However, Paxfire is a Delaware Corporation with
9 its principle place of business in Virginia. *Id.*, Ex. B, ¶ 7. New York has no particular interest in
10 vindicating Paxfire's alleged counterclaims. Moreover, whatever interest New York has in
11 ensuring information be available to litigants in its courts, the interest cannot prevail over
12 California's much greater interest in protecting its reporters and their sources and in promoting the
13 free flow of information to its residents. "The elevation [of the privilege] to constitutional status
14 must be viewed as an intention to favor the interests of the press in confidentiality over the general
15 and fundamental interest of the state in having civil actions determined upon a full development of
16 material facts." *Playboy Enterprises, Inc. v. Superior Court*, 154 Cal. App. 3d 14, 27-28 (1984).
17 "It has long been acknowledged that our state Constitution is the highest expression of the will of
18 the people acting in their sovereign capacity as to matters of state law." *Id.* California has the
19 expressed, paramount interest in the application of its privilege law.

20 **B.** **California's Constitutional and Statutory Reporter's Privileges Provide**
21 **Absolute Protection from Discovery for All Unpublished Information**

22 The California press shield law establishes an absolute protection from compelled
23 disclosure in civil litigation of any unpublished information obtained in newsgathering or
24 reporting. Cal. Const., art. I, § 2, subd. (b); Cal. Evid. Code, § 1070(a). California law prohibits
25 holding any newsperson, including any "publisher, editor, reporter, or other person connected with
26 or employed upon a newspaper, magazine, or other periodical publication" in contempt "for
27 refusing to disclose *any* unpublished information obtained or prepared in gathering, receiving or
28 processing of information for communication to the public." Cal. Const., art. I, § 2, subd. (b)

-17

**SER-104**

1  (emphasis added). "The use of the word 'any' makes clear that article I, section 2(b) applies to all

2  information, regardless of whether it was obtained in confidence. . . . In the context of article I,

3  section 2(b), the word 'any' means without limit and no matter what kind." *Delaney v. Superior*

4  *Court*, 50 Cal. 3d 785, 798 (1990). Moreover, "unpublished information" includes "information

5  not disseminated to the public by the person from whom disclosure is sought, *whether or not*

6  *related information has been disseminated.*" Cal. Const., art. I, § 2, subd. (b). Further,

7  unpublished information "includes, but is not limited to, all notes, outtakes, photographs, tapes or

8  other data of whatever sort not itself disseminated to the public... whether or not published

9  information based upon or related to such material has been disseminated." *Id.*; *Delaney*, 50 Cal.

10  3d at 798 ("'Information' includes 'reception of knowledge' and 'knowledge obtained from

11  reading, observation or instruction.'" ). Protection is absolute in civil cases. "[T]he shield law

12  provides 'absolute protection to non-party journalists in civil litigation.'" *New York Times Co. v.*

13  *Superior Court*, 51 Cal.3d 453, 457, 461-62 (1990). California's statutory and constitutional

14  protections apply equally to online publications. *O'Grady v. Superior Court*, 139 Cal.App.4th

15  1423, 1459-60, 1466 (2006) (constitutional protection applies to reporting for blog post).

16      Mr. Eckersley and EFF fall squarely within the absolute protection of the California press

17  shield law. Mr. Eckersley investigated and reported on search traffic redirection by ISPs and

18  defendant Paxfire. (Eckersley Decl., ¶ 16-19.) He reported his findings in a blog published by

19  EFF on its website at www.eff.org, and in EFF's e-mail newsletter, EFFector. (Cohn Decl., ¶ 7;

20  Eckersley Decl., ¶ 17, Ex. A.) The California shield law prohibits Paxfire from compelling

21  disclosure of unpublished information and communications that were "obtained or prepared in

22  gathering, receiving or processing of information" for reporting to the public. (Cal. Const., art. I,

23  § 2, subd. (b); *O'Grady*, 139 Cal.App.4th at 1459-60, 1466.)

24      Therefore, Paxfire may not obtain communications between Mr. Eckersley and his sources.

25  Mr. Eckersley worked with researchers at ICSI as both sources of information and co-authors of

26  publications in question. (Eckersley Decl., ¶¶ 8, 16-18.) Their communications, as well as data

27  and research results they exchanged are absolutely privileged, so the request seeking such

28  information are barred. (Rodewald Decl., Exs. A, B, Subpoena Requests 4-6.) Mr. Eckersley's

-18

1 communications with Google, Yahoo!, Microsoft and/or other confidential sources relating to
2 Paxfire, if any, were undertaken as part of his newsgathering and reporting about search traffic
3 redirection (Eckersley Decl., ¶ 17), so they too are protected and the request for these
4 communications is barred. (Rodewald Decl., Exs. A, B, Subpoena Request 7)

5 Moreover, Paxfire may not obtain from Mr. Eckersley or EFF any "research results and
6 communications, including [comprising] raw data, final conclusions … peer review, and internal
7 discussions, concerning Paxfire or RCN," (Subpoena Request 6), that were obtained or prepared in
8 the course of Mr. Eckersley's newsgathering or reporting activities. Protected unpublished
9 information "includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of
10 whatever sort not itself disseminated to the public." Cal. Const., art. I, § 2, subd. (b); *Shaklee*
11 *Corp. v. Gunnell*, 110 F.R.D. 190, 193-4 (N.D.Cal. 1986) (unpublished documents obtained from
12 third party were protected even when partially quoted in news story); *Hammarley v. Superior*
13 *Court*, 89 Cal.App.3d 388, 397-98 (1979) ("the statutory privilege protecting unpublished
14 information is not limited to material which might lead to the disclosure of a newsman's
15 confidential sources, but encompasses all information acquired by the newsman in the course of
16 his professional activities which he has not disseminated to the public."). Finally, Paxfire may not
17 compel Mr. Eckersley or EFF to produce drafts of articles or comments on such articles. These
18 also constitute unpublished "information… notes, outtakes … or other data" absolutely protected
19 from compelled discovery. Cal. Const., art. I, § 2, subd. (b); *Playboy Enterprises, Inc..*, 154
20 Cal.App.3d at 22 ("source materials and editorial drafts and working papers" are protected).

21 In sum, the California press shield law is an absolute bar to discovery of much of the
22 information Paxfire seeks in Subpoena Requests 4-7. (*See* Rodewald Decl., ¶ 9, Ex. G.)

23 **C.** **Under the First Amendment, Discovery May Only be Compelled in the Most**
24 **Exceptional Cases**

25 Regardless of the application of state law, the federal Constitution provides protection that
26 may not be derogated, and which prevents Paxfire from obtaining the discovery at issue here. The
27 First Amendment protects reporters from compelled disclosure of confidential sources and
28 unpublished information. *See Shoen v. Shoen ("Shoen II")*, 48 F.3d 412, 414-16 (9th Cir. 1995);

-19

1 *Shoen I*, 5 F.3d at 1292-93 and n. 5 (explaining that the "First, Second, Third, Fourth, Fifth,
2 Eighth, Tenth, and District of Columbia circuits have all interpreted [*Branzburg v. Hayes*, 408
3 U.S. 665 (1972)] as establishing a qualified privilege for journalists to resist compelled
4 discovery."). "[T]he critical question for deciding whether a person may invoke the journalist's
5 privilege is whether she is gathering news for dissemination to the public." *Shoen I*, 5 F.3d at
6 1293. It may be invoked when "the person seeking to invoke the privilege had 'the intent to use
7 material – sought, gathered or received – to disseminate information to the public and [] such
8 intent existed at the inception of the newsgathering process.'" *Id.* (citing *von Bulow by Auersperg*
9 *v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)).

10 The First Amendment privilege extends to a journalist's "***resource materials regardless of***
11 ***whether these materials contain confidential information***," *Shoen I*, 5 F.3d at 1294-5 (emphasis
12 added), and "***regardless of the medium*** used to report the news to the public." *Id.* at 1293, 1294.
13 Moreover, journalists do not lose protection of the First Amendment merely because they
14 advocate a particular position. *Wright v. Fred Hutchinson Cancer Research Ctr*, 206 F.R.D. 679,
15 681 (W.D.Wash. 2002) (denying defendants' motion to compel production of any and all
16 communications between the *Seattle Times* and the plaintiffs and holding the First Amendment
17 protection extends to allegedly "biased" reporter). "The First Amendment does not favor
18 'objective' reporting, nor is it limited to statements which contain only proven facts." *Id.*, fn. 2.

19 Once the journalist's privilege is successfully invoked, "compelled disclosure is the
20 exception, not the rule." *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) (*Shoen II*). A party
21 may obtain discovery of non-confidential information from a non-party journalist "only upon a
22 showing that the requested material is: (1) unavailable despite exhaustion of all reasonable
23 alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."
24 *Id.* "[T]here must be a showing of actual relevance; a showing of potential relevance will not
25 suffice." *Id.* "Because protection for journalists furthers the public's interest in a free and useful
26 press, 'in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's
27 privilege. Indeed, if the privilege does not prevail in all but the most exceptional cases, its value
28 will be substantially diminished.'" *Wright,* 206 F.R.D. at 681-82 (quoting *Shoen II*, 48 F.3d at

-20

**SER-107**

1  416); *see also Zerilli v. Smith*, 656 F.2d 705, 712 (D.C.Cir. 1981).

2  This is not a "most exceptional case." *Shoen II*, 48 F.3d at 416. Paxfire cannot make the

3  showing necessary to justify requested discovery that otherwise violates First Amendment's

4  protections of the press. As discussed previously, Paxfire seeks to investigate whether EFF

5  "instigated" the lawsuit against it. *See* Section B, above. Whether EFF instigated the lawsuit is

6  not relevant to any important issues in this case, since, if true, it would merely reflect the non-

7  actionable exercise of EFF's and Mr. Eckersley's First Amendment rights. Moreover, Paxfire has

8  not exhausted reasonable alternative sources for the information it purports to seek. Paxfire

9  claimed it wishes to investigate Plaintiff's knowledge and sources of knowledge for her privacy-

10  based state law claims. Rodewald Decl., ¶¶ 5, 6; Requests 1-7. Plaintiff is obviously a reasonable

11  alternative source for information regarding her knowledge. Paxfire cannot impose extensive and

12  invasive discovery on EFF in order to obtain such information.[7]

13  **V.    EFF AND MR. ECKERSLEY WERE INFORMALLY CONSULTED EXPERTS TO**

14  **PLAINTIFF SO DISCOVERY OF THEIR COMMUNICATIONS AND WORK**

15  **PRODUCT IS PRECLUDED BY RULE 26**

16  Federal Rule of Civil Procedure 26(b)(4)(D) "precludes discovery against experts who

17  were informally consulted in preparation for trial, but not retained or specially employed." *USM*

18  *Corp. v. American Aerosols, Inc.*, 631 F.2d 420, 425 (6th Cir. 1980) (where president of defendant

19  company sought expert's "unbiased and analytical evaluation," correspondence, including expert's

20  subsequent response constituted informal consultation not subject to discovery); Fed.R.Civ.P.

21  Advisory Committee Note to 1970 Amendment, subsection (b)(4)(B)[8]; Wright and Miller, Federal

22  Practice and Procedure, § 2033. The preclusion "not only encompasses information and opinions

23  developed in anticipation of litigation, but also insulates discovery of the identity and other

24

25  [7] "[P]ress autonomy 'would be jeopardized if resort to its resource materials by litigants seeking to utilize the news gathering efforts of journalists for their private purposes were routinely

26  permitted .... The practical burden on time and resources as well as the consequent diversion of journalistic effort and disruption of news gathering activity, would be particularly inimical to the

27  vigor of a free press.'" *Delany*, 50 Cal.3d at 821 (citation omitted).

     [8] Rule 26(b)(4)(B) was renumbered as Rule(b)(4)(D). *Id.*, Advisory Committee Note to 2010
28  Revisions.

-21

1  collateral information concerning experts consulted informally." *Ager v. Jane C. Stormont*

2  *Hospital and Training School for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980) (citing cases). "If

3  the expert is considered to have been only informally consulted in anticipation of litigation,

4  discovery is barred." *Ager*, 622 F.2d at 502.

5       Neither Mr. Eckersley nor EFF was formally retained or paid as a consultant in the class-

6  action against Paxfire. (Eckersley Decl., ¶ 20; Cohn Decl., ¶ 10.) However, Plaintiff's counsel

7  consulted Mr. Eckersley and EFF in their capacity as experts in the technology at issue.

8  (Eckersley Decl., ¶ 20; Cohn Decl., ¶ 9; RFJN, Ex. G (Plaintiff's Motion to Quash), at 2-3.)

9  Plaintiff has asserted attorney-client and work product protection for all communications with EFF

10  and Mr. Eckersley, and all documents and information prepared by them in anticipation of

11  litigation. (RFJN, Ex. G.) These documents are not discoverable under Rule 26(b)(4)(D).

12  **VI.**   **MR. ECKERSLEY AND EFF WERE RETAINED EXPERTS TO PLAINTIFF ON**

13         **PRIOR LITIGATION SO DISCOVERY OF THEIR COMMUNICATIONS AND**

14         **WORK PRODUCT IS BARRED BY RULE 26**

15       Movants were retained, compensated experts on several prior actions brought by Plaintiff's

16  counsel. (Eckersley Decl., ¶ 19; Cohn Decl., ¶¶ 8, 10.) Paxfire seeks EFF's and Mr. Eckersley's

17  communications with Plaintiff's counsel relating to these prior actions. *See* Subpoena Requests 1-

18  3. Rule 26(b)(4)(D) limits discovery against non-testifying, retained experts. Fed.R.Civ.P. Rule

19  26(b)(4)(D); *Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 93 Civ. 0167, 1994 WL 177785, *1

20  (S.D.N.Y. May 6, 1994) (Non-testifying retained consultants are "generally immune from

21  discovery."). Plaintiff and Plaintiff's counsel have asserted attorney-client and work product

22  protection for these documents. (RFJN, Ex. G (Plaintiff's Motion to Quash).) Documents

23  prepared by Mr. Eckersley or EFF in connection with their work as experts in prior litigation are

24  not discoverable.

25  **VII.**   **REQUESTED COMMUNICATIONS AND DOCUMENTS ARE PROTECTED BY**

26         **EFF'S AND MR. ECKERSLEY'S ATTORNEY-CLIENT PRIVILEGES AND**

27         **WORK PRODUCT PROTECTIONS**

28       Subpoena Requests 1-6 seek documents protected by Movants' attorney-client and work

-22-

**SER-109**

1  product privileges. In particular, Ms. Cohn, as EFF's General Counsel, provided legal advice to
2  EFF and to Mr. Eckersley in relation to the topics named in the Requests. (Cohn Decl., ¶ 12.)
3  Documents reflecting her advice, or EFF's or Mr. Eckersley's solicitation of that advice, are
4  privileged. (*Id.*) Moreover, documents prepared in anticipation of possible suit from Paxfire are
5  protected by Movants' work product privilege. (*Id.*, ¶ 11, 12.) Movants are not obliged to
6  produce such documents.

7  **VIII.  RULE 45(C)(1) AND (C)(3)(A)(IV) REQUIRE THE COURT QUASH OR MODIFY**
8  **THE SUBPOENAS BECAUSE THEY IMPOSE UNDUE BURDENS ON EFF AND**
9  **MR. ECKERSLEY**

10  In determining whether a third party subpoena is unduly burdensome, courts consider
11  "relevance, the need of the party for the documents, the breadth of the document request, the time
12  period covered by it, the particularity with which the documents are requested, and the burden
13  imposed." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D.Ill. 2009) (citation omitted). "A 'court
14  has the discretion to deny discovery requests if it determines that ... 'the burden or expense of the
15  proposed discovery outweighs its likely benefit.'" *Arista Records LLC v. Lime Group LLC*, No.
16  06-CV-5936, 2011 WL 781198, *2-4 (S.D.N.Y. March 4, 2011) (citation omitted) (holding that
17  third parties' internal communications were not relevant to plaintiff's attitudes, and external
18  communications with plaintiff were duplicative of records obtainable from plaintiff, therefore
19  subpoena was quashed as to both types of documents). In considering the burden of subpoenas,
20  the court may consider whether requests will infringe the privacy or confidences of third parties,
21  *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004), or chill investigative
22  activities of researchers. *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982).

23  Here, Paxfire seeks documents and information that are clearly irrelevant, or can and
24  should be obtained from Plaintiff, and the burden on EFF to respond outweighs any possible
25  benefit. Paxfire seeks EFF's internal policies regarding consulting and referrals to outside
26  counsel, as well as documents regarding its past work for Plaintiff's counsel. (Rodewald Decl.,
27  Ex. C (EFF Deposition Subpoena), Topics 1-3; Ex. A, Subpoena Requests 1-3.) Such information
28  is not relevant to any claims in the underlying action, even if Paxfire is asserting some sort of

-23

**SER-110**

1 "conspiracy" with regard to the class-action against it. *Arista Records*, 2011 WL 781198, \*2-4.
2 EFF's communications with Plaintiff or Plaintiff's counsel, to the extent they are discoverable,
3 should be obtained from Plaintiff. *Arista Records*, 2011 WL 781198, \*2-4. Similarly, Paxfire
4 seeks EFF's and Mr. Eckersley's communications with third parties. (Rodewald Decl., Ex. A,
5 Subpoena Requests 4-7.)These documents are irrelevant to any alleged "conspiracy" with
6 Plaintiff's counsel or Plaintiff's state of mind, and are overbroad. . To the extent they are
7 relevant, the documents and information should be obtained from Plaintiff.

8      EFF is a non-profit organization. It relies on member contributions and grants for the
9 majority of its operating budget. Paxfire's subpoenas demand extensive internal and external
10 communications, and responding to them would be extremely burdensome. For example,
11 approximately one quarter of EFF's staff are attorneys. (Cohn Decl., ¶ 20.) Producing internal
12 communications would require EFF to undertake careful, expensive and time-consuming review
13 and redaction to remove attorney-client, and work product protected information. *Id*. External
14 communications would have to be redacted to remove any trade-secret, personal or confidential
15 information they contain that isn't responsive to the requests. (Cohn Decl., ¶ 21; Burns Decl.,
16 ¶¶ 6-9; Narayanan Decl., ¶ 8-11.) Document Subpoena Requests 1-3 demand documents and
17 communications for the past 4 years, and Requests 6 and 7 demand documents from the past 5
18 years. These demands are excessive, as are the topics in the Deposition Subpoena to EFF, which
19 are unlimited as to time. Document Subpoena Requests 4-6 demand communications by anyone
20 associated with EFF, to anyone, that relate to numerous topics and a list of 9 internet service
21 providers. (Rodewald Decl., Exs. A, B (Doc Subpoenas); *id*., ¶ H (definition of "EFF"); *see also*
22 *id*., Request 7 and ¶¶ N, O, P (definitions of "Microsoft," "Google" and "Yahoo!").) These
23 requests are similarly overbroad and burdensome in that they would require EFF, a non-party, to
24 search the computers and communications of each of its employees, to or from anyone, related to
25 these topics and review them for relevance and privilege. Cohn Decl., ¶ 21.

26      Paxfire alleges that EFF "instigated" or "conspired" to have the lawsuit brought against it.
27 Such allegations are not the basis for valid claims and do not justify imposing burdensome
28 discovery on non-parties. Moreover, the Court should consider the burden Paxfire's discovery

-24

1 | will impose on Movants' First Amendment rights, and their right under California constitutional

2 | and statutory law to contribute to free and open public debate as members of the press.

3 | *Northwestern Memorial Hosp.*, 362 F.3d at 927. Any negligible benefit that Paxfire may obtain

4 | from its discovery cannot justify these burdens.

5 | ## CONCLUSION

6 | EFF and Mr. Eckersley request the Court quash Paxfire's document and deposition

7 | subpoenas in their entirety. Nearly all of the information and documents sought are privileged or

8 | protected, and EFF and Mr. Eckersley will produce what few documents are not privileged. In the

9 | alternative, EFF and Mr. Eckersley request the Court issue a protective order prohibiting Paxfire

10 | from demanding documents or deposing EFF or Mr. Eckersley on any of the categories of

11 | privileged or protected information described herein.

12 |
13 | Dated: June 5, 2012          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

14 |                              By

15 |                                   TENAYA M. RODEWALD
                                       Attorneys for Non-parties
16 |                                   ELECTRONIC FRONTIER FOUNDATION and
                                       PETER ECKERSLEY
17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-25-

SMRH:405527719.5          MOTION OF NON-PARTIES EFF AND ECKERSLEY TO QUASH SUBPOENAS

# Tab 7

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  David Jacobs, State Bar No. 73545
   Amy B. Messigian, State Bar No. 250139
2  EPSTEIN BECKER & GREEN, P.C.
   1925 Century Park East, Suite 500
3  Los Angeles, California 90067-2506
   Telephone: 310.556.8861
4  Facsimile: 310.553.2165
   djacobs@ebglaw.com
5  amessigian@ebglaw.com

6  Attorneys for Movant, JIM GILES

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11  BETSY FEIST,                          MISCELLANEOUS ACTION NO.

12              Plaintiff,

13       v.                               NOTICE OF MOTION AND
                                          MOTION TO QUASH SUBPOENA
14  RCN CORP. and PAXFIRE, INC.,          AND REQUEST FOR
                                          PROTECTIVE ORDER BY JIM
15              Defendant.                GILES

16                                        [Filed Concurrently with
                                          Declarations of Jim Giles, David
17                                        Jacobs and Request For Judicial
                                          Notice]
18
                                          Date:
19                                        Time:
                                          Place:
20                                        Judge:

21                                        **ORAL ARGUMENT REQUESTED**

22

23     **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND**

24              **REQUEST FOR PROTECTIVE ORDER**

25  **TO THIS HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL**

26  **OF RECORD:**

27       NOTICE IS HEREBY GIVEN that on _____, at

28  _____ a.m., or as soon thereafter as the matter may be heard, in Courtroom

---
FIRMWEST:15914551v1                          MOTION TO QUASH SUBPOENA
                                                         CASE NO.

FILED

2012 MAY 15  A 11: 40

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N RTHERN DISTRICT OF CALIFORNIA

1 \_\_\_\_\_, \_\_\_\_\_ Floor, 450 Golden Gate Avenue, San Francisco, California, non-

2 party Jim Giles ("Giles") will move, and hereby moves, pursuant to the California

3 Constitution, California Evidence Code § 1070, and Rule 45 of the Federal Rules

4 of Civil Procedure, to quash the Subpoena to Produce Documents, Information, or

5 Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena")

6 served on Giles.

7 Giles respectfully requests an Order that the Subpoena be quashed in its

8 entirety. Any unpublished material in Giles' possession that is responsive to the

9 Subpoena is absolutely privileged under the California Constitution and California

10 Shield Laws.

11 Moreover, Giles requests that a Protective Order be entered which provides

12 that he shall not be required to produce any privileged material and that any

13 subsequent subpoenas issued in the instant action shall solely seek published

14 material responsive to the document requests.

15 The motion will be based upon this Notice of Motion and Motion, the

16 following Memorandum of Points and Authorities, the accompanying declaration

17 of Jim Giles, any reply filed in support of this motion, all other papers filed and

18 proceedings had in this action, oral argument of counsel, and such other matters as

19 the Court may consider.

20 Respectfully Submitted,

21 DATED: May 15, 2012 EPSTEIN BECKER & GREEN, P.C.

22

23 By: _____

24 David Jacobs
Amy B. Messigian

25

26 Attorneys for Movant, JIM GILES

27

28

- 2 -

FIRMWEST:15914551v1 MOTION TO QUASH SUBPOENA
CASE NO.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I. INTRODUCTION**

3     Movant Jim Giles ("Movant") is an investigative free lance journalist who
4 worked on a story for New Scientist magazine. Four of Movant's articles,
5 published on the New Scientist website, relate to a dispute between the parties in
6 the instant action. Movant wrote about a new technology – Netalyzr - by which
7 account holders could track interference with their traffic on the internet by their
8 internet service provider ("ISP"). In a follow up investigative story Movant wrote
9 that Netalyzr had uncovered a practice by more than 10 ISPs of redirecting account
10 holders' internet search queries using a program created by Paxfire, Inc.
11 ("Paxfire").

12     The subpoena issued to Movant by Paxfire, a defendant and counterclaimant
13 in the instant action, seeks documents related to his investigation and reporting of
14 the ISP search query redirection scandal involving Netalyzr and Paxfire (the
15 "Subpoena"). These documents are absolutely privileged under the California
16 Constitution and California Shield Laws. Accordingly, the Court must grant
17 Movant's motion and quash the subpoena issued to him for production of
18 documents.

19 **II. STATEMENT OF FACTS**

20     New Scientist is a weekly magazine that publishes content relating science
21 and technology for a general audience. Since 1996, New Scientist has also run a
22 website. The magazine and website cover recent developments, news,
23 commentary and speculative articles. (Declaration of Jim Giles ("Giles Decl."),
24 ¶ 2.)

25     Movant is a citizen of San Francisco, California. (Giles Decl, ¶ 2.) Movant
26 is a professional journalist and frequent author on the New Scientist website.
27 (Giles Decl., ¶ 2.)

28 ///

FIRMWEST:15914551v1

MOTION TO QUASH SUBPOENA
CASE NO.

1    In 2010, Movant wrote two news articles about a new technology created by

2  the International Computer Science Institute ("ICSI") called "Netalyzr," which

3  studies internet connections for interference by ISPs. Movant's articles explained

4  how an account holder could utilize the Netalyzr website to track interference by

5  his or her ISP. These articles were published on the New Scientist webpage.

6  (Giles Decl., ¶ 3, Exh. A.)

7    In 2011, Movant wrote two additional news articles and co-wrote one

8  editorial describing how ICSI had utilized Netalyzr to uncover acts of interference

9  by more than 10 ISPs, each of which was redirecting search queries from Google,

10  Yahoo or Bing to retail websites utilizing a technology supplied by Paxfire. (Id.,

11  ¶ 4, Exh. B.) One of the articles also disclosed that a class action lawsuit had been

12  filed on behalf of an unnamed plaintiff by the law firms Reese Richman and

13  Milberg. (Id.) In fact, Movant was referring to the instant action, brought by

14  Betsy Feist ("Feist") against Paxfire and co-defendant RCN Corporation ("RCN"),

15  an ISP. (Id.) Feist alleges that Paxfire's technology was used by RCN to intercept

16  and redirect Feist's searches, as well as the searches of other putative class

17  members, each of whom held an account for internet services with RCN. In turn,

18  Paxfire has counter-alleged that Feist has interfered with its business relationships

19  with ISPs and defamed Paxfire in violation of New York law. (Req. for Jud. Not.,

20  Exh. 1.)

21    On May 1, 2012, Paxfire served a Subpoena issued out of the Northern

22  District of California on Movant. (Giles Decl., ¶ 5, Exh. C.) The Subpoena

23  demands production of the following documents:

24    "1. For the period January 1, 2011 until the present, all

25    correspondence and communications, including but not

26    limited to email, and all documentation and records

27    pertaining to any such correspondence or

28    communications, including those authored, received,

- 2 -

1    forwarded or otherwise transmitted by Jim Giles,

2    pertaining to:

3         (a) Betsy Feist;

4         (b) Milberg LLP, Richman Reese LLP, or any

5    attorney or other employee of Milberg LLP or Richman

6    Reese LLP;

7         (c) Paxfire; or

8         (d) the Netalyzr."

9    Prior to serving its Subpoena on Movant, counsel for Paxfire contacted

10   Movant and provided him with a draft of the demand for documents. Through

11   counsel, Movant explained that there was clear law preventing Movant's disclosure

12   of his unpublished source documents and that a motion to quash would result if

13   Movant was served with the Subpoena. (Declaration of David Jacobs, ¶ 2.)

14   Nevertheless, Paxfire served its Subpoena on Movant without limiting the

15   Subpoena to seek non-privileged documents.

16   Indeed, other than his published articles, any documents that Movant may

17   have relating to the requests for production unquestionably relate to Movant's

18   investigative reporting of Netalyzr, Paxfire and the ISP search query redirection

19   scandal. (Giles Decl., ¶ 5-6.) These documents are absolutely privileged under

20   California law, which is controlling on this Subpoena, as described below.

21   **III.   JURISDICTION AND CHOICE OF LAW**

22   A.   **The Northern District of California has Jurisdiction over this
         Subpoena and the Attendant Motion to Quash**

23

24   Rule 45 of the Federal Rules of Civil Procedure ("FRCP") provides federal

25   district courts with the authority to issue subpoenas for production of documents.

26   A motion to quash must be made before the issuing court. FRCP 45(c)(3). See

27   also Ford Motor Company v. Edgewood Properties, Inc., 2011 W.L. 601312 (D.

28   N.J. 2011); In re Sealed Case, 141 F.3d 337, 341-343 (D.C.C. 1998); Kearney v.

- 3 -

1  Jandernoa, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997). Because the underlying
2  subpoena was issued in the Northern District of California, this Court has
3  jurisdiction over this motion to quash.

### B. California Law Applies to This Court Sitting in Diversity

5      Moreover, in considering the motion, this Court must apply California law.
6  Federal courts sitting in diversity must follow the forum state's law relating to the
7  existence and scope of an asserted privilege. Pepsico v. Baird, Kurz & Dobson,
8  LLP, 206 F.R.D. 646 (D. Mo. 2002), affirmed in part and reversed in part on other
9  grounds, 305 F.3d 813 (8th Cir. 2002); Hosey v. Presbyterian Church (U.S.A.), 160
10  F.R.D. 161 (D. Kan. 1995); Southern Pan Services Co. v. S.B. Ballard Const. Co.,
11  2009 W.L. 1405100 (M.D. Fla. 2009).

12      Because the Southern District of New York maintains jurisdiction over the
13  underlying suit on diversity grounds and the counter-claims relate to purported
14  violations of New York law (See Req. for Jud. Not., Exh. 1), state law privileges
15  will apply. Movant resides in California, authored the articles that give rise to the
16  reporter's privilege in California, and was served with a subpoena in California.
17  Thus, as to the instant Subpoena, California law will apply.

## IV. ARGUMENT

### C. The Subpoena Seeks Privileged Material

20      The Subpoena seeks to compel Movant to produce documents regarding
21  sources and unpublished information about Netalyzr, Paxfire and the ISP search
22  query redirection scandal that was used to report news on the New Scientist
23  website.

24      Movant properly asserts the Reporter's Privilege and protection under the
25  California Shield Laws because he is and was a reporter engaged in newsgathering
26  activities for the purpose of reporting on the ISP search query redirection scandal.
27  O'Grady v. Superior Court, 139 Cal. App. 4th 1423, 1466, 1468 (Cal. Ct. App.
28  2006) (holding that the California Shield Laws and the Reporter's Privilege

- 4 -

1  doctrine apply to authors of news-oriented websites). Because Paxfire cannot
2  demonstrate that an exemption or waiver applies to these well-established
3  privileges and protections, the Subpoena must be quashed.

**D.    The Subpoena Violates the California Shield Law**

5      Under Rule 45, the Court must grant a motion to quash a subpoena that
6  "requires disclosure of privileged or other protected matter." FRCP
7  45(c)(3)(a)(iii). The instant subpoena must be quashed because it requests
8  documents that are absolutely protected from disclosure under the California
9  Shield Law.

10     The California Shield Law is enshrined in the state constitution as well as
11  Evidence Code § 1070. It precludes compelling a reporter from disclosing
12  confidential sources or any unpublished material. Specifically, the California
13  Shield Law protects from disclosure any "unpublished information obtained or
14  prepared in gathering, receiving, or processing of information for communication
15  to the public." Calif. Const. Art. I § 2(b); Cal. Evid. Code § 1070(a).
16  "Unpublished information" is broadly defined, and extends to all information not
17  literally published. Id.; New York Times Co., 51 Cal. 3d at 456. To be entitled to
18  protection by the Shield Law, the reporter must be engaged in "the gathering and
19  dissemination of news." O'Grady, 139 Cal. App. 4th at 1457.

20     The embodiment of the Shield Law into the California Constitution
21  evidences an intention to provide the broadest protections for a journalist's
22  unpublished materials and their sources for information, whether published or
23  unpublished. Delaney v. Superior Court, 50 Cal.3d 785, 796-805 (1990). The
24  embodiment of the Shield Law in the California Constitution reflects "a paramount
25  public interest in the maintenance of a vigorous, aggressive and independent press
26  capable of participating in robust, unfettered debate over controversial matters, an
27  interest which has always been a principal concern of the First Amendment." Los

28

- 5 -

1  Angeles Memorial Coliseum v. National Football League, 89 F.R.D. 489 (C.D.

2  Cal. 1981) (citing Baker v. F & F Investment, 470 F.2d 778, 782 (2d Cir. 1972)).

3      Where, as here, the reporter from whom such information is sought is not a

4  party to the underlying civil litigation, the protections afforded by the California

5  Shield Law are absolute.  New York Times Co. v. Superior Court, 51 Cal.3d 453,

6  458 (Cal. App. 1990).

7      Indeed, the California courts recognize that the protections afforded to

8  reporters by the California Shield Law must not yield to the competing interests of

9  civil litigants seeking discovery from a nonparty:

10          "If every civil litigant who postulates that some

11          information material to his case is contained within the

12          undisseminated materials of a newsperson may compel

13          that nonparty newsperson to present his information to

14          the trial court for inspection, balancing of interests, and

15          probable disclosure, the protection afforded newspersons

16          would be greatly reduced, if not wholly vitiated."

17  Playboy Enterprises, Inc. v. Superior Court, 154 Cal. App. 3d 14, 27 (Cal. App.

18  1984).

19      Moreover, in interpreting Evidence Code § 1070, the California Court of

20  Appeal said in Hammarley v. Superior Court, 89 Cal.App.3d 388, 397-398 (1979)

21  that "the statutory privilege protecting unpublished information is not limited to

22  material which might lead to the disclosure of a newsman's confidential sources,

23  but encompasses all information acquired by the newsman in the course of his

24  professional activities which he has not disseminated to the public." (Emphasis

25  added.)

26      In the present case, the Subpoena falls squarely within the absolute

27  protections afforded to Movant by the California Shield Law.  Movant is a non-

28  party reporter who has investigated and written about the ISP search query

- 6 -

FIRMWEST:15914551v1                              MOTION TO QUASH SUBPOENA
                                                            CASE NO.

