**Docket No. 12-17506**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———◆———

BETSY FEIST, PETER ECKERSLEY
and ELECTRONIC FRONTIER FOUNDATION,

*Appellees,*

v.

RCN CORPORATION and PAXFIRE, INC.,

*Appellants.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,
Case No. 3:12-mc-80135-SI with Related Case Nos. 3:12-mc-89119, 3:12-mc-80121
and 3:12-mc-80140 · Honorable Susan Y. Illston*

# REPLY BRIEF OF APPELLANT

ANDREW GROSSO, ESQ.
ANDREW GROSSO & ASSOCIATES
Georgetown Place
1101 Thirtieth Street, N.W., Suite 300
Washington, D.C. 20007
(202) 298-6500 Telephone
(202) 298-5599 Facsimile

*Attorney for Appellant,
Paxfire, Inc.*




# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ........................................................................................1

   I.    EFF'S ERRORS ......................................................................1

         A.    Paxfire's Conduct Was Lawful ...................................1

         B.    Paxfire Made All Relevant Arguments in the Court Below and This Appeal ..............................................4

         C.    Peter Eckersley Affirmatively Misrepresented EFF's Role .......5

         D.    The Conspiracy Started in April 2011 ........................7

         E.    The Subpoenas Were Properly Tailored ....................8

   II.    PAXFIRE IS ENTITLED TO EFF'S EVIDENCE ...........................10

         A.    Paxfire Addressed the Issue of Confidentiality and Intellectual Property Under Rule 45(d)(3)(B)(ii) ....................10

         B.    The Documents Paxfire Seeks Are Protected By Neither the Attorney-Client or Reporter Privileges ..............................12

         C.    Neither the Work Product Privilege Nor Its Codification Attach to Documents Produced Before an Actual Party Considers Litigation ...............................................14

         D.    Neither Rule 26(b)(4)(D) nor the Work Product Doctrine Applies ......................................................16

         E.    "In Anticipation of Litigation" Does Not Extend to the Conduct of EFF's Routine Business Practices and Investigations ...............................................17

         F.    EFF Solicited the Litigation, and Thus Is Not an Expert Protected by Rule 26(b)(4)(D) .................20

   III.    PAXFIRE HAS NEED FOR THE DOCUMENTS ...........................21

   IV.    THE FIRST AMENDMENT DOES NOT PROTECT EFF'S EVIDENCE ..................................................................24

         A.    EFF Is Not Accorded the Protections of a Political Association ...............................................24

B.     EFF IS Not Accorded the Protections of the Press ................... 25

C.     No General Privilege Exists for Advocacy Organizations or Researchers ........................................................................... 27

D.     No General Privilege Exists for Investigations ........................ 28

CONCLUSION ............................................................................................. 29

CERTIFICATE OF COMPLIANCE ...................................................................... 30

DECLARATION OF SERVICE ........................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*800 Front Street Corp. v. Travelers Property Casualty Co. of America*,
2006 U.S. Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006) ...........................17

*Am. Mfg. Services, Inc. v. Official Comm. of Unsecured Creditors of Match Electronics Group, Inc.*,
2006 U.S. Dist. LEXIS 22987, 2006 WL 839550
(N.D.N.Y. Mar. 28, 2006) ........................................................................7, 8

*Anker v. G.D. Searle & Co.*,
126 F.R.D. 515 (M.D.N.C.1989)..................................................................12

*Baker v. Goldman Sachs & Co.*,
669 F.3d 105 (2012) .....................................................................................13

*Buckley v. Valeo*,
424 U.S. 1 (1976)..........................................................................................25

*Burka v. HHS*,
67 F.3d 508 (D.C. Cir 1996).........................................................................12

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
341 N.E.2d 569 (N.Y. 1975) ..................................................................21, 22

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004)......................................................................................25

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) .........................................................................28

*Clinton v. Jones*,
520 U.S. 681 (1997)......................................................................................24

*Cox v. Piper, Jaffray & Hopwood, Inc.*,
848 F.2d 842 (8th Cir. 1988) .......................................................................20

*Danahy v. Meese*,
446 N.Y.S. 611 (N.Y. App. Div. 1981)..........................................................8

*Deitchman v. Squibb*,
740 F.2d 556 (10th Cir. 1984) .....................................................................12

*Durflinger v. Artiles*,
727 F.2d 888 (10th Cir. 1984) .....................................................................15

iii

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 939 (N.D. Ca. 2013)................................................................29

*Herbert v. Lando*,
    441 U.S. 153 (1979).............................................8, 9, 22, 24, 26, 27

*In re Falk*,
    332 F. Supp. 938 (D. Mass. 1971).................................................................12

*In re Google Buzz User Privacy Litigation*,
    10-00672-JW (N.D. Cal. 2010) ......................................................................29

*In re Groupon, Inc.*,
    2012 U.S. Dist. LEXIS 185750 (S.D. Ca. 2012)...........................................29

*In re Popkin*,
    460 F.2d 328 (1st Cir. 1972)..........................................................................12

*In re Snyder*,
    115 F.R.D. 211 (D.Ariz.1987)........................................................................12

*In the Matter of the Application of American Tobacco Co.*,
    880 F.2d 1520 (2d Cir. 1989) ........................................................................12

*Kerr v. U.S. Dist. Ct. for N. D.*,
    426 U.S. 394 (1976).......................................................................................25

*Kirch v. Embarq Management Co.*,
    2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011), *aff'd*,
    702 F.3d 1245 (10th Cir.), *cert. denied*,
    __ U.S. __, 133 S. Ct. 2743 (2013) ..............................................................4

*Lagarde v. Support.com, Inc.*,
    2013 U.S. Dist. LEXIS 67875 (N.D. Ca. 1013) ...........................................29

*Lamar Advertising of South Dakota, Inc. v. Kay*,
    267 F.R.D. 568 (D.S.D. 2010)........................................................................17

*Marino v. Grupo Mundial Tenedora, S.A.*,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011) ............................................................7

*Med-Sales Associates, Inc. v. Lebhar-Friedman, Inc.*,
    663 F. Supp. 908 (S.D.N.Y. 1987) ................................................................22