1 | redirection scandal involving Paxfire, Netalyzr and the Feist putative class action.

2 | Any non-published documents relating to these matters are protected by the

3 | California Shield Law. Movant has a constitutional right not to reveal this

4 | information. See Ward v. News Group Newspapers, LTC., 18 Media L. Rep.

5 | 1140, 1990 W.L. 256836 (C.D.Cal. 1990).

6 | Moreover, while the privilege may yield in criminal cases where the right to

7 | due process is implicated, no similar right exists in civil cases. New York Times

8 | Co., 51 Cal.3d at 456; see McGarry v. University of San Diego, 154 Cal.App.4th

9 | 97, 119-120. Accordingly, the Court need not balance the interests of Paxfire and

10 | Movant. Movant's right to maintain the confidentiality of his unpublished

11 | documents relating to the ISP search query redirection scandal is absolute; it

12 | trumps any motive or interest that Paxfire may have in obtaining Movant's

13 | unpublished documents.

14 | Accordingly, the Court must quash the subpoena to Movant which overtly

15 | and intentionally seeks documents that are absolutely protected from discovery.

16 |
17 |

**E.    A Motion for Protective Order Is Necessary to Reasonably Tailor Any Additional Subpoenas to Movant**

18 | Movant seeks a protective order that limits any further subpoenas which may

19 | be issued in this matter to his published documents. Movant, through counsel,

20 | already alerted Paxfire to the overbreadth of its proposed document requests. To

21 | the extent that Paxfire, or any other party, seeks to obtain records from Movant in

22 | this matter, Movant requests a limiting instruction consistent with the absolute

23 | privilege that Movant maintains over his unpublished documents relating to the

24 | underlying claims at issue in the instant action.

25 | Good cause exists to provide such protective order to reduce any burden to

26 | Movant, his attorneys and this Court.

27 | ///

28 | ///

- 7 -

**SER-121**

## V. CONCLUSION

As stated above, the subpoena calls for the production of documents that are absolutely privileged under California law. Pursuant to Rule 45, the Court must quash the subpoena. To the extent that Movant may be subject to another subpoena in this matter, Movant respectfully requests a protective order limiting the scope of production to Movant's published articles.

Respectfully Submitted,

DATED: May 15, 2012                EPSTEIN BECKER & GREEN, P.C.

By: _____
    David Jacobs
    Amy B. Messigian
    Attorneys for Movant, JIM GILES

- 8 -

**SER-122**

# Tab 8

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

©COPY

1    MORGAN, LEWIS & BOCKIUS LLP
     CHRISTOPHER J. BANKS (SBN 218779)
2    cbanks@morganlewis.com
     SHARON R. SMITH (SBN 221428)
3    srsmith@morganlewis.com
     One Market, Spear Street Tower
4    San Francisco, CA  94105-1126
     Telephone:     415.442.1000
5    Facsimile:     415.442.1001

6    Attorneys for Non-parties International Computer
     Science Institute and Christian Kreibich
7

8              UNITED STATES DISTRICT COURT              **JSW**

9              NORTHERN DISTRICT CALIFORNIA

10

11   BETSY FEIST, individually and on behalf of     Case No.
     all others similarly situated,
12                                                   (Re: Pending Action No. 11 CV 5436 (JGK)
                    Plaintiff,                       (S.D.N.Y.)
13
           v.                                        **NOTICE OF MOTION AND MOTION
14                                                   OF NON-PARTIES INTERNATIONAL
     RCN CORP. and PAXFIRE, INC.,                    COMPUTER SCIENCE INSTITUTE
15                                                   AND CHRISTIAN KREIBICH TO
                    Defendants.                      QUASH SUBPOENAS AND REQUEST
16                                                   FOR PROTECTIVE ORDER;
                                                     MEMORANDUM OF POINTS AND
17                                                   AUTHORITIES**

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

Page

I. FACTS .................................................................................................. 3

    A. ICSI and Its Computer Science Research ......................................... 3

    B. Feist v. RCN Corp., Pending in S.D.N.Y ........................................ 6

    C. Document Subpoenas to ICSI and Individual ICSI researchers ............ 7

    D. Deposition Subpoenas to ICSI and Individual Researcher Christian
        Kreibich .................................................................................. 8

II. ARGUMENT ....................................................................................... 8

    A. Enforcement of the Deposition Subpoenas Should be Stayed Pending NY
        Court's Ruling on Plaintiff's Fully Briefed and Pending Motion to Dismiss
        Paxfire's Counterclaims ............................................................... 8

    B. Court Should Quash the Kreibich Subpoena in its Entirety Under
        Undisclosed Expert Privilege, or at Least as to Such Privileged
        Communications and Work Product ............................................... 10

    C. Subpoena Should be Quashed Based on First Amendment Right to
        Academic Freedom .................................................................... 11

    D. Subpoena Should be Quashed As to Unpublished Information Under
        California and Federal Constitutional Reporter's Privileges ............... 12

        1. California Privilege Law Should Apply Over New York Law ............... 13

        2. California's Constitutional and Statutory Press Shield Privileges
           Provide Absolute Protection from Discovery of All Unpublished
           Information .......................................................................... 14

        3. Even if New York law applied, it Cannot Provide Fewer Rights
           than the First Amendment, Which Protects the Press' Resource
           Materials ............................................................................ 15

    E. Confidential Research and Development Information Should Also be
        Precluded Under FRCP 45(c)(B)(ii) .............................................. 16

    F. Discovery Into Third Party Communications and Collaboration Violates
        Mr. Kreibich's First Amendment Right to Association ....................... 17

    G. Discovery As to Activities in Furtherance and Support of Litigation Should
        be Denied as Constitutionally Protected Under Privilege of Association for
        Litigation and Noerr-Pennington Doctrine ...................................... 19

    H. Undue Burden on Non-Party Mr. Kreibich and Lack of Relevance Alone
        Warrants Court Quashing Subpoena in its Entirety ........................... 20

    I. ICSI Subpoena Should be Quashed in its Entirety ............................ 21

    J. Protective Order ........................................................................ 22

III. CONCLUSION ................................................................................... 22

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 23241087.2

i

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI & KREIBICH TO
QUASH SUBPOENAS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Arista Records LLC v. Lime Group LLC,
  2011 WL 781198 (S.D.N.Y. March 4, 2011) ....................................................... 20

Beinin v. Center for Study of Popular Culture,
  2007 WL 1795693 (N.D. Cal. June 20, 2007) ..................................................... 19

Branzburg v. Hayes,
  408 U.S. 665 (1972) .............................................................................................. 15

Brock v. Local 375, Plumbers Int'l Union of Amer.,
  860 F.2d 346 (9th Cir. 1988) ................................................................................ 18

Brotherhood of R. R. Trainmen v. Virginia ex rel Va. State Bar,
  377 U.S. 1 (1964) .................................................................................................. 19

Chiquita Int'l Ltd. v. MIV Bolero Reefer,
  93 Civ. 0167, 1994 U.S. Dist. LEXIS 5820 (S.D.N.Y. May 6, 1994) .................. 10

Delaney v. Super. Ct.,
  50 Cal.3d 785 (1990) ............................................................................................ 14

DiMartini v. Ferrin,
  889 F.2d 922 (9th Cir. 1989), amended at 906 F.2d 465 (9th Cir. 1990) .............. 8

Dow Chem. Co. v. Allen,
  672 F.2d 1262 (7th Cir. 1982) .............................................................................. 12

Eilers v. Palmer,
  575 F. Supp. 1259 (D. Minn. 1984) ...................................................................... 19

Genentech, Inc. v. Trustees of Univ. of Penn.,
  2011 WL 6002501 (N.D. Cal. 2011) ..................................................................... 11

In re Grand Jury Subpoenas,
  179 F. Supp. 2d 270 (S.D.N.Y. 2001) ................................................................... 11

In re NCAA Student-Athlete Name & Likeness Licensing Litigation,
  2012 WL 629225 (N.D. Cal. 2012) ....................................................................... 16

Little v. City of Seattle,
  863 F.2d 681 (9th Cir. 1988) .................................................................................. 8

Los Angeles Mem'l. Coliseum, Comm. v. Nat. Football League,
  89 F.R.D. 489 (C.D. Cal. 1981) ............................................................................ 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI & KREIBICH TO
QUASH SUBPOENAS

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D.Cal.2005) .................................................................. 20

*NAACP v. Alabama,*
    357 U.S. 449 (1958) ................................................................................. 17

*NAACP v. Button,*
    371 U.S. 415 (1963) ................................................................................. 19

*NY Times Co. v. Super. Ct.,*
    51 Cal. 3d 453 (1990) (California shield law provides absolute protection to non-party
    journalists from compelled disclosure) ..................................................... 14

*O'Grady v. Super. Ct.,*
    139 Cal. App. 4th 1423 (2006) ................................................................ 14

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) ................................................................. 17

*Playboy Enterprises, Inc. v. Super. Ct.,*
    154 Cal. App. 3d 14 (1984) ..................................................................... 14

*Residential Constructors, LLC v. Ace Property & Cas. Ins. Co.,*
    2006 WL 3149362 (D. Nev. 11/1/06) ...................................................... 11

*Roberts v. Jaycees,*
    468 U.S. 609 (1984) ................................................................................. 17

*Shaklee Corp. v. Gunnell,*
    110 F.R.D. 190 (N.D. Cal. 1986) ............................................................ 14

*Shoen v. Shoen,*
    48 F.3d 412 (9th Cir. 1995) ..................................................................... 15

*Shoen v. Shoen,*
    5 F.3d 1289 (9th Cir. 1993) (Kleinfeld, concurring) .................................. 9

*Sommer v. Gabor,*
    40 Cal. App. 4th 1455 (1995) .................................................................. 13

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) ................................................................... 20

*Synopsys, Inc. v. Ricoh Co. Ltd.,*
    2006 WL 2458721 (N.D. Cal. 2006) ........................................................ 11

*Trump v. Hyatt Corp.,*
    1994 WL 168021 (S.D.N.Y. 1994) ............................................................ 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

iii

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

**SER-126**

*Umpqua Bank v. First Am. Title Ins. Co.*,
  2001 WL 997212 (E.D. Cal. March 17, 2011)........................................ 11

*United Mine Workers of Amer. v. Ill. State Bar Ass'n*,
  389 U.S. 217 (1967) ............................................................... 19

*Univ. Cal. Regents v. Bakke*,
  438 U.S. 265 (1978) ............................................................... 12

*William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*,
  262 F.R.D. 354 (S.D.N.Y. 2009) .................................................. 10

*Wright v. Fred Hutchinson Cancer Research Ctr.*,
  206 F.R.D. 679 (W.D. Wash. 2002) ............................................... 15

*Wyoming v. U.S. Dept. Ag.*,
  208 F.R.D. 449 (D.D.C. 2002) ................................................... 18

**STATUTES**

Cal. Evid. Code §1070(a)........................................................... 13, 14

**OTHER AUTHORITIES**

Cal. Const., art. I, §2, subd. (b) ................................................ 13, 14

Fed. R. Civ. P. 26(b)(1)............................................................... 20

Fed. R. Civ. P. 26(b)(3), and 26(b)(4)(D) ........................................... 11

Fed. R. Civ. P. 45(c)(3)(A)(iii) ............................................ 12, 17, 20

Fed. R. Civ. P. 45(c)(3)(A)(iv) ...................................................... 20

Federal Rule of Civil Procedure 26(c) ................................................ 22

Federal Rule of Civil Procedure 30(b)(6): (1)......................................... 8

Federal Rule of Civil Procedure 45(c)(2)(B) ........................................ 7, 8

*Feist v. RCN Corp.*, Pending......................................................... 6

First Amendment.................................................................. passim

Fourteenth Amendment ................................................................ 17

FRCP 45(c)(B)(ii) .................................................................... 16

http://netalyzr.icsi.berkeley.edu/................................................. 4, 5, 6

Rule 11 ............................................................................ 7, 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

iv

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1

Rule 26(b)(1)(C)............................................................................................ 9

Rule 26(b)(4)(D) ......................................................................................... 10

United States Constitution .......................................................................... 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 23241087.2

v

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at the Court's convenience as soon as this matter may be heard, non-parties International Computer Science Institute ("ICSI") and Christian Kreibich ("Kreibich") will move and hereby do move for Court to stay the enforcement of the subpoenas for their depositions pending a ruling on a motion to dismiss the relevant claims, or alternatively, for the entry of a protective order under Federal Rule of Civil Procedure 26(c), and for the Court to quash the deposition subpoenas served by Defendant Paxfire, Inc. ("Paxfire") in their entirety on several independent grounds. ICSI and Mr. Kreibich move the Court to stay enforcement of the subpoenas given that the only potential relevance of these depositions is to Paxfire's counterclaims against Plaintiff, alleging a conspiracy involving ICSI and Mr. Kreibich, which are currently awaiting a ruling from the court in New York, where the action is pending, on a second Motion to Dismiss, which has been fully briefed since April 9, 2012. The deposition subpoena to non-party Mr. Kreibich should be quashed because:

- as a retained undisclosed technical consultant for Plaintiffs' counsel, it violates the privilege under Fed. R. Civ. Pro. 26(b)(4)(D) (retained/undisclosed expert), as well as their attorney work product and their client's attorney-client privileged communications;

- violates Mr. Kreibich's First Amendment rights to speech, association and academic freedom as a university researcher, academic publisher, co-author with The Electronic Frontier Foundation and Peter Eckersley, and in collaboration with various political, academic and news organizations, and Mr. Kreibich's right to engage in litigation activities under the *Noerr-Pennington* doctrine (Fed. R. Civ. Pro. 45(c)(3)(A)(iii) (court must quash subpoena requiring disclosure of privileged matter));

- runs afoul of the absolute protection of unpublished material under California constitutional and statutory news gathering shield law (Fed. R. Civ. Pro. 45(c)(3)(A)(iii) (court must quash subpoena requiring disclosure of privileged matter));

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI & KREIBICH TO
QUASH SUBPOENAS

1    • requires the disclosure of confidential research and development information that is

2    not relevant to the pending action (Fed. R. Civ. Pro. 45(c)(B)(ii) (court may quash

3    or modify a subpoena requiring disclosure of confidential research or development

4    information); and

5    • is unduly burdensome and seeks irrelevant information (Fed. R. Civ. Pro. 45(c)(1)

6    (undue burden on third party)).

7    The deposition subpoena to ICSI should be quashed because it seeks irrelevant

8    information and is unduly burdensome.  Fed. R. Civ. Pro. 45(c)(1) (undue burden on third party).

9    This Motion is supported by the following Memorandum of Points and Authorities, the

10   accompanying Declaration of Christian Kreibich, the accompanying Declaration of Nicolas

11   Weaver, the accompanying Declaration of Peter Eckersley, the accompanying Declaration of

12   Sharon R. Smith, the concurrently filed Request for Judicial Notice, the argument of counsel, and

13   any other matters properly before the Court.  The parties have complied with the requirements of

14   Local Civil Rule 37-1(a) regarding efforts to resolve this dispute.  *See* Declaration of Sharon R.

15   Smith ("Smith Decl."), ¶5.

16                                **ISSUES TO BE DECIDED**

17   Should the Court stay the enforcement of the subpoenas to non-parties ICSI and Mr.

18   Kreibich when their only potential relevance is to Paxfire's counterclaims against Plaintiff, which

19   are awaiting a ruling from the court in New York where the action is pending, on Plaintiff's

20   Second Motion to Dismiss that has been fully briefed since April 9, 2012?

21   Should the Court quash the deposition subpoena to Mr. Kreibich, a non-party academic

22   researcher and publisher, employed by the University of California, San Diego and ICSI, a

23   nonprofit research institution affiliated with the University of California, Berkeley, and issue a

24   protective order, on the grounds that it violates multiple privileges and protections, including the

25   undisclosed technical expert for Plaintiffs' counsel privilege and under the First Amendment and

26   California law, is unduly burdensome and seeks irrelevant information?

27   Should the Court quash the deposition subpoena to ICSI, a non-party academic research

28   institute affiliated with the University of California, Berkeley, and issue a protective order, on the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

2

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1  grounds that it is unduly burdensome and seeks irrelevant information?

2  **MEMORANDUM OF POINTS AND AUTHORITIES**

3  Defendant Paxfire has not asserted any claims against ICSI or any individual researchers

4  at ICSI, including Mr. Kreibich. Yet, Paxfire seeks broad ranging discovery from them in an

5  effort to support its fatally deficient state law interference and defamation counterclaims pending

6  in federal court in New York against Plaintiff Betsy Feist, based on a concocted and

7  unsupportable conspiracy theory.

8  Although ICSI and Mr. Kreibich present compelling constitutional and other grounds for

9  the Court to quash the deposition subpoenas now, the Court should stay the enforcement of the

10  subpoenas until the court in New York rules as to whether those counterclaims are even viable,

11  upon consideration of a fully briefed second motion to dismiss.

12  Alternatively, this Motion presents ample authority for the Court to quash the subpoenas

13  in their entirety because they seek discovery that violates ICSI and the ICSI researchers'

14  constitutional rights to academic freedom, speech, association and association by supporting

15  litigation; the California shield law; and under the Federal Rules of Civil Procedure, as to

16  discovery from undisclosed experts retained for the litigation, confidential research and

17  development information, the undue burden on non-parties ICSI and the ICSI researchers, and by

18  seeking broad ranging discovery that it not relevant to any claim or defense.

19  I.  **FACTS**

20  A.  **ICSI and Its Computer Science Research**

21  The International Computer Science Institute ("ICSI"), located in Berkeley, California, is

22  one of the few independent, nonprofit research institutes in the field of computer science.

23  Declaration of Christian Kreibich In Support of Motion to Quash ("Kreibich Decl."), ¶4. ICSI's

24  research is focused on Internet architecture, network security and routing, speech and speaker

25  recognition, language processing and algorithm development with application to bioinformatics.

26  *Id.* Since 1988, ICSI has been affiliated with the University of California, Berkeley, and many of

27  its scientists hold faculty appointments at UC Berkeley or other University of California

28  campuses. *Id.* ICSI also collaborates and investigates computer science issues with political and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

3

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1   industry groups such as the Electronic Frontier Foundation ("EFF"), news organizations and

2   writers in the field of computer science such as New Scientist, and with other academic and

3   nonprofit groups in the field of computer science. *Id.* ICSI's sponsors and research partners

4   include government entities such as the Secretary of Defense, Defense Advanced Research

5   Projects Agency (DARPA) and the National Science Foundation; international government

6   agencies such as the German Federal Ministry of Education and Research; industry sponsors in

7   the private sector such as Cisco, Google, HP, Intel, Microsoft and Bechtel; and academic research

8   partners such as the Lawrence Berkeley National Lab, Massachusetts Institute of Technology

9   (MIT), Princeton University, Stanford University and the University of California. *Id.* ICSI's

10  research depends on the entrepreneurial activity and the academic freedom of its principal

11  investigators and research scientists, who regularly investigate, research and publish peer-

12  reviewed publications in academic journals, technical reports and books, and speak at academic

13  and industry conferences about their research discoveries in the field of computer science. *Id.*, ¶5.

14          Starting with work in 2008 and going live in 2009, ICSI researchers in the Networking

15  Group created an online tool, the Netalyzr, which provides information for researchers and also

16  non-expert users, about the openness and transparency of a user's connection to the Internet.

17  http://netalyzr.icsi.berkeley.edu/. *Id.*, ¶9.  The Netalyzr is a unique tool in the breadth and depth

18  of its analysis of the fate of a user's Internet traffic including testing Internet access, IP address

19  use and translation, IPv6 support, DNS resolver fidelity and antivirus intervention, content-based

20  download restrictions, content manipulation, HTTP caching prevalence and correctness, latencies

21  and access-link buffering. *Id.*  In 2010, ICSI's Netalyzr team, Christian Kreibich, Nicholas

22  Weaver and Vern Paxson ("ICSI researchers"), published a peer-reviewed academic article at the

23  Internet Measurement Conference entitled "Netalyzr: Illuminating the Edge Network."  Kreibich

24  Decl. Ex. B.  Among other recognition for this academic public-interest tool and research, the

25  ICSI Netalyzr tool and the published paper co-won the Federal Communication Commission's

26  Open Internet Challenge for academic work that analyzed Internet openness measurements,

27  techniques and data, which was awarded to encourage and reward the creation of innovative and

28  useful research. *Id.*, ¶10.  FCC Chairman Julius Genachowski said that Netalyzr, along with the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

4

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

SER-132

1   other winners of the challenge, is "giving consumers and researchers the information they need to

2   understand and monitor the free and open Internet." *Id.* The ICSI researchers published another

3   peer-reviewed academic article titled "Implications of Netalyzr's DNS Measurements," which

4   was presented at the First Workshop on Securing and Trusting Internet Names in 2011. Kreibich

5   Decl. Ex. C.

6        Mr. Kreibich is a Research Scientist at ICSI, and a co-developer of the Netalyzr, who also

7   holds a dual appointment at the University of California, San Diego. *Id.*, ¶¶2-3. Mr. Kreibich's

8   research focuses on topics at the intersection of network architecture, distributed systems,

9   network security, and the economic incentives that drive their development; he explores aspects

10   of the Internet architecture that create tension between end-use freedom and innovation on the

11   one side and security and scalability improvements on the other and on newsworthy trends and

12   events he discovers through his research. *Id.*, ¶6. Mr. Kreibich regularly publishes papers,

13   speaks at industry and academic conferences and reports his research on his web site as well as

14   the web site of ICSI. *Id.*, ¶¶6-8, Ex. A.

15        Using the Netalyzr tool, the ICSI researchers discovered that a dozen Internet Service

16   Providers ("ISPs"), who have millions of customers, were redirecting the normal search results

17   for certain Internet searches of specific brand names (such as, for example, Apple and Safeway),

18   sending the user directly to the related brand's web site, thus bypassing the Google, Yahoo and

19   Microsoft Bing search engines. *See id.*, Exs. B-D. The users were redirected from the search

20   engine web sites to proxy server web sites that can intercept, monitor and communicate a user's

21   Internet activities. *Id.* The ICSI researchers wrote about this discovery in both of their published

22   papers and began a further investigation. *See id.*, Exs. B-C. The ICSI researchers' investigation

23   included, among other things, the analysis of servers and Internet protocol addresses, as well as

24   interviews with ISPs, industry groups such as the Electronic Frontier Foundation, industry

25   journalists such as the New Scientist, academic institutions such Polytechnic Institute of New

26   York University, and affected search engine companies. *Id.*, ¶13. Based on this investigation,

27   the ICSI researchers' concluded that Defendant Paxfire was responsible for this behavior of

28   rerouting all user search queries to Microsoft's Bing, Yahoo and in some instances Google

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

5

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

**SER-133**

1   through proxy servers controlled or provided by Paxfire.  *Id.*, Ex. D.  The ICSI researchers

2   published their research and conclusions in a peer-reviewed academic article titled "Redirecting

3   DNS for Ads and Profit," which was published and presented at the USENIX Workshop on Free

4   and Open Communications on the Internet on August 8, 2011.  *Id.*  This paper specifically thanks

5   Peter Eckersley and the EFF, who participated in confirming Paxfire's identity as being

6   responsible for the behavior described in the paper.  *Id.*

7        The ICSI researchers also co-wrote EFF blog posts with Peter Eckersley about Paxfire's

8   behavior.  *See* Eckersley Decl., Exs. A, B; Kreibich Decl., Exs. E, F.  Around the same time, the

9   New Scientist, published news articles on the Internet reporting on the ICSI researchers'

10  conclusions.  Request for Judicial Notice in Support of ICSI and Kreibich's Motion to Quash

11  ("RJN"), Ex. B, ¶49(c).  Within 24 hours of the reporting of Paxfire's conduct by the Electronic

12  Frontier Foundation, Paxfire stopped modifying users' search results as reported.  Kreibich Decl.,

13  ¶14.

14       During this time, Plaintiffs' counsel consulted with experts from the Electronic Frontier

15  Foundation and ICSI to provide them with technical consultation about Paxfire's Internet

16  behavior as discovered during their research for the purposes of litigation.  RJN, Ex. K (Richman

17  Decl., ¶14); Kreibich Decl., ¶15. The ICSI researchers were specifically retained for this purpose

18  and entered into a written agreement with Plaintiffs' counsel on August 31, 2011, with an

19  effective date of July 18, 2011.  *Id.*

20       **B.     *Feist v. RCN Corp.*, Pending in S.D.N.Y**

21       On August 4, 2011, Betsy Feist ("Plaintiff"), on behalf of herself and a class of others who

22  had their Internet searches altered, filed a Complaint against Defendants RCN Corporation

23  ("RCN") and Paxfire, Inc. ("Paxfire").  "RJN, Ex. A ("Complaint").  The Complaint alleges that

24  RCN and Paxfire violated Plaintiff's privacy, computer security and financial interests by (1)

25  "secretly [giving] her computer system false information that directed Plaintiffs to websites that

26  looked like [but were not] the websites she intended to visit"; and (2) "when Plaintiff ran

27  searches, Defendants directed Plaintiff through advertising affiliates onto third-party commercial

28  pages, rather than provide Plaintiff with the requested search results."  *Id.*, ¶1.  First, Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 23241087.2

6

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

SER-134

1    asserted a wiretapping claim against Paxfire by alleging that it disclosed to unintended recipients,

2    namely proxy servers, the contents of her Internet searches. *Id.*, ¶¶40-47. Second, Plaintiff

3    asserted a conversion claim against Paxfire by alleging that it provided personal and private

4    search information to third parties without authorization. *Id.*, ¶¶66-68. Third, Plaintiff asserted

5    an unjust enrichment claim against Paxfire by alleging that it was unjustly enriched by sharing or

6    allowing third party access to personal search information without consent. *Id.*, ¶¶70-75.

7        Paxfire filed an Answer to the Complaint and Counterclaims, which prompted Plaintiff to

8    file a Motion to Dismiss the Counterclaims and a Rule 11 Motion. Before the Court ruled on the

9    Motion to Dismiss, Paxfire filed and was granted a Motion to Amend its Answer and

10   Counterclaims. RJN, Ex. D (1/31/12 Order). On February 13, 2012, Paxfire filed it First

11   Amended Answer, Affirmative Defenses, and Counterclaims ("Counterclaims"). RJN, Ex. B.

12   Paxfire's Counterclaims against Plaintiff include four state law tort claims for (1) tortious

13   interference with contract; (2) tortious interference with business relationships; (3) defamation;

14   and (4) libel. *Id.*, ¶¶58-92. Plaintiff then filed a second Motion to Dismiss the First Amended

15   Counterclaims, which was fully briefed by the parties as of April 9, 2012, and is currently

16   pending a ruling by the court in New York. RJN., Exs. C, E-H.

17       Although neither ICSI nor the ICSI researchers are named as Defendants in Paxfire's

18   Counterclaims, Paxfire's allegations in support of its Counterclaims identify ICSI and the ICSI

19   researchers as co-conspirators in furtherance of its asserted tort claims. RJN, Ex. B.

20   **C.    Document Subpoenas to ICSI and Individual ICSI researchers**

21       Paxfire issued a subpoena for documents to ICSI. Smith Decl., Ex.A. Paxfire also served

22   the individual ICSI researchers with subpoenas for documents. *See, e.g., id.*, Ex. B (subpoena to

23   Kreibich). As non-parties, ICSI and the ICSI researchers have objected, based on several

24   independent grounds, to producing any documents requested in the subpoenas, under Federal

25   Rule of Civil Procedure 45(c)(2)(B), and started a meet and confer process with Paxfire. *Id.*, ¶5.

26   The parties have not been able to agree on any production of documents pursuant to the document

27   subpoenas. *Id.*, ¶5.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

7

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

   D.   **Deposition Subpoenas to ICSI and Individual Researcher Christian Kreibich**

In this meet and confer process, Paxfire indicated that it wanted to take the deposition of one of the ICSI researchers, Christian Kreibich. *See id.*, ¶5. The parties attempted to meet and confer about the scope of Mr. Kreibich's deposition but were unable to reach any such agreement. *Id.* Paxfire served an amended subpoena to take Mr. Kreibich's deposition on June 27, 2012. Smith Decl., Ex. D. Paxfire also served a subpoena for the deposition of ICSI on June 27, 2012, identifying two topics for a deposition of ICSI under Federal Rule of Civil Procedure 30(b)(6): (1) ICSI's policies related to compensation and disclosure of consulting agreements; and (2) any consulting work of ICSI with Feist, Milberg and Richman. *Id.*, Ex. C. Despite meet and confer efforts, the parties have also not resolved their dispute about the relevance and propriety of ICSI's deposition. *Id.*, ¶5. Paxfire was notified that ICSI and Mr. Kreibich intended to file a Motion to Quash the deposition subpoenas. *Id.* Paxfire stipulated that the filing of the Motion to Quash would stay the enforcement of the subpoenas until after the Court's ruling, so that the parties would not need to seek a hearing on shortened time in advance of June 27, 2012. *Id.*, ¶9.

II.   **ARGUMENT**

   A.   **Enforcement of the Deposition Subpoenas Should be Stayed Pending NY Court's Ruling on Plaintiff's Fully Briefed and Pending Motion to Dismiss Paxfire's Counterclaims**

To the extent it is relevant at all, the discovery sought by Paxfire with respect to the non-party ICSI and Kreibich deposition subpoenas is only arguably relevant to Paxfire's counterclaims. As such, ICSI and Mr. Kreibich urge the Court to stay the enforcement of the subpoenas pending a ruling by the federal court in New York, where the civil action is pending, on the Plaintiffs' second motion to dismiss Paxfire's Counterclaims, which has been fully briefed since April 9, 2012. RJN, Exs. C, E-H. The Court has broad discretion to relieve a party of the burdens of discovery while a dispositive motion is pending. *See DiMartini v. Ferrin*, 889 F.2d 922 (9th Cir. 1989), *amended at* 906 F.2d 465 (9th Cir. 1990) (staying discovery pending ruling on motion for summary judgment); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (staying discovery until issue of immunity was decided); *see also Trump v. Hyatt Corp.*, 1994 WL 168021 (S.D.N.Y. 1994) (staying enforcement of non-party subpoenas until subject matter

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

8

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

SER-136

1   jurisdiction established and dispositive motions decided, based on court's supervisory powers).

2          Paxfire's Counterclaims against Plaintiff are based on a fantastical theory that the EFF,

3   ICSI and Jim Giles participated in a "scheme" as co-conspirators with the Plaintiff to destroy

4   Paxfire. RJN, Ex. B, ¶44. Paxfire's problem is that even if these facts are true (which they are

5   not), such baseless allegations do not state any actionable claims against Plaintiff or the still non-

6   party alleged "conspirators." RJN, Ex. C (Motion to Dismiss Counterclaims). For among other

7   reasons, Paxfire cannot state defamation claims for either libel or slander against Plaintiff because

8   any allegedly offending statements/writings are protected by the litigation privilege. *Id.*, at pp.

9   13-15. Likewise, Paxfire cannot state interference claims against Plaintiff because, among other

10  reasons, it fails to allege Plaintiff's knowledge of any specific valid agreements or business

11  relationships or any actionable interference outside of her filing of a lawsuit out of malice. *Id.*, at

12  pp. 16-19. Moreover, Paxfire's conspiracy allegations do not establish any vicarious liability

13  with the EFF, ICSI or Mr. Giles. *Id.*, at pp. 23-25. This Court should exercise its discretion and

14  supervisory powers, and not burden third-parties ICSI or Mr. Kreibich, particularly given the

15  privilege and constitutional issues raised by the subpoenas, until a ruling by the court in New

16  York makes clear whether these claim will even survive. *See Shoen v. Shoen*, 5 F.3d 1289, 1301

17  (9th Cir. 1993) (Kleinfeld, concurring) (noted district court could have <u>postponed</u> discovery and

18  explained how court could have avoided constitutional analysis by applying existing discovery

19  rules, for example, under Rule 26(b)(1)(C)).

20         Paxfire can be expected to argue, as it has during meet and confer conferences, that the

21  discovery sought from ICSI and Mr. Kreibich is relevant to Plaintiff's Complaint even if Paxfire's

22  Counterclaims are dismissed. Paxfire asserts that because Plaintiff's basis for filing her

23  Complaint, as espoused during the deposition and in her Complaint, relies on information from

24  ICSI's Netalyzr tool and Mr. Kreibich, as one of her lawyers' retained and undisclosed technical

25  experts, that such discovery is relevant to her claims. This argument rings hollow for two

26  reasons. First, to state her claims she must prove that Paxfire's behavior constituted wiretapping,

27  conversion and unjust enrichment; her beliefs about such conduct, or her factual basis for filing

28  the Complaint are an irrelevant red herring. Plaintiff's claims will not be judged by Rule 11 or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

9

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1   malicious prosecution standards, but by whether Paxfire's conduct did or did not violate, for

2   example, the wiretapping statute. Second, Paxfire's Counterclaim allegations are based on this

3   same argument. RJN, Ex. B (Counterclaims), ¶53 ("conclusions reached by ICSI and EFF from

4   their use of the Netalyzr).

5   **B.**    **Court Should Quash the Kreibich Subpoena in its Entirety Under**
    **Undisclosed Expert Privilege, or at Least as to Such Privileged**

6   **Communications and Work Product**

7   The Court could grant Mr. Kreibich's Motion to Quash the deposition subpoena in its

8   entirety based solely Plaintiffs' counsel's privilege with Mr. Kreibich as an undisclosed expert.[1]

9   Rule 26(b)(4)(D) immunizes Plaintiffs' consultants from discovery, and specifically prohibits the

10  discovery of Mr. Kreibich's work product as a consultant. Specifically, Rule 26(b)(4)(D) states,

11  in part, that:

12  > Ordinarily, a party may not, by interrogatories or deposition, discover <u>facts</u>
    > <u>known or opinions held</u> by an expert who has been retained or specially

13  > employed by another party in anticipation of litigation or to prepare for
    > trial and who is not expected to be called as a witness at trial.