*NAACP v. Button*,
    371 U.S. 415 (1963)........................................................................................27

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).................................................................22, 24

*Oakberg v. Zimmer, Inc.*,
211 Fed. Appx. 578 (9th Cir. 2006) ...........................................21

*Perry v. Schwartzenegger*,
591 F.3d 1147 (9th Cir. 2009) .........................................1, 24, 25

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)......................................................................27

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)........................................................................25

*Securities Exchange Commission v. Collins &Aikman Corp.*,
256 F.R.D. 403 (S.D.N.Y. 2009)..................................................23

*United States Inspection Servs. v. NL Engineering Solutions LLC*,
268 F.R.D. 614 (N.D. Ca. 2010).................................................15

*United States v. IBM*,
83 F.R.D. 92 (S.D.N.Y. 1979).....................................................12

*United States v. Nerlinger*,
862 F.2d 967 (2d Cir. 1988) ...........................................................7

*United States v. Nixon*,
418 U.S. 683 (1973)......................................................................24

*United States v. Ruehle*,
583 F.3d 600 (9th Cir. 2009) .........................................................1

*United States v. Zabare*,
871 F.2d 282 (2d Cir.), *cert. denied*,
493 U.S. 856 (1989).......................................................................7

*Wilkinson v. FBI*,
111 F.R.D. 432 (C.D. Cal. 1986).................................................27

*William A. Gross Construction Associates, Inc. v. American Manufacturers
Mutual Insurance Co.*,
262 F.R.D. 354 (S.D.N.Y. 2009)..................................................19

## STATUTES AND RULES

18 U.S.C. § 2510 *et seq*...................................................................*passim*

18 U.S.C. § 2511(2)(a)(i) ...................................................................2

18 U.S.C. § 2511(2)(d)........................................................................2

18 U.S.C. § 2511(3)(b).........................................................................2

Fed. R. Civ. P. 26...............................................................................20

Fed. R. Civ. P. 26(a)(1).......................................................................23

Fed. R. Civ. P. 26(b)(4)(D) ..................................................16, 17, 20, 21

Fed. R. Civ. P. 45(d)(3)(B)(ii) ...................................................10, 11, 12

Fed. R. Evid. 801(d)(2)(E) ..................................................................27

## OTHER AUTHORITIES

15A C.J.S. Conspiracy .........................................................................8

Ed Krol, The Whole Internet 19-20 (1992) .............................................2

New York's Shield Law, N.Y. Civ. Rights Law § 79-h(b)-(c)
(McKinney 2011)...............................................................................13

## ARGUMENT

Paxfire addresses the arguments of the Electronic Frontier Foundation ("EFF") and Peter Eckersley (collectively "EFF," unless otherwise apparent in context) in three parts: (a) *first*, addressing issues that appear generic to the case—that is, errors that infect EFF's entire brief (the "EFF Brief"); (b) *second*, rebutting more specific arguments made by EFF in response to Paxfire's Initial Brief (the "Paxfire Brief"); and (c) third, responding to EFF's new, political association arguments. Paxfire's primary purpose in this Reply Brief is to direct the Court's attention to those issues concerning the right of a party to discovery and fact-finding inherent in any judicial process, including the lawsuit and discovery dispute below.

EFF raises numerous privileges in its Brief; thus, we note that review of a claim of privilege is *de novo*. *United States v. Ruehle*, 583 F.3d 600, 606 (9th Cir. 2009) (attorney-client privilege); *Perry v. Schwartzenegger*, 591 F.3d 1147 (9th Cir. 2009) (First Amendment privilege).

# I. EFF'S ERRORS

## A. Paxfire's Conduct Was Lawful

EFF asserts that Paxfire "admits" it "intercepted" and "examined" the searches of Internet users.[1] This is incorrect in that it is misleading.

The applicable law concerning the interception of electronic communications is the Electronic Communications Privacy Act ("ECPA" or the Act"), 18 U.S.C. § 2510 *et seq*., often referred to as the Wiretap Act. The Act includes a broad definition for the term "interception"[2]; however, it also distinguishes between lawful and unlawful interception,[3] and provides that the disclosure of lawfully intercepted electronic signals is not a violation of the Act.

Although Paxfire intercepted electronic signals, it did so lawfully.[4] Thus, the accusations—*e.g*., that Paxfire criminally violated the Wiretap Act—that EFF and Betsy Feist (Plaintiff in the New York putative class action) caused to be published in *New Scientist* were false and defamatory. So, too, were supporting statements made by EFF in its blog post. Additional statements made by both *New*

---

[1] EFF Brief at 3 (USCA Doc. 40).

[2] 18 U.S.C. § 2510(12).

[3] For examples, see 18 U.S.C. § 2511(2)(a)(i), (d), and (3)(b).

[4] Important is the following: the entire Internet, through its component routers and servers, operates on the continuous and sequential transmission, interception and retransmission of signals. To say that someone "intercepted" an electronic signal, without saying more, is tantamount to saying that someone operated a computing or network device. When Paxfire acknowledges that it "intercepted" electronic signals, it admits nothing more than that it operated on the Internet. Doing so is how the Internet functions. *See* ED KROL, THE WHOLE INTERNET 19-20 (1992).

*Scientist* and EFF, such as Paxfire's supposed "profiling" of searches made by Internet users and the "selling" of such profiles, were similarly false and defamatory.[5]

EFF argues that Paxfire "conceded" that it examined and logged user searches.[6] This is false and otherwise misleading. Paxfire acknowledges that user queries passed through its systems—doing so legally; and that it "logged" some user information—for the purpose of system maintenance and corrections, but without logging the additional data necessary to track or profile individual users.[7] Thus, the allegations of EFF, the ICSI researchers, and Betsy Feist—that Paxfire profiled users' search histories and sold them—was defamatory. As discussed in Paxfire's Brief, EFF, the researchers, and Mrs. Feist knew that their "Netalyzr" could not collect the information necessary to establish the truth of their (defamatory) assertions.[8]

EFF also ignores this: end users—including Mrs. Feist—gave their Internet Service Providers ("ISPs") permission to access their search queries by agreeing to their ISPs' End User Licensing Agreements, Privacy Policies, and Terms of

---

[5] EFF retracted several of its defamatory statements found in its original blog post, doing so only after they had done their damage. (Doc. 22-4 at 74-76.)
[6] EFF Brief at 12-13.
[7] Paxfire's Counterclaims (RE 306-09).
[8] RE 243, Declaration of Eugene Spafford.