14

15  (emphasis added). Rule 26(b)(4)(D), thus, expressly extends the work-product doctrine to all

16  "facts known or opinions held by an expert who has been retained or specially employed by

17  another party in anticipation of litigation or to prepare for trial and who is not expected to be

18  called as a witness at trial." *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 262

19  F.R.D. 354, 361 (S.D.N.Y. 2009). Under this rule, a consulting expert who will not testify at trial

20  "is generally immune from discovery." *Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 93 Civ. 0167,

21  1994 U.S. Dist. LEXIS 5820, *2 (S.D.N.Y. May 6, 1994) (emphasis added). The policy behind

22  this rule is simple: "each side should prepare its own case, at its own expense, and … parties

23  should feel free to use experts to properly evaluate their case without fear that it may yield grist

24  for the adversary's mill." *800 Front St. Corp. v. Travelers Prop. Cas. Co. of Am.*, CV 06-500

25  (LDW)(ARL), 2006 U.S. Dist. LEXIS 84160, at *5 (S.D.N.Y. 2006). Thus, based on the fact that

26  Mr. Kreibich is a consultant for Plaintiff's counsel, who was retained for the purposes of

27  _____

28  [1] Plaintiffs' counsel has asserted these privileges in motions to quash. RJN, Exs. K, L (Case No. 3:12-mc-80121 (JSW) (N.D. Cal.).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

10

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    consulting on the litigation, the Court should quash the deposition subpoena in its entirety.  RJN,

2    Ex. K, L.

3        If the Court declines to quash the subpoena for Mr. Kreibich's deposition in its entirety

4    based on the undisclosed expert privilege, then at a minimum, Paxfire should not be permitted to

5    inquire into communications with, or work done for, Plaintiff's counsel as a specially retained

6    consultant because such communications are protected by the attorney-client privilege and/or

7    work product doctrine.  *See* Fed. R. Civ. P. 26(b)(3), and 26(b)(4)(D); *see also In re Grand Jury*

8    *Subpoenas*, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) ("Confidential communications between a

9    third party representative of the client…such as [a] …non-testifying expert, and the client's

10   attorney…may be protected from disclosure if the communications are made on behalf of the

11   client for the purpose of obtaining legal advice."); *Umpqua Bank v. First Am. Title Ins. Co.*, 2001

12   WL 997212, at *8 (E.D. Cal. March 17, 2011) (communications between a party's consultants

13   and its counsel are privileged); *Residential Constructors, LLC v. Ace Property & Cas. Ins. Co.*,

14   2006 WL 3149362, at *15 (D. Nev. 11/1/06) (confidential communications between a party's

15   counsel and a non-testifying expert or consultant, hired in anticipation of litigation are protected

16   by attorney-client privilege).  Since Mr. Kreibich's consultation with Plaintiffs' lawyers

17   commenced at least by July 18, 2011, the Court should at least modify the subpoena to prevent

18   examination into Mr. Kreibich's communications or work regarding Paxfire after this date.  RJN,

19   Ex. K (Richman Decl., ¶14), Kreibich Decl., ¶15.  Paxfire should also be precluded from

20   examining Mr. Kreibich about his compensation and the terms of this agreement with Plaintiffs'

21   counsel as an undisclosed expert.  *See Genentech, Inc. v. Trustees of Univ. of Penn.*, 2011 WL

22   6002501, pp. 1-3 (N.D. Cal. 2011) (denying motion to compel non-testifying consultant's

23   agreement or billing records); *Synopsys, Inc. v. Ricoh Co. Ltd.*, 2006 WL 2458721, p. 2 (N.D.

24   Cal. 2006) (no entitlement to discovery of consulting agreements and documents related to

25   payment of services of non-testifying expert).

26   **C.**   **Subpoena Should be Quashed Based on First Amendment Right to Academic Freedom**

27       Paxfire's subpoenas directly infringe on ICSI and the ICSI researchers right to academic

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

11

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1  freedom, which is a well-recognized First Amendment right. *Univ. Cal. Regents v. Bakke*, 438

2  U.S. 265, 312 (1978) (essentiality of freedom in American universities "has long been viewed as

3  a special concern of the First Amendment."). Paxfire seeks the disclosure of a panoply of

4  unpublished academic research, internal discussions, collaborations with others, and data of ICSI

5  and the ICSI researchers, who are also conducting their research in connection with various

6  University of California computer science departments. Kreibich Decl., ¶¶3-4, 13; Smith Decl.,

7  Exs. A-B. Such a "judicially authorized intrusion into that sphere of university life should be

8  permitted only for compelling reasons, which do not exist here." *Dow Chem. Co. v. Allen*, 672

9  F.2d 1262, 1274-75 (7th Cir. 1982) (denying enforcement of subpoenas for disclosure of

10  academic laboratory research because potentially probative evidence did not justify intrusion into

11  academic freedom). Paxfire cannot establish any relevance to Mr. Kreibich's testimony, let alone

12  the level of justification required to infringe on his academic freedom.

13  **D.  Subpoena Should be Quashed As to Unpublished Information Under California and Federal Constitutional Reporter's Privileges**

14

15  Paxfire's deposition subpoena to Mr. Kreibich should be quashed since it seeks to

16  examine him about unpublished information and resource material for his publications, all of

17  which are protected by the California Reporter's Privilege and the First Amendment. *See* Fed. R.

18  Civ. P. 45(c)(3)(A)(iii) (court must quash or modify a subpoena that requires the disclosure of

19  privileged or otherwise protected matter). Based on the categories of documents Paxfire has

20  requested and Paxfire's comments during meet and confer conferences, Paxfire seeks to examine

21  Mr. Kreibich about:

22      • Netalyzr data, research, results, internal ICSI communications and conclusions

23        unrelated to Paxfire;

24      • Netalyzr data, research, results, internal ICSI communications and conclusions

25        related to Paxfire that were not published;

26      • Drafts, peer review and editorial comments regarding publications relating to the

27        Netalyzr, certain identified Internet Service Providers, and/or Paxfire; and

28      • Third party communications about Paxfire and Netalyzr including the EFF, New

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

12

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

**SER-140**

1    Scientist, Poly NYU, Google, Microsoft and Yahoo.

2    Smith Decl., Ex. B.

3    **1.    California Privilege Law Should Apply Over New York Law**

4    Based on Paxfire's briefing related to other third party subpoenas, the parties appear to

5    agree that state privilege law as to news gathering activities applies here because Paxfire's

6    Counterclaims are state law torts; but disagree as to whether California or New York law should

7    apply. RJN, Ex. J (Paxfire's Opp. to Giles Motion to Quash). Under a governmental interest

8    analysis, the Court should determine that California law applies over New York law.[2] Paxfire

9    asserts that New York law differs from California law in providing only a qualified privilege for

10   unpublished information not obtained under confidentiality, whereas California's press shield law

11   and constitutional amendment provides an absolute protection from compelled disclosure of all

12   unpublished information and sources in civil actions. *Id.*, at p. 6; Cal. Const., art. I, §2, subd. (b);

13   Cal. Evid. Code §1070(a). California has expressed a strong interest in having its reporter's

14   privilege apply to cases such as this by elevating the law to a constitutional amendment,

15   "reflect[ing] a paramount public interest in the maintenance of a vigorous, aggressive and

16   independent press capable of participating in robust, unfettered debate over controversial matters.

17   *See Los Angeles Mem'l. Coliseum, Comm. v. Nat. Football League*, 89 F.R.D. 489, 495 (C.D.

18   Cal. 1981); *see also Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) (noting that such privilege is a

19   recognition of society's interest in protecting the integrity of newsgathering and free flow of

20   information to public to justify sacrifice of access to underlying sources and facts). California

21   also has a stronger interest in applying its law to this issue than New York, considering that the

22   newsgathering, collaboration and investigation at issue by the EFF and ICSI took place in

23   California and their sources for information were primarily located in California. Eckersley

24   Decl., ¶¶16-18; Kreibich Decl., ¶13. The ICSI researchers published and presented their

25   academic paper at a conference in California and they co-wrote and published blog postings from

26

---

27   [2] In ruling on the choice of law issue, this Court, applying California's "government interest analysis" should (1)
determine whether the state laws are different; (2) consider the state's interests in having their law applied to the

28   case; and (3) determine which state's interests would be more impaired if its policy were subordinated to the other
state. *See, e.g., Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1467 (1995).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

13

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    California.  Kreibich Decl., ¶¶12, 14; Eckersley Decl., ¶¶16-18.  Paxfire, which is a Delaware

2    corporation with its principle place of business in Virginia, cannot point to New York's interest

3    beyond the mere citizenship of the class-action plaintiff and that the underlying action is pending

4    there, which, under the circumstances here, does not support a determination that New York has a

5    more compelling interest in applying its shield law over California's shield law.

6        **2.**   **California's Constitutional and Statutory Press Shield Privileges**

7    **Provide Absolute Protection from Discovery of All Unpublished Information**

8        The California press shield law establishes an absolute protection from compelled

9    disclosure in civil litigation of any unpublished information obtained in newsgathering or

10   reporting—regardless of whether it was obtained in confidence.  Cal. Const., art. I, §2, subd. (b);

11   Cal. Evid. Code §1070(a); *NY Times Co. v. Super. Ct.*, 51 Cal. 3d 453, 457, 461-62 (1990)

12   (California shield law provides absolute protection to non-party journalists from compelled

13   disclosure).

14           Unpublished information protected from compelled disclosure includes all notes,

15   information and communications obtained or prepared in gathering, receiving or processing

16   information for public reporting, or other data or whatever sort not itself disseminated to the

17   public, whether or not related information has been disseminated.  *See id.; Delaney v. Super. Ct.*,

18   50 Cal.3d 785, 798 (1990); *see O'Grady v. Super. Ct.*, 139 Cal. App. 4th 1423, 1459-60 (2006).

19   Information from and communications with sources such as Google, Yahoo, Microsoft, Poly NY

20   and others are protected against disclosure.  Kreibich Decl., ¶16-17; *Shaklee Corp. v. Gunnell*,

21   110 F.R.D. 190, 193-94 (N.D. Cal. 1986) (shield law covers sources and all information acquired

22   in the course of news gatherer's professional activities not made public).  Any drafts and other

23   source materials and data are also protected.  *See Playboy Enterprises, Inc. v. Super. Ct.*, 154 Cal.

24   App. 3d 14, 27-28 (1984) ("source materials and editorial drafts and working papers" are

25   protected).

26           The ICSI researchers, including Mr. Kreibich, fall squarely within the absolute protection

27   of the California shield law as a result of their academic and newsworthy research, investigation

28   through a variety of sources and review of data, academic publication and public presentation of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

14

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    their research, and co-authorship with the EFF of blog posts all related to Paxfire's behavior at

2    issue in Plaintiff's Complaint. *See* Kreibich Decl., ¶¶6-14. California's shield law applies to web

3    site publications such as blog posts as well as traditional publications. *See O'Grady,* 139 Cal.

4    App. 4th at 1459-60, 1466 (refusing to enforce non-party subpoena to online bloggers over

5    Apple's arguments that discovery was warranted because blog postings disclosed its trade

6    secrets). Likewise, the ICSI researchers' academic publications, which are published in academic

7    periodicals and posted online on Mr. Kreibich and ICSI's web sites, fall within the protections.

8    Kreibich Decl., ¶¶6-8, 10-12, 14.

9       As a result, under California's shield law, the subpoena should be quashed and a

10    protective order should protect against the disclosure of any unpublished material of the ICSI

11    researchers including Mr. Kreibich.

12          **3.**    **Even if New York law applied, it Cannot Provide Fewer Rights than**

13                     **the First Amendment, Which Protects the Press' Resource Materials**

14       Notwithstanding the protections of California law, the First Amendment to the United

15    States Constitution provides substantial protections for Mr. Kreibich's information against

16    compelled disclosure, which cannot be undercut by New York law. *See Shoen v. Shoen,* 48 F.3d

17    412, 414-16 (9th Cir. 1995); *Shoen v. Shoen,* 5 F.3d 1289, 1292-93 (recognizing *Branzburg v.*

18    *Hayes,* 408 U.S. 665 (1972), as establishing qualified privilege for journalists to resist compelled

19    discovery).

20       A person may invoke the journalist's privilege if the person is gathering news for

21    dissemination to the public. *Id.* at 1293. The ICSI researchers, including Mr. Kreibich, conduct

22    academic and newsworthy research and writing in the field of computer science about the Internet

23    for the very purpose of communicating their findings, research and conclusions to the public

24    including through academic publications, public presentations at conferences and through their

25    own web sites. Kreibich Decl., ¶¶6-8. Covered materials include resource materials regardless of

26    whether they contain confidential information, regardless of the medium used to report the news

27    to the public, and regardless of the position advocated or whether it was biased or objective. *See*

28    *Shoen v. Shoen,* 5 F.3d at 1293-95; *Wright v. Fred Hutchinson Cancer Research Ctr.,* 206 F.R.D.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

15

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

**SER-143**

1    679, 681, n.2 (W.D. Wash. 2002).

2          Once the journalist's privilege is invoked, "compelled disclosure is the exception, not the

3    rule." *Shoen v. Shoen*, 48 F.3d at 416.  Indeed, there must be a showing of actual relevance;

4    potential relevance will not suffice.  *Id.*  At best, Paxfire may argue that Mr. Kreibich's testimony

5    regarding unpublished resource materials and data, communications and collaboration with

6    sources and/or editorial and internal communications might provide relevant information in

7    support of his conspiracy allegations in its Counterclaims against Plaintiff.  But, Paxfire cannot

8    establish actual relevance for this information, especially considering that a motion to dismiss is

9    pending to dismiss the Counterclaims.  Additionally, Mr. Kreibich's testimony is not relevant to

10   defending against Plaintiff's wiretapping, conversion or unjust enrichment claims—since Plaintiff

11   will either be able to prove that Paxfire's behavior was wiretapping or conversion, or not.  And,

12   Mr. Kreibich's testimony as a non-party about his sources, unpublished research, internal

13   communications and Netalyzr conclusions that are not already disclosed in his publications is

14   wholly irrelevant to Plaintiff's claims.  Overall, considering that the discovery sought from Mr.

15   Kreibich is not central to the pending lawsuit—let alone actually relevant—but does constitute the

16   basis for publicly important research, news gathering, investigation and writing, in furtherance of

17   his academic freedom and speech, compelled disclosure is not supported.

18   **E.    Confidential Research and Development Information Should Also be
           Precluded Under FRCP 45(c)(B)(ii)**
19

20         Under Rule 45(c)(B)(ii), a court may quash or modify a subpoena if the subpoena requires

21   the disclosure of confidential research or development information.  As discussed in detail above,

22   Paxfire seeks to depose Mr. Kreibich about confidential research and development related to the

23   ICSI Netalyzr tool including nonpublic computer source code, confidential data, findings and

24   information, communications and collaborations with sources in furtherance of this research and

25   information regarding third parties.  Kreibich Decl., ¶16.  The disclosure of such information may

26   hamper or harm future research projects.  *Id.*, ¶¶17-22.  Given Mr. Kreibich's showing, and the

27   fact that Paxfire cannot establish that the testimony it seeks from Mr. Kreibich is relevant and

28   necessary to the action, the Court should grant the motion to quash on this basis alone.  *See In re*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

16

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    *NCAA Student-Athlete Name & Likeness Licensing Litigation*, 2012 WL 629225 (N.D. Cal. 2012)

2    (given confidential nature of documents sought from nonparty and marginal relevance to claims,

3    limiting subpoena for documents).

   **F.    Discovery Into Third Party Communications and Collaboration Violates Mr.
4          Kreibich's First Amendment Right to Association**

6         Paxfire's attempted discovery from Mr. Kreibich into his communications, collaboration

7    and co-authorship with third parties including the EFF, Jim Giles of the New Scientist, Poly

8    NYU, Google, Microsoft and Yahoo violates his First Amendment privilege to association.

9    "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a

10   corresponding right to associate with others in pursuit of a wide variety of political, social,

11   economic, educational, religious, and cultural ends." *Roberts v. Jaycees*, 468 U.S. 609, 622

12   (1984); *see NAACP v. Alabama*, 357 U.S. 449, 460 (1958) (effective advocacy enhanced by

13   group association); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (First and

14   Fourteenth Amendment protect the freedom of association for the common advancement of

15   political beliefs); *see also* NAACP v. Button, 371 U.S. 415, 430 (1963) (objecting to discovery

16   based on First Amendment is an assertion of a First Amendment privilege); Fed. R. Civ. P.

17   45(c)(3)(A)(iii) (court must quash or modify a subpoena that requires the disclosure of privileged

18   or otherwise protected matter).  Despite these freedoms, Paxfire's subpoena seeks to compel the

19   disclosure of information from ICSI Researcher, Mr. Kreibich, about his collaborations,

20   communications and co-authorship of blog posts with the EFF, as well as with academic

21   institutions such as Poly NYU, other journalists such as Jim Giles at the New Scientist and with

22   Plaintiff and her lawyers, to prove Paxfire's alleged conspiracy allegations against Plaintiff.  Any

23   such allegations necessarily cut at the heart of the ICSI researchers and Mr. Kreibich's right to

24   association to advance their academic, political, social, economic and personal beliefs about

25   Internet privacy, the monetization of search queries without transparency and the monitoring of

26   Internet activities.  Paxfire disagrees with their point of view and its Counterclaims allege that

27   this behavior is "vigilantism," but in fact it is exactly the type of freedom of association that is

28   constitutionally protected, particularly when weighed against the irrelevance of the information to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

17

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    any viable claims of Paxfire.

2         Discovery into Mr. Kreibich's associational contacts, communications and information

3    will have a negative impact on his ability to obtain information from third party sources, work

4    and collaboration with other academic researchers and industry groups and companies and will

5    chill his associational rights. *See* Kreibich Decl., ¶¶16-22; *see also* Eckersley Decl., ¶22;

6    Declaration of Nicolas Weaver, ¶¶5-7; RJN, Ex. O (Cohn Decl.), ¶¶13-16.  Not surprisingly,

7    other computer science academics and researchers believe that such compelled discovery would

8    negatively impact their research and collaboration.  *See* RJN, Ex. P (Narayannan Decl., ¶¶9-14)

9    (Stanford University)); RJN, Ex. Q (Burns Decl., ¶¶6-15) (industry security research and

10   consulting firm).  In essence, the information sought that would impinge Mr. Kreibich's right to

11   association, includes all communications and information about the Netalyzr and Paxfire except

12   for what has been disclosed to the public.  "Implicit in the right to associate with others…is the

13   right to exchange ideas and formulate strategy and messages, and to do so in private. *Perry v.*

14   *Schwarzenegger*, 591 F.3d at 1161-63 (compelling disclosure of internal campaign

15   communications can chill the exercise of right to association); *see Wyoming v. U.S. Dept. Ag.*,

16   208 F.R.D. 449, 454-55 (D.D.C. 2002) (disclosure of internal communications has potential to

17   chill free exercise of political speech and association).

18        Upon Mr. Kreibich's showing, the burden shifts to Paxfire to show that the information

19   sought is highly relevant to the claims or defenses in the litigation, and is carefully tailored to

20   avoid unnecessary interference with protected activities.  *Brock v. Local 375, Plumbers Int'l*

21   *Union of Amer.*, 860 F.2d 346, 349-50 (9th Cir. 1988); *Perry v. Schwarzenegger*, 591 F.3d at

22   1161.  As discussed above, such unpublished and source material, information and research is

23   only potentially relevant to Paxfire's Counterclaims against Plaintiff, which are not viable.  In all

24   events, the discovery that impacts Mr. Kreibich's association rights is not highly relevant to

25   stating defamation and interference claims against Plaintiff—not ICSI or the ICSI researchers.

26   Simply put, Paxfire's basis for examining a non-party academic computer science researcher, Mr.

27   Kreibich, about his unpublished constitutionally protected activities and communications, is that

28   Paxfire disagrees with his conclusions and associations, seeking to name him a "vigilante."  RJN,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

18

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1  Ex. B (Counterclaims), ¶40. Paxfire's disagreement as to Mr. Kreibich's research conclusions

2  does not justify discovery over his First Amendment rights. Given that Paxfire declined to

3  narrow the topics for the deposition, it cannot argue that the discovery is narrowly tailored to

4  avoid infringing Mr. Kreibich's rights.

5  **G.** **Discovery As to Activities in Furtherance and Support of Litigation Should be Denied as Constitutionally Protected Under Privilege of Association for Litigation and *Noerr-Pennington* Doctrine**

6

7  One purported justification for Paxfire's deposition of Mr. Kreibich is Paxfire's

8  Counterclaim alleging that the EFF and ICSI "[i]nduced a third party individual to bring a class

9  action lawsuit against Paxfire," and got her agreement to "serve as the 'legal front' for the scheme

10  agreed by and between EFF, the ICSI, and…[Plaintiff]." RJN, Ex.B, ¶¶41(d), 44, 56. Paxfire

11  likewise alleges that the EFF and ICSI were acting as "vigilantes" or "self-appointed enforcement

12  officials policing the Internet to deter conduct to which they objected." *Id.*, ¶40. Paxfire's basis

13  for seeking this discovery is premised on the idea that ICSI and Mr. Kreibich committed a wrong

14  by allegedly communicating and consulting with Plaintiff's counsel in advance of her filing of the

15  Complaint.

16  The actions of ICSI and the ICSI Researcher Mr. Kreibich are protected by their First

17  Amendment rights to assist and support litigation to promote their point of view and beliefs.

18  *NAACP v. Button*, 371 U.S. 415, 428, 431 (1963) ("[A]ssociation for litigation may be the most

19  effective form of political association."); *see* Kreibich Decl., ¶6, Ex. A. Sponsoring and assisting

20  litigation "are modes of protection and association protected by the First and Fourteenth

21  Amendments." *Id.* at 428; *Brotherhood of R. R. Trainmen v. Virginia ex rel Va. State Bar*, 377

22  U.S. 1, 8 (1964) (First Amendment protects right to advise others to obtain legal advice and

23  recommend specific lawyers); *United Mine Workers of Amer. v. Ill. State Bar Ass'n*, 389 U.S.

24  217, 221-22 (1967) (First Amendment protects hiring attorneys to assist others in asserting legal

25  rights). Courts have also held that discovery into such associational litigation activities was not

26  permissible. *See Beinin v. Center for Study of Popular Culture*, 2007 WL 1795693, p. 3 (N.D.

27  Cal. June 20, 2007) (denying motion to compel since names supporting lawsuit not discoverable

28  under associational discovery privilege); *Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/23241087.2

19

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    1984) (denying discovery as to information relating to support of plaintiff's lawsuit). Moreover,

2    using the courts to advocate causes and points of view is protected by the right to petition under

3    the *Noerr-Pennington* doctrine. *See, e.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-30, 935 (9th

4    Cir. 2006) (communications before a lawsuit not actionable under First Amendment right of

5    petition to trigger *Noerr-Pennington*).

6          As a result, the Court should quash the subpoena to Mr. Kreibich and issue a protective

7    order precluding discovery into ICSI or Mr. Kreibich's association and communications related to

8    any litigation activities, particularly considering that such allegations do not support any claim at

9    issue. Fed. R. Civ. P. 45(c)(3)(A)(iii) (court must quash or modify a subpoena that requires the

10    disclosure of privileged or otherwise protected matter).

11        **H.**    <u>**Undue Burden on Non-Party Mr. Kreibich and Lack of Relevance Alone**</u>

12            <u>**Warrants Court Quashing Subpoena in its Entirety.**</u>

13          ICSI and the ICSI researchers believe the Court could avoid any constitutional analysis,

14    and hold that under the controlling rules of civil procedure, the Court should quash the subpoenas

15    as constituting an undue burden and seeking irrelevant information. Fed. R. Civ. P. 26(b)(1)

16    (relevance, weighing burden and benefit); Fed. R. Civ. P. 45(c)(3)(A)(iv) (court must quash a

17    subpoena that is undue burden to nonparty). "An evaluation of undue burden requires the court to

18    weigh the burden to the subpoenaed party against the value of the information to the serving party

19    [,]" and mandates the court's consideration of such factors as relevance, the serving party's need

20    for the requested documents, the breadth of the discovery request, the particularity with which the

21    documents are described, and the burden imposed. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

22    636 (C.D.Cal.2005). The Court should deny discovery of third party that is not relevant. *Arista*

23    *Records LLC v. Lime Group LLC*, 2011 WL 781198, pp. 2-4 (S.D.N.Y. March 4, 2011) (holding

24    that third parties' internal communications were not relevant to plaintiff's "attitudes"). In *Dow*

25    *Chemical Co. v. Allen*, in considering the undue burden to academic researchers from a third

26    party subpoena for their academic research, the Court recognized the threat of substantial

27    intrusion into the enterprise of university research, the danger of chilling their academic freedom,

28    the fear that academics would have their work appropriated and/or scrutinized by third parties

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

20

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1    with adverse interests, the risk of checking the ardor and fearlessness of scholars, risk that

2    companies could use the subpoena process to misappropriate academic work product and the

3    potential jeopardy to their studies and careers from disclosure. *Dow Chem. Co,* 672 F.2d at 1276-

4    77 (affirming denial of enforcement of subpoenas for academic research). Weighing these

5    burdens, the Court found that enforcing the subpoenas would be an undue burden on the

6    academic researchers. *Id.*

7        Likewise, here, the Court should prevent the examination of Mr. Kreibich regarding any

8    information sought that is unpublished resource material, communications and data related to the

9    Netalyzr or Paxfire as an undue burden by in terms of time, expense, volume but also in terms of

10   the negative consequences for Mr. Kreibich's ongoing academic research, Internet investigations

11   and publications. Kreibich Decl., ¶¶16-22.

12       The only remaining topics for Mr. Kreibich's deposition relate to his explanation of the

13   actual words in the three peer-reviewed academic publications that relate to the behavior of

14   Paxfire both before and after the ICSI researchers identified Paxfire as engaging in such behavior.

15   Such discovery is also an undue burden and irrelevant. Mr. Kreibich's explanation of the

16   academic publications is not relevant to any defamation or interference claims against Plaintiff.

17   The publications speak for themselves—and moreover, there are no allegations in Paxfire's

18   Counterclaims that allege defamation or interference on the basis of any of the three publications.

19   And, such an examination of Mr. Kreibich about his actual publications would not yield any

20   information relevant to Plaintiff's wiretapping, conversion or unjust enrichment claims since

21   regardless of the statements in Mr. Kreibich's academic papers and online publications, Paxfire's

22   behavior either did nor did not constitute actionable wiretapping, conversion or unjust

23   enrichment. Similarly, his explanation of the actual words of the co-written blog posts with the

24   EFF are not relevant since the publications speak for themselves and non-party Mr. Kreibich's

25   state of mind or basis for the statements cannot be imputed to the Plaintiff.

26   **I.    ICSI Subpoena Should be Quashed in its Entirety**

27       Paxfire's 30(b)(6) deposition subpoena to ICSI identifies two topics: (1) ICSI's policies

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

21

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

**SER-149**

1  related to compensation and disclosure of consulting agreements; and (2) any consulting work of

2  ICSI with Feist, Milberg and Richman.  Smith Decl., Ex. C.  The subpoena to ICSI should be

3  quashed in its entirety since the information sought in both topics is entirely irrelevant to

4  Paxfire's counterclaims and thus, presents and undue burden.  As to the first topic, Paxfire has no

5  claims against ICSI or the individual ICSI researchers.  Thus, any policies of ICSI related to the

6  compensation or disclosure of any consulting by its researchers are irrelevant to Paxfire's claims

7  against Plaintiff for interference and defamation.  As to the second topic, Plaintiffs' counsel

8  Milberg/Richman do not claim an undisclosed expert privilege with ICSI—only with individual

9  researchers—such that any examination on this topic is not relevant.  Additionally, Paxfire admits

10  that ICSI was not a consultant to Feist, Milberg or Reese Richman, which moots any need to

11  depose ICSI on that topic.  RJN, Ex. N, p. 1.

12  **J.**     **Protective Order**

13      ICSI and Mr. Kreibich request that the Court enter a Protective Order, under Federal Rule

14  of Civil Procedure 26(c), consistent with its ruling preventing any discovery as to ICSI and the

15  ICSI researchers related to:

16  - Plaintiff Betsy Feist, Plaintiff's counsel Milberg and Reece Richman, or the
17    underlying lawsuit including related to the Complaint or Paxfire's Counterclaims;

18  - Collaboration, contact, communications, documents, research with Jim Giles, the
19    New Scientist, Poly NYU, Google, Microsoft or Yahoo;

20  - the Netalyzr tool, and related data, results, research, conclusions, analysis, internal
21    discussions or findings; and

22  - the three peer-reviewed academic publications or blog postings co-written by the
23    EFF and  ICSI researchers concerning the behavior identified as Paxfire's behavior
24    identified in Exhibits B-D, E-F of Mr. Kreibich's Declaration.

25  **III.**   **CONCLUSION**

26      For the foregoing reasons, nonparties ICSI and Mr. Kreibich respectfully request that this

27  Court grant this motion for a protective order and to quash the subpoenas in their entirety.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

22

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

1

Dated: June 13, 2012

Respectfully submitted,

2

3
MORGAN, LEWIS & BOCKIUS LLP
SHARON R. SMITH
CHRISTOPHER J. BANKS

4

5

6
By _Sharon Smith_____

SHARON R. SMITH

7
Attorneys for Non-parties International
Computer Science Institute and Christian
Kreibich

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 23241087.2

23

NOTICE OF MOTION AND MOTION OF
NON-PARTIES ICSI AND KREIBICH TO
QUASH SUBPOENAS

# Tab 9

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

FILED

2012 MAY 23 P 2: 13

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1 | Sanford P. Dumain<br>Peter E. Seidman |
| 2 | Melissa Ryan Clark<br>Adam Bobkin |
| 3 | **MILBERG LLP**<br>One Pennsylvania Plaza |
| 4 | New York, NY 10119<br>Telephone:    (212) 594-5300 |
| 5 | Facsimile:    (212) 868-1229 |
| 6 | Michael R. Reese (SBN 206773)<br>Kim E. Richman |
| 7 | **REESE RICHMAN LLP**<br>875 Avenue of the Americas |
| 8 | New York, NY 10001<br>Telephone:    (212) 579-4625 |
| 9 | Facsimile:    (212) 253-4272 |

JSW

10

*Attorneys for Plaintiff Betsy Feist*

11

12           UNITED STATES DISTRICT COURT  **CV-12-80  121 MISC**

13                    NORTHERN DISTRICT OF CALIFORNIA

14                           SAN FRANCISCO DIVISION

15

16 | BETSY FEIST, individually and on behalf of all | ) Misc. Action No.

17   others similarly situated,                    ) **NOTICE OF MOTION AND**
                                                     ) **MOTION OF BETSY FEIST TO**
18                          Plaintiff,              ) **QUASH SUBPOENAS TO**
                                                     ) **CONSULTANTS AND REQUEST**
19        v.                                        ) **FOR PROTECTIVE ORDER;**
                                                     ) **MEMORANDUM OF POINTS AND**
20   RCN CORP. and PAXFIRE, INC.,                   ) **AUTHORITIES**
                                                     )
21                          Defendants.             )
                                                     )
22                                                  ) DATE:
                                                     ) TIME:          .
23                                                  ) JUDGE:
                                                      COURTROOM:
24
                                                      ORAL ARGUMENT REQUESTED
25

26

27

28

1 | **NOTICE OF MOTION AND MOTION**

2 | **TO THIS HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF**

3 | **RECORD:**

4 |     NOTICE IS HEARBY GIVEN that on _____, at _____ a.m./p.m. or as

5 | soon thereafter as the matter may be heard, in Courtroom _____, _____ Floor, 450 Golden

6 | Gate Avenue, San Francisco, California, plaintiff Betsy Feist will move, and hereby moves,

7 | pursuant to Federal Rules of Civil Procedure 26 and 45, to quash the Subpoenas to Produce

8 | Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the

9 | "Subpoenas") served by Defendant Paxfire on the Electronic Frontier Foundation ("EFF") and

10 | the International Computer Science Institute ("ICSI"), Peter Eckersley, Christian Kreibich, Vern

11 | Paxson, and Nicholas Weaver, or, alternatively, to limit the Subpoenas.

12 |     Ms. Feist respectfully requests an order that the Subpoenas be quashed in their entirety

13 | because they improperly seek documents from Plaintiff's consultants, including documents

14 | protected by the work product doctrine and attorney-client privileges. Ms. Feist also requests that

15 | a Protective Order be entered providing that the subpoenaed entities and persons listed above not

16 | be required to produce documents in response to the Subpoenas.

17 |     The motion will be based upon this Notice of Motion and Motion, the following

18 | Memorandum of Points and Authorities, the accompanying declaration of Kim Richman, any

19 | reply filed in support of this motion, all other papers filed and proceedings had in this action, oral

20 | argument of counsel, and such other matters as the Court may consider.

21 |

22 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO**
23 | **QUASH SUBPOENAS SERVED ON PLAINTIFF'S CONSULTANTS AND FOR PROTECTIVE ORDER**

24 | **I.**    **INTRODUCTION**

25 |     Defendant Paxfire has served subpoenas for the production of documents on the

26 | Electronic Frontier Foundation ("EFF") and the International Computer Science Institute

27 | ("ICSI"), as well as individually on EFF Technology Projects Director Peter Eckersley and ICSI

28 | technologists Christian Kreibich, Vern Paxson, and Nicholas Weaver (collectively "Plaintiff's

2

1    Consultants" or the "Consultants"). *See* Declaration of Kim E. Richman in Support of Motion to
2    Quash Subpoenas Served on Plaintiff's Consultants and for Protective Order ("Richman Decl.")
3    Exhibits A to F. Each of these persons and entities serves as a consultant to Ms. Feist in
4    connection with the litigation and the Subpoenas attempt to discover the very work Ms. Feist
5    engaged these technology experts to perform. *See generally* Richman Decl; *see also, e.g.,*
6    Richman Decl. Ex. A at ¶ 1 (seeking documents identifying or referencing the Plaintiff or her
7    lawyers); ¶ 4 (seeking all communications pertaining to Ms. Feist, her attorneys, or the
8    defendants in the litigation); ¶ 7 (seeking research results and communications regarding
9    Paxfire). Each of these Subpoenas requests the production of documents created for the express
10   benefit of Ms. Feist in anticipation of or in connection with the litigation. The Subpoenas also
11   improperly request privileged and protected documents that have been created in connection with
12   or anticipation of other litigations. *See id.* at ¶¶ 1 - 3 (seeking documents and communications
13   for the period beginning in 2008, well before the instant litigation, in which EFF worked or
14   communicated with Plaintiff's lawyers, without regard to relevance to the litigation); *see id.* at ¶
15   15 (noting that Mr. Eckersley has served as a consultant to Ms. Feist's attorneys on other,
16   unrelated matters).