Service[9]; and the term "interception" in ECPA excludes interception by a device being used by an ISP in its ordinary course of business. Indeed, what Paxfire did was little different, if it different at all, from the error redirection and search suggestions provided today by services such as Bing.

As the purpose of this appeal is not to litigate the complaint pending in New York, Paxfire here simply denies doing the things that EFF argues were unlawful.

## B. Paxfire Made All Relevant Arguments in the Court Below and This Appeal

EFF argues that Paxfire failed to raise either in this Court or before the District Judge various issues and therefore waived them. Paxfire will address most of these erroneous assertions *infra*. However, it addresses now one glaring error made by EFF in this regard.

EFF correctly notes[10] that Paxfire filed its own motion challenging portions of the Magistrate's Judge's Order[11]; that the District Court did not set a briefing schedule for that Order; and that pursuant to the District Court's Local Rules the

---

[9] See Paxfire's Affirmative Defenses (RE 298-99); see also *Kirch v. Embarq Management Co.*, 2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011), *aff'd*, 702 F.3d 1245 (10th Cir.), *cert. denied*,__ U.S. __, 133 S.Ct. 2743 (2013) (terms of service can grant consent by Internet users to ISPs and their contractors for use made of electronic communications; and the term "interception" under ECPA excludes any interception by any device being used by an ISP in the ordinary course of its business).

[10] EFF Brief at 16-17.

[11] Motion for Relief (Doc. 31).

4

motion was denied.  EFF then incorrectly argues that Paxfire failed to appeal this denial thereby waiving the issues therein.

What EFF overlooks is that the District Court expressly included this denial in the Order from which Paxfire now appeals.[12]   The denial was subsumed in that Order, and Paxfire waived no arguments asserted in that motion.

## C. Peter Eckersley Affirmatively Misrepresented EFF's Role

We turn to the question of Mr. Eckersley's two contradictory declarations: that submitted in the Northern District of California, and the other in the Southern District of New York.  Absent the District Court's reliance on Mr. Eckersley's assertion that he, on behalf of EFF, was an expert for Betsey Feist and her attorneys—*before Mrs. Feist was even made aware that Paxfire existed or that she might be a plaintiff suing Paxfire*—the underlying support for the District Court's Order substantially evaporates.

In New York, Mr. Eckersley swore (bold added): "I am not a consultant or expert for plaintiff in this case, **and** I have not received and will not receive compensation **for providing this declaration**."

Mr. Eckersley's assertion is clear: he was neither a consultant nor an expert, formal or informal, compensated or uncompensated, for Betsey Feist—period.  He

---

[12] RE 4.

then explained additionally that he had not and would not receive compensation *for providing the declaration*.

Now, after almost three years, he seeks to re-word his declaration to read that he was an unpaid consultant for Betsey Feist all along.[13] Mr. Eckersley's efforts, and through him the efforts of EFF, to make contradictory assertions before different federal courts must be viewed for what it is: an effort to mislead the courts. This, this Court must not allow.

EFF argues that Paxfire failed to challenge EFF's and Mr. Eckersley's assertion that they served as Feist's consultants. This is incorrect. Paxfire repeatedly, before both the Magistrate and District Judges, argued that EFF's presentment of themselves as Feist's experts was a "sham"[14]:

> [T]here are no written consulting agreements with the Electronic frontier Foundation ("EFF") or its projects director, Peter Eckersley— merely a flow of information transmitted by EFF as part of its routine business function . . . .

and

> [T]he information generated by the "consultants," these being Peter Eckersley . . . , that is the subject of these subpoenas was generated in the routine course of their work on behalf of EFF . . . . This is demonstrated by the articles and other publications issued by these persons and organizations prior to, at the time of, and after the filing of Ms. Feist's lawsuit . . . .

---

[13] Paxfire will hereafter use the terms "expert" and "consultant" interchangeably.

[14] Paxfire's Opposition to Plaintiff Feist's Motion to Quash Subpoenas to Consultants and Request for Protective Order at 1 (In Case No. 3:12-mc-80121: Doc. 13 at 2).

Before the District Judge, Paxfire argued that "EFF and Mr. Eckersley are no more than fact witnesses."[15]  Paxfire introduced the First Declaration of Peter Eckersley into the record three times.[16]

## D. The Conspiracy Started in April 2011

EFF complains that the conspiracy alleged by Paxfire could have only begun on July 24, 2011 or later, as Betsy Feist was first solicited to bring her lawsuit on that day.[17]  EFF demonstrates a lack of comprehension regarding the law of conspiracy.  People can join and leave a conspiracy at various times; however, they are liable for the acts of their co-conspirators that occurred during their own participation *and* prior to when they joined.  *United States v. Zabare*, 871 F.2d 282, 287 (2d Cir.), *cert. denied*, 493 U.S. 856 (1989) (holding that conspirator who joins a conspiracy after its inception may be held liable for the prior bad acts of its co-conspirator); *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (individuals who conspire separately with a third party may be held liable for conspiring together); *see also Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011); *Am. Mfg. Services, Inc. v. Official Comm. of*

---

[15]  Opposition of Defendant Paxfire to Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge at 22 (SER at 240).

[16]  Before the Magistrate Judge, RE 335; Before the District Judge, RE 191 and Doc. 31-1 at 9.

[17]  EFF Brief at 11-12.

*Unsecured Creditors of Match Electronics Group, Inc.*, 2006 U.S. Dist. LEXIS 22987 at *20 n. 3, 2006 WL 839550 at*6 n.3 (N.D.N.Y. Mar. 28, 2006) ("A civil conspiracy is [ ] a means for establishing vicarious liability for an underlying tort, or a means of establishing joint liability for tortious conduct.") (quoting 15A C.J.S. Conspiracy § 8); *Danahy v. Meese*, 446 N.Y.S. 611, 614 (N.Y. App. Div. 1981).