17        Each of these consultants has assisted Ms. Feist and her counsel with their investigation
18   and understanding of Defendants' uses of the Internet technology that is the focus of this
19   litigation, including the alleged use of proxy serves for routing Internet traffic, DNS resolution,
20   Error Redirection, and Direct Navigation. These experts have also assisted Ms. Feist and her
21   counsel in their understanding of the types of information allegedly accessible by owners of
22   proxy servers, like search history and IP address, as well as their assessment of the results
23   generated by the Netalyzr, an ICSI tool for identifying and reporting Internet security issues.

24        Such communications are protected by the attorney-client privilege and the work product
25   doctrine, and discovery from these consultants is prohibited by the Federal Rules of Civil
26   Procedure ("Rules"), unless the Consultants are later designated as testifying experts or Paxfire
27   meets its extremely high burden of demonstrating one of the limited exceptions set forth in the
28   Rules. *See* Rule 26. Accordingly, Ms. Feist respectfully requests that Defendant Paxfire's

3

1  subpoenas of Plaintiff's Consultants be quashed in their entirety. Ms. Feist also requests that the

2  Court issue an order that Plaintiff's Consultants are not required to produce documents in

3  response to the Subpoenas.

4  **II.    ARGUMENT**

5      **A.    Plaintiff's Consultants Were Engaged to Assist Plaintiff's Attorneys in
        Their Provision of Legal Advice to Plaintiff**

6

7      Plaintiff, through her attorneys, conferred with the Consultants to gain technological

8  insight and know-how to assist in the prosecution of Plaintiff's claims. Plaintiff's counsel

9  worked with the technologists and Internet experts from ICSI and EFF in order to inform their

10  understanding of the complex, technical aspects of this litigation. Plaintiff's Consultants

11  provided advice concerning the flow of information on the Internet, the types of physical

12  appliances necessary for Internet communications, descriptions of various protocol that operate

13  to transfer information across the Internet between end-users and websites, an understanding of

14  the results of ICSI's Netalyzr, and many other matters within the Consultant's stated areas of

15  expertise. *See* Richman Decl. ¶¶ 9-11, 14-15. The Consultants also reviewed documents drafted

16  by Ms. Feist's attorneys in connection with this litigation, and agreed to keep all such documents

17  and communications confidential. *Id.* at ¶¶ 11-13.

18      All of the information shared with the Consultants, including any information from Ms.

19  Feist, her computer, and her attorneys, and all communications regarding the services performed

20  by the Consultants for Ms. Feist and her attorneys in connection with this litigation were made

21  with the mutual understanding, between Ms. Feist, her attorneys, and the consultants, that such

22  documents would remain confidential, privileged, and not subject to discovery. *See* Richman

23  Decl. ¶¶ 12-13. By their consultancy agreements (whether informal or formal), Plaintiff's

24  Consultants agreed not to disclose anything relating to the services they performed, the

25  information they prepared or received, or any communications between them and Plaintiff or her

26  counsel. *See* Richman Decl. ¶¶ 12-15.

27

28

                                        4

1

**B.    Paxfire's Requests Seek Documents Protected by the Work Product Doctrine**

2

Rule $26(b)(4)(D)^1$ immunizes Plaintiffs' Consultants from discovery, and specifically

3

prohibits the discovery of the Consultants' work product. Specifically, Rule 26(b)(4)(D) states,

4

in part, that:

5            Ordinarily, a party may not, by interrogatories or deposition,
             **discover facts known or opinions held by an expert who has**
6            **been retained or specially employed by another party in**
             **anticipation of litigation or to prepare for trial** and who is not
7            expected to be called as a witness at trial. . . .

8    (emphasis added).   Rule 26(b)(4)(D) thus expressly extends the work-product doctrine to all

9    "facts known or opinions held by an expert who has been retained or specially employed by

10    another party in anticipation of litigation or to prepare for trial and who is not expected to be

11    called as a witness at trial."[2]  *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 262

12    F.R.D. 354, 361 (S.D.N.Y. 2009). Under this rule, a consulting expert who will not testify at

13    trial "is generally **immune from discovery.**" *Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 93 Civ.

14    0167, 1994 U.S. Dist. LEXIS 5820, *2 (S.D.N.Y. May 6, 1994) (emphasis added).[3]  The policy

15    behind this rule is simple - "each side should prepare its own case, at its own expense, and that

16    parties should feel free to use experts to properly evaluate their case without fear that it may

17    yield grist for the adversary's mill." *800 Front St. Corp. v. Travelers Prop. Cas. Co. of Am.*, CV

18    ────────────
      [1] Rule 26(b)(4)(D) was formerly Rule 26(b)(4)(B).  *See* Rule 26, Advisory Committee notes,
19    2010 Amendments.

20    [2] Under the current discovery schedule in the Southern District of New York, the deadline for the
      designation of testifying experts is July 30, 2012. If any of Plaintiffs' Consultants are designated
21    as testifying experts at that time, certain discovery may be appropriate.

22    [3] Although Rule 26 specifically mentions depositions and interrogatories, it also applies to
      requests for the production of documents. *U.S. Inspection Services, Inc. v. NL Engineered*
23    *Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal.  2010) (noting that, although "Rule 26(b)(4)(B)
      does not explicitly mention document requests[,]" whether Rule 26 "applies with equal force to
24    protect *documents* sought from non-testifying experts" was uncontested.) (emphasis in original);
      *Plymovent Corp. v. Air Tech. Solutions, Inc.*, 243 F.R.D. 139, 143-44 (D.N.J. 2007) (Applying
25    Fed. R. Civ. P. 26 to requests for production of documents, noting "it is by now a truism that the
      various discovery devices function as an integrated system, and that in deciding the limits of
26    privilege, we should treat the various devices similarly.") (citations and quotations omitted).;
      *Ludwig v. Pilkington N. America, Inc.*, No. 03 C 1086, 2003 WL 22242224, at * 1 (N.D. Ill.
27    Sept. 29, 2003) ("To the extent that the issue of [a] subpoena becomes applicable, Rule 45 of the
      Federal Rules of Civil Procedure cannot be utilized for obtaining an expert's files where Rule
28    26(b)(4) remains the limitation on discoverability.").

5

1   06-500(LDW)(ARL), 2006 U.S. Dist. LEXIS 84160, at *5 (S.D.N.Y. 2006) (internal quotations

2   omitted).[4]

3        Plaintiff entered into a formal, written consulting agreement with Messrs. Paxson,

4   Kreibich, and Weaver (employees of ICSI). *See* Richman Decl. ¶ 14.   Plaintiff, through her

5   counsel, consulted more informally (i.e., on an unpaid, unretained basis) with Mr. Eckersley in

6   connection with and in anticipation of this litigation. *Id.* at ¶ 15. Communications with and

7   documents prepared by both informal and formal consultants (i.e., without regard to whether

8   they consultants were retained or employed) are protected:

9           [I]t is clear that discovery of expert information garnered in anticipation of litigation
            "may be obtained only" as set out in Rule 26(b)(4). Under Rule 26(b)(4)(A) the names of
10          experts a party intends to call as a witness and the substance of their testimony are
            discoverable. Pursuant to Rule 26(b)(4)(B) discovery concerning experts retained or
11          specially employed in anticipation of litigation but not expected to be called as witnesses
            can only be had upon a showing of exceptional circumstances. Discovery of information
12          received from an expert informally consulted in anticipation of trial, but not retained or
            specially employed is not provided for in Rule 26(b)(4). Since discovery of expert
13          information acquired in anticipation of litigation can only be had in accordance with Rule
            26(b)(4), if no provision is made for experts consulted informally in anticipation of
14          litigation, no discovery concerning them is permissible.

15   *USM Corp. v. American Aerosols, Inc.*, 631 F.2d 420, 424-25 (6th Cir. 1980) (citations omitted).

16          No provision in Fed. Rules Civ. Proc., rule 26(b)(4), 28 U.S.C.A., expressly deals with
            non-witness experts who are informally consulted by a party in preparation for trial, but
17          not retained or specially employed in anticipation of litigation. The advisory committee
            notes to the rule indicate, however, that subdivision (b)(4)(B) precludes discovery against
18          experts who (are) informally consulted in preparation for trial, but not retained or
            specially employed. We agree with the District Court that this preclusion not only
19          encompasses information and opinions developed in anticipation of litigation, but also
            insulates discovery of the identity and other collateral information concerning experts
20          consulted informally.

21   *Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 501 -502 (10th

22   Cir. 1980) (citations omitted). *See also Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 635-

23   36 (E.D.Cal. 2009); *QBE Ins. Corp. v. Interstate Fire & Safety Equipment Co., Inc.*, 07-1883,

24   2011 WL 692982, at *5 (D.Conn. Feb. 18, 2011); *Brousseau v. Postmaster General,* 209 F.R.D.

25   ────────────────────
     [4] Rule 45 provides federal district courts with the authority to issue subpoenas for production of
26   documents. A motion to quash must be made before the issuing court. Fed. R. Civ. P. 45(c)(3).
     *See also Ford Motor Company v. Edgewood Properties, Inc.*, Civ. No. 06-1278 (WJM)(ES),
27   2011 WL 601312, at *2 (D. N.J. Feb. 15, 2011); *In re Sealed Case*, 141 F.3d 337, 341-343
     (D.C.Cir. 1998); *Kearney v. Jandernoa*, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997). Because the
28   underlying subpoenas were issued in the Northern District of California, this Court has
     jurisdiction over this motion to quash.

6

293, 294-95 (D.Conn. 2002); *J. T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 84-4438, 1987 WL 17084, at *4 (E.D.N.Y. August 31, 1987) (Finding that Rule 26 prohibited discovery of a consultant who "was not retained specifically for the purpose of trail preparation, but rather has been regularly consulted in the usual course of business over a period of time").

Accordingly, Paxfire's subpoenas should be quashed.

## C.  Paxfire Seeks Documents Protected by the Attorney-Client Privilege

Paxfire seeks all documents identifying or referencing Plaintiff or her attorneys, and all communications or records pertaining to those communications that were authored, received, forwarded, or otherwise transmitted by any of Plaintiff's Consultants pertaining to Plaintiff, Plaintiff's counsel, and work performed by Plaintiff's Consultants. *See, e.g.*, Ex A at ¶ 4 and Ex. B at ¶ 4. All of these documents constitute attorney-client communications because they were created at Plaintiff's attorney's request by third-parties engaged by Plaintiff's counsel to assist them in their rendition of legal advice to Ms. Feist. *See generally* Richman Decl. Paxfire may not discover any of these documents, and Paxfire's requests for this privileged information must be quashed.

Plaintiff's attorneys conferred and communicated with the Consultants as agents to assist them in their provision of legal advice to Ms. Feist.  Consequently, all documents or communications involving Ms. Feist's attorneys and their agents are protected from disclosure by the attorney-client privilege. *See* Cal. Evid. Code § 952; CPLR §§ 3101(b), 4503(a). *See also City & County of San Francisco v. Superior Court In & For City & County of San Francisco*, 37 Cal. 2d 227, 237 (1951) ("It follows, too, that the communications of the attorney's agent to the attorney are within the privilege, because the attorney's agent is also the client's sub-agent and is acting as such for the client."); *Hudson Ins. Co. v. Oppenheim*, 72 A.D.3d 489, 489 (2010) (The privilege extends to communications of "one serving as an **agent** of either attorney or client."). Documents shared between Ms. Feist's attorneys and their Consultants are privileged and protected from disclosure where those communications "concern information which emanates directly from the client", *Great Am. Surplus Lines Ins. Co. v. Ace Oil*, 120 F.R.D. 533, 538 (E.D.Cal.1988), or whenever the communication is "reasonably necessary for the transmission of

7

1    the information or the accomplishment of the purpose for which the lawyer is consulted." Cal.
2    Evid. Code § 952; *see also* CPLR §§ 3101(b), 4503(a); *Fireman's Fund Ins. Co. v. Superior*
3    *Court*, 196 Cal. App. 4th 1263, 1274 (Cal. App. 2d Dist. 2011); *In re Grand Jury Subpoenas*
4    *dated March 9, 2001*, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) ("Confidential communications
5    between a third party representative of the client, such as [a] . . . non-testifying expert, and the
6    client's attorney . . . may be protected from disclosure if the communications are made on behalf
7    of the client for the purpose of obtaining legal advice.") (citing *Upjohn Co. v. United States,* 449
8    U.S. 383, 391-92 (1981) (internal citations omitted).

9         The attorney-client privilege protects all communications between and among Plaintiff,
10   Plaintiff's Consultants, and Plaintiff's counsel and shields all such documents from disclosure to
11   Paxfire or any other third-party. *See Umpqua Bank v. First Am. Title Ins. Co.*, CIV S-09-3208
12   WBS EF, 2011 WL 997212, at *8 (E.D. Cal. Mar. 17, 2011) (citing Cal. Evid. Code § 952);
13   *Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.* 2006 WL 3149362, at *15 (D.
14   Nev. November 01, 2006) ("Courts applying the [Supreme Court's] *Upjohn* and [Eighth
15   Circuit's] *Bieter* tests have also held . . . that confidential communications between a party's
16   counsel and a non-testifying expert or consultant, hired in anticipation of litigation are protected
17   by the attorney-client privilege.") (citing *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.,*
18   2006 WL 2255538 (E.D.Cal.2006)); *Nat'l Steel Prods. Co. v. Superior Court (Rosen),* 164 Cal.
19   App. 3d 476, 483 (1985); *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270 at 283 ("attorney-
20   client privilege may cover communications made to agents of an attorney . . . hired to assist in
21   the rendition of legal services.") (citing *United States Postal Serv. v. Phelps Dodge Refining*
22   *Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y.1994)).

23        Paxfire's broad requests seek all documents and communications involving any of
24   Plaintiff's Consultants, discussing either of the defendants in this case, the technology they used
25   to monitor Internet users, and any data or reports prepared by Plaintiff's Consultants. All of
26   these documents were created by or transmitted to Plaintiff's Consultants in order to facilitate
27   Plaintiff's attorney's provision of legal advice to Ms. Feist and are protected attorney-client
28   communications. Moreover, the Subpoenas seek documents unrelated to this litigation, for

8

1    which the attorney-client privilege and work product protections are also applicable. *See, e.g.,*

2    Richman Decl., Ex. A at ¶¶ 1-3 (seeking documents and communications for the period

3    beginning in 2008, well before the instant litigation, in which EFF worked or communicated with

4    Plaintiff's lawyers, without regard to relevance to the litigation). Accordingly, Paxfire's

5    subpoenas should be quashed. *See Hudson Ins. Co. v. Oppenheim,* 72 A.D.3d 489, 489 (2010)

6    (attorney-client privilege barred discovery of documents prepared by forensic accountants hired

7    as attorney's consultants); *People v. George,* 104 Misc. 2d 630, 632 (Sup. Ct. 1980) (barring

8    discovery of statements made by a criminal defendant to a polygraphist acting as defense

9    counsel's agent); *People v. Meredith,* 29 Cal. 3d 682, 690 n.3 (1981) ("finding that an

10    investigator stands in the same position as the attorney for purposes of the analysis and operation

11    of the [attorney-client] privilege").

12    **III.**    **CONCLUSION**

13        For the reasons stated above, Ms. Feist respectfully requests that Paxfire's subpoenas to

14    Plaintiff's Consultants be quashed.

15    Dated: May 23, 2012                      Respectfully Submitted,

16

17                                           **REESE RICHMAN LLP**
                                     Michael R. Reese (SBN 206773)

18                                      Kim Richman
                                     875 Avenue of the Americas, 18th Floor

19                                      New York, NY 10001
                                     Telephone: (212) 579-4625

20                                      Facsimile: (212) 253-4272
                                     E-mail:mreese@reeserichman.com

21                                                  krichman@reeserichman.com

22                                      -and-

23                                      **MILBERG LLP**
                                     Sanford P. Dumain

24                                      Peter E. Seidman
                                     Melissa Ryan Clark

25                                      Adam Bobkin
                                     One Pennsylvania Plaza, 49th Floor

26                                      New York, NY 10119
                                     Telephone: (212) 594-5300

27                                      Facsimile: (212) 868-1229
                                     E-mail: sdumain@milberg.com

28                                               pseidman@milberg.com
                                              mclark@milberg.com



1     abobkin@milberg.com

2     *Attorneys for Plaintiff Betsy Feist*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

# Tab 10

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1   Sanford P. Dumain
    Peter E. Seidman
2   Melissa Ryan Clark
    Adam Bobkin
3   **MILBERG LLP**
    One Pennsylvania Plaza
4   New York, NY 10119
    Telephone:     (212) 594-5300
5   Facsimile:     (212) 868-1229

6   Michael R. Reese (SBN 206773)
    Kim E. Richman
7   **REESE RICHMAN LLP**
    875 Avenue of the Americas
8   New York, NY 10001
    Telephone:     (212) 579-4625
9   Facsimile:     (212) 253-4272

10
    *Attorneys for Plaintiff Betsy Feist*
11

12                   UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15
                                        )  Misc. Action No. 12-80121 JSW (EDL)
16                                      )
    BETSY FEIST, individually and on behalf of all  )
17  others similarly situated,          )  **NOTICE OF MOTION AND**
                                        )  **MOTION OF BETSY FEIST TO**
18                          Plaintiff,  )  **QUASH DEPOSITION SUBPOENAS**
                                        )  **TO CONSULTANTS AND REQUEST**
19          v.                          )  **FOR PROTECTIVE ORDER**
                                        )
20  RCN CORP. and PAXFIRE, INC.,        )
                                        )
21                          Defendants.  )
                                        )  ORAL ARGUMENT REQUESTED
22                                      )
                                        )
23

24

25

26

27

28

PLEASE TAKE NOTICE that, as soon as counsel may be heard, Betsy Feist, Plaintiff and Counterclaim-Defendant in the above-referenced action ("Plaintiff"), through her undersigned counsel, shall move before the Honorable Magistrate Judge Laporte, United States District Court, 450 Golden Gate Avenue, San Francisco, California, 94102, for entry of an Order quashing Defendant and Counterclaim-Plaintiff Paxfire's ("Paxfire") deposition subpoenas (attached hereto as Exhibit A) to the International Computer Science Institute, the Electronic Frontier Foundation, Peter Eckersley, and Christian Kreibich (collectively "Plaintiff's Consultants").

Paxfire previously subpoenaed Plaintiff's Consultants for the production of documents. On May 23, 2011, Plaintiff moved to quash those subpoenas because they seek documents and information protected by the attorney-client privilege and work product doctrine. On June 1, 2012 Paxfire provided noticed to Plaintiff that, in addition to the previously served document subpoenas, it would also take the depositions of Plaintiff's Consultants. Paxfire's deposition subpoenas, like the previously served document subpoenas, seek protected confidential information and must be quashed.

Paxfire's deposition subpoenas must be quashed for the same reasons that Paxfire's document subpoenas are improper. Therefore, in support of her Motion, Plaintiff hereby incorporates her Motion to Quash Subpoenas to Consultants and Request for Protective Order and Memorandum of Points and Authorities in Support (Doc No. 1, attached hereto as Exhibit B) and the Declaration of Kim E. Richman in Support of Betsy Feist's Motion to Quash Subpoenas to Consultants (Doc. No.2, attached hereto as Exhibit C).

Dated: June 4, 2012                                  Respectfully Submitted,

                                                         /s/ Michael R. Reese
                                                    **REESE RICHMAN LLP**
                                                    Michael R. Reese (SBN 206773)

2

Kim Richman
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
E-mail:mreese@reeserichman.com
        krichman@reeserichman.com

-and-

**MILBERG LLP**
Sanford P. Dumain
Peter E. Seidman
Melissa Ryan Clark
Adam Bobkin
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
E-mail: sdumain@milberg.com
        pseidman@milberg.com
        mclark@milberg.com
        abobkin@milberg.com

*Attorneys for Plaintiff Betsy Feist*

3

# Tab 11

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1   DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
2   MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
3   JAIDEEP VENKATESAN, Bar No. 211386
jvenkatesan@be-law.com
4   BERGESON, LLP
303 Almaden Boulevard, Suite 500
5   San Jose, CA 95110-2712
Telephone:  (408) 291-6200
6   Facsimile:   (408) 297-6000

7   ANDREW GROSSO, Esq., *pro hac vice*
Agrosso@acm.org
8   ANDREW GROSSO & ASSOCIATES
Georgetown Place
9   1101 Thirtieth St., NW, Suite 300
Washington, D.C. 20007
10  Telephone:  (202) 298-6500
Facsimile:   (202) 298-5599
11

12  Attorneys for Defendant
PAXFIRE, INC.
13

14                  UNITED STATES DISTRICT COURT

15        NORTHERN DISTRICT OF CALIFORNIA -SAN FRANCISCO DIVISION

16  BETSY FEIST,

17

18                     Plaintiff,

19      vs.

20  RCN CORPORATION and
PAXFIRE, INC.,

21

22                 Defendants.

23

24

25

26

27

28

| | |
|---|---|
| Misc. Case No. CV12-80119 IS (NC) | |

Underlying action pending in the United States District Court for the Southern District of New York, Case No. 11 CV 5436 JGK
      Related cases:
          3:12-cv-80135 SI (NC)
          3:12-cv-80121 SI (NC)
          3:12-cv-80140 SI (NC)

**DEFENDANT-COUNTERCLAIM PLAINTIFF PAXFIRE, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

Hon. Judge Susan Illston
Ctrm:   10, 19th Floor

Mag. Judge:  Hon. Nathanael Cousins
Ctrm:   A, 15th Floor

PAXFIRE'S MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE          Misc. Case No. CV12-80119 SI (NC)

1   PLEASE TAKE NOTICE THAT, pursuant to Local Rule 72-2, Fed. R. Civ. P. 72(a), and

2   28 U.S.C. §636(b)(1)(A), Paxfire, Inc. ("Paxfire"), the Defendant and Counterclaim Plaintiff in the

3   underlying case pending in the United States District Court for the Southern District of New York,

4   will and hereby does move this Court for relief from the Magistrate's Order Granting in Part and

5   Denying in Part Motions to Quash (Dkt. 20) (the "Order").  Paxfire  moves for relief from the

6   Order (1) that the nonparty movants are not required to produce documents or a privilege log until

7   60 days after the motion to dismiss Paxfire's counterclaims pending in the underlying case is

8   decided (Dkt. 20 at 15); (2) quashing Paxfire's deposition subpoena as to Peter Eckersley (Dkt. 20

9   at 10-11); and (3) quashing Paxfire's document subpoena as to documents generated by the

10  International Computer Science Institute's  ("ICSI") after July 24, 2011 (Dkt. 20 at 8-9).

11  **I.        STANDARD OF REVIEW**

12      A district court may reconsider a magistrate's order in a pretrial matter if that order is

13  "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Osband v. Woodford*, 290 F.3d

14  1036, 1041 (9th Cir. 2002).  A magistrate judge's factual findings are "clearly erroneous" when the

15  district court is left with the definite and firm conviction that a mistake has been committed.

16  *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).

17  **II.       PAXFIRE'S OBJECTIONS TO THE ORDER**

18      Paxfire submits the following objections to the Magistrate's Order:

19      *First,* the time allowed for production conflicts with the Scheduling Order entered by the

20  District Court in the Southern District of New York.  Here, the Magistrate Judge has allowed the

21  non-party Movants until sixty days after the District Court in New York rules upon Plaintiff-

22  Counterclaim Defendant Feist's Motion to Dismiss, which is now pending in that court, to

23  produce documents and to produce privilege logs.  Paxfire requests that this period be eliminated –

24  and the documents produced immediately – as it conflicts with the Scheduling Order entered by

25  the New York court, a copy of which is attached as Exhibit A to the Declaration of Andrew

26  Grosso ("Grosso Decl."), and will interfere with the proceedings in that court.

27      Fact discovery has closed in the New York case.  Oral argument on Plaintiff Feist's motion

28

- 1 -

PAXFIRE'S MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE                    Misc. Case No. CV12-80119 SI (NC)

**SER-166**

1  to dismiss is scheduled for September 18, 2012. Motions for summary judgment are due

2  November 14, 2012. Allowing sixty days before the production of documents and of privilege

3  logs will result in the needed discovery not being available until *after* the deadline for the

4  submission of motions for summary judgment, and in any event it gives no time to the parties in

5  the New York case to examine and understand the documents that will be produced so as to make

6  intelligent use of them in such motions. Here, two of the Movants, specifically the Electronic

7  Frontier Foundation ("EFF") and Peter Eckersley, have already produced a privilege log,

8  indicating that they have already examined and organized their documents; and the International

9  Computer Science Institute ("ICSI") and its three researchers should have produced such a log in

10  support of their motions to quash. There are no good grounds for conflicting with the Scheduling

11  Order of the New York court. *Cf., Johnson v. Mammoth Recreations*, 975 F.2d 604, 610 (9th Cir.

12  1992) (finding that disregard of a court's scheduling order undermines the court's control of its

13  docket). These Movants should be required to produce their documents immediately.

14      *Second,* contrary to the Magistrates Judge's ruling, Paxfire should be allowed to depose

15  Peter Eckersley on the topics discussed in his two declarations. Grosso Decl., Exs. B and C. The

16  first declaration was filed by Plaintiff Feist in the New York court; and the second was submitted

17  by Mr. Eckersley and EFF in the instant proceedings. By submitting these declarations, Mr.

18  Eckersley has waived any privileges they might have had as to the topics addressed therein. The

19  mere fact that Mr. Eckersley has been found by the Magistrate Judge to be an "informal

20  consultant," and to be under the expert consultant privilege in Fed. R. Civ. P. 26(b)(3), does not

21  allow such a consultant, or the party for which he is consultant, to abuse the protections of a

22  consulting arrangement so as to use it as both a sword and a shield. *United States v. Bilzerian*, 926

23  F.2d 1285, 1292 (2d Cir. 1991). Where a party raises a claim which in fairness requires disclosure

24  of the protected communication, the privilege may be implicitly waived. *Id.*

25      Here, Mr. Eckersley and Ms. Feist have disclosing Mr. Eckersley's testimony when it

26  suited them, while simultaneously hiding behind the consulting expert protections to avoid

27  allowing Paxfire to obtain and explore this testimony in a form and manner useable for trial in

28

PAXFIRE'S MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE          Misc. Case No. CV12-80119 SI (NC)

New York. This is not permissible. The testimony of Mr. Eckersley is material and necessary for the case in New York. It will assist Paxfire in establishing that the initial Complaint brought by Ms. Feist – admittedly at the instigation of EFF and Mr. Eckersley – was a sham. Such testimony is required by Paxfire to avoid Ms. Feist's defense raised in the case in New York to Paxfire's counterclaims under the *Noerr-Pennington* doctrine; as well as establishing the element of malice needed to prove Paxfire's claims of defamation brought in its counterclaims.

*Third,* contrary to the Order, Paxfire should be provided with all of ICSI's documents as called for in its subpoena. ICSI was never a consulting expert to Ms. Feist. Nowhere in its papers filed with this Court has it claimed to ever have been such a consultant. No privilege applies. The three researchers from ICSI identified by Ms. Feist as her consulting experts signed their own consulting agreements with Ms. Feist. There is no evidence in the record that they did so on behalf of or with the authorization of ICSI. As such, any protections afforded to the researchers do not cover ICSI. As explained in *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010):

> "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

Accordingly, ICSI's documents are not protected by an applicable work product privilege.

**III.     CONCLUSION**

For the forgoing reasons, Paxfire respectfully requests the Court grant its motion for relief from the Order of the Magistrate Judge Granting in Part and Denying in Part Motions to Quash.

Dated: August 27, 2012                         BERGESON, LLP

_____
                                              /s/
                                              Jaideep Venkatesan

Dated: August 27, 2012                         ANDREW GROSSO & ASSOCIATES

_____
                                              /s/
                                              Andrew Grosso, *pro hac vice*

                                              Attorneys for Defendant
                                              PAXFIRE, INC.

- 3 -

# Tab 12

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   JAMES M. CHADWICK, Cal. Bar No. 157114
3  TENAYA M. RODEWALD, Cal. Bar No. 248563
   379 Lytton Avenue
4  Palo Alto, California 94301-1479
   Telephone:    650.815.2600
5  Facsimile:    650.815.2601
   Email:        jchadwick@sheppardmullin.com
6                trodewald@sheppardmullin.com

7  Attorneys for Non-Parties, ELECTRONIC
   FRONTIER FOUNDATION and PETER
8  ECKERSLEY

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12
   BETSY FEIST,                          Case No. 12-mc-80135-SI (NC)
13                                           Related cases:
                Plaintiff,                   12-cv-80119 SI (NC)
14                                           12-cv-80121 SI (NC)
         v.                                  12-cv-80140 SI (NC)
15
   RCN CORP. and PAXFIRE, INC.,         **MOTION FOR *DE NOVO***
16                                       **DETERMINATION OF DISPOSITIVE**
                Defendants.              **MATTER REFERRED TO MAGISTRATE**
17                                       **JUDGE**

18                                       [Civil LR 72-3(a)]

19                                       Date:    October 19, 2012
                                         Time:    9:00 a.m.
20                                       Crtrm.:  10

21                                       The Hon. Susan Illston

22

23

24

25

26

27

28

SMRH:406618193.3                              MOTION FOR *DE NOVO* DETERMINATION OF
                                         DISPOSITIVE MATTER REFERRED TO MAGISTRATE

**TABLE OF CONTENTS**

Page

I.    THE COURT MUST REVIEW THE MAGISTRATE JUDGE'S ORDER *DE NOVO* ....... 2

    A.    EFF's Motion to Quash Is Dispositive and Must Be Determined *De Novo* ............. 2

    B.    Even If EFF's Motion Was Not Dispositive, It Would Have to Be Determined
        *De Novo* ........................................................................................................................ 3

II.   OBJECTIONS TO THE ORDER ........................................................................................ 4

    A.    The Magistrate Judge Failed to Address Whether EFF's First Amendment
        Rights Bar Enforcement of the Subpoenas, Which They Do, So the Decision
        Was Clearly Erroneous and Contrary to Law ............................................................ 4

    B.    The Magistrate Judge Failed to Address Whether the California Press Shield
        Law and First Amendment Protect Documents Ordered Produced ......................... 6

    C.    The Magistrate Judge Failed to Address Whether Protected Documents in
        Category 7 Must Be Produced ..................................................................................... 7

    D.    The Magistrate Judge Failed to Address Protection of Documents Under Rule
        26(b)(4)(D), which Precludes Discovery from Non-Retained Experts ..................... 7

    E.    The Magistrate Judge Erred in Holding that Work Product Protection
        Only Applies After a Client Formally Retains Counsel ............................................ 8

        1.    The Decision Is Not Supported by the Language of the Federal Rules,
            Nor Is It Compelled by Any Controlling Authority. ...................................... 8

        2.    The Order Is Contrary to Public Policy and Would Unconstitutionally
            Hamper Civil Rights, Consumer, Environmental and Other Advocacy
            Organizations ................................................................................................ 10

    F.    The Magistrate Judge Erred by Failing to Extend Confidential Research
        Protection to Category 4 and 7 Documents ............................................................. 12

    G.    The Magistrate Judge Erred by Failing to Sufficiently Address the
        Consequences of the Dismissal of Paxfire's Counterclaims ................................... 12

    H.    If Permitted to Stand, the Magistrate Judge's Order Would Have a Profound
        Negative Impact on EFF and Many Other Advocacy Organizations ..................... 13

    I.    The Magistrate Judge Erred in Apparently Concluding that Paxfire Documented the
        Relevance of Its Requests and Not Addressing the Undue Burden They Impose
        on EFF ......................................................................................................................... 14

-i-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

**TABLE OF CONTENTS**
(continued)

Page

III.     RESOLUTION OF THE MOTION TO QUASH SHOULD BE STAYED ........................ 14

IV.     CONCLUSION. ............................................................................................................. 15

-ii-

1

**TABLE OF AUTHORITIES**

2    CASES                                                                    Page(s)

3    *Adolph Coors Co. v. Wallace*
4        570 F.Supp. 202 (N.D. Cal. 1983) .................................................... 4, 6

5    *Ager v. Jane C. Stormont Hospital and Training School for Nurses*
         622 F.2d 496 (10th Cir. 1980) ............................................................ 8
6
7    *Bartlett v. Bowen*
         816 F.2d 695 (D.C. Cir. 1987) ............................................................ 5

8    *DeFazio v. Wallis*
9        459 F.Supp.2d 159 (E.D.N.Y. 2006) .................................................... 6

10   *Feist v. RCN Corporation and Paxfire, Inc.*
         No. 11-cv-5436, Dkt. 69 (S.D.N.Y. Aug. 8, 2012) .......................... 1, 2, 14
11
12   *Feist v. RCN Corporation and Paxfire, Inc.*
         No. 11-cv-5436, Dkt. 70 (S.D.N.Y. Aug. 16, 2012) .......................... 2, 14

13   *Grandbouche v. Clancy*
14       825 F.2d 146 (10th Cir. 1987) ........................................................ 5, 6

15   *Hickman v. Taylor*
         329 U.S. 495 (1974) ...................................................................... 10
16
17   *Ludwig v. Pilkington North America, Inc.*
         No. 03 C 1086, 2003 WL 22242224 (N.D. Ill. Sept. 29 2003) .................. 8

18   *Mattenson v. Baxter Healthcare Corp.*
19       438 F.3d 763 (7th Cir. 2006) ............................................................ 9

20   *Estate of Merchant v. CIR*
         947 F.2d 1390 (9th Cir.1991) ............................................................ 3
21
22   *N.L.R.B. v. Cable Car Advertisers, Inc.*
         319 F.Supp.2d 991 (N.D. Cal. 2004) .................................................. 3