Paxfire alleged that: EFF and the ICSI researchers commenced the conspiracy at an unknown time prior to involvement of Mrs. Feist; Mrs. Feist joined on or about July 24, 2011; and she is liable for the acts of EFF and the ICSI researchers.[18] These allegations were upheld by the District Court in New York on Mrs. Feist's failed motion to dismiss.[19] That Paxfire did not name EFF or the ICSI researchers as defendants has no bearing: Feist is responsible for the conduct of her coconspirators occurring prior to her joining the conspiracy, including those not named as defendants.

## E. The Subpoenas Were Properly Tailored

EFF argues that the subpoenas were overly broad and burdensome.[20] Given the heightened burden placed upon a plaintiff to establish malice in a defamation case, Paxfire is entitled to the evidence that it seeks, *Herbert v. Lando*, 441 U.S.

---

[18] Counterclaims to Paxfire's First Amended Answer, Affirmative Defenses, and Counterclaims ¶¶ 40-44; RE. 309-10.

[19] Transcript of Proceedings in the United States District Court, S.D.N.Y., at 40 (RE 188-89).

[20] EFF Brief at 14.

8

153, 169 (1979) (discussed *infra*). The subpoenas were drafted to determine whether any defense that Mrs. Feist might pose was viable.[21] In essence, Paxfire is seeking to prove a negative: that Mrs. Feist did *not* have a justified basis for publicizing false statements in the press, and that her co-conspirators EFF and Mr. Eckersley similarly did not have a legitimate basis for their statements.

Paxfire has reduced the scope of the document it seeks, to the period April 1 to July 24, 2011[22]—a compromise that EFF substantially ignores. In fact, EFF misstates Paxfire's position concerning the breadth of the enforcement of the subpoena that Paxfire now seeks. Citing page 27 of Paxfire's Brief, EFF argues that "Paxfire claims it seeks 'documents referencing Ms. Feist, defendants, or Ms. Feist's counsel from April 1, 2011, to August 4, 2011' . . ." (that is, beyond July 24th), and that Paxfire somehow "blatantly misrepresents the documents it seeks."[23] A plain reading of Paxfire's language on that page shows that Paxfire was referring to the *original* scope of the subpoena, not the narrower scope on appeal.

---

[21] Significantly, Paxfire sought to compromise regarding the scope of the subpoenas *duces tecum*—and EFF rebuffed Paxfire's negotiation attempts. See Letter from T. Rodewald to A. Grosso (May 18, 2012) (Doc. 56-7, confirming the offer to compromise). To the extent that EFF considers the original subpoena *duces tecum* as too broad or too burdensome, this was a problem of its own making.
[22] Paxfire Brief at 11-12.
[23] EFF Brief at 41.

## II. PAXFIRE IS ENTITLED TO EFF'S EVIDENCE

The underlying dispute in New York is a judicial lawsuit. Paxfire is entitled to EFF's evidence to prosecute its counterclaims and for its defense.

### A. Paxfire Addressed the Issue of Confidentiality and Intellectual Property Under Rule 45(d)(3)(B)(ii)

EFF incorrectly argues that Paxfire failed to challenge one of "three prongs" in the District Court's opinion, citing a reference therein to Fed.R.Civ.P. 45(d)(3)(B)(ii).[24] This rule pertains to the confidentiality and the uncompensated use of an expert's intellectual property. The District Court said, as quoted by EFF in its Brief: "[T]he discovery sought by Paxfire—which covers a time before Feist was a 'party'—constitutes EFF's intellectual property."

Paxfire's Brief directly challenged the Court's basis for quashing the subpoena on this ground. It argued, both, that EFF's information was not properly "expert knowledge" and that EFF waived *any* protection of confidentiality.

EFF and the ICSI researchers publicly disclosed both the materials at issue and their substance. As explained in Paxfire's Brief, they did so in EFF's blog, on the Internet; in academic *fora*, in papers presented to symposia and otherwise published; to *New Scientist*, that is, the press; and to Betsey Feist and her attorneys

---

[24] See EFF Brief at 22-26.

for disclosure in a lawsuit.[25]   To the extent that confidentiality protections might have been applicable under Rule 45(d)(3)(B)(ii) or *any* applicable doctrine, EFF waived such protections to their "intellectual property"—Paxfire expressly argued such.[26]

Paxfire also provided substantial legal authority forcefully demonstrating that the District Court misapplied this rule; that EFF and Mr. Eckersley were not experts but were instead fact witnesses; and, thus, the results of their investigation of Paxfire are fully discoverable.[27]   Paxfire cited multiple cases as support.[28]

By applying Rule 45(d)(3)(B)(ii) to EFF's information, the District Court erred by concluding that EFF kept its information confidential–or ever intended to. Mr. Eckersley acknowledged in both his declarations that it was always the intention of EFF to publish its information.   Further, contrary to the District Court's speculation, Paxfire never sought this information to "short-cut" its own expert's work: Paxfire actually hired its own expert.[29]   Also explained to, but ignored by, the District Court, Paxfire requires the information sought to prove that Feist and her co-conspirators acted with gross recklessness, that is, with malice, in that they did not have the factual basis for their allegations.   Further, Paxfire

---

[25] See Paxfire Brief at 23-25, 23 n. 35, 24 n. 36-39; Opposition of Paxfire at 4-17 (Doc. 21.)

[26] See Paxfire's Initial Brief at 23-25 (USACA Doc. 26-1).

[27] See Paxfire Brief at 22.

[28] Paxfire Brief at 22 n. 34.

[29]  RE 243, Decl. of Eugene Spafford; see also Paxfire Brief at 7.

substantially seeks communications, not intellectual property.[30]  No protections

under Rule 45(d)(3)(B)(ii) exist.[31]

## B. The Documents Paxfire Seeks Are Protected By Neither the Attorney-Client or Reporter Privileges

Paxfire directly challenged the scope and waiver of EFF's attorney-client

privilege, and *any* application to it of a "reporter's privilege."[32]

Paxfire pointed to EFF's privilege log, submitted to the Magistrate Judge for

review, as available for the proper evaluation of privileges for specific

documents.[33]  It also addressed the lack of confidentiality in much of the material

in that log, inasmuch as EFF published the material to the world and thereby

waived confidentiality protections. See *infra*.