23   *N.L.R.B. v. Frazier*
24       966 F.2d 812 (3rd. Cir. 1992) ............................................................ 3

25   *NAACP v. Button*
         371 U.S. 415 (1963) ...................................................................... 11
26
27   *Perry v. Schwarzenegger*
         268 F.R.D. 344 (N.D. Cal. 2010) ........................................................ 3

28

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Perry v. Schwarzenegger*
591 F.3d 1147 (9th Cir. 2010) ................................................................. 5, 6

*Perry v. Schwarzenegger*
No. 09-17241, Dkt. 24 (9th Cir. Nov. 27, 2009), at 4 ........................... 13

*PowerShare, Inc. v. Syntel, Inc.*
597 F.3d 10 (1st Cir. 2010) ......................................................................... 4

*In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31*
No. MISC 08–347, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010) ............. 3

*U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC*
268 F.R.D. 614 (N.D. Cal. 2010) ............................................................... 8

*United States v. McConney*
728 F.2d 1195 (9th Cir.1984) ..................................................................... 3

*USM Corp. v. American Aerosols, Inc.*
631 F.2d 420 (6th Cir. 1980) ...................................................................... 7

*Zwickler v. Koota*
389 U.S. 241 (1967) ..................................................................................... 5


**RULES AND STATUTES**

28 U.S.C.
§ 631(b)(1)(A) ....................................................................................... 3
§ 636(b)(1)(B) ....................................................................................... 3
§ 636(b)(1)(C) ....................................................................................... 3

Federal Rules of Civil Procedure
Rule 26(b)(3) ....................................................................... 8, 10, 11, 12
Rule 26(b)(3)(A) ................................................................................... 9
Rule 26(b)(4)(B) ................................................................................... 7
Rule 26(b)(4)(D) ......................................................................... 4, 7, 8
Rule 45 ................................................................................................... 5
Rule 45(c)(1) ....................................................................................... 14
Rule 45(c)(3)(A) .............................................................................. 5, 6
Rule 45(c)(3)(A)(IV) ......................................................................... 14
Rule 45(c)(3)(B) ................................................................................. 12
Rule 72(a) ............................................................................................... 3

-iv-

SMRH:406618193.3

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

Rule 72(b)................................................................................................. 3
Rule 72(b)............................................................................................. 3, 4
Rule 72(b)(3)........................................................................................... 3

4

5

Northern District Local Civil Rule 72-3 .................................................... 3

6

7

**OTHER AUTHORITIES**

8

8 Wright & Miller, Federal Practice and Procedure § 2024 (3d ed.) ...................................... 9, 10

9

Fed.R.Civ.P. 26 Advisory Committee Note to 2010 Revisions.................... 7

10

Fed.R.Civ.P. 26 Advisory Committee Note to 1970 Amendment.......................... 7, 8, 9

11

*Race, Class, and Legal Ethics in the Early NAACP (1910-1920)*, Susan D. Carle, 20 Law &
    Hist. Rev. 97, 100-01 (2002)................................................................... 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-v-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 19, 2012, at 9:00 a.m. in Courtroom 10, 19th Floor of this Court located at 450 Golden Gate Ave., San Francisco, CA, 94102, non-parties the Electronic Frontier Foundation and Peter Eckersley (collectively "EFF") will and hereby do object to Magistrate Judge Cousins' Order Granting in Part and Denying in Part Motions to Quash (No. 12-mc-80135-SI, Dkt. 30) and move for a *de novo* determination of their Motion to Quash Subpoenas Issued by Defendant Paxfire, Inc. and Request for Protective Order. (No. 12-mc-80135-SI, Dkt. 1.) If not quashed in their entirety, the subpoenas at issue will violate EFF's First Amendment rights of freedom of association, speech, and the press, the California Constitution and California statutory protections for the press, the Federal Rules of Civil Procedure, and the attorney-client privilege and work product protections of EFF and others. Magistrate Judge Cousins' Order fails to address most of these protections, including the applicable First Amendment privileges, and is therefore clearly erroneous and contrary to law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Electronic Frontier Foundation and Peter Eckersley (collectively "EFF") are nonparties in a federal customer class-action lawsuit in the Southern District of New York. The lawsuit alleges that defendant Paxfire, Inc. ("Paxfire" or "Defendant") and some defendant ISPs, wrongfully diverted certain of the ISP customers' internet searches away from Google, Yahoo! and Bing to Paxfire's own computers, and sometimes replaced the search results customers were supposed to receive with the webpages of Paxfire's paying customers. (*See* Request for Judicial Notice ("RFJN"), No. 12-mc-80135-SI, Dkt. 8, Ex. A (Complaint, *Feist v. RCN Corporation and Paxfire*, Inc., No. 11-cv-5436, Dkt. 1 (S.D.N.Y. Aug. 4, 2011)).) Through this Court, Paxfire issued document and deposition subpoena to EFF, which EFF moved to quash in their entirety. (Motion to Quash Subpoenas Issued by Defendant Paxfire, Inc. and Request for Protective Order, No. 12-mc-80135-SI, Dkt. 1 ("Motion").) EFF's Motion was consolidated with motions to quash by plaintiff Betsy Feist ("Plaintiff") and two other nonparties to whom Paxfire had issued subpoenas, and referred to Magistrate Judge Cousins. (Order Relating Cases, No. 12-mc-80135-SI, Dkt. 23) The Magistrate Judge granted in part and denied in part EFF's and the other nonparties' motions to

-1-

MOTION FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1  quash.  (Order Granting in Part and Denying in Part Motions to Quash, No. 12-mc-80135-SI, Dkt.

2  30 ("Order").)

3      EFF objects to the Order.  The Order inexplicably fails to address EFF's primary claim that

4  the subpoenas issued to them must be quashed because they violate EFF's First Amendment rights

5  of association, speech, petitioning and press.  The Order also fails to address several other grounds

6  for quashing the subpoenas in whole or in part, and overlooks one category of documents entirely.

7  Proper consideration and application of the constitutional, statutory, and procedural protections

8  asserted requires that the subpoenas be quashed in their entirety.

9      However, this Court may not need to address all of these concerns, and EFF submits that a

10  temporary stay may help clarify and simplify matters. The New York court is currently considering

11  a motion to dismiss defendant Paxfire's counterclaims in the underlying lawsuit.  (*See* Notice of

12  Oral Argument, *Feist v. RCN Corporation and Paxfire, Inc.*, No. 11-cv-5436, Dkt. 69 (S.D.N.Y.

13  Aug. 8, 2012); Adjornment of Hearing to September 18, 2012, *Feist v. RCN Corporation and*

14  *Paxfire, Inc.*, No. 11-cv-5436, Dkt. 70 (S.D.N.Y. Aug. 16, 2012); Reply Memorandum in Further

15  Support of Betsy Feist's Motion to Quash Subpoenas to Consultants, No. 12-mc-80121, Dkt. 20

16  (N.D. Cal.), at 1, n.1.; RFJN, Ex. D.)  Since Paxfire's primary justification for its subpoenas lies in

17  its counterclaims—*i.e.*, that EFF somehow unlawfully instigated the litigation against it by

18  informing Plaintiffs' counsel about Paxfire's behavior—dismissal of the counterclaim may narrow

19  or eliminate Paxfire's asserted basis for its discovery.

20      The Magistrate declined to hold a hearing before issuing the Order.  However, the motion to

21  quash raises issues of profound importance to EFF and Mr. Eckersley, in this case and beyond.

22  Accordingly, EFF requests that the Court conduct a hearing so that it can ensure that a final

23  determination of its motion considers its most central concerns, including the violation of its

24  constitutional rights by compelled disclosure of materials ordered to be produced.

25  **I.    THE COURT MUST REVIEW THE MAGISTRATE JUDGE'S ORDER *DE NOVO***

26  **A.    EFF's Motion to Quash Is Dispositive and Must Be Determined *De Novo***

27      Nonparties EFF and Peter Eckersley were subpoenaed through this Court in connection with

28  a lawsuit in the Southern District of New York.  "[M]otions to quash a subpoena brought in a

-2-

1    proceeding before a court other than the one determining the action are typically treated as

2    dispositive matters under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)." *In*

3    *re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31*, No.

4    MISC 08–347, 2010 WL 2219343, *1 (E.D.N.Y. Feb. 5, 2010) (collecting cases). "[A] petition to

5    quash is analogous to a dispositive motion to dismiss because it is not ancillary to a larger

6    proceeding but is the entire proceeding itself." *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319

7    F.Supp.2d 991, 995-6 (N.D. Cal. 2004) (holding motion to quash investigative subpoena was

8    dispositive). A decision on a motion to quash or enforce a subpoena "determines with finality the

9    duties of the parties" and "seals with finality the district court proceeding and is subject to appellate

10   review." *N.L.R.B. v. Frazier*, 966 F.2d 812, 817-18 (3rd. Cir. 1992) (magistrate's decision on

11   motion to enforce administrative subpoena is dispositive and must be reviewed *de novo*).

12        EFF's Motion is a special proceeding that is not ancillary to any other proceeding in this

13   Court. *Frazier*, 966 F.2d at 818. Neither EFF nor Mr. Eckersley are parties to the New York action.

14   Therefore, the Court's decision on EFF's Motion to Quash is dispositive because "[w]hen this

15   motion is decided, the case will effectively be over." *Cable Car Advertisers,* 319 F.Supp.2d at 995-

16   6. *Accord*, *Frazier*, 966 F.2d at 818.

17        Because, EFF's Motion is dispositive the Court "must determine *de novo* any part of the

18   magistrate judge's disposition that has been properly objected to." 28 U.S.C. § 631(b)(1)(C); FRCP

19   72(b)(3). In addition, the procedures set forth in Local Civil Rule 72-3, Rule 72(b) and 28 U.S.C. §

20   636(b)(1)(C) apply.

21   **B.      Even If EFF's Motion Was Not Dispositive, It Would Have to Be Determined *De Novo***

22        A magistrate judge's non-dispositive order may be modified or set aside if it is "clearly

23   erroneous or contrary to law." FRCP 72(a); 28 U.S.C. § 631(b)(1)(A). While a magistrate judge's

24   factual determinations are reviewed for clear error, "[t]he magistrate's legal conclusions are

25   reviewed *de novo* to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268

26   F.R.D. 344 (N.D. Cal. 2010) (citing *United States v. McConney*, 728 F.2d 1195, 1200-1201 (9th

27   Cir.1984) (overruled on other grounds by *Estate of Merchant v. CIR*, 947 F.2d 1390 (9th

28   Cir.1991))). "[F]or questions of law, there is no practical difference between review under Rule

-3-

SMRH:406618193.3

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1  72(a)'s 'contrary to law' standard and review under Rule 72(b)'s *de novo* standard." *PowerShare,*

2  *Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

3        Moreover, the Constitution requires that "personal rights and liberties originating from the

4  Constitution are provided an Article III adjudication." *Adolph Coors Co. v. Wallace*, 570 F.Supp.

5  202, 206 (N.D. Cal. 1983). "A magistrate's determination of the plaintiffs' right to civil discovery,

6  notwithstanding a defendant's claim to various First Amendment rights, necessarily involves an

7  adjudication of those Constitutional, rather than legislative, rights." *Id*. Therefore, "[t]o discharge

8  [its] responsibility as an Article III court under these circumstances, it is necessary that [the Court]"

9  apply *de novo* review. *Id*.

10        The Magistrate Judge failed to address most of EFF's arguments, including the dispositive

11  First Amendment protections, assertion of California and First Amendment press privileges,

12  assertion of Rule 26(b)(4)(D) protection for documents, and claims of privilege for Category 7

13  documents. The Magistrate Judge also erred in holding that work product protection only applies

14  after a client formally retains counsel. EFF has objected, and these questions of law now must be

15  determined *de novo*.[1]

16  **II.    OBJECTIONS TO THE ORDER**

17  **A.    The Magistrate Judge Failed to Address Whether EFF's First Amendment Rights Bar
            Enforcement of the Subpoenas, Which They Do, So the Decision Was Clearly
18          Erroneous and Contrary to Law**

19        The primary basis for EFF's Motion is that Paxfire's subpoenas violate its First Amendment

20  rights to associate, speak, advocate and publish, and therefore must be quashed in their entirety.[2]

21  (*See* Motion at 1-15; Reply in Support of Non-Parties Electronic Frontier Foundation and Peter

22  Eckersley to Quash Subpoenas Issued by Defendant Paxfire, Inc. and Request for Protective Order

23  ("Reply"), No. 12-mc-80135-SI, Dkt. 26, at 1-4.) Moreover, EFF provided evidence more than

24  sufficient to support a *prima facie* showing that Paxfire's subpoenas will infringe their First

---

25  [1]   In addition, as a practical matter, EFF's First Amendment grounds for quashing the subpoenas
26  must be determined *de novo*, because the Magistrate Judge made no decision for this Court to
        review.

27  [2]   Indeed, EFF's Motion refers to the First Amendment 67 times, and EFF's Reply mentions the
        First Amendment 49 times. (*See* Motion, Dkt. 1, Reply, Dkt. 26.) The Magistrate Judge's Order
28  does not even mention the First Amendment. (*See* Order, Dkt. 30.)

-4-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1  Amendment rights.  (*See* Motion at 10-14; Declaration of Cindy Cohn, Dkt. 3; Declaration of

2  Arvind Narayanan, Dkt. 2; Declaration of Jesse Burns, Dkt. 4; Declaration of Nicholas Weaver, Dkt.

3  5; Declaration of Peter Eckersley, Dkt. 6.)  The Magistrate Judge neither addressed nor decided

4  EFF's claim that the First Amendment requires quashing Paxfire's subpoenas in their entirety.  This

5  was a clear error and contrary to law.

6      The Court has a duty to protect EFF's asserted constitutional rights.  "[W]herever the

7  Federal courts sit, human rights under the Federal Constitution are always a proper subject for

8  adjudication, and [federal courts] have not the right to decline the exercise of that jurisdiction."

9  *Zwickler v. Koota*, 389 U.S. 241 (1967) (holding that federal courts may not abstain from hearing

10  constitutional challenges simply because state courts may have concurrent jurisdiction to hear them).

11  *See also Bartlett v. Bowen*, 816 F.2d 695, 704-7 (D.C. Cir. 1987) (the Constitution provides a due

12  process right to have the scope of constitutional rights determined by an independent judicial body).

13  The Court may not order discovery that is alleged to violate petitioners' Constitutional rights, as the

14  Magistrate Judge has done, without first determining that the discovery would not violate the

15  asserted rights.  Thus, the Court must rule on EFF's Frist Amendment privilege claims.

16      "A party who objects to a discovery request as an infringement of the party's First

17  Amendment rights is in essence asserting a First Amendment privilege."  *Perry v. Schwarzenegger*,

18  591 F.3d 1147, 1160 (9th Cir. 2010) (outlining "two-part framework" for assessing First

19  Amendment privilege claims).  Rule 45 mandates that a Court "***must*** quash or modify a subpoena

20  that… requires disclosure of privileged or other protected matter, if no exception or waiver applies."

21  FRCP 45(c)(3)(A) (emphasis added).  Thus, the Court ***must*** determine whether EFF's asserted First

22  Amendment privilege bars Paxfire's discovery.

23      "[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose

24  certain information, the trial court ***must*** [apply the appropriate] test before ordering disclosure," so

25  the failure to consider the merits of a First Amendment privilege claim is reversible error.

26  *Grandbouche v. Clancy*, 825 F.2d 146, 163 (10th Cir. 1987) (emphasis added).[3]  *See also Perry*, 591

27

28  [3]  A "magistrate's order compelling discovery and the trial court's enforcement of that order provide

-5-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1   F.3d at 1164 (holding that once the subject makes a prima facie showing of infringement of the First

2   Amendment, the court "must apply the First Amendment's more demanding heightened relevance

3   standard."). As this Court has held:

4   
5   > A good-faith interjection of First Amendment privilege to a discovery request []
   > ***mandates*** a comprehensive balancing of the [party's] need for the information sought
   > against the [non-party's] constitutional interests in claiming the privilege. This
   > balancing is of paramount importance, not only in achieving the correct result as
6   > between these parties, but also in vindicating the constitutional values which underlie
   > this controversy for all those involved.
7   

8   *Adolph Coors*, 570 F.Supp. at 205 (emphasis added) (vacating magistrate's order that failed to

9   adequately address the defendant's First Amendment privilege claims).

10          A court "may overturn any [of the magistrate's] conclusions of law which contradict or

11  ignore applicable precepts of law, as found in the Constitution, statutes or case precedent." *Adolph*

12  *Coors*, 570 F.Supp. at 205. "An order is contrary to law 'when it ***fails to apply*** or misapplies

13  relevant statutes, case law, or rules of procedure.'" *DeFazio v. Wallis*, 459 F.Supp.2d 159 (E.D.N.Y.

14  2006) (citation omitted, emphasis added).

15          Here, the Constitution and the Federal Rules of Civil Procedure mandate that the Court

16  address EFF's assertion of their First Amendment privilege, applying the test articulated in *Perry*.

17  FRCP 45(c)(3)(A); *Perry*, 591 F.3d at 1161-62, 1164. Instead, the Magistrate Judge disregarded the

18  Constitutional, case and statutory law supporting EFF's protections under the First Amendment.

19  The authority and evidence submitted by EFF amply demonstrates the application of the First

20  Amendment privilege. The Magistrate Judge's Order is therefore clearly erroneous and contrary to

21  law.

22  **B.      The Magistrate Judge Failed to Address Whether the California Press Shield Law and
             First Amendment Protect Documents Ordered Produced**
23

24          EFF asserts that the subpoenas violate the California state law and First Amendment

25  protections for confidential sources and unpublished information sought from the press, and must be

26  quashed in substantial part for this reason as well. (*See* Motion at 15-21; Reply at 4-10.) The

27  _____

28  the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche*, 825 F.2d
    at 163.

SMRH:406618193.3                                    MOTION FOR *DE NOVO* DETERMINATION OF
                                                    DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1   Magistrate Judge failed to address these arguments.  Instead, the Magistrate Judge ordered

2   production of documents in Category 4 (and failed to protect documents in Category 7), even though

3   these documents, as well as those in Categories 5 and 6, are protected under California law and the

4   First Amendment.  The Magistrate's Order is thus clearly erroneous and contrary to law.[4]

5   **C.      The Magistrate Judge Failed to Address Whether Protected Documents in Category 7**
6           **Must Be Produced**

7           In addition to the categories of documents addressed in the Order, the subpoenas to EFF

8   demand a seventh category of documents containing all communications with Google, Microsoft, or

9   Yahoo pertaining to Paxfire.  (Declaration of Tenaya Rodewald, Dkt. No. 7, Ex. A, B.)  These

10  documents are protected by the First Amendment right of association and the California press shield

11  law and First Amendment.  (Motion at 8-21; Reply at 1-10.)  The Magistrate Judge failed to address

12  this category of documents.  It was clear error and contrary to law not to address the asserted

13  privileges and not to hold these documents protected.

14  **D.      The Magistrate Judge Failed to Address Protection of Documents Under Rule**
15          **26(b)(4)(D), which Precludes Discovery from Non-Retained Experts**

16          There is no dispute that EFF was "informally consulted in preparation for trial, but not

17  retained or specially employed" in connection with the underlying action.  *USM Corp. v. American*

18  *Aerosols, Inc.*, 631 F.2d 420, 425 (6th Cir. 1980); Order at 5 (explaining that EFF "provided advice

19  and informal consulting to [plaintiff] concerning the issues in the [underlying] litigation, but they

20  were not retained as paid consultants.").  As the Magistrate Judge noted, Rule 26(b)(4)(D)

21  "***precludes discovery*** against experts who were informally consulted in preparation for trial, but not

22  retained or specially employed."  (Order at 11 (quoting Fed.R.Civ.P. 26 Committee Note to 1970

23  Amendment, subsection (b)(4)(B)[5] (emphasis added)).  The Magistrate Judge correctly held that

24  this Rule bars deposition discovery from EFF.  (Order at 11.)  *See also USM Corp.*, 631 F.2d at 425

---

25  [4]  The Magistrate Judge did not address EFF's press shield arguments and thus did not rule on what
26  law would apply to EFF.  As EFF demonstrates, California law and the First Amendment supply the
    applicable privileges.  Motion at 15-17; Reply at 9-10.  EFF therefore objects to the Magistrate
27  Judge's holding to the extent it might be read as applying New York state law to EFF.
    [5]  Rule 26(b)(4)(B) was renumbered as Rule 26(b)(4)(D).  *Id.*, Advisory Committee Note to 2010
28  Revisions.

-7-

MOTION FOR *DE NOVO* DETERMINATION OF
                                                DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1  (Federal Rule of Civil Procedure 26(b)(4)(D) "precludes discovery" against such experts); *Ager v.*

2  *Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 502 (10th Cir. 1980);

3  Motion at 21-22; Reply at 10-11.[6]  However, the Magistrate Judge inexplicably failed to apply the

4  rule to ***documents*** sought by Paxfire.  "Rule 26(b)(4)([D]) applies with equal force to protect

5  documents sought from non-testifying experts."  *U.S. Inspection Services, Inc. v. NL Engineered*

6  *Solutions, LLC*, 268 F.R.D. 614, 617 n. 3 (N.D. Cal. 2010) (citing cases); Notice of Motion and

7  Motion of Betsy Feist to Quash Subpoenas to Consultants and Request for Protective Order, No. 12-

8  mc-80121, Dkt. 1 (N.D. Cal.), at 5, n. 3.  The Magistrate Judge's failure to apply Rule 26(b)(4)(D)

9  to documents sought by Paxfire is clearly erroneous and contrary to law.  The Court should hold that

10  Rule 26(b)(4)(D) protects from discovery those documents described in EFF's papers (and noted in

11  EFF's privilege log) as protected.

12  **E.     The Magistrate Judge Erred in Holding that Work Product Protection Only Applies
         After a Client Formally Retains Counsel**

13
               **1.     The Decision Is Not Supported by the Language of the Federal Rules, Nor Is It
                      Compelled by Any Controlling Authority.**
14

15          The Magistrate Judge improperly ordered documents in Categories 1-4 produced on the basis

16  that that the work product protection only applies after July 24, 2011, when Plaintiff Feist first

17  consulted with her counsel.  (Order at 7.)  The Magistrate Judge's decision is based entirely on his

18  holding that use of the terms "party or its representative" in Rule 26(b)(3) "suggests that the work-

19  product doctrine applies only after a party has become involved in a matter."  (Order at 7.)  The

20  Magistrate cites no authority to support this interpretation, and it is contrary to the authority cited by

21  EFF and Plaintiff's counsel.  (Reply at 10-11; Reply Memorandum in Further Support of Betsy

22

23

---

24  [6]  The protections afforded by Rule 26(b)(4)(D) ***are not the same*** as those provided by the work
    product doctrine.  *U.S. Inspection Services,* 268 F.R.D. at 625 n. 18 (collecting cases and explaining

25  that "the drafters of the Rule 'reject[ed] as ill-considered [court] decisions which have sought to
    bring expert information within the work-product doctrine.'" (citing Fed.R.Civ.P. 26 Advisory

26  Committee's Note to Subdivision (b)(4), 1970 Amendments)).  Thus in addressing the work product
    doctrine, the Magistrate Judge did ***not*** discharge his obligation to address the protection afforded by

27  Rule 26(b)(4)(D).  Moreover, "[c]ourts do not require that a lawsuit has actually been filed at the
    time the expert was retained."  *Ludwig v. Pilkington North America, Inc.*, No. 03 C 1086, 2003 WL

28  22242224, *3 (N.D. Ill. Sept. 29 2003).

-8-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1  Feist's Motion to Quash Subpoenas to Consultants and Request for Protective Order, No. 12-mc-

2  80121-SI, Dkt. 20, at 4-6.)

3        Moreover, the Magistrate Judge's Order appends to Rule 26 an added restriction found

4  nowhere in the Rule's language.  The Magistrate Judge requires that to be protected a document

5  must be both "prepared in anticipation of litigation or for trial" and ***also*** have been created after

6  there was a "party… involved in a matter."  (Order at 7.)  There is no justification for imposing this

7  added requirement.  First, the Rule clearly states that protected documents include those prepared

8  "by or for another party ***or its representative.***"  FRCP 26(b)(3)(A).  Documents prepared in

9  anticipation of litigation by a person who becomes a representative clearly fall within the plain

10  language of the Rule even if they were prepared before a client formally engaged counsel.[7]

11        Second, the Magistrate's interpretation appears to contradict the Rule's use of the words "in

12  anticipation of litigation," which are clearly meant to describe a period ***before*** litigation has

13  commenced, when—by definition—there are no "parties."  *See e.g., Mattenson v. Baxter Healthcare*

14  *Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) ("provided the prospect of litigation was not remote (and it

15  was not), the fact that the case hadn't begun and might never be brought did not disqualify [an

16  attorney's] jottings from the shelter of the work-product doctrine"); 8 Wright & Miller, Federal

17  Practice and Procedure § 2024 (3d ed.) ("Prudent parties anticipate litigation, and begin preparation

18  prior to the time suit is formally commenced" and thus the proper test is whether "in light of the

19  nature of the document[s] and the factual situation in the particular case, the document[s] can fairly

20  be said to have been prepared or obtained because of the prospect of litigation.")  Indeed, the

21  Magistrate's holding makes the distinction between documents prepared "in anticipation of

22  litigation" and those prepared "for trial" almost meaningless.  Had the drafters intended the

23  Magistrate's interpretation, they could have easily required that protected documents be prepared

24  after the attorney-client relationship commences, but they did not do so.

25

26

27  ─────────────────
[7]  *See, e.g.*, 8 Wright & Miller, Federal Practice and Procedure § 2024 (3d ed.) ("[I]t is clear that all documents and tangible things prepared by or for the attorney of the party from whom discovery is
28  sought are within the qualified immunity given to work product.")

-9-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1      Third, the work product doctrine is based in large part on the rationale that to be effective, an

2  attorney must be "free from unnecessary intrusion by opposing parties and their counsel" so that he

3  or she may "assemble information, sift what he [or she] considers to be the relevant from the

4  irrelevant facts, prepare his legal theories and plan his strategy without undue and needless

5  interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1974). This rationale applies equally to all

6  documents prepared in anticipation of litigation whether or not a specific client has yet been

7  identified.

8      The Magistrate Judge's holding imposes an additional requirement for the application of

9  work product protection now supported by the language or policy of Rule 26(b)(3). It is therefore

10  clearly erroneous and contrary to law.

11        **2.    The Order Is Contrary to Public Policy and Would Unconstitutionally Hamper**

12               **Civil Rights, Consumer, Environmental and Other Advocacy Organizations**

13      The Magistrate Judge's decision undermines public policy, because it will discourage

14  attorneys from investigating the basis for potential claims and lawsuits before filing them, for fear

15  sensitive work product would be subject to discovery during litigation. *See* 8 Wright & Miller,

16  Federal Practice and Procedure § 2024 (3d ed.) ("Prudent parties anticipate litigation, and begin

17  preparation prior to the time suit is formally commenced"); Reply Memorandum in Further Support

18  of Betsy Feist's Motion to Quash Subpoenas to Consultants, No. 12-mc-80121, Dkt. 20 (N.D. Cal.),

19  at 4. The Magistrate Judge identifies no compensating advantages to justify his interpretation.

20      In addition, the Order disregards the realities of consumer protection, environmental

21  protection, privacy protection and other advocacy litigation. In such cases, the work needed to

22  uncover problems or prepare the groundwork for litigation typically predates the identification of

23  specific victims. In the instance of toxic tort and other environmental litigation, for instance, the

24  scientific and legal work to discover a potential legal problem may long predate the identification of

25  those injured. The same is true of privacy and other technology litigation where the investigation

26  into the causes and details of a data intrusion or leak, for instance, may necessarily have to come

27  before anyone can even identify the possible plaintiffs.

28      "Test case" impact litigation often has similar needs. As one scholar explains, "[t]he key to

-10-

SMRH:406618193.3

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1   the NAACP's litigation success was its use of 'test cases,' the strategy by which an organization

2   seeks to find or, if necessary, to create, a legal controversy to establish a point of law as precedent in

3   future cases." *Race, Class, and Legal Ethics in the Early NAACP (1910-1920)*, Susan D. Carle, 20

4   Law & Hist. Rev. 97, 100-01 (2002).  The Supreme Court held that the First Amendment protects

5   precisely these types of litigation strategies.  "In the context of NAACP objectives, litigation is not a

6   technique of resolving private differences; it is a means for achieving the lawful objectives of

7   equality of treatment by all." *NAACP v. Button*, 371 U.S. 415, 429 (1963).  "It is thus a form of

8   political expression." *Id.*; *id.* at 436 (holding unconstitutional a ban on legal solicitation because it

9   "broadly curtail[ed] group activity leading to litigation").

10        The Magistrate Judge's decision would impair the ability of advocacy groups like EFF to

11   engage in the use of "test cases" and other impact litigation strategies, as well as litigation over data

12   disclosure and other technical problems where investigation necessarily pre-dates identification of

13   the victims, by exposing all of their pre-filing communications to discovery by opponents or other

14   litigants.  EFF and other advocacy groups often have to investigate potential claims before they are

15   able to determine whether they will bring claims in their own name, act as attorneys for third parties,

16   serve as amicus or refer claims to outside counsel.  (Motion at 2-5, 13; Declaration of Cindy Cohn,

17   Dkt. 3, ¶¶ 2, 3, 6, 8, 13-19.)  They also do factual investigation that involves discussions with others

18   who may be doing similar research or have necessary expertise, which would not occur absent

19   protection.  (Motion at 11-13; Declaration of Arvind Narayanan, Dkt. 2; Declaration of Jesse Burns,

20   Dkt. 4.)  It would make much of the work of EFF and other advocacy organizations—indeed, any

21   attorneys doing litigation in which the factual and legal investigation predates identification of

22   victims—difficult or impossible if they could not conduct such investigations without making them

23   subject to disclosure to adversaries.  The knowledge that the results of these efforts would have to be

24   disclosed to anyone who asserted that they were relevant to the defense of a claim would

25   unquestionably compromise or deter all together such efforts.

26        In sum, the Magistrate Judge's holding that work product protection only applies after a

27   client formally retains counsel contravenes the language of Rule 26(b)(3) and the caselaw construing

28   it.  In addition, it is constitutionally dubious because it would impair the ability of many different

-11-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1   advocacy organizations to associate for and engage in strategic litigation—activities that are

2   protected by the First Amendment.  It also unnecessarily exposes the ordinary and necessary

3   investigation that attorneys do (and should do) in a wide array of cases.  The holding is clearly

4   erroneous and contrary to law.  The Court should hold that all documents in Categories 1-4 prepared

5   in anticipation of litigation or for trial are protected under Rule 26(b)(3).

6   **F.      The Magistrate Judge Erred by Failing to Extend Confidential Research Protection to
7            Category 4 and 7 Documents**

8            The Magistrate Judge correctly held that documents in Categories (5) and (6), namely

9   articles and drafts of articles authored by the subpoenaed nonparties, as well as all research results

10  obtained by the subpoenaed nonparties, are protected confidential research under Rule 45(c)(3)(B).

11  As discussed above, these documents are also protected under the California and First Amendment

12  protections for the press.  In addition, however, there are numerous communications in Categories 4

13  and 7 that constitute the nonparties' confidential research data and information from sources, and

14  that contain confidential discussions of the Category 5 and 6 articles, drafts of articles and research

15  results.  The Magistrate Judge clearly erred in not extending protection to these Category 4 and 7

16  documents.

17  **G.      The Magistrate Judge Erred by Failing to Sufficiently Address the Consequences of the
18           Dismissal of Paxfire's Counterclaims**

19           Although Paxfire apparently disputes it, it is apparent that most of the documents and

20  information sought from EFF and the other nonparties are relevant (if at all) only to Paxfire's

21  counterclaims.  The Order appears to hold that some documents otherwise subject to disclosure will

22  not have to be produced if Paxfire's counterclaims are dismissed, because they are relevant only to

23  those counterclaims.  Order at 9-10 ("some of the documents are relevant to Paxfire's counterclaims

24  only").  The same holding suggests that some other documents are relevant to more than just the

25  counterclaims and therefore must be produced no matter what the outcome of the motion to dismiss.

26  However, the Order provides no guidance with respect to which documents are relevant only to the

27  counterclaims and hence would not be subject to disclosure if those counterclaims are dismissed.

28

-12-

SMRH:406618193.3

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1    If Paxfire's counterclaims are dismissed (and if the subpoenas are not quashed entirely), the

2  Court should find that, to the extent not exempt from discovery on other grounds, the following

3  categories of documents need not be produced:  (a) documents in Categories 1-4 relating any prior

4  litigation; (b) documents in Categories 1-4 not directly relating to the underlying facts alleged in the

5  complaint; (c) to the extent not exempted from discovery by the Magistrate Judge's Order or a

6  decision by this Court, documents in Categories 5 and 6 not directly relating to the underlying facts

7  alleged in the complaint; and (d) documents in Category 7, since the only alleged relevance for these

8  documents is to support Paxfire's alleged counterclaim (or other potential litigation against Google,

9  Inc.).  *See* Declaration of Tenaya Rodewald, Dkt. 7, ¶ 5.

10 **H.    If Permitted to Stand, the Magistrate Judge's Order Would Have a Profound Negative
       Impact on EFF and Many Other Advocacy Organizations**
11

12    By ignoring EFF's First Amendment rights of association and speech, the Magistrate Judge's

13 Order makes EFF and a wide variety of advocacy organizations targets in almost any litigation in

14 which one of the parties is unhappy with an organization's position or wishes to silence the

15 organization. Here EFF is a non-party, and yet Paxfire is using invasive discovery to retaliate

16 against EFF for uncovering and publicizing Paxfire's conduct.  As an advocacy organization, EFF

17 takes positions and participates in a wide variety of political, legislative and legal activities—as do

18 the NAACP, the ACLU, the Sierra Club, and others.  It would severely hamper the work of EFF,

19 and all similar groups and organizations, if they were subject to intrusive discovery in any litigation

20 in which one of the parties might gain an advantage by silencing or discrediting the group or its

21 work.  *See, e.g.*, Amicus Letter of ACLU, *Perry v. Schwarzenegger*, No. 09-17241, Dkt. 24 (9th Cir.