---

[30] Paxfire Brief at 12.

[31] *See, e.g., United States v. IBM*, 83 F.R.D. 92 (S.D.N.Y. 1979) (no professional fellowship privilege; no showing that discovery sought disclosure of genuinely confidential sources); *In Re Popkin*, 460 F.2d 328 (1st Cir. 1972); *In Re Falk*, 332 F. Supp. 938 (D. Mass. 1971); *Deitchman v. Squibb*, 740 F.2d 556, 561 (10th Cir. 1984) (no absolute privilege blocked disclosure from cancer registry in products liability case); *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519 (M.D.N.C.1989) ("experts or researchers do not have any federal statutory, case law or common law privilege which protects against their having to involuntarily share their  expertise with the parties in the litigation."); *In re Snyder*, 115 F.R.D. 211, 213 (D.Ariz.1987) ("there is no general academic privilege protecting [the researcher's information]"); *Burka v. HHS*, 67 F.3d 508, 520-21(D.C. Cir 1996) ( "we cannot say that there is an established or well-settled practice of protecting research data in the realm of civil discovery on the grounds that disclosure would harm a researcher's publication prospects."); *Application of American Tobacco Co.*, 880 F.2d 1520, 1528-29 (2d Cir. 1989).

[32] EFF Brief at 26.

[33] Paxfire Brief at 17, 21, 30.

EFF misstates the District Court's Order regarding the reporter's privilege: the Court did not address this privilege, except to say that "Paxfire makes no allegations that EFF had any role in the potentially actionable conversations" with the reporter Jim Giles—a conclusion that is flatly contradicted by the article published by Jim Giles *which quotes Peter Eckersley and EFF*, brought to the attention of the District Court[34] and alleged in Paxfire's counterclaims.[35]

The District Judge further erred saying that the Magistrate Judge's rulings regarding the application of the "qualified reporter's privilege"—*which was not applied to EFF by the Magistrate*—should protect EFF's documents.[36] However, this is completely contrary to the New York qualified press privilege: that doctrine (found by both Magistrate Judge and the District Judge to be the applicable press-shield law in this dispute) protects the press from divulging its sources, but does not protect *sources* from producing relevant information.[37] Misapplying this privilege creates a new doctrine: by telling the press about a subject, and doing so anonymously, a source immunizes himself *from ever testifying about the matter.*

---

[34] Opposition of Paxfire at 7 (SER 25), quoting "US Internet Providers Hijacking Users' Queries," *New Scientist*, August 4, 2011 (Doc. 21-2).

[35] See Counterclaims to Paxfire's First Amended Answer, Affirmative Defenses, and Counterclaims ¶ 37 (RE 298-99) RE 308-09.

[36] RE 9.

[37] New York's Shield Law, N.Y. Civ. Rights Law § 79-h(b)-(c) (McKinney 2011), provides *journalists* (not sources) with "an absolute privilege from testifying with regard to news obtained under a promise of confidentiality, but only a qualified privilege with regard to news that is both unpublished and not obtained under a promise of confidentiality." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2012).

This is contrary to *all* known confidentiality doctrines. Even if adopted, it would *still not be applicable in this dispute*: Peter Eckersley and EFF did not act anonymously, but allowed themselves to be named and quoted. In its brief, Paxfire challenged the application of any and all confidentiality doctrines, including the qualified reporter's privilege.

## C. Neither the Work Product Privilege Nor Its Codification Attach to Documents Produced Before an Actual Party Considers Litigation

EFF contends that "Paxfire does not dispute that EFF and Eckersley are experts with regard to the issues in the Feist litigation."[38]

EFF and Mrs. Eckersley may be "experts," in that they may have expertise in the matters at issue. However, they were never *Betsey Feist's experts*, a truth established by Mr. Eckersley's First Declaration: "I am not a consultant or expert for plaintiff in this case . . . ." Further, neither could be an expert in the New York litigation until Betsey Feist was solicited to be a party, which occurred July 24, 2011. An individual cannot anticipate litigation until she anticipates being a party. Contrary to EFF's protestations, Paxfire argued this point extensively in its initial brief and in the Court below.[39]

EFF contends that "the only reason [that] EFF and Mr. Eckersley had any contact with [Betsey Feist's] counsel" was for providing expert advice and

---

[38] EFF Brief at 30-31.
[39] Paxfire Brief at 17-21; Opposition of Paxfire at 19-21 (SER 37-39).

consulting in anticipation of the Feist litigation."[40]  This is false: EFF and Mr. Eckersley had such contact for the purpose of soliciting the Feist litigation[41]; Paxfire further argued that the litigation was a sham.[42]

EFF notes language in Paxfire's Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge[43] to assert that Paxfire "conceded" the issue of whether Eckersley was Feist's expert witness.  To the contrary, Paxfire only argued in the alternate that—assuming he was such a witness—he had waived his protections against being deposed by introducing declarations into the court files.[44]

Those cases relied upon by EFF in support of its argument on this point are misapplied.  In *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984), a report obtained, improperly, by the defendant from an expert was prepared–by that expert–at the request of the plaintiffs.  In contrast, Mrs. Feist did not know she might be a plaintiff at the time that the documents sought were prepared.  In *United States Inspection Servs. v. NL Engineering Solutions LLC*, 268 F.R.D. 614, 617-19 (N.D. Cal. 2010), the party asserting the doctrine was the party that consulted the

---

[40] EFF Brief at 30.

[41] Second Decl. Eckersley ¶ 19 (RE 346).

[42] Paxfire, Inc.'s Opposition to EFF's and Eckersley's Motion To Quash Subpoenas at 9, 10, 17, (SER 27, 28, 35); Paxfire, Inc.'s Opposition to Witness James Giles' Motion To Quash Subpoena Duces Tecum at 2 (SER 44); Paxfire's Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge at 3 (SER 168); Paxfire's Opposition to Motion for De Novo Determination at 2-3 (SER 220-21).