22 Nov. 27, 2009), at 4 (explaining that applying First Amendment protections in the discovery context

23 is necessary to "ensure[] that people are able to come together for a common political purpose

24 without fear that their internal discussions will become public at the drop of a lawsuit.").  The

25 Magistrate's Order should be overturned.

26

27

28

-13-

**SER-187**

**I.     The Magistrate Judge Erred in Apparently Concluding that Paxfire Demonstrated the Relevance of Its Requests and Not Addressing the Undue Burden They Impose on EFF**

Paxfire failed to explain how the vast majority of the information it seeks is relevant to or necessary for the underlying lawsuit.  (Motion at 21, 23-25; Reply at 11-13.)  Paxfire makes vague claims, but fails to explain specifically how they are relevant or why EFF might be expected to have any information not readily available from other sources.  *Id*.  Furthermore, the burden of Paxfire's requests clearly outweighs any possible benefit.  (Motion at 23-25.)  In particular, it bears emphasis that Paxfire is seeking information from non-parties about its ***own*** technology and conduct, matters regarding which it obviously has greater knowledge than EFF and the other non-parties.  (Reply at 12-13; Reply Memorandum in Further Support of Betsy Feist's Motion to Quash Subpoenas to Consultants, No. 12-mc-80121, Dkt. 20 (N.D. Cal.), at 9-10.)  Yet, without discussion, the Magistrate Judge apparently concluded that Paxfire had adequately explained the relevance of ***all*** of its requests and had justified the burden of its requests under Rule 45(c)(1) and (c)(3)(A)(IV).  This holding is clearly erroneous and contrary to law.  Paxfire's subpoenas should be quashed because they seek irrelevant information that can or should be obtained from Plaintiff, the other defendants, or from Paxfire itself, and that impose an unreasonable burden on EFF.

**III.     RESOLUTION OF THE MOTION TO QUASH SHOULD BE STAYED**

Paxfire's subpoenas purport to investigate its counterclaims, which allege that it was an actionable wrong and a "conspiracy" for EFF to "[i]nduce a third party individual to bring a class action lawsuit against Paxfire."  (Request for Judicial Notice, No. 12-mc-80135, Dkt. 8 ("RFJN"); Ex. B (Paxfire Counterclaims, ¶ 41(d)).)  Paxfire already revised these counterclaims to avoid one motion to dismiss and motion for sanctions, and they are now the subject of another, pending motion to dismiss.  (Reply Memorandum in Further Support of Betsy Feist's Motion to Quash Subpoenas to Consultants, No. 12-mc-80121, Dkt. 20 at 1 n.1.; RFJN, Ex. D.)  That motion to dismiss is fully briefed and is apparently set for hearing on September 18, 2012.  (*See* Notice of Oral Argument, *Feist v. RCN Corporation and Paxfire, Inc.*, No. 11-cv-5436, Dkt. 69 (S.D.N.Y. Aug. 8, 2012); Adjornment of Hearing to September 18, 2012, *Feist v. RCN Corporation and Paxfire, Inc.*, No. 11-cv-5436, Dkt. 70 (S.D.N.Y. Aug. 16, 2012).)  If the motion is granted, it will eliminate or greatly

-14-

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

1   narrow any alleged basis for discovery from EFF, and hence reduce the issues before this Court.

2   Therefore, EFF requests the Court stay the determination of this Motion pending a decision by the

3   Southern District of New York on Plaintiff's motion to dismiss Paxfire's counterclaims.

4   **IV.    CONCLUSION.**

5            For the reasons stated above and in EFF's Motion, EFF respectfully requests that, after a

6   hearing, the Court make a *de novo* determination of EFF's Motion to Quash Subpoenas Issued by

7   Defendant Paxfire, Inc. and Request for Protective Order.  (Motion, No. 12-mc-80135, Dkt. 1.)

8   Further, EFF respectfully requests the Court quash Paxfire's subpoenas in their entirety or issue a

9   protective order prohibiting discovery of any privileged or protected information described in EFF's

10  Motion to Quash and Reply.  Alternatively, EFF respectfully requests the Court stay enforcement of

11  the subpoenas and stay a determination of this Motion and its Motion to Quash pending a ruling on

12  Plaintiff's motion to dismiss Paxfire's counterclaims.

13

14  Dated:  Aug. 27, 2012              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                                       By      */s/  Tenaya Rodewald*
15                                     _____
                                            TENAYA M. RODEWALD
16                                          Attorneys for Non-parties
                                       ELECTRONIC FRONTIER FOUNDATION and
17                                               PETER ECKERSLEY

18

19

20

21

22

23

24

25

26

27

28

-15-

SMRH:406618193.3

MOTION FOR *DE NOVO* DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE

# Tab 13

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In the Matter of:               :

                                 :

                                 :    **Chapter 11**

**PAXFIRE, INC.,**           :

                                 :    **Case No. <u>12-17341-RGM</u>**

        **Debtor.**           :

### 1st AMENDED PLAN OF REORGANIZATION OF PAXFIRE, INC.

## INTRODUCTION

      The Debtor, Paxfire, Inc. ("Debtor" or "Paxfire"), proposes the following 1st Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Plan provides for the liquidation and realization of the Debtor's remaining assets and property, and for the repayment of claims and interests as identified herein and in accordance with the priorities of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

      1.1    *Scope of Definitions.*

      For purposes of this Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.

      1.2    *Definitions.*

      "<u>Administrative Bar Date</u>" means the date that is ninety days after the Effective Date.

      "<u>Administrative Expense Claim</u>" means a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs

1

and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating the business of the Debtor, including any wages, salaries, or commissions for services rendered after the Petition of the Chapter 11 Case, Professional Claims, Claims arising under § 365(g)(2)(A) or § 503(b)(3) of the Bankruptcy Code, all fees and charges assessed against the Debtor's Estate under chapter 123 of title 28, United States Code, and Administrative Tax Claims.

"Administrative Tax Claim" means a Claim by a governmental unit with respect to a tax or duty incurred after the Petition Date that is entitled to be paid as an administrative expense pursuant to § 507(a)(8) of the Bankruptcy Code.

"Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court, (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is Scheduled, other than a Claim that is Scheduled at zero or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan.

"Allowed ... Claim" means an Allowed Claim of the type described.

"Assets" means all assets of the Debtor or this bankruptcy Estate.

"Ballot" means each of the ballot forms that are distributed with the Disclosure Statement(s) to holders of Claims in Classes that are Impaired under the Plan and entitled to vote in connection with the solicitation of acceptances of the Plan.

"Bankruptcy Cause of Action" means any Cause of Action the Debtor has or may have under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced to prosecute such Causes of Action.

"Bankruptcy Cause of Action Proceeds" means any gross proceeds realized from a Bankruptcy Cause of Action, net of all fees and expenses payable by the Estate to Professionals under contingent-fee or other arrangements in connection with the Debtor's efforts to analyze or prosecute such Bankruptcy Cause of Action or to collect such proceeds.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.

2

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means April 11, 2013, the deadline for filing all proofs of claims established by the Bankruptcy Court, except Claims of governmental units for which proofs of claim are filed in accordance with § 502(b)(9) of the Bankruptcy Code and are due on June 12, 2013.

"Business Day" means any day other than a Saturday or Sunday, or any legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means legal tender of the United States of America or a cash equivalent.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on December 14, 2012, in the Bankruptcy Court, styled *In re Paxfire, Inc.,* Case No. 12-17341-RGM.

"Claim" means "claim" as defined in § 101(5) of the Bankruptcy Code, whether or not asserted or Allowed.

"Class" means any group of Claims or Equity Interests classified by the Plan pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code.

"Confirmation Date" means the date of entry of the Confirmation Order.

"Confirmation Hearing" means the hearing, pursuant to § 1129 of the Bankruptcy Code, to consider confirmation of the Plan.

"Confirmation Order" means the order, entered by the Bankruptcy Court, confirming the Plan.

"Debtor Claims" means all Bankruptcy Causes of Action and other claims and causes of action that the Debtor may have against any Person that arise prior to the Effective Date and that, as of the Effective Date, have not been waived, settled, released or denied by Final Order of the court having jurisdiction over a proceeding in which such cause of action was or could have been asserted.

"Debtor" means Paxfire, Inc.

"Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order of the Bankruptcy Court, or (b) has not been scheduled by the Debtor or is Scheduled at zero or as contingent, disputed or unliquidated and as to which the Bar Date has passed but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

3

"Disclosure Statement" means the written 1st amended disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

"Disputed ... Claim" means a Claim, or any portion thereof, of the type described, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) (i) have not been Scheduled by the Debtor or have been Scheduled at zero, as unknown or as contingent, unliquidated or disputed and are the subject of a timely filed proof of claim, or (ii) are the subject of an objection by the Debtor or as to which the time for the Debtor to object has not yet expired, and (b) the allowance or disallowance of which is not yet the subject of a Final Order of the Bankruptcy Court.

"Effective Date" means the date upon which the Confirmation Order becomes final and non-appealable.

"Equity Interest" means, as of the Petition Date, any rights of any Person attributable to any ownership interest in the Debtor.

"Estate" means the bankruptcy estate of the Debtor pursuant to § 541 of the Bankruptcy Code.

"Exhibit" means an exhibit annexed either to this Plan or as an appendix to the Disclosure Statement.

"File" or "Filed" means filed with the Bankruptcy Court in the Chapter 11 Case.

"Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

"General Unsecured Claim" means a claim that is not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Equity Interest.

"Impaired" refers to any Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"Initial Distribution" means the sum of Four Hundred Thousand and no/100 Dollars ($400,000.00) to be utilized from current funds on hand of the Debtor for initial distributions and payment of claims under the Plan.

"Insider" means with respect to the Debtor, any person within the scope of § 101(31) of the Bankruptcy Code.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

4

"Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

"Petition Date" means December 14, 2012.

"Plan" means this 1st amended plan of reorganization which is proposed by the Debtor for the resolution of outstanding Claims and Equity Interests in this Chapter 11 Case, as such Plan may be amended from time to time in accordance with the Bankruptcy Code and Article XIV herein.

"Post-Effective Date Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Effective Date.

"Priority Claim" means any Claim which is entitled to priority in payment as specified in § 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, Professional Fee Claim, Consumer Deposit Claim, or a Priority Tax Claim.

"Priority Tax Claim" means a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

"Professional" means a consultant, accountant, attorney or other professional service provider retained by the Debtor pursuant to §§ 327 and 363 of the Bankruptcy Code or otherwise as provided for under the Plan.

"Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

"Pro Rata" means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

"Scheduled" means, with respect to a Claim, that the Claim is listed on the schedules of assets and liabilities filed by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Rule 1007(b)(1).

"Schedules" means the Debtor's Schedules of Assets and Liabilities, including any amendments, filed with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 1007(b)

"Secured Claim" means a Claim secured by a security interest in or lien upon property of the Estate to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to § 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such Claim.

5

"Unimpaired" refers to any Claim that is not Impaired within the meaning of that term in § 1124 of the Bankruptcy Code.

1.3   *Rules of Interpretation.*

Unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan. The words "herein," "hereto," and "hereof refer to the Plan in its entirety rather than to a particular portion of the Plan. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. Except for the rule contained in § 102(5) of the Bankruptcy Code, the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

1.4      *Computation of Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5      *Exhibits.*

All   Exhibits   are   incorporated   into   and   are   a   part   of   the   Plan as if set forth in full herein.

## ARTICLE II

## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL
## FEE CLAIMS AND PRIORITY TAX CLAIMS

2.1      *Administrative Expense Claims*. Each holder of an Allowed Administrative Expense Claim (including any allowed Professional fees) shall be entitled to be paid from funds first available from funds set aside for the Initial Distribution. Holders of such Allowed Administrative Expense Claims shall be entitled to receive from such funds, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

2.2      *Priority Tax Claims*. The Debtor has not scheduled any priority tax claims in this proceeding and does not believe that any such claims exist. To the extent any priority tax claim may be filed and allowed in this proceeding, such claim(s) shall be paid, in full, from funds set aside for the Initial Distribution.

2.3      *United States Trustee Fees*. The Debtor shall pay all fees due to the United

SER-195

States trustee under 28 U.S.C. § 1930(a)(6) within thirty (30) days of the Effective Date and shall pay all such fees that come due following the Effective Date until such time as the Chapter 11 Case is closed.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtor. A Claim or Equity Interest is also placed in a particular Class for the purposes of voting on the Plan and of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims of the kinds specified in §§ 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified and the treatment of such Claims is set forth in Article II above. Only an Allowed Claim within any of the Classes identified below shall be entitled to the treatment and distributions provided for Claims within that Class.

Class 1.        Class 1 consists of all General Unsecured Claims. The Debtor's schedules filed herein reflect a total of $3,196,273.32 in Class 1 claims. Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, the following distributions:

(a)        Distribution of each claimant's pro-rata share of the Initial Distribution as defined hereinabove to be the sum of Four Hundred Thousand and no/100 Dollars ($400,000.00) less payment of any allowed Administrative Expense or Priority Tax claims. Payment of the Initial Distribution will be effected by delivery of payments on or before a date sixty (60) days from the Effective Date.

(b)        Thereafter, all net recoveries generated from any litigation recovery or the prosecution of any Bankruptcy Causes of Action shall be paid out by the Debtor to Class 1 claims on a pro-rata basis until such claims have been paid in full.

Class 2.        Class 2 consists of all Equity Interests. Holders of Class 2 Equity Interests shall retain their equity interests in the Debtor but are otherwise not entitled to monetary distributions in respect of the equity claims asserted herein unless, and until, all Class 1 claims have been paid in full. Upon any such payment of Class 1 claims in full, then Class 2 Equity Interests shall thereafter be entitled to distribution of all remaining net proceeds and recoveries from the Debtor's prosecution of litigation claims or other recoveries. Such distributions to Class 2 Equity Interests shall be made in accordance with existing preferences and priorities.

7

## ARTICLE IV

## IDENTIFICATION OF CLASSES OF CLAIMS AND
## EQUITY INTERESTS IMPAIRED AND
## UNIMPAIRED BY THE PLAN

A.    *Unimpaired Classes of Claims and Equity Interests.* There are no unimpaired Classes under the Debtor's Plan.

B.    *Impaired Classes of Claims and Equity Interests.* Every Class under the Plan, including all numbered classes from and including Class 1 and 2 is an Impaired Class under the Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS

5.1    *Impaired Classes of Claims Entitled to Vote.* The holders of Claims in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan.

5.2    *Acceptance by an Impaired Class.* In accordance with § 1126(c) of the Bankruptcy Code and except as provided in § 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan. Holders of claims that fail to vote are not counted as cither accepting or rejecting a plan. If no votes are cast by holders of claims in a particular class, that class is deemed to accept the Plan.

5.3    *Confirmation Pursuant to § 1129(b) of the Bankruptcy Code.* Should one or more impaired Classes reject the Plan, the Debtor will request confirmation of the Plan, as it may be modified from time to time, under §§ 1129(b)(1), (2)(A)(i), (2)(A)(iii), ((2)(B), and 2(C) of the Bankruptcy Code. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any holder of a Secured Claim, at a valuation hearing under § 506 of the Bankruptcy Code, to be held at the same time as the hearing on confirmation of the Plan.

5.4    *Confirmability and Severability of the Plan.* The confirmation requirements of § 1129 of the Bankruptcy Code must be satisfied with respect to the Plan. The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to the Confirmation Hearing. A determination by the Bankruptcy Court that the Plan as it applies to the Debtor is not confirmable pursuant to § 1129 of the Bankruptcy Code shall not limit or affect the Debtor's

8

ability to modify the Plan to satisfy the confirmation requirements of § 1129 of the Bankruptcy Code.

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION**

      A.    <u>Funds from Post-Petition Sale of Assets and Business Operations</u>.  At the time of filing herein, the Debtor scheduled approximately $740,000.00 in cash on deposit representing proceeds/income from business operations conducted by the Debtor pre-petition. Since the date of filing, the Debtor has effected two separate sales approved by the Court which have consisted of virtually all remaining assets used in connection with the Debtor's daily business operations. The proceeds of these sales, as well as additional net income generated post-petition by the Debtor, have supplemented the original funds on hand and left the Debtor with slightly more than $900,000.00 on hand as of the date of this Disclosure Statement. Upon the May 31, 2013 closing of the sale of remaining business assets and contracts, the Debtor has ceased business operations and no longer generates income from such operations. Upon confirmation, the Initial Distribution shall be set aside from the current funds on hand, with all other funds held for payment of litigation related expenses as identified hereinbelow.

      B.    <u>Proposals for Affirmative Litigation Claims</u>.  The Debtor has proposed to pursue certain litigation claims that have the potential to generate funds sufficient to make payment of all claims, in full. Special litigation counsel has already been retained and is currently prosecuting claims in connection with the Namespace Litigation.[1] Paxfire is seeking recovery of approximately Three Hundred Thousand and no/100 Dollars ($300,000.00) in accounts receivable in this matter, and expects a positive and material recovery for the benefit of the estate. Attorney's fees are contingent upon a successful conclusion of the case in the form of an affirmative judgment on behalf of the Debtor. Additionally, the Debtor has the right to participate up to a maximum recovery of Three Hundred Thousand and no/100 Dollars ($300,000.00) for patent infringement claims prosecuted by Kiowa Innovations[2] relating to the Paxfire's original principal patent.

      The most significant proposed litigation claim to be filed and prosecuted by the Debtor involves the affirmative claims proposed to be filed on behalf of Paxfire in connection with the Feist Litigation.[3] Through review of allegations made in the Complaint, and with the benefit of additional investigation obtained through discovery, Paxfire was able to determine with respect to the Feist Litigation that there is reasonable cause to believe, *inter alia*, that i) Feist was improperly solicited by counsel acting therein to serve as lead plaintiff in the Feist Litigation, ii) that false claims alleged in the Feist Litigation were manufactured and included in the Complaint by Milberg, LLP and co-counsel without any basis for the assertion of such claims in fact or at law, iii) that Milberg, LLP and co-counsel caused allegations of the Complaint to be published

---

[1] See definition of and discussion of such litigation in the Disclosure Statement filed in connection with this Plan.
[2] See definition of and discussion of such litigation in the Disclosure Statement filed in connection with this Plan.
[3] See definition of and discussion of such litigation in the Disclosure Statement filed in connection with this Plan.

9

prior to its filing with the U.S. District Court, waiving the judicial privilege. Such publication caused an immediate and irreparable harm to Paxfire in the nature of a lost, concrete offer to purchase the company's assets in the amount of $10 million; as well as lost business clients and resulting loss of business revenue which precipitated the Debtor's financial demise.

Paxfire filed counterclaims against lead plaintiff Betsy Feist in the Feist Litigation, but has not filed counterclaims against Milberg, LLP or co-counsel relating to the actions and injuries alleged above. Paxfire believes and represents that plaintiffs' counsel in the Feist Litigation acted wrongfully and with intent to harm the reputation of Paxfire, or in such a way as to intentionally and successfully interfere with Paxfire's business contracts, relationships and expectancies. Paxfire believes and represents that such behavior is actionable and the measure of damages potentially recoverable by Paxfire with respect to such claims would be sufficient to make payment of all claims in this proceeding, and to thereafter effect distribution to equity.

Based partly upon the matters discussed hereinabove, Paxfire has determined that it is in its best interests and in the best interests of this estate to pursue claims against Milberg, LLP and co-counsel to the plaintiffs in the Feist Litigation. In order to do so, Paxfire has proposed to retain the services of special litigation counsel to assist the Debtor in the development, filing and prosecution of such claims and litigation. Special litigation counsel has been identified as a team of attorneys consisting of Andrew Grosso & Associates ("AGA"), Brian McCaffrey ("McCaffrey"), James Moody ("Moody") and William Palmer ("Palmer"). AGA, McCaffrey, Moody and Palmer are referred to collectively hereinafter as "Special Litigation Counsel."

The Debtor has previously retained AGA to defend the Debtor with respect to the initial stages of the Feist Litigation and they have intimate and extensive knowledge of the factual and legal issues involved in that case. The affirmative claims as filed against Paxfire in the class action were stayed upon the filing of the Debtor's bankruptcy petition herein, and remain pending in the U.S. District Court for the Southern District of New York. Paxfire is knowledgeable of AGA's qualifications to serve as litigation counsel to the Debtor in connection with the litigation claims discussed herein, and believes and represents that AGA's experience warrants their retention as litigation counsel to the Debtor in this Chapter 11 proceeding for the purposes outlined hereinabove.  AGA has secured the services of co-counsel which were selected by AGA to satisfy requirements for local counsel in Boston, should the case be brought in that District, in New York, where much of the deposition discovery would take place, and otherwise for the purpose of constructing and maintaining a litigation team capable of representing Paxfire in complex litigation expected to ensue from the filing and prosecution of claims identified herein.

In connection with their proposed retention, Special Litigation Counsel, with AGA acting as lead counsel therein, has prepared and issued an engagement letter to Paxfire identifying the scope of their proposed engagement, as well as a description of fees and costs to be charged in connection with such services.[4]

Pursuant to the engagement letter, fees and expenses are payable to Special Litigation Counsel as follows:

-    Special Litigation Counsel shall be paid the amount of forty percent (40%) of the total of any judgments or out of court settlements resolving the litigation to be prosecuted on

---

[4] See copy of engagement letter as Exhibit A attached to Disclosure Statement.

behalf of Paxfire, up to $10 million, and shall be paid fifty percent (50%) of any such judgment or out of court settlement that exceeds $10 million.

-     Ongoing fees in the amount of $100 per hour for Andrew Grosso and $70 per hour for Richard Amada, both of AGA, shall be paid for all time invested by such attorneys, in recognition of the additional value they provide to the contemplated litigation and to compensate for overhead expenses associated with AGA acting as lead counsel for the Special Litigation Counsel herein. Such fees (hereinafter referred to as the "Overhead Fees"), are in addition to all other fees paid in connection with this engagement, and are expressly limited to a maximum of $100,000.00.

-     All expenses incurred in connection with the proposed engagement shall be paid directly by Paxfire as they are incurred and invoiced by Special Litigation Counsel. Expenses and costs shall include costs of copying, postage, travel, expert witness fees, deposition costs and all other costs related to the proposed representation.

-     A retainer to be held and against which payment of expenses and Overhead Fees may be made, shall be deposited with AGA upon approval of this Application in the amount of $150,000.00, and shall be replenished thereafter as required to maintain a minimum expense account balance of at least $50,000.00.

-     The firms and attorneys comprising Special Litigation Counsel shall share in legal fees paid pursuant to this engagement in accord with the Addendum attached to the engagement letter attached hereto as Exhibit A.

In addition to fees and expenses payable to Special Litigation Counsel, Paxfire represents and provides affirmative notice of the fact that it will no longer employ the two remaining senior Paxfire executives Mark Lewyn ("Lewyn") and Doug Armentrout ("Armentrout"), ,but will retain their services going forward as independent consultants for a period of time sufficient to ensure their availability and cooperation in the filing and prosecution of the claims identified herein. Paxfire proposes that each of these individuals will be compensated with earned retainers of $4,166.66 per month during the pendency of litigation, with each person entitled to additional compensation at a rate of $200 per hour for any time expended in excess of 250 hours for the one year following confirmation of the Plan. Additionally, such compensation shall be expressly limited to a period of one year following confirmation of the Plan. Both Lewyn and Armentrout shall continue as directors of the Debtor to ensure adequate oversight, corporate governance and decision making capabilities through the completion of litigation and distribution to creditors as provided for under the Plan. As directors of the company, the company additionally will cover basic expenses (e.g. health insurance, phone, internet) not to exceed $2,000 a month per person and travel expenses directly tied to litigation. Additionally, the Debtor shall maintain directors' insurance policy coverage until discharge of their final duties and resignation from the Board. Separately, the company's Controller, shall be paid $50 per hour on an as-needed basis, not to exceed 10 hours a month, to maintain the company's basic books and records. Paxfire believes and represents that the potential recovery associated with the litigation claims identified herein is both reasonable enough in probability of recovery, and substantial enough in the potential value of recovery, so as to fully warrant such expenditures. As noted above, Paxfire believes and represents that potential recoveries of in excess of Ten Million and no/100 Dollars

11

($10,000,000.00) may be obtained through the filing and prosecution of claims as identified herein.

**ARTICLE VII**

**DISTRIBUTIONS**

7.1    *Delivery of Distributions.* Subject to Bankruptcy Rule 9010, unless otherwise provided herein, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on any proof of claim filed by any such holder, unless the Debtor has been notified, in advance, in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of one (1) year from the later of (i) the Effective Date and (ii) the date such holder's Claim is Allowed. The Debtor shall not have any obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's schedules and proofs of claim filed against the Debtor herein.

**ARTICLE VIII**

**PROCEDURES FOR DISPUTED CLAIMS**

8.1    *Objections to Claims.* After the Effective Date, the Debtor shall be entitled to object to all Claims. Unless otherwise extended by the Court, any objections to such Claims shall be served and filed on or before one hundred twenty (120) days after the Effective Date. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Debtor or its agent(s) effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.

8.2    *Payments and Distributions with Respect to Disputed Claims.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.3    *Distributions After Allowance.* After a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of such Allowed Claim shall be entitled to distributions, if any, to which such holder is then entitled under the Plan in accordance with the provisions hereof.

12

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive any distribution of a value in excess of the Allowed amount of such Claim.

8.4     *No Recourse.* Notwithstanding that the Allowed amount of any Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor or property of the Estate.

## ARTICLE IX

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     <u>Executory Contracts and Unexpired Leases.</u>   The Debtor has previously terminated its lease of business offices at 43490 Yukon Drive in Ashburn, VA by order entered on January 10, 2013 [Dkt. No 32]. Additionally, certain client contracts with Cavalier, Cinbell, Dyn, GlobalPops, T-Mobile, Windstream, USLec and Sprint were assumed and assigned by the Debtor pursuant to the final sale of business related assets approved by the Court in the case.

With the exception of the company's Investor Rights, Preferred Rights and Voting Rights Agreements, any other executory contract (including any contracts related to employment and co-sale and right of first refusal agreement) or unexpired lease not expressly assumed herein shall be deemed rejected upon confirmation of the Debtor's Plan.

## ARTICLE X

### CONDITIONS PRECEDENT TO CONFIRMATION

10.1     <u>Confirmation Conditions Precedent.</u>

Confirmation is subject to:

a)          The Bankruptcy Court having approved the Disclosure Statement by order entered on the docket of the Chapter 11 Case; and

b)          The presentment of a Confirmation Order to the Bankruptcy Court in the Chapter 11 Case for entry to confirm the Plan in a form and substance acceptable to the Debtor.

13

## ARTICLE XI

## EFFECT OF CONFIRMATION

11.1    *Vesting of Assets.* On the Effective Date, pursuant to §§ 1141 (b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Debtor, including all litigation related claims, rights and Bankruptcy Causes of Action and any property acquired by the Debtor or the Estate under or in connection with the Plan, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan and the Plan documents. On and after the Effective Date, the Debtor, so long as consistent with the provisions of this Plan, may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

11.2    *Binding Effect.* Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## ARTICLE XII

## MODIFICATION

12.1    *Pre-Confirmation Amendment.*  The Debtor reserves the right in accordance with the Bankruptcy Code to amend or modify this Plan prior to the Confirmation Date. After the Debtor files a modification with the Bankruptcy Court, this Plan, as modified, becomes the Plan.

12.2    *Post-Confirmation Modification.* The Debtor may modify this Plan at any time after the Confirmation Date regardless of whether this Plan has been substantially consummated within the meaning of §§ 1101(2) and 1127(b) of the Bankruptcy Code, if circumstances warrant such modification, if all required disclosures under § 1125 of the Bankruptcy Code have been given, and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified.

12.3    *Correction of Errors; Inconsistencies.* Before or after the Confirmation Date, or in the Confirmation Order, the Debtor may, with the approval of the Bankruptcy Court, so long as it docs not materially and adversely affect the interests of creditors who have accepted this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan or amend this Plan, in such a manner as may be necessary to carry out the purposes and the effect of this Plan without the necessity of re-soliciting acceptances.

14

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    *Headings.*    The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

13.2    *Business Day.* If any act or payment under the Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act or the making of such payment may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.3    *Timing.* Wherever the Plan provides that a payment or distribution shall occur "on" any date or during a particular period, it shall mean "on, or as soon as practicable after" such date, or "during, or as soon as practical after such period."

13.4    *Manner of Payment.*    Any payment made under the Plan may be made either by check or by wire transfer.

13.5    *Authorization of Action by the Debtor.* The occurrence of the Effective Date shall constitute Bankruptcy Court authorization for the Debtor to take or cause to be taken any action necessary or appropriate after the Effective Date for the effectuation of the Plan and such action will be authorized and approved in all respects and for all purposes without any requirement of further action by any other person.

13.6    *Governing Law.* Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any Plan document provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan documents shall be governed by, and construed and enforced in conformance with the laws of the Commonwealth of Virginia, without giving effect to the principles of conflict of laws thereof.

13.7    *Severability.*    Should the Bankruptcy Court or any other court determine that any provision in this Plan is unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

13.8    *Reservation of Rights.* Neither the filing of the Plan, nor any statement or provision contained in the Plan or the Disclosure Statement, shall be deemed to be a waiver of any rights, remedies, defenses or claims by the Debtor or the Estate, and all such rights, remedies, defenses or claims are hereby specifically reserved.

13.9    *Plan Controls.* To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall control.

13.10    *Notices.*

(a) Any notices or requests made in connection with this Plan shall be in writing and served either by (i) first class mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, and will be deemed to have been given when received by the following parties at the following addresses:

> To the Debtor:
>
> HENRY & O'DONNELL, P.C.
> Attn: Kevin M. O'Donnell
> 300 N. Washington Street
> Suite 204
> Alexandria, Virginia 22314
> *Counsel to the Debtor*
>
> To the Office of the United States Trustee:
>
> Office of the United States Trustee
> Attn: Jack I. Frankel, Esq.
> 115 South Union Street, Room 210
> Alexandria, VA 22314

(b) All notices, requests and distributions to any creditor shall be sent to the address given in each creditor's proof of Claim. With regard to those Scheduled creditors who did not file a proof of Claim, all notices, requests and distributions shall be sent to the address listed in the Debtor's Schedule of Liabilities, unless the Debtor receives other instructions in writing from such creditor(s). Notices, requests and distributions to creditors shall be deemed to have been given when mailed to such address. It shall be the obligation of creditors to provide written notice of any change in address to the Debtor.

## ARTICLE XIV

## RETENTION OF JURISDICTION

14.1    The Bankruptcy Court shall retain jurisdiction after confirmation of the Plan for the following purposes:

(a)    to determine the allowance and classification of any Claim, the re-examination of Claims which have been allowed for purposes of voting, and the determination of any objections to Claims that may be or may have been filed;

(b)    to determine motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

(c)    to determine motions to subordinate Claims at any time and

16

on any basis permitted by applicable law;

(d)   to construe or take any action to enforce this Plan, and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(e)   to determine any and all applications for allowance of compensation or reimbursement of expenses incurred prior to the Effective Date;

(f)   to determine any other requests for payment of an Administrative Expense Claim incurred prior to the Effective Date;

(g)   to resolve any disputes arising under or relating to this Plan;

(h)   to modify the Plan pursuant to § 1127 of the Bankruptcy Code and applicable Bankruptcy Rules;

(i)   to take any action to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(j)   to enter any order, including injunctions, necessary to enforce the rights, title and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary;

(k)   to enforce any order previously entered by the Bankruptcy Court in this Chapter 11 Case and to enter an order closing the Chapter 11 Case;

(l)   to determine pending applications for the assumption or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor or the Estate may be liable, and to hear and determine, and if need be to adjudicate, any Claims arising from such applications;

(m)   to determine applications, adversary proceedings and contested or litigated matters and all causes of action relating to the Debtor or the Estate, whether pending on the Effective Date or commenced thereafter, whether or not the Chapter 11 Case has been closed and a final decree entered;

(n)   to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code; and

(o)   to determine such other matters as may be set forth in the Confirmation Order.

Respectfully submitted on this 6th day of September, 2013.


**PAXFIRE, INC.**
**By Counsel**


/s/ Kevin M. O'Donnell
**Kevin M. O'Donnell, VSB #30086**
**Jeffery T. Martin, Jr., VSB #71860**
**HENRY & O'DONNELL, P.C.**
300 N. Washington Street
Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel for the Debtor

# Tab 14

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I



FAXED COPY

ORIGINAL FILED

2012 MAY 23 P 2: 16

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Sanford P. Dumain
2   Peter E. Seidman
    Melissa Ryan Clark
    Adam Bobkin
3   **MILBERG LLP**
    One Pennsylvania Plaza
4   New York, NY 10119
    Telephone:    (212) 594-5300
5   Facsimile:    (212) 868-1229

6   Michael R. Reese (SBN 206773)
    Kim E. Richman
7   **REESE RICHMAN LLP**
    875 Avenue of the Americas
8   New York, NY 10001
    Telephone:    (212) 579-4625
9   Facsimile:    (212) 253-4272

10

11  *Attorneys for Plaintiff*

                                                              JSW

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

                CV 12 80 121 MISC

16                                        )  Misc. Action No.
                                          )
17  BETSY FEIST, individually and on behalf of all )
    others similarly situated,            )
18                                        )  **DECLARATION OF KIM E.**
                                          )  **RICHMAN IN SUPPORT OF BETSY**
                   Plaintiff,             )  **FEIST'S MOTION TO QUASH**
19                                        )  **SUBPOENAS TO CONSULTANTS**
           v.                             )
20                                        )
    RCN CORP. and PAXFIRE, INC.,          )  DATE:
21                                        )  TIME:
                   Defendants.            )  JUDGE:
22                                        )  COURTROOM:
                                          )
23                                        )  ORAL ARGUMENT REQUESTED

24

25

26

27

28

────────────────────────────────────────────────
    DECLARATION OF KIM E. RICHMAN IN SUPPORT OF BETSY FEIST'S MOTION TO QUASH
                         SUBPOENAS TO CONSULTANTS
DOCS\630766v1

I, KIM E. RICHMAN, declare as follows:

1.      I am an attorney licensed to practice in the State of New York and am an attorney with the law firm of Reese Richman, LLP, co-counsel for Plaintiff in this matter. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto.