[43] SER 165 at 167-68.

[44] *Id*. at 167-68.

15

expert, doing so in anticipation of litigation.  Here, Mrs. Feist did not consult EFF,
whether formally or informally, until after she was solicited by her lawyers to
become a party, that is, July 24, 2011.  EFF's remaining cases on this point are
similarly distinguishable.

**D. Neither Rule 26(b)(4)(D) nor the Work Product Doctrine Applies**

Contrary to EFF's protestations,[45] Paxfire disputed the application of *both*
Rule 26(b)(4)(D) (the "Rule"), concerning the protection of an expert's intellectual
property, and the work product doctrine (the "doctrine") to the documents at issue.
That Paxfire did not confuse the two is clear from the following sentence from its
initial brief (citation omitted, italic added):

> The case law concerning the work product doctrine is *also* clear on
> this point: the work product doctrine protects the work product of an
> attorney created during or in anticipation of litigation.

As a preliminary matter, we note that the District Court's lone reference to
the work product document failed to address its application to *any specific
document or category of documents*.  The Court merely said, "other documents are
likely protected as attorney work product."[46]   "Likely protected" is neither a
finding of fact nor a conclusion of law; and failure to identify any document means
that a finding or conclusion cannot be applied to *any* of the documents at issue.

---

[45] EFF Brief at 27.
[46] RE 9.

16

Paxfire is not be required to "shoot in the dark" in an effort to identify how this doctrine might apply–when the District Court failed to identify how it did and Paxfire's position is that it doesn't. Again, the District Court erred.

As argued extensively in Paxfire Brief and here, *supra*, EFF waived confidentiality in its documents. Such being the case: no privilege, doctrine, or statutory protection applies, including both Rule 26(b)(4)(D) and the work product doctrine. As conceded by EFF, the cases relied upon by Paxfire address both the Rule and the doctrine.

## E. "In Anticipation of Litigation" Does Not Extend to the Conduct of EFF's Routine Business Practices and Investigations

EFF's reliance upon the phrase "in anticipation of litigation" for the applicability–to itself–of the work product doctrine and other protections is misplaced. The phrase, and therefore the protections, do not apply before the decision is made by the person eventually bringing a lawsuit to bring such suit. *Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568, 575-77 (D.S.D. 2010) (holding that a factual investigation conducted prior to the decision by a person to bring a lawsuit does not invoke the work product doctrine); *800 Front Street Corp. v. Travelers Property Casualty Co. of America*, 2006 U.S.Dist. LEXIS 84160 at *11 (E.D.N.Y. Nov. 20, 2006) (holding that work product doctrine applied where consulting expert was retained by counsel "shortly after they were

given authorization by the bankruptcy court to pursue" the claim and litigation). Prior to such time, there is no client; no lawsuit; no work done in anticipation of a client bringing a lawsuit; and no protections.

EFF insinuates that it considered bringing the lawsuit itself, and therefore the protections apply to it, as it "anticipated litigation."[47]  Peter Eckersley decidedly refutes that suggestion.  Turning to Mr. Eckersley's own words in his First Declaration[48] (emphasis added):

> [T]he EFF *regularly investigates* and publishes information about the way the Internet works for the benefit of our members and the general public as part of our advocacy work.  Paxfire's business practices, as revealed by the ICSI researchers to me, raise serious privacy and network neutrality concerns.  I believe they are of great public importance and of interest to our members and others *regardless of whether litigation exists*.  Having learned of Paxfire's troubling business practices *before litigation was even contemplated*, we would certainly have published a blog post about them *even if no litigation ensued*.

And again in his Second Declaration[49] (emphasis added):

> Conversations with researchers and technologists, both inside and outside of corporations, about technilogical [*sic*] matters of possible public and legal concern *are a common occurrence* in my role at EFF. *Often these conversations begin speculatively*; they cover a wide range of phenomena related to computers and the Internet; evidence and causes for these phenomena; and policy concerns.  *Potential* responses or solutions are also discussed and explored.  *Sometimes these conversations come to nothing*, but on other occasions . . . they lead to news stories, blog posts, white papers, software projects,

---

[47] EFF Brief at 32.
[48] First Declaration of Peter Eckersley ¶ 4 (RE 337-38).
[49] Second Declaration of Peter Eckersley ¶ 2 (RE 341).

18

legislative action, activist campaigns, EFF legal cases, cases brought by others, or some combination of the above. *It can be difficult to determine at the outset which of these paths will be the right one, and often the actual policy goals and outcomes are not formulated until after the technical landscape is clear.*

Clearly, the documents at issue concern EFF's own internal, routine business practices and investigations. As explained in *William A. Gross Construction Associates, Inc.*, 262 F.R.D. at 354, 360 (S.D.N.Y. 2009) (citation omitted):

> However, there is no work product protection for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . . Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created "because of" actual or impending litigation.

Finally, EFF misreads the Magistrate Judge's ruling in quashing the deposition subpoenas (not at issue on this appeal) while upholding the subpoenas *duces tecum* for pre-July 24th documents.[50] The Magistrate Judge was not inconsistent. He took EFF's arguments at face value, that, after July 24th, EFF became an expert for Mrs. Feist. He then found, for this reason, that Paxfire could not depose either EFF or Peter Eckersley as they had become Mrs. Feist's experts. Prior to this time, however, they were not her experts, and documents from such time are discoverable.

---

[50] EFF Brief at 35.

**F.  EFF Solicited the Litigation, and Thus Is Not an Expert Protected by Rule 26(b)(4)(D)**

Rule 26(b)(4)(D) prohibits the discovery of facts or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation.  It applies to neither EFF nor Mr. Eckersley, inasmuch as *they were not consulted by* Mrs. Feist in anticipation of litigation but *they solicited* the litigation.

EFF cites the dissent in *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 845 (8th Cir. 1988) (J. Beam in dissent) in support of its position.  There, Judge Beam noted that Rule 26 recognizes four categories of experts:

> (1) experts a party expects to use as a witness at trial; (2) experts retained or specially employed in anticipation of litigation but not expected to testify at trial; (3) experts informally consulted in preparation for trial but not retained or specially employed; and (4) experts whose information was not acquired in preparation for trial.