2.      Attached hereto are true and correct copies of the following documents:

**Exhibit A:**       Subpoena to Produce Documents, information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") to the Electronic Frontier Foundation ("EFF"), signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 22, 2012.

**Exhibit B:**       Subpoena to International Computer Science Institute ("ICSI"), signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 22, 2012.

**Exhibit C:**       Subpoena to Peter Eclersley [sic], signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 22, 2012.

**Exhibit D:**       Subpoena to Christian Kriebich [sic] signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 27, 2012.

**Exhibit E:**       Subpoena to Vern Paxson, signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 27, 2012

**Exhibit F:**       Subpoena to Nicholas Weaver signed by Andrew Grosso, counsel for Paxfire, Inc., and dated April 27, 2012.

**Exhibit G:**       The complaint filed in the instant litigation.

3.      Each of the persons and entities identified in ¶ 2, Exhibits A-F (the "Consultants") acts and has acted as a consultant to Plaintiff Betsy Feist in connection with this litigation.

4.      In early April 2012, Ms. Feist's counsel learned that Paxfire had served a subpoena for the production of documents on EFF. Paxfire failed to provide notice to Ms. Feist of that subpoena.

- 1 -

DECLARATION OF KIM E. RICHMAN IN SUPPORT OF BETSY FEIST'S MOTION TO QUASH
SUBPOENAS TO CONSULTANTS

5.      On April 10, 2012, Ms. Feist's counsel sent a letter to Paxfire's counsel reminding Paxfire of its obligations under Fed. R. Civ. P. 45(b) to notify each party of the subpoena for the production of documents before the subpoena is served.

6.      On April 22, 2012, Mr. Grosso sent Plaintiff's counsel the "Definitions and Instructions" and the "Documents Commanded to be Produced" that it apparently attached to the subpoenas for ICSI, EFF, and Mr. Eckersley. At that time, Paxfire did not provide the subpoenas themselves, the service date of those subpoenas, or deadline for production provided in those subpoenas.

7.      On April 27, 2012, Paxfire sent Plaintiff its Subpoenas to Messrs. Kreibich, Paxson, and Weaver.

8.      Plaintiff repeatedly requested that Paxfire provide the subpoenas served on ICSI, EFF, and Mr. Eckersley. Paxfire did not provide the subpoenas until May 10, 2012.

9.      The instant litigation alleges, in sum, that the defendants intercepted and redirected Internet users' searches for profit by manipulating domain name system ("DNS") resolution services; employing proxy servers; monitoring, filtering, and redirecting searches; and monetizing the searches through trademark holders and advertising aggregators.

10.      Plaintiff, through her attorneys, worked with the technologists and Internet experts from ICSI (Mr. Eckersley) and EFF (Messrs. Paxson, Kreibich, and Weaver) in order to inform her understanding of the complex, technological aspects of this litigation. Plaintiff's Consultants provided advice concerning the flow of information on the Internet, the types of physical appliances necessary for Internet communications, descriptions of various protocol that operate to transfer information across the Internet between end-users and websites, an understanding the results of ICSI's Netalyzr (the tool which contributed to the discovery of the wrongdoing), and many other matters within the Consultant's stated areas of expertise.

11.      Plaintiff's counsel have conferred with the Consultants through various stages of the litigation, including the investigation, drafting of the complaint, and discovery, and exchanged draft documents with the Consultants.

- 2 -
DECLARATION OF KIM E. RICHMAN IN SUPPORT OF BETSY FEIST'S MOTION TO QUASH
SUBPOENAS TO CONSULTANTS

12. All of the information and documents shared with the Consultants, and all communications between the Consultants and Ms. Feist or her attorneys in connection with this litigation, were made with the mutual understanding, between Ms. Feist, her attorneys, and the respective Consultants, that such documents and communications would remain confidential.

13. Plaintiff's Consultants agreed not to disclose anything relating to the services they performed, the information they prepared or received, or any communications between them and Plaintiff or her counsel.

14. Plaintiff, through her counsel, began consulting with Messrs. Kreibich, Paxson, and Weaver regarding this litigation at least as early as July 18, 2011. Plaintiff entered into a written consulting agreement with these individuals on August 31, 2011, and the written agreement reflects that Ms. Feist's counsel and Messrs. Kreibich, Paxson, and Weaver agreed orally to enter into a consulting arrangement on July 18, 2011.

15. Plaintiff's counsel has consulted with Mr. Eckersley on various technology-related matters. Plaintiff's counsel has formally retained Mr. Eckersley in connection with other, unrelated litigations. Although Mr. Eckersley was not formally retained or paid to serve as a consultant in this matter, Plaintiff, through her counsel, began informally consulting with Mr. Eckersley on this matter, i.e., seeking advice with regard to and in anticipation of this litigation, at least as early as May 2011.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of May 2012, at New York, NY

_____
KIM E. RICHMAN

- 3 -
DECLARATION OF KIM E. RICHMAN IN SUPPORT OF BETSY FEIST'S MOTION TO QUASH
SUBPOENAS TO CONSULTANTS

# Tab 15

to
THIRD PARTY APPELLEES
ELECTRONIC FRONTIER FOUNDATION'S
and PETER ECKERSLEY'S
SUPPLEMENTAL EXCERPTS OF RECORD
IN SUPPORT OF ANSWERING BRIEF
Volume I

DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
JAIDEEP VENKATESAN, Bar No. 211386
jvenkatesan@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

ANDREW GROSSO, Esq., *pro hac vice*
Agrosso@acm.org
ANDREW GROSSO & ASSOCIATES
Georgetown Place
1101 Thirtieth St., NW, Suite 300
Washington, D.C. 20007
Telephone: (202) 298-6500
Facsimile: (202) 298-5599

Attorneys for Defendant-Counterclaim Plaintiff
PAXFIRE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BETSY FEIST,<br><br>        Plaintiff,<br><br> vs.<br><br>RCN CORPORATION and<br>PAXFIRE, INC.,<br><br>        Defendants. | Misc. Case No. CV12-80135 SI (NC)<br><br>Underlying action pending in the United States District Court for the Southern District of New York, Case No. 11 CV 5436 JGK<br>  Related cases:<br>    3:12-cv-80119 SI (NC)<br>    3:12-cv-80121 SI (NC)<br>    3:12-cv-80140 SI (NC)<br><br>**OPPOSITION OF DEFENDANT PAXFIRE TO MOTION FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Date: October 19, 2012<br>Time: 9:00 a.m.<br>Hon. Judge Susan Illston<br>Courtroom 10, 19th Floor |

**SER-212**

# TABLE OF CONTENTS

I.      The Subpoenas at Issue: Procedural History and Standard of review .................................. 3

II.     ARGUMENT .................................................................................................................. 6

        A.     EFF Lacks Standing to Object to the Magistrate's Decision Regarding the Applicability of the Work Product Doctrine. .......................................................... 6

        B.     The Correct General Standard of Review of the Magistrate Judge's order is Whether It Is Clearly Erroneous and Contrary to Law, not de novo ....................... 6

               1.     The Order concerns a discovery dispute, which is not a dispositive matter. ...................................................................................................... 7

               2.     The Standard of the Review Is Not Heightened by the Fact That the Order of the Magistrate Judge's Does Not Address in Particulars Each and Every Argument Offered by EFF Made in Its Motion to Quash .......... 8

               3.     EFF's Presentation of a First Amendment Claim Does Not Change the Standard of Review or the Procedures for Obtaining Review ............ 9

        C.     EFF Presents no Basis to Reverse the Order to Produce Documents .................... 9

III.    No Privilege or Constitutional Right Shields EFF from This Routine Discovery ............ 11

        A.     No General Privilege Exists for Advocacy Organizations or Researchers Such as Movants ......................................................................................................... 14

        B.     No General Privilege Exists for Investigations .................................................... 15

        C.     Neither California Nor New York Press Privilege Law Applies to EFF Because EFF is Not "Press" ................................................................................ 16

        D.     Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield EFF .................................................................................................................... 20

IV.     The Need for Discovery Outweighs Any Speculative Need for Secrecy .......................... 21

V.      CONCLUSION .............................................................................................................. 23

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. Case No. CV12-80135 SI (NC)

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*800 Front Street Corp. v. Travelers Property Casualty Co. of America*,
No., CV 06-500(LDW)(ARL), 2006 U.S.Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006) ..... 20

*Adolph Coors Co. v. Wallace*,
570 F. Supp. 202 (1983) ................................................................................................... 9

*Agster v. Maricopa County*,
422 F.3d 836 (9th Cir. 2005) ......................................................................................... 17

*Anker v. G.D. Searle & Co.*,
126 F.R.D. 515 (M.D.N.C.1989) .................................................................................. 15

*Barkwell v. Sturm Ruger Co., Inc.*,
79 F.R.D. 444 (D. Alaska 1978) ................................................................................... 22

*Boyd v. City & County of San Francisco*,
No. C-04-545MM(JLS) 2006 U.S. Dist. LEXIS ............................................................ 16

*Burka v. U.S. HHS*,
87 F.3d 508 (D.C. Cir 1996) ........................................................................................ 15

*Channelmark Corp. v. Destinations Products Int'l, Inc.*,
No. 99 C 214, 2000 U.S.Dist. LEXIS 9854 (N.D. Ill. July 7, 2000) .............................. 8

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) .......................................................................................... 16

*Deitchman v. E.R. Squibb & Sons*,
740 F.2d 556 (7th Cir. 1984) ......................................................................................... 15

*Dung Ngo v. Standard Tools & Equipment, Co., Inc.*,
197 F.R.D. 263 (D. Md. 2000) ...................................................................................... 22

*Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc., No. 03cv352-
BEN(WMC)* 2005, U.S. Dist. LEXIS 47173 (S.D.Ca. Aug. 11, 2005) ....................... 16

*Fraley v. Facebook, Inc.*
2012 U.S. Dist. LEXIS 116526 (NDCA 2012) ................................................................. 2

*Hall v. EarthLink Network, Inc.*,
396 F.3d 500 (2d Cir. 2005) ............................................................................................ 1

*Harasimowicz v. McAllister*,
78 F.R.D. 319 (E.D. Pa. 1978) ..................................................................................... 23

- ii -

**SER-214**

*Herbert v. Lando,*
    441 U.S. 153 (1977) ............................................................................ 10, 11, 12, 14

*Hickman v Taylor,*
    329 U.S. 495 (1947) ............................................................................ 20

*Highfields Capital Management, L.P. v. Doe,*
    385 F. Supp 2d 969 (N.D. Cal 2005) ............................................................................ 8

*Hobley v. Burge,*
    433 F.3d 946 (7th Cir. 2006) ............................................................................ 6

*In re American Tobacco Co.,*
    880 F.2d 1520 (2d Cir. 1989) ............................................................................ 15

*In re Application of Consumers Union of U.S.,*
    495 F. Supp. 582 (S.D.N.Y. 1980) ............................................................................ 21

*In re Google Buzz User Privacy Litigation*
    10-00672-JW (NDCA 2010) ............................................................................ 2

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.,*
    No. MISC 08–347(ARR)(MDG), 2010 U.S. Dist. LEXIS 40653 (E.D.N.Y. Feb. 5,
    2010) ............................................................................ 7

*In re Snyder,*
    115 F.R.D. 211 (D.Ariz.1987) ............................................................................ 15

*Keith v. Van Dorn Plastic Machinery Co.,*
    86 F.R.D. 458 (E.D. Pa. 1980) ............................................................................ 22

*Kerr v. U.S. Dist. Ct. for N. D.,*
    426 U.S. 394 (1976) ............................................................................ 13, 14

*Lamar Advertising of South Dakota, Inc. v. Kay,*
    267 F.R.D. 568 (D.S.D. 2010) ............................................................................ 20

*Leviathan, Inc. v. M/S Alaska Maru,*
    86 F.R.D. 8 (W.D. Wash. 1979) ............................................................................ 22

*Miller v. Automobile,*
    420 F.3d 1098 (10th Cir. 2005) ............................................................................ 8

*NAACP v. Button,*
    371 U.S. 415 (1963) ............................................................................ 14

*NLRB v. Cable Car Advertisers, Inc.,*
    319 F. Supp. 2d 991 (N.D. CA 2004) ............................................................................ 7

- iii -

PAXFIRE'S OPPSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE      Misc. Case No. CV12-80135 SI (NC)

SER-215

*NLRB v. Frazier*,
   966 F.2d 812 (3rd Cir. 1992)................................................................. 7

*Norfin, Inc. v. Intern. Business Machs. Corp.*,
   74 F.R.D. 529 (D. Colo. 1977)........................................................... 23

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010)........................................................... 15

*Quarantillo v. Consol. Rail Corp.*,
   106 F.R.D. 435 (W.D. N.Y. 1985)..................................................... 22

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984)........................................................................... 14

*Schoen v. Schoen*,
   48 F.3d 412 (9th Cir. 1995)............................................................... 19

*Seattle Times Co. V. Rhinehart*,
   467 U.S. 20 (1984)............................................................................. 13

*Securities Exchange Commission v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009)....................................................... 21

*Shoen v. Shoen*,
   5 F.3d 1289 (1993)............................................................................. 22

*Stoffels v. SBC Communications, Inc.*,
   263 F.R.D. 406 (W.D. Tex. 2009)....................................................... 6

*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*,
   852 F. Supp. 156 (E.D.N.Y. 1994)................................................... 20

*U.S v. Doe*,
   332 F. Supp. 938 (D. Mass. 1971) ................................................... 15

*U.S. v. Doe*,
   460 F.2d 328 (1st Cir. 1972)............................................................. 15

*United States v. IBM*,
   83 F.R.D. 92 (S.D.N.Y. 1979)........................................................... 15

*United States v. Nixon*,
   418 U.S. 683 (1974) .......................................................................... 17

*United States v. Workman*,
   *138 F.3d 1261 (8th Cir.1998)* .......................................................... 11

*Westmoreland v. CBS, Inc.*,
   97 F.R.D. 703 (S.D..N.Y. 1983)........................................................ 14

- iv -

**SER-216**

*Wilkinson v. FBI*,
   111 F.R.D. 432 (C.D. Cal. 1986) ........................................................................ 14

*William A. Gross Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*,
   262 F.R.D. 354 (S.D.N.Y. 2009)..................................................................... 20, 21

*Williams v. Rene*,
   886 F. Supp. 1214 (D.V.I. 1995), rev'd on other grounds, 72 F.3d 1096 (3d Cir. 1995)........ 22

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.*,
   671 F.2d 100 (3d Cir.1982) .............................................................................. 17

*Wright v. Fred Hutchinson Cancer Research Center*,
   206 F.R.D. 679 (W.D. Wash. 2002)................................................................... 19

**FEDERAL STATUTES**

18 U.S.C. § 2510(4)-(5) .......................................................................................... 1

28 U.S.C. § 636(b)(1) ............................................................................................ 9

Electronic Communications Privacy Act ....................................................... 1, 2, 10, 16

FOIA .................................................................................................................. 15

**OTHER STATUTES**

Cal. Evid. Code 1070(a) ........................................................................................ 17

**RULES**

Fed. R. Civ. Proc. 26(b)(3)............................................................................... 4, 11

Fed. R. Civ. Proc. 26(b)(3)(A) ................................................................................ 6

Fed. R. Civ. Proc. 26(b)(4)(A) .............................................................................. 11

Fed. R. Civ. Proc. 26(b)(4)(B) .............................................................................. 11

Fed. R. Civ. Proc. 26(b)(4)(C) .............................................................................. 11

Fed. R. Civ. Proc. 26(b)(4)(D) .............................................................................. 20

Fed. R. Civ. Proc. 30(b)(6) ................................................................................... 10

Fed. R. Civ. Proc. 45 ........................................................................................... 11

Fed. R. Civ. Proc. 72(a).......................................................................... 1, 4, 7, 8, 9

Fed. R. Civ. Proc. 72(b) ............................................................................... 1, 5, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- v -

PAXFIRE'S OPPSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE    Misc. Case No. CV12-80135 SI (NC)

Fed. R. Evid. 501 ................................................................................................................ 17

**CONSTITUTIONAL PROVISIONS**

Cal. Const., Article I, § 2(b) ............................................................................................. 17

California Constitution, Article I, § 2(a) .......................................................................... 10

First Amendment ......................................................................................................... passim

**OTHER AUTHORITIES**

1 *McCormick on Evidence § 93*
    (John W. Strong, ed., 5th ed. 1999)............................................................................ 11

3 *Weinstein's Federal Evidence § 503.41*
    (Joseph M. McLaughlin, ed., 2nd ed. 1997) ............................................................ 11

PAXFIRE'S OPPSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. Case No. CV12-80135 SI (NC)

Defendant Paxfire, Inc. ("Paxfire") hereby files its Opposition to the Motion of Non-Parties the Electronic Frontier Foundation and Peter Eckersley for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge.  Movants have improperly brought their motion under Rule 72(b), as opposed to 72(a).  For this reason, Paxfire is separately filing an administrative motion to strike EFF's motion.

## BACKGROUND

Paxfire has been sued in a putative class action by Betsy Feist, a resident of New York City, in the U.S. District Court for the Southern District of New York.[1]  As conceded by movant Mr. Peter Eckersley in his second declaration, filed in this Court,[2] that case was directly instigated by Mr. Eckersley and by his employer and fellow movant the Electronic Frontier Foundation (collectively "EFF" or the "movants") ― who solicited law firms in New York for this purpose; those firms thereafter solicited Ms. Feist to bring her class action suit.[3]  The lawsuit was filed, and widely publicized by EFF on its website and through other means, at a time when Paxfire was within days of receiving a buyout offer for its assets in an amount of ten million dollars or more.[4]  The lawsuit permanently derailed the buyout.  By derailing the buyout and by unfairly tainting Paxfire with the public and with its Internet Service Provider ("ISP") customers, the lawsuit and publicity have effectively destroyed the company.  All of this occurred despite Ms. Feist's suit being meritless: Paxfire simply did not do most of the things alleged in the lawsuit, and what it did do is lawful under statutory exceptions to the Electronic Communications Privacy Act ("ECPA").[5]

While it has cast itself as an organization devoted to acting in the public interest, the underlying lawsuit serves a potential yet concrete financial and commercial motive.  EFF is a potential recipient of a cy pres award from any recovery obtained by the class plaintiffs in the

---

[1] Second Eckersley Decl., Dtk. No. 6, Case No. 12-mc-80135.  His first declaration was filed in the action in the underlying class action in the Southern District of New York, and has been entered on the docket in the companion and consolidated case by Respondent Paxfire, Inc., Dtk. No. 19, Ex. 2, Case No. 12-mc-80122-SI.

[2] Mr. Eckersley that he referred this case to the New York law firms representing Ms. Feist. Second Eckersley Decl.

[3] Ms. Feist testified that attorney Kim Richman of one of those firms solicited her to bring this lawsuit. Feist Depo. at 9, 196-98, Dtk. No. 21, Ex. G, Case No. 12-mc-80135.

[4] Bergman Decl., Dtk No. 21, Ex. D (No. 7), Case No. 12-mc-80135.

[5] *See* 18 U.S.C. § 2510(4)-(5); *Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005).

- 1 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

1  underlying case, as courts have the authority to award cy pres awards to EFF and similar

2  organizations.[6]  Documents responsive to Paxfire's subpoena will be relevant to showing whether

3  there were any agreements between EFF and Ms. Feist's law firms that, in exchange for damaging,

4  albeit incomplete and inaccurate, information that the law firms would use to file their law suit

5  against Paxfire, these same law firms would steer *cy pres* awards to EFF upon successful

6  resolution of the class action against Paxfire and its codefendant RCN Corp.  Such evidence will

7  assist to demonstrate the baselessness of Ms. Feist's allegations, as well as support Paxfire's

8  assertions in its counterclaims that the lawsuit is a sham and that Ms. Feist—through her

9  attorneys— had a motive for acting with malice in making her defamatory claims against Paxfire.

10       An examination of the two declarations submitted by Mr. Eckersley demonstrates that EFF

11  instigated this lawsuit as a self-appointed Internet vigilante, so as to impose its own policies

12  concerning "net neutrality," by destroying a lawful business model which it disfavored.  Such is

13  demonstrated by the following: (1) although instigating the lawsuit, EFF published blogs to the

14  public on its website that portrayed the lawsuit as having been brought independently by Ms. Feist

15  and concealing its own participation instigating the lawsuit and its conflict of interest in the

16  outcome of the lawsuit[7]; (2) EFF consulted with Paxfire's commercial competitors about Paxfire's

17  business, although it never consulted with Paxfire to determine whether its allegations were or

18  were not true[8]; and (3) EFF asserted that it and Ms. Feist used the Netalyzr, a software tool, to

19  determine that Paxfire engaged in conduct as alleged in Ms. Feist's Complaint—when it knew that

20  the Netalyzr *was not capable* of making these determinations.[9]

21       Paxfire filed counterclaims against Ms. Feist, alleging *inter alia* that EFF, Peter Eckersley,

22  and others are Feist's (uncharged) coconspirators.  To obtain discovery for its defense of Ms.

23  Feist's claims, particularly her claim brought under the ECPA (a federal statute), and to establish

24  [6] *Fraley v. Facebook, Inc.* 2012 U.S. Dist. LEXIS 116526 (NDCA  2012); *In re Google Buzz User Privacy Litigation*, 10-00672-JW (NDCA 2010).

25  [7] EFF Blog dated August 4, 2011, Dtk No. 21, Ex. B (No. 1C), Case No. 12-mc-80135.
   [8] Second Eckersley Decl.

26  [9] Spafford Decl., Dtk No. 21, Ex. I, Case No. 12-mc-80135.

27

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. CV12-80135 SI (NC)

1  its own counterclaims, it issued subpoenas to both EFF and Mr. Eckersley for documents and

2  deposition testimony.

3       A more detailed description of the factual background of Paxfire, and the events leading to

4  Ms. Feist's New York lawsuit against Paxfire and the subpoenas served upon EFF and Mr.

5  Eckersley, are set out in Paxfire, Inc.'s Opposition to Non-Parties Electronic Freedom Foundation

6  and Peter Eckersley's Motion to Quash Subpoenas Issued by Paxfire, Inc. and Request for

7  Protective Order.[10]  In support of its Opposition to EFF's Motion for *De Novo* Determination of

8  Dispositive Matter Referred to Magistrate Judge, Paxfire submits the following:

9                                              **MEMORANDUM**

10      The Electronic Frontier Foundation ("EFF") instigated this lawsuit and has expressly

11  acknowledged doing so.[11]  Its actions were taken in concert with those of three other researchers

12  as well as Ms. Feist and Ms. Feist's lawyers and law firms, and made use of news media outlets

13  such as the *New Scientist*.[12]  As alleged in Paxfire's Counterclaims in the New York lawsuit, the

14  allegations brought by Ms. Feist and EFF in the press and her lawsuit are false and defamatory;

15  and the lawsuit is a sham brought for improper and malicious motives.

16  **I.    The Subpoenas at Issue: Procedural History and Standard of review**

17      Paxfire issued subpoenas in the Northern District of California in connection with the New

18  York lawsuit to EFF and Mr. Eckersley.  These call for the production of all documents

19  referencing (1) Feist and her counsel, including consulting agreements and expert witness

20  agreements; (2) all payments made by Feist and her counsel to ICSI or EFF; (3) any litigation in

21  which the subpoenaed nonparties participated in any way and in which Feist's lawyers were also

22  involved; (4) communications by the subpoenaed parties with respect to Feist or her counsel,

23  Paxfire, RCN, the New Scientist, Poly NYU or the Netalyzer, (5) articles and drafts of articles by

24  the non-subpoenaed parties concerning Feist or her counsel or the Netalyzer; (6) all research

25  results concerning Paxfire or RCN or any of the ISPs mentioned in the Feist complaint; and (7) all

26  ───────────────
    [10] Dkt No. 21., Case No. 12-mc-80135.
27  [11] Second Eckersley Decl., Dtk. No. 6, Case No. 12-mc-80135.
    [12] *Id.*

28
                                              - 3 -

1  communications with Google, Microsoft or Yahoo pertaining to Paxfire.  The time period for

2  these documents is January 1, 2008 to the present with respect to the documents in categories (1),

3  (2) and (3); January 1, 2011 to the present with respect to category (4); and April 1, 2011 to the

4  present with respect to category (5).  Categories (6 and 7) have no temporal limitations.

5       EFF filed a Motion to Quash Subpoenas Issued by Defendant Paxfire , Inc. and Request for

6  Protective Order on June 6, 2012.  On July 2, 2012, this Court issued an Order Relating Cases

7  relating EFF's Motion with three other Motions filed in the Northern District of California by

8  Feist and two additional Nonparties, and referring all four motions to Magistrate Judge Cousins.[13]

9       On August 13, 2012, Magistrate Judge Cousins issued his Order,[14] granting in part and

10 denying in part the motions to quash the subpoenas.  The Magistrate ordered that:

11      (1) the subpoenas are quashed with respect to documents generated after July 24, 2011,

12 that fall within categories (1), (2), (3) and (4) because they are protected by the work-product

13 doctrine under Rule 26(b)(3);

14      (2) the subpoenaed nonparties must produce non-privileged responsive documents

15 generated before July 24, 2011, that fall within categories (1), (2), (3), and (4);

16      (3) the subpoenas are quashed with respect to the documents in categories (5) and (6)

17 because they contain confidential research;

18      (4) the deposition subpoenas issued to ICSI, Christian Kreibich, EFF, and Peter Eckersley

19 are quashed; and

20      (5) the document subpoena issued to Jim Giles is quashed.

21      Also, the Order requires that, "The Parties may file objections to this order within fourteen

22 days after it is filed.  Fed. R. Civ. P 72(a)."

23      Under Rule 72(a), which concerns nondispositive matters, and under the corresponding

24 Local Rule, Civil L.R. 72-2, the standard of review of objections is that the district judge must

25 "modify or set aside any part of the order that is clearly erroneous or contrary to law."  Under

26

[13] Order Relating Cases (Dkt. 16).
27 [14] Order Granting in Part and Denying in part Motions to Quash (Dkt. No. 30, Case No. 12-mc-80135)

28

- 4 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

SER-222

1   these two rules governing objections to a magistrate judge's order with respect to a nondispositive

2   matter in this district, the objecting party is limited to the filing of a paper of five pages in length;

3   the opposing party is not required to file a response unless ordered to do so by the Court; no

4   hearing is allowed; and if after fourteen days have passed there is no briefing schedule set and the

5   objections are not addressed by a ruling of the Court, they are automatically deemed denied.

6   Civil L.R. 72-2.

7         The plaintiff, Betsy Feist, has not objected to any aspect of the Magistrate Judge's order.

8   Paxfire has objected to certain provisions of the order.[15]

9         Rather than move for reconsideration of this procedural order and its accompanying

10   restrictions, EFF ignored the order's express language, unilaterally decided that it had the right to

11   appeal the order *de novo* under Rule 72(b) and the corresponding Local Rule, Civil L.R. 72-3(a),

12   and filed a fifteen page noticed motion under Civil L.R. 7-2 setting a hearing date of October 19,

13   2012.  EFF's noticed motion is not allowed under Civil L.R. 72-2.

14         EFF essentially remakes nearly all of the arguments that it made in its motion to quash, as

15   well as objecting to the production ordered by the Magistrate Judge set forth in point two above.

16   It makes nine specified arguments in support of its objection, and asks for a *de novo* review of

17   those portions of Magistrate Judge's decision to which it objects.  EFF's motion lists the following

18   nine objections to the Order:

19

20       A. The Magistrate Judge Failed to Address Whether EFF's First Amendment
    Rights Bar Enforcement of the Subpoenas, Which They Do, So the Decision Was
    Clearly Erroneous and Contrary to Law.

21

22       B. The Magistrate Judge Failed to Address Whether the California Press Shield
    Law and First Amendment Protect Documents Ordered Produced.

23

24       C. The Magistrate Judge Failed to Address Whether Protected Documents in
    Category 7 Must Be Produced.

25

26       D. The Magistrate Judge Failed to Address Protection of Documents Under Rule
    26(b)(4)(D),  Which Precludes Discovery From Non-Retained Experts.

27   _____
[15] Dkt. No. 31.

28

E.  The Magistrate Judge Erred in Holding that Work Product Protection Only Applies After a Client Formally Retains Counsel.

F.  The Magistrate Judge Erred by Failing to Extend Confidential Research Protection to Category 4 and 7 Documents.

G.  The Magistrate Judge Erred by Failing to Sufficiently Address the Consequences of the Dismissal of Paxfire's Counterclaims.

H.  If Permitted to Stand, the Magistrate Judge's Order Would Have a Profound Negative Impact on EFF and Many Other Advocacy Organizations.

I.  The Magistrate Judge Erred in Apparently Concluding that Paxfire Documented the Relevance of Its Requests and Not Addressing the Undue Burden They Impose on EFF.

## II.    ARGUMENT

### A.    EFF Lacks Standing to Object to the Magistrate's Decision Regarding the Applicability of the Work Product Doctrine.

The work product doctrine is a protection afforded to a party and its attorneys.  The doctrine, as codified in Fed. R. Civ. Proc. 26(b)(3)(A) , is that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or trial by or for another party or its representative. . ."  Betsy Feist and her attorneys have the standing to invoke the work product protection doctrine in this case; however, EFF does not. *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006); *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (W.D. Tex. 2009).  Here, Ms. Feist and her attorneys have not objected to the Magistrate Judge's ruling, including that portion finding that the protection does not apply to a certain category of documents—her decision not to object constitutes an acceptance, or at least a waiver as to any objection, of the Magistrate Judge's ruling concerning the application of this doctrine to her interests.  A non- party cannot step in and object when the party the doctrine is meant to protect had the opportunity to object, but did not.

### B.    The Correct General Standard of Review of the Magistrate Judge's order is Whether It Is Clearly Erroneous and Contrary to Law, not de novo

- 6 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

SER-224

**1.  The Order concerns a discovery dispute, which is not a dispositive matter.**

Rule 72(a) states in pertinent part, "a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within fourteen days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

A discovery dispute is not dispositive of a *party's* claims or defenses.  Rulings by a magistrate judge regarding discovery disputes are reviewed under the clearly erroneous and contrary to law standard. Here the motions to quash at issue were *referred to the Magistrate Judge as discovery disputes* by the District Court and were *expressly treated as such by the Magistrate Judge* under Rule 72(a). EFF did not raise any issue as to the referral of its Motion as a discovery dispute at that time.  It cannot be heard to complain now that it is dissatisfied with the ruling.

Substantively, EFF's arguments in this regard are also flawed.  EFF suggests that when a subpoena is issued from and challenged in a district court other than the one in which the underlying case is proceeding, a separate miscellaneous proceeding in the first district court causes the standard of review of the challenge to be altered. (EFF Motion at 2-1.)  The cases cited by EFF, *NLRB v. Frazier*, 966 F.2d 812 (3rd Cir. 1992) and *NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991 (N.D. CA 2004) are distinguishable because they involved administrative subpoenas *that were not ancillary to a district court action*.  EFF also cites to *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*, No. MISC 08–347(ARR)(MDG), 2010 U.S. Dist. LEXIS 40653 (E.D.N.Y. Feb. 5, 2010),  a memorandum and order in Eastern District of New York that, in a footnote, seems to extrapolate erroneously from those two cases to state without sound analysis that any motion to quash filed in a court separate from the court where the underlying case is pending is dispositive.   That extrapolation ignores that in discovery disputes concerning out-of-district judicial (rather than administrative) subpoenas the case itself will

- 7 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

SER-225

1  continue whatever the ruling on the motion to quash—and constitutes a line of reasoning that is in

2  conflict with that adopted by this district. *See Highfields Capital Management, L.P. v.* Doe, 385

3  F. Supp 2d 969, 971 (N.D. Cal 2005) (applying "clearly erroneous and contrary to law" procedure

4  and standard of review of a motion to quash a subpoena relating to a case in another district

5  court). "Although resolution of the motion will conclude the miscellaneous proceeding in this

6  district, plaintiff's complaint against defendant will remain pending before the District of

7  Massachusetts, irrespective of resolution of the miscellaneous proceeding". *Id. See also*

8  *Channelmark Corp. v. Destinations Products Int'l, Inc.*, No. 99 C 214, 2000 U.S.Dist. LEXIS

9  9854, at *4 (N.D. Ill. July 7, 2000). While the *Highfields* court also reviewed the Magistrate

10  Judge's order de novo, it explained that, "[t]he fact that the plaintiff suggests it may dismiss its

11  complaint if this Court grants the motion to quash does not serve to transform the motion into a

12  dispositive motion." *Highfields,* 385 F. Supp 2d at 971 n. 3.

13           **2.**     **The Standard of the Review Is Not Heightened by the Fact That the Order of the Magistrate Judge's Does Not Address in Particulars Each**

14                     **and Every Argument Offered by EFF Made in Its Motion to Quash**

15  Here, the Magistrate Judge, after reviewing the filings, determined that a hearing on the

16  motion was unnecessary, and cancelled a hearing that had been set and decided the matter on the

17  papers. As evidenced by that act, the Magistrate Judge clearly considered EFF's arguments. The

18  Magistrate Judge then complied with the requirement of Rule 72(a) by issuing a written order

19  stating his decision.

20  When the record indicates that a magistrate judge has considered all of the materials and he

21  subsequently does not, in his written order, address a particular argument made by the moving

22  party, his order may be considered an implicit denial of those arguments as facially

23  insubstantial—that is, as not even worth addressing in written form. *See Miller v. Automob*ile

24  Club of New Mexico, Inc., 420 F.3d 1098, 1117 (10th Cir. 2005)(where the record indicated that

25  district court considered all materials, "we may properly construe a district court's failure to

26  address arguments raised in a Rule 72(a) objection 'as an implicit denial of those arguments.'")

27  That the Magistrate Judge has rejected a particular argument of EFF by issuing a ruling that

28

- 8 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. CV12-80135 SI (NC)

**SER-226**

inherently rejects that argument but did not provide a specific analysis of that argument and his decision-making with respect to it does *not* constitute a basis for a different standard of review.