*Id*. at 845 (citations omitted).

EFF relies considers itself in the third category of experts, *e.g*., those informally consulted in preparation for trial.  However, EFF and Mr. Eckersley were not consultants, see First Declaration of Peter Eckersley; and to the extent they provided information to Mrs. Feist's attorneys prior to July 24, 2011, such information was acquired by EFF for its own purposes and not in preparation for Mrs. Feist's trial (as she had not yet been solicited). Thus, they are in the fourth category, *e.g*., experts whose information was not acquired in preparation for trial.

20

Rule 26(b)(4)(D) protections do not apply, and the experts are to be treated as ordinary witnesses. *Oakberg v. Zimmer, Inc*., 211 Fed. Appx. 578, 580 (9th Cir. 2006) (quoting the Advisory Committee Notes to the Federal Rules of Civil Procedure: "[an] expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of this lawsuit … should be treated as an ordinary witness.")[51]

### III. PAXFIRE HAS NEED FOR THE DOCUMENTS

Paxfire addressed the error made by the District Court in opining that Paxfire has no need for the documents. See Paxfire Brief at 25-30.  It now rebuts EFF's new arguments.

To establish its defamation counterclaim Paxfire must prove "actual malice" which, as noted by the District Court in New York, is defined to include gross recklessness.[52]   This is a heavy burden and Paxfire is entitled to obtain the

---

[51] See Paxfire Brief at 22 n. 34.

[52] Judge Koetl from the bench (RE at 178):

> Under New York law where the content of a publication is "arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition," the party allegedly defamed by such publication may not recover unless "the publisher acted in a [gross] irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer-*

evidence it needs to carry this burden. *Herbert*, 441 U.S. at 169 ("[I]t is plain enough that the suggested privilege for the editorial process would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice as required by *New York Times* [*Co. v. Sullivan*, 376 U.S. 254 (1964)]"). As discussed above, Paxfire needs to prove a *negative* to establish its counterclaims: it needs to establish that Mrs. Feist did *not* have information necessary to justify her allegations. EFF's evidence is needed to accomplish this, and Paxfire is entitled to obtain that evidence for this purpose. *Id*.

Turning to the nine ISPs referenced in the subpoena (the "Nine ISPs"), the District Court erred when it said that Paxfire did not need, and it did not explain its need, for documentary evidence concerning them in connection with its tortious interference claim, giving the simplistic explanation that Paxfire already knew the names of the Nine ISPs. *First*, the District Court erred, in that this information directly concerns Mrs. Feist's *defamation* claims and not merely its tortious interference claims, as these are the Nine ISPs upon which her published statements were (supposedly) based. *Second*, the District erred, in that this information is necessary inasmuch as Paxfire must show that Mrs. Feist did not

---

*Dispatch, Inc*., 341 N.E.2d 569, 571 (N.Y. 1975). "To act in a '[gross] irresponsible manner' under *Chapadeau* is to act with more recklessness than the 'ordinary negligence' standard of care." *Med-Sales Associates, Inc. v. Lebhar-Friedman, Inc.*, 663 F.Supp. 908, 912 (S.D.N.Y. 1987).

possess information justifying her statements that Paxfire wiretapped, profiled, or disclosed search histories of the users of these Nine ISPs. *Third*, the District Court erred, in that Paxfire *did* inform the court below of its basis for its need for this information.[53]

Ms. Feist expressly alleged that she "learned" that her Internet searches were (supposedly) being wiretapped, profiled, and disclosed and sold to third parties from information provided by EFF and ICSI researchers. The Federal Rules of Civil Procedure require "all parties to have evidentiary support for the factual contentions in their pleadings." *Securities Exchange Commission v. Collins &Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009). Such being the case, "producing the . . . documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint." *Id.*

---

[53] For example, see Paxfire's Opposition at 20 (SER 40):

> [T]he requested discovery goes to the heart of both the Feist suit against Paxfire . . . , *and* to Paxfire's defamation/interference counterclaims against Feist, *e.g*., did "she" act with actual malice in making false and defamatory allegations against Paxfire. Paxfire already deposed her, thus exhausting "her" knowledge. Her depositions as well as her Rule 26(a)(1) disclosures provide no basis for her allegations: she testified that she basically had *no* independent knowledge concerning Paxfire and that everything she "knew" she learned from EFF and its associates.

## IV. THE FIRST AMENDMENT DOES NOT PROTECT EFF'S EVIDENCE

The U.S. Supreme Court has resolved EFF's arguments that the First Amendment bars Paxfire's discovery. *See New York Times*, 376 U.S. 254; *Herbert*, 441 U.S. at 169. It is noteworthy that both the Magistrate and District Judges ignored EFF's constitutional arguments.

We note that at various points in its brief EFF claims to be: an expert consultant; the press; a researcher and investigator; a litigant; and–now–a political association. If EFF is to be believed, it is anything it wants to be whenever it needs to be something: it is above the law, in that it can never be compelled to produce evidence even when it instigated the lawsuit. What EFF fails to recognize is that no privilege or immunity is absolute, and all persons are subject to the needs of the judicial process. *Clinton v. Jones*, 520 U.S. 681 (1997); *see also United States v. Nixon*, 418 U.S. 683 (1973).

### A. EFF Is Not Accorded the Protections of a Political Association

EFF relies heavily upon *Perry*, 591 F.3d 1147, and related cases. These, however, concern the compelled disclosure of political associations. *Perry* itself concerned "the scope of the First Amendment against compelled disclosure of internal campaign contributions," *id.* at 1157, implicating the right to advocate for votes in our democratic process. As explained by this Court: "A political campaign's communications and activities 'encompass a vastly wider range of

24

sensitive material' protected by the First Amendment than would be true in the normal discovery context." *Id*. at 1158, quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004). Even the protections of these communications and activities are not absolute. *See Buckley v. Valeo*, 424 U.S. 1, 63-74 (recognizing the burden but upholding the compelled disclosure of campaign contribution information under the "exacting scrutiny standard").