### 3. EFF's Presentation of a First Amendment Claim Does Not Change the Standard of Review or the Procedures for Obtaining Review

EFF's claim that its First Amendment Claim entitles it to a heightened standard of review is erroneous. Purely legal, constitutional claims are reviewed under the "contrary to law" standard identified in 28 U.S.C. § 636(b)(1), which is consistent with both the constitutional and statutory authority vested in the courts' district and magistrate judges. *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (1983). More significantly here, despite allowing the District Judge to "overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes or case precedent," the review procedure does not convert this review from one to be taken pursuant to Rule 72(a) and Civil L.R. 72-2, with its five page and other limitations, into one pursuant to Rule 72(b) and Civil L.R. 72-3(b). Put simply, EFF's abuse of the review process is inexcusable, and for this reason (as explained in Paxfire's separate motion seeking such remedy) EFF's instant motion should be struck.

### C. EFF Presents no Basis to Reverse the Order to Produce Documents

Whatever standard of review is applied, that portion of the Magistrate Judge's order to which EFF objects must be upheld by this Court. Paxfire is entitled to EFF's evidence, particularly with regard to EFF's communications with other researchers and with the law firm who ultimately solicited and now represent Ms. Feist: without this material, Paxfire would be unfairly deprived of an opportunity to develop its defenses and to prosecute its counterclaims. EFF is the entity that is ultimately behind the New York class action: it instigated this lawsuit, providing information to Ms. Feist's lawyers, before Ms. Feist was ever contacted by her lawyers for this suit and told about Paxfire, and doing so for the acknowledged purpose of causing the lawsuit to be filed.[16] Indeed, during her deposition Ms. Feist conceded she did not know if she ever had a search or keyword "redirected" by RCN through Paxfire.[17] Appropriately, Paxfire

---

[16] Second Eckersley Decl.
[17] Feist Depo. at 9, 196-98.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE         Misc. CV12-80135 SI (NC)

1  served document and deposition subpoenas on Mr. Eckersley and his EFF to learn what evidence

2  they have supporting the lawsuit they instigated.

3       As for its Counterclaims, while Paxfire understands that an argument exists, under the First

4  Amendment, that Paxfire may have a heightened burden of proving fault in a "sham" lawsuit or in

5  defamation, nothing in the First Amendment shields EFF and Eckersley from Paxfire's discovery

6  conducted in Paxfire's effort to satisfy this burden. Indeed, this heightened burden necessitates

7  that Paxfire be allowed broad discovery.

8       In *Herbert v. Lando*, 441 U.S. 153 (1977), the U.S. Supreme Court rejected precisely the

9  arguments now advanced by EFF, explaining that investigations into the "editorial process" for

10  falsehood or libelous reporting would not lead to self-censorship of stories that are documented

11  and true, but it would be "only knowing of reckless error [that] will be discouraged," something

12  which would not threaten the constitutionally protected freedom of the press. *Id.* at 173.

13  Moreover, EFF is reminded that, even under the California Constitution, Art. I, Sec. 2(a), it can be

14  held "responsible for the abuse of" the right to speak and publish freely. While speech and

15  advocacy, including associating with others in bringing a lawsuit, enjoy a degree of protection,

16  defamation and the bringing of a "sham" lawsuit are actionable wrongs subject to the ordinary

17  rules of discovery. Finally, no special privileges bar discovery of matters for which EFF and

18  Eckersley are *fact* witnesses in support of claims or defenses in the Feist action.

19       The subpoenas to EFF and Eckersley are narrowly drawn, seeking information specifically

20  relevant to Paxfire's defenses (and counterclaims). In her Rule 26(a)(1) Disclosures, Ms. Feist

21  expressly identified EFF and Mr. Eckersley as sources of information for her case in chief and for

22  discovery.[18] What Paxfire seeks includes evidence concerning the nature of the Netalyzer;

23  information that EFF obtained, directly and through its collaborations with the ISI researchers and

24  Paxfire's competitors (such as Google and Microsoft); and anything else that will assist Paxfire in

25  disproving the technical allegations in Ms. Feist's ECPA claim as well as her tort claims brought

26  under New York law. The document and Rule 30(b)(6) subpoenas also seek information that

27  ─────────────
[18] Plaintiff Feist's Revised Rule 26(a)(1) Disclosures, Dtk No. 21, Ex. K at 15, Case No. 12-mc-80135.

28
- 10 -

1  would demonstrate a common scheme or plan, motive, malice, and absence of mistake, evidenced

2  by Mr. Eckersley's and EFF's intentional failure to disclose their connections to Ms. Feist's

3  lawyers and her lawsuit in EFF's blog postings.

4        Mr. Eckersley, on his own behalf and acting on behalf of EFF, had submitted into the

5  record in this proceeding and in the underlying New York case, not one, but two declarations in

6  support of various positions taken by them and by Ms. Feist.  Such action constitutes a waiver by

7  the movants of any privilege regarding the topics discussed in those declarations.  Privileges

8  cannot be used simultaneously as a sword and as a shield.  *See* 1 *McCormick on Evidence § 93*

9  *(John W. Strong, ed., 5th ed.1999) (noting that client's conduct, such as partial disclosure , may*

10  *constitute waiver where it would be "unfair for the client to invoke the privilege thereafter"); see*

11  *also 3 Weinstein's Federal Evidence § 503.41 (Joseph M. McLaughlin, ed., 2d ed.1997) (waiver by*

12  *implication may occur whenever party takes a position that makes it unfair to protect attorney-*

13  *client communications, such as when a client testifies about portions of such communications or*

14  *client relies on attorney's advice as element of claim or defense); United States v. Workman, 138*

15  *F.3d 1261, 1263-64 (8th Cir.1998) (implied waiver is to prevent defendant from "selectively*

16  *assert[ing] the privilege to block the introduction of information harmful to his case after*

17  *introducing other aspects" of attorney-client communications that are beneficial; "attorney client*

18  *privilege cannot be used as both a shield and a sword").*  By introducing the declarations, Mr.

19  Eckersley and EFF must submit to depositions and document discovery at least as to the topics

20  contained in those declarations.

21  **III.**    **No Privilege or Constitutional Right Shields EFF from This Routine Discovery**

22        In commencing Paxfire's rebuttal to EFF's assertion of "its" various privileges, Paxfire

23  notes the following: although the Federal Rules allow restrictions on the disclosure of arguably

24  relevant information, *i.e.* Rules 45, 26(b)(3), 26(b)(4)(A), 26(b)(4)(C), the burden is on the person

25  objecting to discovery to demonstrate each element justifying secrecy.

26        The Supreme Court has expressly rejected EFF's First Amendment "defense" to discovery.

27  *Herbert*, 441 U.S. 153 (no "editorial process" privilege in defamation case; the heightened burden

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE     Misc. CV12-80135 SI (NC)

1    of proving "actual malice," rather than limits or ban on discovery, provides protection for First

2    Amendment rights).  "Given the required proof [actual malice], however, damages liability for

3    defamation abridges neither freedom of speech nor freedom of the press."  *Id*. at 160.  In *Herbert*

4    the Court went on to focus on whether discovery would impermissibly infringe the First

5    Amendment.  It found that it would not: "[T]hese cases [imposing the higher burden of proof did

6    not] suggest any First Amendment restriction on the sources from which the plaintiff could obtain

7    the necessary evidence to prove the critical elements of his cause of action. . . .  Inevitably, unless

8    liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer

9    would be open to examination. . . . [A]ccording an absolute privilege to the editorial process of a

10   media defendant in a libel case is not required, authorized, or presaged by our prior cases, and

11   would substantially enhance the burden of proving actual malice, contrary to the expectations of

12   *New York Times*, *Butts*, and similar cases."  *Id*. at 160, 169.  Indeed, the Court recognized that the

13   higher burden would lead to *more* discovery: "The plaintiff's burden is now considerably

14   expanded.  In every or almost every case, the plaintiff must focus on the editorial process and

15   prove a false publication attended by some degree of culpability on the part of the publisher."  *Id*.

16   at 176.

17          In rejecting the requested absolute "process" privilege, the Court observed that "the

18   suggested privilege for the editorial process would constitute a substantial interference with the

19   ability of a defamation plaintiff to establish the ingredients of malice as required by *New York*

20   *Times*."  *Id*. at 170.  Rejecting the suggestion that discovery into the "process" of preparing the

21   publication would impermissibly chill protected First Amendment activity, such "effects are

22   precisely what New York Times and other cases have held to be consistent with the First

23   Amendment.  Spreading false information in and of itself carries no First Amendment credentials.

24   "'[T]here is no constitutional value in false statements of fact.' . . . If such proof results in liability

25   for damages which in turn discourages the publication of erroneous information known to be false

26   or probably false, this is no more than what our cases contemplate and does not abridge either

27   freedom of speech or of the press."  *Id*. at 171-172 [citation omitted].

28

- 12 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

SER-230

1    The Court correctly explained that permitting discovery, as opposed to the recognition of

2  an absolute privilege, promotes the First Amendment value of accuracy without self-censorship:

3
> In resolving the issue whether the publication was known or suspected to be false,
> it is only common sense to believe that inquiry from the author, with an opportunity
4  to explain, will contribute to accuracy. If the publication is false but there is an
> exonerating explanation, the defendant will surely testify to this effect. Why
5  should not the plaintiff be permitted to inquire before trial? On the other hand, if
> the publisher in fact had serious doubts about accuracy, but published nevertheless,
6  no undue self-censorship will result from permitting the relevant inquiry. Only
> knowing or reckless error will be discouraged; and unless there is to be an absolute
7  First Amendment privilege to inflict injury by knowing or reckless conduct, which
> respondents do not suggest, constitutional values will not be threatened.
8

9    *Id*. at 173.

10    The Court also considered and rejected EFF and Eckersley's argument that discovery

11  would impermissibly interfere with internal deliberations claimed essential to EFF's advocacy

12  function:

13
> It is also urged that frank discussion among reporters and editors will be dampened
14  and sound editorial judgment endangered if such exchanges, oral or written, are
> subject to inquiry by defamation plaintiffs. We do not doubt the direct relationship
15  between consultation and discussion on the one hand and sound decisions on the
> other; but whether or not there is liability for the injury, the press has an obvious
16  interest in avoiding the infliction of harm by the publication of false information,
> and it is not unreasonable to expect the media to invoke whatever procedures may
17  be practicable and useful to that end. Moreover, given exposure to liability when
> there is knowing or reckless error, there is even more reason to resort to
18  prepublication precautions, such as a frank interchange of fact and opinion.
> Accordingly, we find it difficult to believe that error-avoiding procedures will be
19  terminated or stifled simply because there is liability for culpable error and because
> the editorial process will itself be examined in the tiny percentage of instances in
20  which error is claimed and litigation ensues. Nor is there sound reason to believe
> that editorial exchanges and the editorial process are so subject to distortion and to
21  such recurring misunderstanding that they should be immune from examination in
> order to avoid erroneous judgments in defamation suits.
22

23  *Id*. at 173-174. Here again, discovery promotes, rather than infringes, First Amendment values.

24    In *Seattle Times Co. V. Rhinehart*, 467 U.S. 20, 37 (1984), the Court did not bar discovery,

25  but instead approved the use of a protective order precluding the release outside current litigation

26  of broad discovery of a religious organization, including identities of persons making donations

27  over five-year period and amounts. *See also*, e.g. *Kerr v. U.S. Dist. Ct. for N. D.*, 426 U.S. 394,

28

- 13 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

**SER-231**

1   405-406 (1976) (approving use of protective order restricting access to discovered information and

2   potential for in camera review by district court in response to state claim of privilege in

3   confidential communications among prison decision makers).

4        The court in *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703, 706 (S.D..N.Y. 1983) also rejected

5   a similar claim that the First Amendment protected a self-critical appraisal internal report.

6   Relying on *Herbert*, the court observed that "inquisition" via discovery into the "editorial process"

7   implicated a "substantial and important interest, not lightly to be overridden in litigation, . . . [t]he

8   question in this case has, however, already been substantially answered by the Supreme Court in

9   *Herbert v. Lando*, which went much further."

10       **A.    No General Privilege Exists for Advocacy Organizations or Researchers Such
              as Movants**

11

12       There is no general rule or privilege exempting "advocacy," organizations, even those who

13  exercise their constitutional rights, from responding to routine discovery requests.  *See, e.g.,*

14  *Wilkinson v. FBI*, 111 F.R.D. 432, 437 (C.D. Cal. 1986) (no showing that discovery would impair

15  associational interests of civil rights group).  Here, Paxfire in no way seeks to *prevent* EFF from

16  investigating and advocating for civil liberties issues arising in the context of the Internet.[19]  EFF

17  has admitted that it instigated the lawsuit.  Paxfire simply seeks to discover what it knows about

18  the factual allegations Feist made against Paxfire in her Complaint, so as to understand the factual

19  basis for her Complaint.  Further, Ms. Feist has listed a number of organizations and persons,

20  including the three previously identified ICSI researchers and Google and Microsoft, as well as

21  EFF and Mr. Eckersley, as having information about her claims.[20]  Mr. Eckersley acknowledged,

22  in his second declaration, that he discussed Paxfire's technology with these entities, and Paxfire

23  must be allowed to inquire as to the specifics of this information that led him, EFF, and Ms. Feist

24  to bring the underlying lawsuit.  Paxfire is *not* seeking discovery because EFF and Eckersley

---

25  [19] *NAACP v. Button*, 371 U.S. 415 (1963) (unconstitutional ban on certain legal referrals; nothing
    to do with ordinary discovery) and similar cases are thus inapposite.  *See, e.g., Roberts v. U.S.*
26  *Jaycees*, 468 U.S. 609 (1984) (statutory ban on gender discrimination by civil organization did not
    infringe right of free association; same).
27  [20] Ex. J, Plaintiff Feist's Revised Rule 26(a)(1) Disclosures at 11, 13, 15.

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE            Misc. CV12-80135 SI (NC)

1  "exercised" *their* constitutional rights, but simply as part of its own right to investigate the merits

2  of (and defenses against) Feist's allegations. Moreover, civil liability, *e.g.* in tort, is routinely

3  imposed on those who have "exercised" a constitutional right.

4        EFF is nothing like the political groups given some qualified protection for internal

5  discussions and formulations of views. Here, the requested discovery primarily concerns EFF's

6  communications with outsiders, and internal information concerning Feist and Paxfire, and not the

7  internal formulation of general policy and strategy regarding its Internet advocacy. Any protection

8  should be limited to purely internal communications not specifically related to Feist or Paxfire.

9  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010) (limited protection).

10        Similarly, although there is protection for scientific research under the First Amendment,

11  there is no privilege barring discovery.[21]

12      **B.**     **No General Privilege Exists for Investigations**

13        EFF also seeks to avoid discovery because it is supposedly investigating potential abuses

14  of civil liberties and privacy on the Internet. While the justification for limiting discovery may be

15  higher where the alleged investigation is infused with promises of confidentiality to unnamed

16  sources, neither EFF nor Eckersley has interposed any such risk of betraying confidences: indeed,

17  they disclosed their information to Ms. Feist, the New Scientist, and to the public in blogs; and

18  they identified in their blogs and in Mr. Eckersley's declarations who and what were their sources.

19  Further EFF lacks the necessary *indicia* of a truly independent press to justify protection. *See,*

20  [21] *See, e.g., United States v. IBM*, 83 F.R.D. 92 (S.D.N.Y. 1979) (no professional fellowship
    privilege; no showing that discovery sought disclosure of genuinely confidential sources); *U.S. v.*
21  *Doe*, 460 F.2d 328 (1st Cir. 1972); *U.S v. Doe*, 332 F. Supp. 938 (D. Mass. 1971); *Deitchman v.*
    *E.R. Squibb & Sons*, 740 F.2d 556, 561 (7th Cir. 1984) (no absolute privilege blocked disclosure
22  from cancer registry in products liability case); *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519
    (M.D.N.C.1989) ("experts or researchers do not have any federal statutory, case law or common
23  law privilege which protects against their having to involuntarily share their expertise with the
    parties in the litigation. Nor does [state] law provide privilege protection for academic or
24  scientific researchers."); *In re Snyder*, 115 F.R.D. 211, 213 (D.Ariz.1987) ("there is no general
    academic privilege protecting [the researcher's information]"); *Burka v. U.S. HHS*, 87 F.3d 508,
25  520-21 (D.C. Cir 1996) (FOIA exemption 5 case applying civil discovery rules, "we cannot say
    that there is an established or well-settled practice of protecting research data in the realm of civil
26  discovery on the grounds that disclosure would harm a researcher's publication prospects."); *In re*
    *American Tobacco Co.*, 880 F.2d 1520, 1528-29 (2d Cir. 1989).

27

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE      Misc. CV12-80135 SI (NC)

*e.g., Chevron Corp. v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011) (denying press privilege and ordering disclosure of documentary "outtakes").  In *Chevron* the court explained:

> Those who gather and publish information because they have been commissioned to publish in order to serve the objectives of others who have a stake in the subject of the reporting are not acting as an independent press.  Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all. . . .  The privilege is designed to support the press in its valuable public service of seeking out and revealing truthful information. An undertaking to publish matter in order to promote the interests of another, regardless of justification, does not serve the same public interest, regardless of whether the resultant work may prove to be one of high quality. It is not the policy of the law to exempt such undertakings from the obligation to produce information relevant to a dispute before a court of law.  *Id.*

**C.     Neither California Nor New York Press Privilege Law Applies to EFF Because EFF is Not "Press"**

As a preliminary matter, and contrary to EFF's protestations, Paxfire does *not* agree that state law applies to this dispute.  To the contrary, federal law applies.

The major claim brought by Ms. Feist is under ECPA, a federal statute, pursuant to which federal question jurisdiction applies.  Paxfire seeks discovery to defend against this claim[22].  For this reason the justification, if any exists, for resisting discovery must arise from federal common or statutory law. *See Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc., No. 03cv352-BEN(WMC)*2005 U.S. Dist. LEXIS 47173, at *7 (S.D.Ca. Aug. 11, 2005); *Boyd v. City & County of San Francisco*, No. C-04-545MM(JLS) 2006 U.S. Dist. LEXIS 27647, at *10 (N.D.Ca. May 1, 2006) ("Assertions of privilege in federal question cases are governed by federal law, while state privilege law applies to purely state claims brought in federal court pursuant to diversity jurisdiction. . . .  State law claims that are pendent to federal question

---

[22] EFF apparently has seen that, in its opposition to the Motion by Jim Giles to Quash Paxfire's subpoena to Mr. Giles, Paxfire argues that state law applies.  What EFF overlooks is that the evidence sought from Mr. Giles concerns only Paxfire's counterclaims—defamation and tortious interference with contract which are purely New York state law claims. With regard to the subpoenas served upon EFF and Mr. Eckersley Paxfire is seeking to obtain evidence to defend itself from Ms. Feist's main claim, that is, an allegation that Paxfire violated ECPA.  This claim s founded in federal statutory law and thus federal law, not state law, applies to the questions of privilege and the scope of discovery.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

1  cases, however, are governed not by state law but by federal privilege law."); *see, e.g. Agster v.*

2  *Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (rejecting federal privilege for hospital peer

3  review report in prisoner death case); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d

4  100, 104 (3d Cir.1982) (federal rule favoring admissibility trumped state privilege claim); Fed. R.

5  Evid. 501, advisory committee note ("If the rule proposed here results in two conflicting bodies of

6  privilege law applying to the same piece of evidence in the same case, it is contemplated that the

7  rule favoring reception of the evidence should be applied."); *United States v. Nixon*, 418 U.S. 683,

8  710 (1974) (not even the President enjoys an absolute privilege).

9        For these reasons, and contrary to EFF's protestations to the contrary, California state law,

10  including its Shield Law, is not applicable.

11        Additionally, California's press privileges, Cal. Const., Art I, Sec. 2(b) (the Shield law)

12  and Cal. Evid. Code 1070(a), do not apply even assuming that California law does: here, EFF and

13  Eckersley are not press.  If courts were to regard EFF's blogs as "press," and Mr. Eckersley as a

14  "reporter," then the privilege would literally swallow up, and immunize from routine discovery,

15  every corporation, individual, or other entity that published a "news" blog, every researcher that

16  published in academic journals, and every vigilante with a Facebook page.  The ease and

17  efficiency of the Internet as a communications tool cannot expand the press privilege to a

18  leviathan that swallows the discovery rules.  If this is to be done, it must be done only by the

19  legislature.

20        EFF's website[23] describes itself as a militant warrior, with a staff of technologists and

21  activists, not as the "press" or media with a staff of neutral reporters:

22  
23      When our freedoms in the networked world come under attack, [EFF] is the first
line of defense. . . . From the beginning, EFF has championed the public interest in
every crucial battle effecting digital rights. . . . EFF achieves significant victories
on behalf of consumers and the general public.  EFF fights for freedom primarily in

24  the courts, bringing and defending lawsuits even when that means taking on the US
government or large corporations.  By mobilizing more than 140,000 concerned

25  citizens through our Action Center, EFF beats back bad legislation.  In addition to
advising policymakers, educates the press and public.

26

27  [23] *See* www.eff.org [visited 6/15/12].

28  

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE       Misc. CV12-80135 SI (NC)

1    By its own admission, EFF "educates" the press: it is not *the* press.  As a public figure,

2 EFF is frequently "in the news," but that is quite different than "reporting the news."  The shield

3 law is only available to a "newspaper, magazine, or other periodical publication"—not EFF's

4 website.

5    Moreover, EFF lacks the essential ingredient of media entitled to claim the privilege, *e.g.*,

6 independence.  Eckersley admits that he has been a "paid consultant" to Feist's counsel,

7 apparently on similar issues related to "network neutrality."[24]  There was at least some

8 consideration that Mr. Eckersley would act as a "paid expert consultant in this particular matter."[25]

9 And EFF instigated the suit for its own purposes.

10    Mr. Eckersley's lack of "press" independence is truly startling.  He claims to have had

11 detailed discussions with several self-styled experts at Berkley and in New York about Paxfire and

12 "confidential" conversations with Paxfire's competitors at Google, Yahoo, and Microsoft.  But he

13 didn't have a *single* communication with Paxfire concerning its supposedly troublesome activities.

14 If his concerns for civil liberties were genuine, he would simply have picked up the phone and

15 called Paxfire before launching a lawsuit filled with demonstrably false and defamatory

16 allegations.  His actions are those of a partisan, vigilante, or a shill for Paxfire's competitors, not

17 those of the "press" nor of a *bona fide* advocate for "civil liberties."

18    The core concern of the "shield law" is the protection of confidential sources.  Mr.

19 Eckersley states that he "implicitly or explicitly" promised by sources confidentiality,[26] but there

20 is no listing of specific conversations or of "sources."  Moreover, these "sources" are apparently at

21 ICSI, Google, Yahoo, and Microsoft, competitors of Paxfire, and the topics of discussions related

22 to Paxfire, not any "whistleblower' wrongdoing at their respective companies.  The information

23 communicated appears to be purely of a commercial nature and not the sort of sensitive

24 information related to intimate personal details, politics, medical privacy, or "internal" misconduct

25 that is the type of "confidential" information the "shield" was designed to protect.

26 _____
[24] Second Decl. P. Eckersley at ¶ 19.

27 [25] *Id*. at ¶ 20.  Also, as discussed above, it is apparent that EFF in actively soliciting *cy pres*
awards as part of its business model, and Paxfire believes that this is what it did here.

28 [26] *Id*. at ¶ 17.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

1    Similarly, the status of EFF (as a self-appointed internet activist) and Eckersley (as a paid

2  consultant, expert, and technologist) deny them any developing common law privilege for non-

3  party journalists.  EFF's function was to take down Paxfire and not to simply report on Paxfire's

4  activities as a neutral and independent reporter.  EFF absolutely has the right to be an activist but,

5  at least with respect to Paxfire, it cannot at the same time wrap itself in any of the press privileges.

6  In contrast, the non-party Seattle Times investigative reporter from whom discovery was sought in

7  *Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D. 679 (W.D. Wash. 2002), was

8  undisputedly an independent journalist.  There, the only question was whether he lost that status,

9  and forfeited the qualified privilege, because he was said to have a "bias" favoring plaintiffs who

10  were patients in a class action challenging a bone marrow research protocol.  The court held that

11  he did not lose the privilege because of this "bias."  *Id.* at 681.  The court observed that Wright

12  "was [not] being paid by plaintiffs, or shown that he was *otherwise motivated* to investigate

13  defendants for non-journalistic purposes."  (Italics added.)  *Id.*  Here, Eckersley had been paid by

14  Feist's counsel before, considered being paid in this case, now serves as an "informal consultant,"

15  and from the outset of his "investigation" had the non-journalistic purpose of protecting the purity

16  of the Internet from what he believed was abusive conduct by Paxfire, doing so by putting Paxfire

17  out of business—and doing so in league with Paxfire's competitors Google and Microsoft.  He is

18  not entitled to the privilege.

19    The privileges asserted by the "non-party" journalists in the cases cited by EFF stand in

20  stark contrast to the status of the movants in the present controversy.  Everything Plaintiff Feist

21  "knows" about the case she learned from EFF with its associated researchers.  The discovery

22  sought by Paxfire of EFF is unquestionably relevant.  Since Feist only learned about Paxfire from

23  EFF and its associates, the focus of the "actual malice" inquiry will be on EFF and Eckersley as

24  well as Ms. Feist as the true instigators of this litigation.  In contrast, the court in *Schoen v.

25  Schoen*, 48 F.3d 412, 416-17 (9th Cir. 1995) held only that disclosure could not be used to prove

26  ///

27

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

actual malice due to a timing issue and as would it be cumulative of evidence already in the record.

### D. Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield EFF

EFF claims that Rule 26(b)(4)(D) shields them from discovery because they were "informally consulted in preparation for trial." At most, that protection began on July 25, 2012; prior to that date there was no client and no litigation.

As discussed above, EFF has no standing to assert Ms. Feist's work product protections. Even if they had the standing to make such an objection, the objection would be unwarranted. The work product doctrine protects the work product of an attorney created during or in anticipation of litigation, *Hickman v Taylor*, 329 U.S. 495 (1947). Neither applies *before an attorney has a client*. *See Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568 (D.S.D. 2010) (holding that a factual investigation conducted prior to the decision by a person to bring a lawsuit does not invoke the work product doctrine) (citations omitted); *800 Front Street Corp. v. Travelers Property Casualty Co. of America*, No., CV 06-500(LDW)(ARL), 2006 U.S.Dist. LEXIS 84160, at *11 (E.D.N.Y. Nov. 20, 2006) (holding that work product doctrine applied where consulting expert was retained by counsel "shortly after they were given authorization by the bankruptcy court to pursue the insurance claim as well as litigation"). Thus, assuming that the protection applied, the earliest that it could apply is after July 25th, when Mr. Kim Richman walked Ms. Feist through the Netalyzr program and, as a result, convinced Ms. Feist to become his client to bring this lawsuit. Prior to this time, there was no client, no lawsuit, and nothing to which the confidentiality protections of the work product doctrine could attach.

Material prepared in the ordinary course of a business function and thereafter used in litigation does not, by such use, acquire the protection of the work product doctrine, *Lamar Advertising of South Dakota, Inc.*, 267 F.R.D. at 577-78; nor of the attorney client privilege, *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994)(work by engineering firm not covered by the attorney-client privilege where consultant's opinion was based on factual and scientific evidence rather than client confidence). As explained in *William A. Gross*

- 20 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

SER-238

*Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009) (citation omitted):

> However, there is no work product protection for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. . . .Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created "because of" actual or impending litigation. *Id.*

Here, Paxfire must prepare its defense.  It is entitled to explore in discovery the basis of Ms. Feist's allegations.  Ms. Feist has expressly alleged in her Complaint that she "learned" that her Internet searches were being wiretapped, profiled, and disclosed and sold to third parties from information provided by these researchers, by name, and by the Netalyzr used by these researchers and EFF.  As explained by the District Court in *Securities Exchange Commission v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009):

> Rule 11 of the Federal Rules of Civil Procedure [requires] all parties to have "evidentiary support" for the factual contentions in their pleadings.  Given that requirement, producing the compilations of documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint. *Id.*

The information held by EFF is needed by Paxfire to prepare its defense as well as its counterclaims; it is unable to get this information from any other source.  As explained, the Netalyzr cannot provide the information that Ms. Feist claims that it did.  Thus, Paxfire must obtain the documents from persons who provided Ms. Feist the information on which she based her complaint. This includes EFF.

Finally, to have protection under the doctrine, the information must be confidential.  EFF has discussed the information sought through its Internet web site.  Paxfire now seeks the specifics.  No confidentiality exists.

## IV.    The Need for Discovery Outweighs Any Speculative Need for Secrecy

To the extent a balancing of competing interests is required to resolve this dispute,[27] that balance favors discovery.  Relevant factors include the nature of the suit; the extent to which

---

[27] *See, e.g., In re Application of Consumers Union of U.S.*, 495 F. Supp. 582 (S.D.N.Y. 1980).

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE            Misc. CV12-80135 SI (NC)

1   information sought goes to the "heart of the claim" of the party seeking disclosure; whether the

2   party seeking discovery has exhausted other sources for the information in question; and the

3   impact of requested discovery on First Amendment interests. *Shoen v. Shoen*, 5 F.3d 1289, 1293

4   (1993). EFF and Eckersley are not independent journalists entitled to claim the journalists'

5   privilege for non-parties: they instigated this suit. Eckersley even considered, for a time, being a

6   paid consultant, but now claims to be an "informal" consultant to Feist's counsel. Thus, there is

7   an insufficient "First Amendment" interest at stake to trigger any balancing inquiry, even under

8   the qualified privilege for non-party journalists.

9          Even if there were, Paxfire meets any test. The requested discovery goes to the heart of

10  both the Feist suit against Paxfire, *e.g.*, what did Paxfire "do," if anything, that "hurt" Feist, *and* to

11  Paxfire's defamation/interference counterclaims against Feist, e.g., did "she" act with actual

12  malice in making false and defamatory allegations against Paxfire. Paxfire already deposed her,

13  thus exhausting "her" knowledge. Her depositions as well as her Rule 26(a)(1) disclosures

14  provide no basis for her allegations: she testified that she basically had *no* independent knowledge

15  concerning Paxfire and that everything she "knew" she learned from EFF and its associates. To

16  block this discovery would be to unfairly impede Paxfire from gathering key evidence central to

17  its defenses and counterclaims.

18         Here, put simply, EFF and Mr. Eckersley are no more than fact witnesses. Feist had no

19  idea about Paxfire or what Paxfire allegedly "did" that "injured" Feist until EFF told her counsel.

20  It was EFF and Eckersley that learned, through their own work and through their colleagues, the

21  "facts" ultimately set forth in Feist's complaint. Thus, they are more akin to a patient's treating

22  physician and not to a "distant" academic expert, and subject to routine discovery and no

23  protection applies.[28]

---

[28] *See, e.g., Dung Ngo v. Standard Tools & Equipment, Co., Inc.*, 197 F.R.D. 263 (D. Md. 2000);
*Williams v. Rene*, 886 F. Supp. 1214 (D.V.I. 1995), rev'd on other grounds, 72 F.3d 1096 (3d Cir.
1995); *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435 (W.D. N.Y. 1985) (Neurologist who had
been treating plaintiff for back injuries over prior 14 years, and whom plaintiff had designated an
expert witness for trial, would not be considered an "expert" but rather an "actor" or "viewer.");
*Keith v. Van Dorn Plastic Machinery Co.*, 86 F.R.D. 458 (E.D. Pa. 1980) (an "actor or viewer"
expert witness refers, for example, to a doctor who performed an operation that gave rise to a
malpractice claim, or to an actuary who witnessed an automobile accident, and such witnesses

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

## V.     CONCLUSION

The Magistrate Judge's Order must be reviewed under the clearly erroneous and contrary to law standard.  Except to those objections separately made by Paxfire in its previously and timely filed Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge[29], the Order must be upheld and the documents called for promptly produced.

To the extent that the Magistrate Judge's order did not expressly address category 7 documents, those being external communications with Paxfire's competitors: Google, Microsoft and Yahoo, the Order did not quash the subpoenaed production.  The order should be upheld as to that category of documents as they are relevant to the underlying case in New York[30]; and there is no basis under privilege or other law for documents evidencing such communications with commercial entities and competitors of Paxfire to be withheld.

Dated:  September 12, 2012            BERGESON, LLP


                                      /s/
                                      Jaideep Venkatesan

                                      Attorneys for Defendant-Counterclaim Plaintiff
                                      PAXFIRE, INC.


Dated:  September 12, 2012            ANDREW GROSSO & ASSOCIATES

                                      /s/
                                      Andrew Grosso, *pro hac vice*

                                      Attorneys for Defendant-Counterclaim Plaintiff
                                      PAXFIRE, INC.

---

should be viewed as fact witnesses); *Leviathan, Inc. v. M/S Alaska Maru*, 86 F.R.D. 8 (W.D. Wash. 1979); *Barkwell v. Sturm Ruger Co., Inc.*, 79 F.R.D. 444, 446 (D. Alaska 1978) (information acquired and opinions formed by defendant's expert prior to his retention by defendant was discoverable by plaintiffs without regard to the expert's status as an expert, since the rule does not apply to facts known or opinions held that were not acquired or developed in anticipation of litigation); *Harasimowicz v. McAllister*, 78 F.R.D. 319 (E.D. Pa. 1978); *Norfin, Inc. v. Intern. Business Machs. Corp.*, 74 F.R.D. 529 (D. Colo. 1977).
[29] Dtk No. 31, Case No. 12-mc-80135.
[30] Second Eckersley Decl.; *see* Cease and Desist Letter from Google to RCN Corp., Dtk. No. 20, Attach. 1, Case No. 12-mc-80135.

- 23 -

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. CV12-80135 SI (NC)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 15, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 15, 2014        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By             */s/ Tenaya Rodewald*
                              TENAYA RODEWALD
                       Attorneys for Third-Party Appellees
                    ELECTRONIC FRONTIER FOUNDATION
                        and PETER ECKERSLEY