EFF is not primarily engaged in campaign lobbying or the protection of political rights. As such, the heightened protections afforded such political activity do not accrue to EFF.[54] Given Paxfire's own heightened need for EFF's evidence to prove its malice claims in court in the Southern District of New York, Paxfire would be entitled to such evidence even if they did.

## B. EFF IS Not Accorded the Protections of the Press

EFF argues that it is or is akin to the press, in that it publishes a blog and provides information to other press outlets. EFF, however, acted as a knowing participant in Mrs. Feist's defamation; instigated the wrongs that damaged Paxfire,

---

[54] In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984), the Court did not bar discovery, but instead approved the use of a protective order precluding the release outside current litigation of broad discovery of a religious organization, including identities of persons making donations over five-year period and amounts. *See also*, *e.g*., *Kerr v. U.S. Dist. Ct. f*or *N. D.*, 426 U.S. 394, 405-406 (1976) (approving use of protective order restricting access to discovered information and potential for *in camera* review by district court in response to state claim of privilege in confidential communications among prison decision makers).

including publishing its own defamatory statements against the company; and is named as a co-conspirator in Paxfire's counterclaims. The First Amendment protections that might otherwise be available do not apply.

In *Herbert v. Lando,* the Supreme Court discussed whether discovery that invaded the "editorial; process" would impermissibly infringe the First Amendment. It found that it would not:

> [T]hese cases [imposing the higher burden of proof did not] suggest any First Amendment restriction on the sources from which the plaintiff could obtain the necessary evidence to prove the critical elements of his cause of action. . . . Inevitably, unless liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer would be open to examination. . . . [A]ccording an absolute privilege to the editorial process of a media defendant in a libel case is not required, authorized, or presaged by our prior cases, and would substantially enhance the burden of proving actual malice, contrary to the expectations of *New York Times*, *Butts*, and similar cases.

*Id*. at 160, 169. Indeed, the Court recognized that the higher burden would lead to the allowance of *more* discovery: "The plaintiff's burden is now considerably expanded. In every or almost every case, the plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability on the part of the publisher." *Id*. at 176.

That EFF and Peter Eckersley are not named as defendants should be of no matter: their statements made in furtherance of the conspiracy, such as their defamatory blog posts and quotes in *New Scientist*, will be introduced at trial to

26

establish defamatory conduct and Mrs. Feist's liability for that conduct.[55]  There is no reason not to permit the Paxfire to inquire before trial into any potentially exonerating explanations.  *Cf.*, *Herbert* U.S. at 173 (applying same reasoning where publisher was defendant).

## C. No General Privilege Exists for Advocacy Organizations or Researchers

There is no general rule or privilege exempting "advocacy" organizations, even those who exercise constitutional rights, from responding to routine discovery requests. *See, e.g., Wilkinson v. FBI*, 111 F.R.D. 432, 437 (C.D. Cal. 1986) (no showing that discovery would impair associational interests of civil rights group). Here, Paxfire in no way seeks to prevent EFF from investigating and advocating for civil liberties issues.[56] EFF has admitted that it solicited the lawsuit.  Paxfire simply seeks to discover what EFF knew that might justify its public statements and those of Mrs. Feist.

---

[55] See F.R.E. 801(d)(2)(E).

[56] *NAACP v. Button*, 371 U.S. 415 (1963) (unconstitutional ban on certain legal referrals; nothing to do with ordinary discovery) and similar cases relied upon by EFF are thus inapposite. *See, e.g., Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) (statutory ban on gender discrimination by civil organization did not infringe right of free association; same).

Similarly, although there is protection for the conduct of scientific research under the First Amendment, there is no privilege barring discovery of such research.[57]

## D. No General Privilege Exists for Investigations

EFF also seeks to avoid discovery because it is supposedly investigating potential abuses of civil liberties and privacy on the Internet. While justification for limiting discovery may be higher where the alleged investigation is infused with promises of confidentiality to unnamed sources, neither EFF nor Eckersley have demonstrated any risk of betraying confidences: indeed, they disclosed their information to Ms. Feist, *New Scientist*, and the public in blogs; and they identified there and in Mr. Eckersley's publicly-filed declarations who and what were their sources. Paxfire does not seek the identity of any additional sources, and certainly not of any confidential sources.

Further, EFF lacks the necessary *indicia* of a truly independent press to justify protection. *See, e.g., Chevron Corp. v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011) ("Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all. . . . . It is not the policy of the law to exempt such undertakings from the obligation to produce information relevant to a

---

[57] *Supra* at 12 n. 31.

dispute before a court of law.") Not only did EFF solicit the lawsuit and publicly promote it, but it has a demonstrated financial interest in the pursuit of Internet-related class action lawsuits, having collected several million dollars in *cy pres* awards from such suits[58]: its financial model is based upon such suits. It was not acting merely in the public interest.

## CONCLUSION

This Court should order EFF to produce the documents called for by the subpoenas *duces tecum* as ordered by the Magistrate Judge below and narrowed by Paxfire.

Dated: June 30, 2014                    Respectfully submitted,

/s/ Andrew Grosso
Andrew Grosso, Esq.
ANDREW GROSSO & ASSOCIATES

*Counsel for Appellant Paxfire, Inc.*

---

[58] See *Fraley v. Facebook, Inc*., 966 F. Supp. 939, 945-46 (N.D. Ca. 2013); *In re Google Buzz User Privacy Litigation*, 10-00672-JW (N.D. Cal. 2010); *Lagarde v. Support.com, Inc*. 2013 U.S. Dist. LEXIS 67875 (N.D. Ca. 1013); *In re Groupon, Inc*.,  2012 U.S. Dist. LEXIS 185750 (S.D. Ca. 2012).

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 6,995 words.

Dated: June 30, 2014              Respectfully submitted,

/s/ Andrew Grosso
Andrew Grosso, Esq.
ANDREW GROSSO & ASSOCIATES

*Counsel for Appellant Paxfire, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Stephen Moore
Senior Appellate Paralegal
COUNSEL PRESS LLC